No.  17-1166 (L)

_____

**IN THE UNITED STATES COURT OF APPEALS
FOR THE FOURTH CIRCUIT**

_____

**EDWARD MICHAEL NERO,** *et al.*,

*Plaintiffs-Appellees*,

**v.**

**MARILYN MOSBY**,

*Defendant-Appellant*.

_____

On Appeal from the United States District Court
for the District of Maryland
(Marvin J. Garbis, District Judge)

_____

**BRIEF OF APPELLANT**

_____

BRIAN E. FROSH
Attorney General of Maryland

KARL A. POTHIER
Assistant Attorney General
120 W. Fayette Street, 5th Floor
Baltimore, Maryland  21201
410-230-3135
karl.pothier@maryland.gov

MICHAEL O. DOYLE
Assistant Attorney General
300 East Joppa Road – Ste. 1000
Towson, Maryland  21286
410-339-7567
michaelo.doyle@maryland.gov

Attorneys for Appellant

June 13, 2017

# TABLE OF CONTENTS

Page

JURISDICTIONAL STATEMENT ........................................................1

ISSUES PRESENTED FOR REVIEW ..................................................3

STATEMENT OF THE CASE................................................................4

SUMMARY OF ARGUMENT ...........................................................12

ARGUMENT ......................................................................................14

I.    THIS COURT REVIEWS *DE NOVO* THE DISTRICT COURT'S DENIAL
      OF STATE'S ATTORNEY MOSBY'S MOTIONS TO DISMISS ...............14

II.   STATE'S ATTORNEY MOSBY IS IMMUNE FROM SUIT.......................14

      A.    State's Attorney Mosby Is Absolutely Immune from all
            State and Federal Claims that Arise from Plaintiffs'
            Arrest and Prosecution. .........................................................14

      B.    State's Attorney Mosby Enjoys Qualified Immunity from
            Plaintiffs' Fourth Amendment Claims. ..................................25

            1.    Properly Construed, Plaintiffs' Fourth Amendment
                  Claim Is for Malicious Prosecution ...........................26

            2.    Plaintiffs Do Not Plausibly Allege that State's
                  Attorney Mosby Violated Their Clearly
                  Established Rights Under the Fourth Amendment. ..................31

      C.    State's Attorney Mosby Enjoys Statutory Immunity as to
            All State Law Claims. ..........................................................37

III.  THE COMPLAINTS FAIL TO STATE PLAUSIBLE CLAIMS OF
      DEFAMATION AND INVASION OF PRIVACY/FALSE LIGHT. ...............45

      A.    Plaintiffs Do Not Allege that State's Attorney Mosby
            Possessed the Malice Necessary to Support Their
            Claims..................................................................................46

B.   State's Attorney Mosby's Statements Are Privileged and, Therefore, Cannot Serve As a Basis for Plaintiffs' Claims ...............49

CONCLUSION ......................................................................................55

CERTIFICATE OF COMPLIANCE WITH RULE 32(a) .....................................57

PERTINENT STATUTES AND REGULATIONS .................................58

CERTIFICATE OF SERVICE .............................................................66

# TABLE OF AUTHORITIES

Page

## Cases

*AIDS Counseling and Testing Ctrs. v. Group W Television, Inc.*,
903 F.2d 1000 (4th Cir. 1990) ........................................................46

*Ashcroft v. Iqbal*, 556 U.S. 662 (2009) ..............................................2, 41

*Bagwell v. Peninsula Reg'l Med. Ctr.*, 665 A.2d 297 (Md. App.1995) .................50

*Bailey v. Kennedy*, 349 F.3d 731 (4th Cir. 2003) ....................................14

*Barbre v. Pope*, 935 A.2d 699 (Md. 2007).................................39, 40, 44

*Batson v. Shiflett*, 602 A.2d 1191 (Md. 1992)...........................46, 47, 48

*Bell Atlantic Corp. v. Twombly*, 550 U.S. 544 (2007)............................41

*Blue Tree Hotels Inv. (Canada) Ltd. v. Starwood Hotels & Resorts
Worldwide, Inc.*, 369 F.3d 212 (2d Cir. 2004) ..............................14

*Brooks v. Jenkins*, 104 A.3d 899 (Md. App. 2014) .................................40

*Brooks v. Winston-Salem*, 85 F.3d 178 (4th Cir. 1996)...................26, 27

*Brosseau v. Haugen*, 543 U.S. 194 (2004) ..........................................36

*Buckley v. Fitzsimmons*, 509 U.S. 259 (1993)..................................passim

*Burns v. Reed*, 500 U.S. 478 (1991) .............................................15, 18

*Capital-Gazette Newspapers v. Stack*, 445 A.2d 1038 (Md. 1982)........................48

*Carr v. Watkins*, 177 A.2d 841 (Md. 1962)........................................51

*Chesapeake Publ'g Corp. v. Williams*, 661 A.2d 1169 (Md. 1995)................53, 54

*Chinwuba v. Larsen*, 790 A.2d 83 (Md. App. 2002), *rev'd in part on other grounds*, 832 A.2d 193 (Md. 2003) .................................................40, 41, 51

*Clipper v. Takoma Park, Md.*, 876 F.2d 17 (4th Cir. 1989) ....................................30

*Cooper v. Rodriguez*, 118 A.3d 829 (Md. 2015) ......................................................44

*Davis v. City of Greensboro, N.C.*, 770 F.3d 278 (4th Cir. 2014) ...........................2

*DiPino v. Davis*, 729 A.2d 354 (Md. 1999) ............................................................41

*Dorn v. Town of Prosperity*, 375 F. App'x 284 (4th Cir. 2010) .............................27

*Duncan v. State*, 384 A.2d 456 (Md. 1978) ............................................................33

*Durham v. Horner*, 690 F.3d 183 (4th Cir. 2012) ..................................................37

*Elliott v. Kupferman*, 473 A.2d 960 (Md. App. 1984) ............................................39

*Evans v. Chalmers*, 703 F.3d 636 (4th Cir. 2012) ...........................................passim

*Evans v. Perry*, 578 F. App'x 229 (4th Cir. 2014) .............................................3, 46

*Foor v. Juvenile Servs. Admin.*, 552 A.2d 947 (Md. App. 1989) ...........................40

*Forrester v. White*, 484 U.S. 219 (1988) ................................................................15

*Franks v. Delaware*, 438 U.S. 154 (1978) ........................................................passim

*Gadson v. State*, 668 A.2d 22 (Md. 1995) ................................................................9

*Garrison v. State of Louisiana*, 379 U.S. 64 (1964) ................................................48

*Gill v. Ripley*, 724 A.2d 88 (Md. 1999) ..................................................................16

*Goldstein v. Moatz*, 364 F.3d 205 (4th Cir. 2004) .................................................24

*Gray-Hopkins v. Prince George's Cnty., Md.*, 309 F.3d 224 (4th Cir. 2002) ..........2

*Hall v. Virginia*, 385 F.3d 421 (4th Cir. 2004) ......................................................14

*Harlow v. Fitzgerald*, 457 U.S. 800 (1982) ............................................................26

*Henry v. Farmer City St. Bank*, 808 F.2d 1228 (7th Cir. 1986) ..............................17

*Illinois v. Gates*, 462 U.S. 213 (1983) ....................................................................31

*Imbler v. Pachtman*, 424 U.S. 409 (1976) .............................................14, 15, 16, 22

*Indep. Newspapers, Inc. v. Brodie*, 966 A.2d 432 (Md. 2009) ................................46

*Jones v. Chandrasuwan*, 820 F.3d 685 (4th Cir. 2016) ...........................................26

*Kalina v. Fletcher*, 522 U.S. 118 (1997) ..........................................................passim

*Larsen v. Chinwuba*, 832 A.2d 193 (Md. 2003) .....................................................38

*Lee v. Cline*, 863 A.2d 297 (Md. 2004) .......................................................38, 39, 50

*Leichling v. Honeywell Int'l, Inc.*, 842 F.3d 848 (4th Cir. 2016) ...........................14

*Liscombe v. Potomac Edison Co.*, 495 A.2d 838 (Md. 1985) .................................40

*Livesay v. Baltimore Cnty.*, 862 A.2d 33 (Md. 2004)..............................................50

*Lyles v. Spark*, 79 F.3d 372 (4th Cir. 1996)............................................................15

*Maciariello v. Sumner*, 973 F.2d 295 (4th Cir. 1992) .............................................36

*Maryland v. Pringle*, 540 U.S. 366 (2003) ..............................................................31

*Melgar ex rel. Megar v. Greene*, 593 F.3d 348 (4th Cir. 2010) ................................9

*Miller v. Prince George's Cnty., Md.*, 475 F.3d 621 (4th Cir. 2007)..............passim

*Mitchell v. Forsyth*, 472 U.S. 511 (1985) .................................................................2

*Newell v. Runnells*, 967 A.2d 729 (Md. 2009) ........................................................39

*New York Times Co. v. Sullivan*, 376 U.S. 254 (1964)............................................47

*Offen v. Brenner*, 935 A.2d 719 (Md. 2007).............................................................49

*Ostrzenski v. Seigel*, 177 F.3d 245 (4th Cir. 1999)..................................................23

*Pearson v. Callahan*, 555 U.S. 223 (2009)........................................................26, 36

*Peroutka v. Streng*, 695 A.2d 1287 (Md. App. 1997) ............................................52

*Philips v. Pitt Cnty. Mem'l Hosp.*, 572 F.3d 176 (4th Cir. 2009)...........................14

*Phillips v. Washington Magazine, Inc.*, 472 A.2d 98 (Md. App. 1984).................46

*Piscatelli v. Van Smith*, 35 A.3d 1140 (Md. 2012)..........................................passim

*Porterfield v. Lott*, 156 F.3d 563 (4th Cir. 1998) ...................................................27

*Rosenberg v. Helinski*, 616 A.2d 866 (Md. 1992) ..................................................54

*Rux v. Republic of Sudan*, 461 F.3d 461 (4th Cir. 2006)....................................3, 46

*Sawyer v. Humphries*, 587 A.2d 467 (Md. 1991) ...................................................38

*Seley-Radtke v. Hosmane*, 149 A.3d 573 (Md. 2016) ......................................50, 53

*Shirley v. Heckman*, 75 A.3d 421 (Md. App. 2013) ................................................53

*Shoemaker v. Smith*, 725 A.2d 549 (Md. 1999)......................................................39

*Shoultes v. Laidlaw*, 886 F.2d 114 (6th Cir. 1989)................................................21

*Simmons v. Poe*, 47 F.3d 1370 (4th Cir. 1995).......................................................30

*Smith v. Danielczyk*, 928 A.2d 795 (Md. 2007)..........................................46, 47, 50

*Springmen v. Williams*, 122 F.3d 211 (4th Cir. 1997)......................................passim

*St. Amant v. Thompson*, 390 U.S. 727 (1968)...............................................47, 48, 49

*Thacker v. City of Hyattsville*, 762 A.2d 172 (Md. App. 2000) .............................39

*Torchinsky v. Siwinski*, 942 F.2d 257 (4th Cir. 1991) ..............................................30

*Van de Kamp v. Goldstein*, 555 U.S. 335 (2009)......................................................16

*Verzi v. Baltimore Cnty.*, 635 A.2d 967 (Md. 1993) ................................................9

*Wadkins v. Arnold*, 214 F.3d 535 (4th Cir. 2000).............................................21, 30

*Wallace v. Kato*, 549 U.S. 384 (2007) ....................................................................26

*Wells v. State*, 642 A.2d 879 (Md. App. 1994)........................................................40

*U.S. v. Colkley*, 899 F.2d 297 (4th Cir. 1990) ............................................29, 30, 34

*United States v. Tate*, 524 F.2d 449 (4th Cir. 2008)...............................................35

*Young v. City of Mount Ranier*, 238 F.3d 567 (4th Cir. 2001) .........................39, 40

## Statutes

Annotated Code of Maryland

    Crim. Law (2012 Repl. Vol.)
        § 4-101(a) .......................................................................................32

    Crim. Proc. (2008 Repl. Vol.)
        § 6-104(a)(1).....................................................................................6

    Cts. & Jud. Proc. (2013, 2016 Supp.)
        §§ 2-608(c) and (d).........................................................................21
        § 5-522(b) .................................................................................2, 38

    Gen. Prov. (2014)
        § 4-316(a) & (e)(2) .........................................................................44

    State Gov't (2014, 2016 Supp.)
        § 12-101(a)(8)..................................................................................38
        § 12-105............................................................................................38

Maryland Rules
    4-211(b)(1)................................................................19
    4-324 ........................................................................6
    19-303.6...............................................42, 43, 48, 49
    19-303.8..................................................................42

## Miscellaneous

Baltimore City, Md., Code Art. 19 (2017)
    § 59-22(b) ..............................................................32

1 Harper and James, *The Law of Torts* § 5.28 (1954).............52

David B. Kopel, et al., *Knives and the Second Amendment*,
    47 U. Mich. J. L. Reform 167 (2013) ...........................33

National District Attorneys Association, *National Prosecution Standards,*
    (3d ed. 2009)
    § 2-14.3 .................................................................43

United States Department of Justice, *U.S. Attorneys' Manual* (Rev. 2003)
    § 1-7.520 ...............................................................43

No. 17-1166 (L)

_____

### IN THE UNITED STATES COURT OF APPEALS
### FOR THE FOURTH CIRCUIT

_____

**EDWARD MICHAEL NERO,** *et al.*,

*Plaintiffs-Appellees*,

**v.**

**MARILYN MOSBY**,

*Defendant-Appellant.*

_____

On Appeal from the United States District Court
for the District of Maryland
(Marvin J. Garbis, District Judge)

_____

### BRIEF OF APPELLANT

_____

### JURISDICTIONAL STATEMENT

In this consolidated action asserting claims for money damages against the

State's Attorney for Baltimore City, Marilyn Mosby, brought under 42 U.S.C.

§ 1983 and state-law tort causes of action, the district court had jurisdiction under

28 U.S.C. §§ 1331, 1343, and 1367.

This Court has jurisdiction under 28 U.S.C. § 1291 and the collateral order

doctrine to review the district court's memorandum and order denying State's

Attorney Mosby's motions to dismiss, which the district court issued on January 6,

2017, and corrected on January 27, 2017.[1]  (J.A. 263-327.)  The collateral order doctrine authorizes this Court "to review a district court's denial of those claims to which defendants assert immunities 'from suit,'" *Evans v. Chalmers*, 703 F.3d 636, 655 (4th Cir. 2012), when, as here, the district court's decision turns on "an issue of law," such as in "a ruling on the sufficiency of the pleadings at the motion-to-dismiss stage . . . ."  *Davis v. City of Greensboro, N.C.*, 770 F.3d 278, 282 (4th Cir. 2014) (citing *Ashcroft v. Iqbal*, 556 U.S. 662, 672 (2009)).  *See also Gray-Hopkins v. Prince George's Cnty., Md.*, 309 F.3d 224, 231 (4th Cir. 2002) (holding that, with regard to pendent state law claims to which immunity is asserted, "[w]e have appellate jurisdiction if, under state law, the immunity is an immunity from suit, but we lack such jurisdiction if it is an immunity from liability only").  In denying State's Attorney Mosby's motions to dismiss, the district court rejected her assertions of absolute prosecutorial immunity, qualified immunity, and State statutory immunity, each of which is an immunity from suit.[2]  (J.A. 293-307.)

---

[1]  The district court consolidated the cases by order entered on February 8, 2017, after Ms. Mosby had filed motions to dismiss in each case.  (J.A. 8, 17, 25-26.)

[2]  *See Mitchell v. Forsyth*, 472 U.S. 511, 525-26 (1985) (like absolute immunity, "the essence [of which] is its possessor's entitlement not to have to answer for his conduct in a civil damages action[, . . .] entitlement [to qualified immunity] is an *immunity from suit* rather than a mere defense to liability") (emphasis in original); Md. Code Ann., Cts. & Jud. Proc. § 5-522(b) (LexisNexis

This Court also has jurisdiction over all other aspects of the district court's decision, because those other determinations "'are so interconnected with immediately appealable issues that they warrant concurrent review.'" *Evans v. Perry*, 578 F. App'x 229, 231-32 (4th Cir. 2014) (quoting *Rux v. Republic of Sudan*, 461 F.3d 461, 475 (4th Cir. 2006)).

The defendant timely noted appeals from the district court's order on February 3, 2017.  (J.A. 8, 17, 25.)[3]

## ISSUES PRESENTED FOR REVIEW

1.    Are plaintiffs' federal and state unlawful arrest and malicious prosecution claims against State's Attorney Mosby barred by absolute prosecutorial immunity, where those claims arise from alleged acts and omissions in assessing and evaluating evidence to support the filing of criminal charges against plaintiffs?

2.    Are plaintiffs' Fourth Amendment claims against State's Attorney Mosby barred by qualified immunity where the asserted deprivations arise solely from the filing of criminal charging documents against them, and where plaintiffs

---

2013, 2016 Supp.) ("State personnel . . . are immune from suit . . . and from liability in tort . . . .").

[3]  This Court consolidated the appeals by order entered on March 27, 2017. (ECF No. 18.)

fail to plausibly allege facts demonstrating that the State's Attorney violated any clearly established right?

3.    Are plaintiffs' state law claims of wrongful arrest, malicious prosecution, defamation, and invasion of privacy/false light barred by statutory immunity, where plaintiffs allege no facts plausibly demonstrating that State's Attorney Mosby acted with malice or gross negligence when she filed criminal charges and notified the general public of the same?

4.    Did plaintiffs fail to state plausible state law claims of defamation and invasion of privacy/false light against State's Attorney Mosby, where the sole basis for those claims is the prosecutor's public statements about the filing of criminal charges against the public-official plaintiffs, as well as her accompanying general statements regarding the underlying investigations, the plaintiffs' presumption of innocence, the judicial process, and the need for peace?

## STATEMENT OF THE CASE

The five plaintiffs are Baltimore City police officers who, along with one other officer, were arrested and criminally charged following the death of Freddie Gray, who sustained fatal injuries while being transported in a police van after his arrest on April 12, 2015.  According to their amended complaints, officers Miller, Nero, and Rice participated in Gray's arrest for possession of an allegedly illegal knife, and each had a role in the initial placement of Gray in the van.  (J.A. 209-

-60.)  Officers Porter and White subsequently observed and encountered Gray in the van at two separate stops prior to the final one, where Gray, who had not been placed in a seatbelt in violation of police department policy, was found unresponsive and in need of emergency medical assistance as a result of injuries he sustained while in the van.  (J.A. 164-208.)

Plaintiffs allege that on May 1, 2015, Samuel Cogen, a Major with the Office of the Sheriff for Baltimore City, at the direction or upon the advice of either State's Attorney Mosby or one of her subordinates, submitted applications for statements of charges based on the five officers' conduct during the arrest and detention of Gray.  (J.A. 174, 182-83, 217, 222, 244, 248-49.)  The applications "stated that . . . Gray's death was ruled a homicide by the Office of the Chief Medical Examiner" (J.A. 174-75, 217, 244) and sought the following charges:

  (i)    false imprisonment, two counts of second degree assault, and two counts of misconduct in office against Miller and Nero (J.A. 217);

  (ii)   manslaughter, false imprisonment, two counts of second degree assault, and two counts of misconduct in office against Rice (J.A. 244); and

  (iii)  manslaughter, second degree assault, and misconduct in office against Porter and White (J.A. 174).

All five officers were charged and arrested that same day.  Also on that day, Ms. Mosby "gave a press conference concerning her office's decision to press

charges," during which she allegedly "read" the applications "and spoke in a divisive and inciting manner." (J.A. 175, 217-18, 244-45).

On May 21, 2015, a grand jury filed indictments against the five officers in the Circuit Court for Baltimore City, charging:

(i)　　reckless endangerment, second degree assault, and two counts of misconduct in office against Miller and Nero (J.A. 52-56, 58-62);

(ii)　　manslaughter, reckless endangerment, second degree assault, and two counts of misconduct in office against Rice (J.A. 98-102); and

(iii)　　manslaughter, reckless endangerment, second degree assault, and misconduct in office against Porter and White (J.A. 146-50, 154-58).

In December 2015, Porter was the first of the five officers to be tried. He requested a jury trial. At the close of both the State's case and the entire case, he moved for judgments of acquittal on all counts, which the circuit court denied.[4] (J.A. 151.) On December 16, 2015, with the jury deadlocked, the circuit court declared a mistrial. (J.A. 152.)

The charges against Nero proceeded to a bench trial in May 2016, and at the close of the State's case, he too moved for a judgment of acquittal on all counts,

---

[4] "At the close of the evidence for the State, a defendant may move for a judgment of acquittal . . . on the ground that the evidence is insufficient in law to sustain a conviction." Md. Code Ann., Crim. Proc. § 6-104(a)(1) (LexisNexis 2008 Repl. Vol.). *See* Md. Rule 4-324 (rule of procedure implementing Crim. Proc. § 6-104(a)(1)).

which the circuit court denied.  (J.A. 63.)  On May 23, 2016, the circuit court rendered a verdict of not guilty on all counts.  (J.A. 61-62, 64-87.)

Rice then followed with a bench trial on July 5, 2016.  The State entered a *nolle prosequi* as to one of the misconduct charges.  (J.A. 103.)  At the close of the State's case Rice moved for a judgment of acquittal, which the circuit court granted as to the assault charge but denied as to the three remaining counts.  (J.A. 103.)  On July 18, 2016, the circuit court rendered a verdict of not guilty on all three outstanding counts.  (J.A. 101-02, 104-28.)

On July 27, 2016, the State entered a *nolle prosequi* as to all counts against Miller, Porter, and White.  (J.A. 55-56, 149-50, 157-58.)

While the charges against them were still pending, plaintiffs sued prosecutor Mosby, as well as Major Cogen, for their arrests and prosecutions, claiming that the charges against them were not supported by probable cause.[5]  In their complaints, plaintiffs Porter and White challenged the adequacy of the applications for criminal charges filed against them, alleging that the charges improperly:

  (i)    omitted that a "first-hand witness" had observed that not only was "Gray conscious during much of the ride, but was banging his head against the wall" (J.A. 180);

  (ii)   omitted that another witness saw Gray in the van and not "in any medical distress" (J.A. ¶ 180);

---

[5]    Porter and White initially filed suit in State court, and Ms. Mosby removed their case to the district court.  (J.A. 21.)

(iii)   "omitted that the medics who came onto the scene and examined Mr. Gray after Plaintiff White called them not once, but twice, determined that Freddie Gray's neck was 'Normal'" (J.A. 180);

(iv)   withheld "that not even the medical professionals that arrived on the scene were able to determine that Gray had suffered any serious physical trauma" (J.A. 180-81); and

(v)   misrepresented that "Plaintiffs were under a legal duty to restrain Mr. Gray in a seatbelt when, in fact, no such legal duty existed" (J.A. 179).

Miller, Nero, and Rice made similar allegations (J.A. 217, 221, 244, 248), and further alleged: that the knife found on Gray was illegal, and thus justified his arrest; that the State's Attorney's Office purportedly "had several cases pending against persons" for possession of the same type of knife; and that the BCPD itself allegedly had "informed" the State's Attorney's Office that Gray's knife was illegal. (J.A. 219, 245-46.) All plaintiffs alleged that State's Attorney Mosby knew, based on these allegations and her Office's own independent investigation, that the charges against them were not supported by probable cause, yet she still instructed or advised Major Cogen to file them. (J.A. 182-83, 222, 248-49.) Plaintiffs further asserted that their indictments were the result of improper conduct before the grand jury, including, among other things, the use of "false and misleading statements." (J.A. 183, 223, 250.)

Based on these allegations, plaintiffs alleged that Ms. Mosby deprived them of their "freedom from the deprivation of liberty without due process of the law, as guaranteed by the Fourteenth Amendment to the [U.S.] Constitution," as well as their "freedom from arrest without probable cause, as guaranteed by the Fourth Amendment to the [U.S.] Constitution . . . ." (J.A. 199, 228-29, 231, 253.) Plaintiffs also brought analogous State law claims under Articles 24 and 26 of the Maryland Declaration of Rights,[6] as well as common law claims of false arrest, false imprisonment, malicious prosecution, abuse of process, and civil conspiracy. (J.A. 194-98, 202-06, 224-28, 250-52.) Lastly, plaintiffs sued Ms. Mosby for defamation and invasion of privacy/false light for her statements at the May 1, 2015 press conference, which had included a *verbatim* recitation of Major Cogen's sworn statements in the applications. (J.A. 175, 187-89, 191-93, 245, 255-57, 218-19, 233-35.)

Relying in part on the records of the State court proceedings, prosecutor Mosby promptly moved to dismiss or, in the alternative, for summary judgment. (J.A. 5-6, 14, 22.) Ms. Mosby asserted absolute prosecutorial immunity and qualified immunity from the claims relating to plaintiffs' arrest and prosecution

---

[6]    Article 24 protects an individual's right to due process and equal protection and is the State's counterpart to the Fourteenth Amendment. *Verzi v. Baltimore Cnty.*, 635 A.2d 967, 969-70 (Md. 1993). Article 26 is in *pari materia* with the Fourth Amendment. *Gadson v. State*, 668 A.2d 22, 26 n.3 (Md. 1995); *Melgar ex rel. Melgar v. Greene*, 593 F.3d 348, 360 (4th Cir. 2010).

and State statutory immunity from all State law claims. She also asserted that the complaints otherwise failed to state claims upon which relief can be granted and, with respect to the defamation and invasion of privacy/false light claims, that certain conditional privileges attached to her statements at the press conference.

On August 26, 2016, the district court denied the request for summary judgment as premature (J.A. 160-63), and, on January 6, 2017, it issued a Memorandum and Order, which it corrected on January 27, 2017, granting in part and denying in part Ms. Mosby's motion to dismiss. (J.A. 7-8, 16, 24-25, 263-327.) The district court dismissed the claims of false arrest, false imprisonment, abuse of process, civil conspiracy, and deprivations of rights under the Fourteenth Amendment and Article 24 (J.A. 273-77, 288-89, 291-93), but allowed to proceed the claims under the Fourth Amendment and Article 26, as well as of defamation, invasion of privacy/false light, and malicious prosecution under state law. (J.A. 274-75, 277-81, 291-92.)

Although the district court determined that prosecutor Mosby is absolutely immune from claims that were predicated on conduct before the grand jury, it held that she is not immune from claims arising from the filing of criminal charges against the officers because the plaintiffs alleged that she had "acted as an investigator" before bringing the charges. (J.A. 299.)

The court also determined that Ms. Mosby was not entitled to immunity from the plaintiffs' state law claims relating to their arrest and prosecution. The court concluded that "even though there [wa]s no allegation" that Ms. Mosby acted with malice, plaintiffs had sufficiently alleged that she acted with gross negligence, which is sufficient to overcome state personnel immunity, by alleging that she brought the charges without probable cause. (J.A. 303.)

Lastly, with regard to plaintiffs' state law claims of defamation and invasion of privacy/false light arising from Ms. Mosby's statements made at the press conference, the district court concluded that plaintiffs had sufficiently "allege[d] facts adequate to present a plausible claim that" Ms. Mosby acted with "actual malice" in making statements at the press conference sufficient to state a claim "for defamation purposes." (J.A. 281.) The court concluded that these allegedly malicious statements, only one of which the court specifically identified,[7] rendered conditional privileges to those claims unavailable. (J.A. 277-88.)

---

[7] The court stated that, "[f]or example, Mosby knew that the knife Gray possessed was a spring or other device assisted knife because she saw the knife, she knew that the [State's Attorney's Office] was prosecuting other individuals for possession of similar knives, and she knew that a [state] District Court Commissioner had found there had been probable cause to arrest Gray because of his possession of the knife." (J.A. 322.)

On February 3, 2017, Ms. Mosby noted appeals of the district court's order.[8] (J.A. 328-33.)   On March 31, 2017, after the district court had denied a stay pending appeal, Ms. Mosby moved this Court for the same stay (ECF No. 19-1), which this Court granted on May 4, 2017.  (ECF No. 26.)

## SUMMARY OF ARGUMENT

In finding State's Attorney Mosby not entitled to absolute prosecutorial immunity, qualified immunity, and state statutory immunity in relation to plaintiffs' claims arising from their arrest and prosecution, the district court both applied the wrong legal standards and misapplied the governing legal standards.

The district court erroneously concluded that State's Attorney Mosby is not entitled to absolute prosecutorial immunity for her actions in filing charges against the plaintiffs and utilizing Major Cogen to implement the charging decision.  The district court's reliance for that conclusion on the fact that State's Attorney Mosby and her Office conducted an investigation before the criminal charges were filed is misplaced, because the governing test requires that a court base its decision on the actual function being performed by the prosecutor at the time of the alleged deprivation.   Based on that functional analysis, State's Attorney Mosby is absolutely immune from plaintiffs' claims because, at all times alleged in their

---

[8] Major Cogen also filed dispositive motions raising immunity defenses, (J.A. 4, 13, 21), which the district court denied. (J.A. 263-327.)  Major Cogen did not note an appeal of the district court's rulings.  (J.A. 7-10, 16-18, 25-26.)

complaints, she was engaged in the advocacy functions of assessing and evaluating evidence and implementing the charging decision.

The district court also erroneously found that State's Attorney Mosby is not entitled to qualified immunity. In doing so, the district court incorrectly treated the State's Attorney as an affiant-police officer and misinterpreted the claims against her as wrongful arrest, rather than malicious prosecution, claims. Nevertheless, even if it had applied the correct standard, the court should have concluded that the prosecutor was entitled to qualified immunity because plaintiffs failed to allege that she violated their clearly established rights.

The district court also improperly concluded that State's Attorney Mosby is not entitled to state statutory immunity as to the state law claims. That immunity exists where state personnel act within the scope of their public duties and without malice or gross negligence. The district court erred in concluding that the mere initiation of charges that plaintiffs alleged were unsupported by probable cause could give rise to a plausible inference of gross negligence.

Finally, State's Attorney Mosby is entitled to state statutory immunity in relation to plaintiffs' defamation and invasion of privacy claims, as those claims are based solely on the prosecutor's statements at the May 1, 2015 press conference. For that same reason, the district court erred when it found that the

public-official plaintiffs stated cognizable claims that were not barred by the applicable common law conditional privileges.

## ARGUMENT

I. **THIS COURT REVIEWS *DE NOVO* THE DISTRICT COURT'S DENIAL OF STATE'S ATTORNEY MOSBY'S MOTIONS TO DISMISS.**

This Court conducts a *de novo* review of a district court's decision on a motion to dismiss for failure to state a claim, *Leichling v. Honeywell Int'l, Inc.*, 842 F.3d 848, 850 (4th Cir. 2016), and of a district court's order denying a motion based upon a defense of absolute, qualified, or state statutory immunity,[9] *Chalmers*, 703 F.3d at 646; *Bailey v. Kennedy*, 349 F.3d 731, 739 (4th Cir. 2003).

II. **STATE'S ATTORNEY MOSBY IS IMMUNE FROM SUIT.**

   A. **State's Attorney Mosby Is Absolutely Immune from all State and Federal Claims that Arise from Plaintiffs' Arrest and Prosecution.**

As a prosecutor sued for acting "within the scope of [her] duties in initiating and pursuing a criminal prosecution," *Imbler v. Pachtman*, 424 U.S. 409, 410

---

[9] In conducting its *de novo* review, the Court "may consider attachments to a complaint or the motion to dismiss if 'integral to the complaint and authentic.'" *Leichling*, 842 F.3d at 851 (quoting *Philips v. Pitt Cnty. Mem'l Hosp.*, 572 F.3d 176, 180 (4th Cir. 2009)). The Court also "may properly take judicial notice of matters of public record," *Philips*, 572 F.3d at 180 (citing *Hall v. Virginia*, 385 F.3d 421, 424 (4th Cir. 2004)), including the state court records attached to the motions to dismiss below, *see Blue Tree Hotels Inv. (Canada), Ltd. v. Starwood Hotels & Resorts Worldwide, Inc.*, 369 F.3d 212, 217 (2d Cir. 2004) ("we may also look to public records, including complaints filed in state court, in deciding a motion to dismiss").

(1976),[10] State's Attorney Mosby is entitled to absolute immunity from suit. To determine whether a prosecutor's acts entitle her to absolute immunity, courts employ a "functional approach," *Burns v. Reed*, 500 U.S. 478, 486 (1991), "which looks to 'the nature of the function performed, not the identity of the actor who performed it,'" when assessing whether conduct is prosecutorial in nature and thus absolutely protected, *Buckley v. Fitzsimmons,* 509 U.S. 259, 269 (1993) (quoting *Forrester v. White,* 484 U.S. 219, 229 (1988)). Thus, "[t]he focus of [absolute] immunity analysis . . . is 'on the *conduct* for which immunity is claimed, not on the harm that the conduct may have caused or the question [of] whether it was lawful.'" *Lyles*, 79 F.3d at 377 (emphasis in original) (quoting *Buckley*, 509 U.S. at 271). Under this analysis, "acts undertaken by a prosecutor in preparing for the initiation of judicial proceedings or for trial, and which occur in the course of his role as an advocate for the State, are entitled to the protections of absolute immunity." *Buckley*, 509 U.S. at 273.

---

[10]  *Imbler* was the Supreme Court's "first opportunity to address the § 1983 liability of a state prosecuting officer." 424 U.S. at 420. The Court recognized the doctrine because of its concern that affording prosecutors a lesser immunity would have a substantially "adverse effect upon the functioning of the criminal justice system," *id.* at 426, and "would prevent the vigorous and fearless performance of the prosecutor's duty that is essential to the [system's] proper functioning," *id.* at 427. *See Lyles v. Spark,* 79 F.3d 372, 376-77 (4th Cir. 1996) ("Absolute immunity prevents vexatious litigation from deflecting prosecutors' energies and shading their judgment.") (citing *Imbler*, 424 U.S. at 423).

The Supreme Court has made clear, however, that conduct protected by absolute immunity is not limited to "initiating a prosecution and in presenting the State's case," *Buckley*, 509 U.S. at 272, but extends to acts "'preliminary to the initiation of a prosecution and actions apart from the courtroom,'" *see id. (quoting Imbler*, 424 U.S. at 431). Those protected acts "include the professional evaluation of the evidence assembled by the police and appropriate preparation for its presentation at trial or before a grand jury after a decision to seek an indictment has been made." *Id.* Indeed, even a prosecutor's "administrative duties" and "investigatory functions", are protected by absolute immunity so long as they "relate to [the] advocate's preparation for the initiation of a prosecution or for judicial proceedings . . . ." *Buckley*, 509 U.S. at 273; *see Van de Kamp v. Goldstein*, 555 U.S. 335, 339 (2009) (affording absolute immunity to supervisory prosecutors where individual claimed that supervisors failed properly to train and supervise subordinate prosecutors related to potential impeachment evidence).

Similarly, under Maryland common law, "prosecutors enjoy absolute immunity with respect to claims arising from their role in the judicial process." *Gill v. Ripley*, 724 A.2d 88, 96 (Md. 1999). This immunity applies to their "evaluating whether to commence a prosecution by criminal information, presenting evidence to a grand jury in the quest for an indictment, filing charges, and preparing and presenting the State's case in court." *Id.* Thus, under Maryland

law, as under federal law, civil claims arising from a decision to initiate or terminate a prosecution are barred, because such decisions "are within the ambit of absolute prosecutorial immunity," even if malicious. *Id; see Henry v. Farmer City St. Bank,* 808 F.2d 1228, 1238 (7th Cir. 1986) ("[Absolute] immunity shields the prosecutor even if he initiates charges maliciously, unreasonably, without probable cause, or even on the basis of false testimony or evidence.").

State's Attorney Mosby enjoys absolute immunity from plaintiffs' constitutional claims when their allegations are reviewed under this functional analysis. The relevant alleged acts and omissions contained in plaintiffs' complaints relate squarely to Ms. Mosby's role as an advocate, because they involve her assessment and evaluation of evidence and drawing of legal conclusions in deciding whether to prosecute the plaintiffs. *See Kalina v. Fletcher*, 522 U.S. 118, 130 (1997) (functions of a prosecutor protected by absolute immunity include: "[her] drafting of the certification, her determination that the evidence was sufficiently strong to justify a probable-cause finding, her decision to file charges, and her presentation of the information and the motion to the court"). These tasks are advocacy, and not "investigative," because they are not "normally performed by a detective or police officer." *Buckley*, 509 U.S. at 273. Thus, Plaintiffs' claims arising from Ms. Mosby's conduct related to the applications for statements of charges are barred by absolute immunity. This is so because "even

17

the selection of the particular facts to include in the certification to provide the evidentiary support for the finding of probable cause require[s] the exercise of the judgment of the advocate." *Kalina*, 522 U.S. at 130.

Absolute immunity also protects State's Attorney Mosby from suit with regard to her and her Office's interactions with Major Cogen. Nowhere do plaintiffs allege any facts suggesting that the State's Attorney's Office worked with Cogen in an investigative capacity to perform functions of law enforcement officers. On the contrary, Plaintiffs assert that the two worked together solely to implement the State's Attorney's Office's *charging* decision. (J.A. 182-83, 222, 248-49.)

In erroneously ruling otherwise, the district court relied in part on what it described as "Plaintiffs' alleg[ation] that [Ms.] Mosby knowingly provided [Major Cogen] with false advice that probable cause existed to arrest Plaintiffs." (J.A. 295.) Citing *Burns*, the district court concluded that "the Supreme Court [has] rejected the proposition that prosecutors are entitled to absolute immunity for legal advice provided to police prior to the prosecution of a case," and that Ms. Mosby was not entitled to absolute immunity because she was being sued for "giv[ing] 'legal advice to police about an unarrested suspect.'" (J.A. 296) (quoting *Buckley*, 509 U.S. at 275). In doing so, the district court misconstrued both the plaintiffs' actual allegations and the law governing prosecutorial immunity.

18

Plaintiffs alleged that "[Ms.] Mosby provided erroneous legal advice to Defendant Cogen, prior to his filing of the Application for Statement of Charges, that probable cause existed to *charge and arrest*" plaintiffs, "even though [Ms.] Mosby knew, prior to the filing of the Application for Statement of Charges that no probable cause existed. . . ." (J.A. 182-183, 222, 249.) *See* Md. Rule 4-211(b)(1) (authorizing the filing of statement of charges by judicial officer "upon [a] written application containing an affidavit showing probable cause that the defendant committed the offense charged"). Alternatively, plaintiffs contended, Ms. Mosby directly or indirectly "instructed [Major] Cogen to file the Application[s] for Statement[s] of Charges . . . ." (J.A. 182, 222, 248.) In essence, each of the plaintiffs claimed that, contrary to the applications for criminal charges, their conduct did not constitute violations of the criminal law, and that the State's Attorney should not have informed Major Cogen that there was sufficient evidence to charge them with committing crimes.

This Court's decision in *Springmen v. Williams*, 122 F.3d 211 (4th Cir. 1997), demonstrates that these allegations against State's Attorney Mosby fall within the conduct protected by a prosecutor's absolute immunity. In *Springmen*, a Baltimore County Assistant State's Attorney reviewed an application for statement of charges prepared by a police officer who sought to charge a local gun shop owner with reckless endangerment. *Id.* at 212. The prosecutor advised the police

officer that the application was sufficient, the officer filed the application, and the district court subsequently issued a statement of charges. *Id.* When the charge was later dropped, the owner sued the prosecutor under § 1983, claiming that the prosecutor had violated his rights under the Fourth Amendment because, he asserted, if the prosecutor had properly construed and applied a certain State statute, "there [was] no probable cause" to support the filing of the application in the first place. *Id.* Asserting both absolute and qualified immunity, the prosecutor moved to dismiss, but the district court denied the motion. *Id.*

The prosecutor promptly noted an interlocutory appeal, and this Court reversed, finding that under the circumstances, the call as to whether absolute immunity applied to the prosecutor's actions was "not a close one." *Id.* at 214. This Court rejected the plaintiff-store owner's assertion that a prosecutor's absolute immunity for a charging decision may be abrogated when that decision manifests itself as an instruction to another. The court found it "difficult to imagine conduct more intimately related to the judicial process than a prosecutor's decision to proceed with a prosecution," and "[t]he fact that in this case a police officer implemented the prosecutor's decision does nothing to change this conclusion." *Id.* at 213.

This Court's decision in *Springmen* makes clear that the *decision* to charge itself – the gravamen of plaintiffs' claims in this case – is protected by absolute

immunity regardless of the manner by which it was conveyed or otherwise implemented, and irrespective of whether it resulted from, in whole or in part, the evaluation of evidence adduced by the Office of the State's Attorney itself during its own investigation.[11]  *See Kalina*, 522 U.S. at 130; *Wadkins v. Arnold*, 214 F.3d 535, 538 n.5 (4th Cir. 2000) (in § 1983 action by arrestee against detective, finding local prosecutor's advice to detective authorizing the initiation of charges was "protected by absolute immunity" under *Buckley* and *Springmen*).[12]

The district court similarly erred in concluding that State's Attorney Mosby was not protected by absolute immunity because plaintiffs alleged that she was performing an "investigative" function.  (J.A. 297.)  "Whether conduct is protected depends not on formalistic labels, but on the function it serves."  *Shoultes v. Laidlaw*, 886 F.2d 114, 118 (6th Cir. 1989).  It is "[w]hen a prosecutor performs the investigative functions *normally performed by a detective or police officer*"

---

[11]  A contrary holding potentially would have profound ramifications for the State's criminal justice system, as it would deter prosecutors from utilizing applications for statements of charges as a means of initiating criminal proceedings, particularly in relation to charges involving law enforcement, which *must* be preceded by an investigation by the State's Attorney.  *See* Md. Code Ann., Cts. & Jud. Proc. § 2-608(c) & (d) (LexisNexis 2013 Repl. Vol.).

[12]  The *Wadkins* Court's assessment of the prosecutor's immunity was prompted by its concern that although the prosecutor had not been sued and indeed was not "susceptible to suit," the district court had nevertheless "indicated that, in its view, the [prosecutor] might not be entitled to absolute immunity."  214 F.3d at 538 n.5.

that qualified, and not absolute, immunity applies. *Buckley*, 509 U.S. at 273 (emphasis added). Here, as plaintiffs' allegations make clear, the investigative functions performed by Ms. Mosby were those of a prosecutor because they were "within the scope of [her] duties in initiating and pursuing a criminal prosecution," *Imbler*, 424 U.S. at 410, that is, "her decision to file charge," *Kalina*, 522 U.S. at 130. *See* J.A. 176 (allegation that "the State's Attorney went outside the scope of her employment, as a State's Attorney, by acting in an investigative capacity that *formed the basis for the charges brought*") (emphasis added); J.A. 176, 183 (claim that the State's Attorney's Office "allegedly did an investigation wherein it manipulated evidence *to facilitate indictments of the Plaintiffs and other officers*, and that they "were *falsely charged as a direct result of* an improperly motivated investigation") (emphases added).

Ms. Mosby's statements at the May 1, 2015 press conference further demonstrate that the purpose of her office's investigation was to determine whether to charge the plaintiffs with crimes, a prosecutorial function for which she enjoys absolute immunity. There, the State's Attorney announced that "[t]he findings of our comprehensive, thorough and independent investigation, coupled with the medical examiner's determination that Mr. Gray's death was a homicide, . . . led us to believe that *we have probable cause to file criminal charges*." (J.A. 29) (emphasis added). Accordingly, plaintiffs' claims arising from Ms. Mosby's

22

advising Major Cogen to file charges against the plaintiffs, as well her office's investigation of the matter, are barred by Ms. Mosby's absolute immunity from suit.

This Court's precedents confirm Ms. Mosby's entitlement to absolute immunity. In *Ostrzenski v. Seigel*, 177 F.3d 245, 250 (4th Cir. 1999), this Court afforded "absolute quasi-judicial immunity" to a physician retained on behalf of the Maryland Board of Physician Quality Assurance ("the Board") to conduct a "peer review" of a fellow physician's medical practice to determine whether formal disciplinary charges should be filed. To perform his duties, the peer-reviewer visited the physician's office and selected files for review. *Id*. at 248. Based on the review, he submitted a report to the Board, which issued disciplinary charges.

In rejecting the plaintiff's claims that the peer-reviewer was not protected by absolute immunity because he was "acting in the role of an investigator," *id.* at 250, the Court held that his duties "were analogous to those of a prosecutor reviewing the evidence to determine whether to recommend prosecution." *Id.* The Court reasoned that "[c]learly, some evidentiary review is necessary to determine whether to pursue charges, and a prosecutor is held to be absolutely immune from liability for performing such duties." *Id.* Thus, "the peer reviewer enjoyed absolute immunity for the intertwined activities of making his recommendation to the Board

and conducting the investigation to support his recommendation. . . ." *Goldstein v. Moatz*, 364 F.3d 205, 217 (4th Cir. 2004).  Accordingly, Ms. Mosby is entitled to absolute immunity based upon plaintiffs' claims arising from her Office's investigation of plaintiffs' conduct for the purpose of determining whether to prosecute plaintiffs.

The district court's reliance on the analysis in *Franks v. Delaware*, 438 U.S. 154 (1978), was also misplaced.  In its *Franks* analysis, the district court examined the alleged "material false and misleading statements" and "material omissions" in the applications for statements of charges that would support what the court described as plaintiffs' "false affidavit claim."  (ECF 56 at 58-59.)  As made clear by *Kalina* and *Springmen*, however, a prosecutor's involvement in deciding what should or should not be in a charging document is conduct for which the prosecutor enjoys absolute immunity.  Thus, even if, as plaintiffs allege, Ms. Mosby or her office caused the statement of charges to omit statements of certain witnesses, contain incorrect information concerning Gray's physical condition, not include important medical evidence, or misstate a police officer's legal duties with regard to seatbelting arrestees (J.A. 179), plaintiffs' claims against Ms. Mosby are barred by absolute immunity.

Tellingly, neither the Supreme Court nor this Court has ever held that a *prosecutor's* discretionary determinations regarding the contents of a charging

document are subject to the *Franks* inquiry of whether "asserted material false statements and omissions" in a police officer's affidavit supporting an application for a search warrant "state a constitutional claim" under the Fourth Amendment. *See Chalmers*, 703 F.3d at 649-50 (cited in "Appendix B" of the district court's decision (J.A. 320), but applying *Franks* only in the context of a claim against police officers); *Miller v. Prince George's Cnty., Md.,* 475 F.3d 621, 627 (4th Cir. 2007) (same).

In sum, the functional analysis of a prosecutor's claim to absolute immunity requires a precise inquiry into the actual function being performed by the prosecutor at the time of the underlying deprivation.  The district court failed to perform this analysis.  Had it done so, it would have concluded that State's Attorney Mosby and her Office are entitled to absolute immunity for actions interacting with Major Cogen to draft and submit the requisite charging documents, and conducting an investigation to determine whether plaintiffs should be criminally charged.

### B.    State's Attorney Mosby Enjoys Qualified Immunity from Plaintiffs' Fourth Amendment Claims.

In addition to absolute immunity, State's Attorney Mosby is also protected by qualified immunity from plaintiffs' federal claims.  Under the doctrine of qualified immunity, "government officials performing discretionary functions generally are shielded from liability for civil damages insofar as their conduct does

25

not violate clearly established statutory or constitutional rights of which a reasonable person would have known." *Springmen*, 122 F.3d at 214 (quoting *Harlow v. Fitzgerald*, 457 U.S. 800, 818 (1982)).

Typically, "[d]etermining whether qualified immunity is appropriate is a two-step inquiry." *Jones v. Chandrasuwan*, 820 F.3d 685, 691 (4th Cir. 2016) (citing *Pearson v. Callahan,* 555 U.S. 223, 232 (2009)). "First, a court must decide whether the facts that a plaintiff has shown make out a violation of a constitutional right." *Id.* "Second, the court must consider whether the right at issue was 'clearly established' at the time of the alleged misconduct." *Id.* Judges are "permitted to exercise their sound discretion in deciding which of the two prongs of the qualified immunity analysis should be addressed first in light of the circumstances in the particular case at hand." 555 U.S. at 236.

## 1. Properly Construed, Plaintiffs' Fourth Amendment Claim Is for Malicious Prosecution.

This Court has recognized two potential causes of action under § 1983 arising from alleged violations of the Fourth Amendment's prohibition on unreasonable seizures. *See Brooks v. Winston–Salem*, 85 F.3d 178, 181-82 (4th Cir. 1996). First, a "false arrest" or "false imprisonment" action may be brought based on a claim that "a warrantless arrest or imprisonment was not supported by probable cause." *Brooks*, 85 F.3d at 181; *see Wallace v. Kato*, 549 U.S. 384, 389 (2007) (noting that "[t]he sort of unlawful detention remediable by the tort of false

26

imprisonment is detention *without legal process*").  Such a claim, however, "may be considered only when no arrest warrant has been obtained." *Porterfield v. Lott*, 156 F.3d 563, 568 (4th Cir. 1998).

By contrast, when an arrest is made pursuant to a facially valid warrant, a plaintiff may pursue a claim of malicious prosecution, which requires the plaintiff to prove that the defendant "(1) caused (2) a seizure of the plaintiff pursuant to legal process unsupported by probable cause, and (3) criminal proceedings terminated in plaintiff's favor." *Chalmers*, 703 F.3d at 647.  Thus, "[t]he distinction between malicious prosecution and false arrest . . . is whether the arrest was made pursuant to a warrant." *Dorn v. Town of Prosperity*, 375 F. App'x 284, 286 (4th Cir. 2010).

The district court determined (J.A. 266), and plaintiffs acknowledge (J.A. 204), that they were arrested pursuant to warrants, and although they contend that the warrants were not issued based on probable cause, they do not contend that the warrants themselves were facially invalid.  Therefore, their Fourth Amendment claims are properly construed as claims of malicious prosecution.

Plaintiffs base their malicious prosecution claims on allegations that Ms. Mosby and Major Cogen filed applications that contained "materially false statements and omitted material facts," and that they "knew . . . that no probable cause existed" to believe that plaintiffs had "committed any crime." (J.A. 181, 182-

183.)    For example, plaintiffs Nero and Miller challenge the statement in the applications that the knife found on Gray "was lawful under Maryland law," (J.A. 131) alleging that the knife was "illegal under . . . the Baltimore City Code," (J.A. 212), thus providing "probable cause to effectuate Mr. Gray's arrest." (J.A. 221.) Plaintiffs Nero and Miller also claim that the allegation that their failure to secure Gray with a seat belt was "'contrary to a [Baltimore Police Department] General Order,' did not provide probable cause that a crime had been committed" because such a general order did not impose any legal duty on them and violation of such an order "does not constitute a violation of criminal law." (J.A. 221.) They further claim that the order was issued "only days before the incident," that it "was disseminated to officers by email," and that there was "[n]o evidence . . . that [they] had read the email" or were otherwise aware of the order. (J.A. 221). Further, as noted above, plaintiffs White and Porter allege that the application "omitted" that a certain eyewitness had observed Gray to be conscious and not in distress. (J.A. 180-81).

To succeed on a "false affidavit" malicious prosecution claim, a plaintiff must satisfy both elements of a two-prong test. First, the plaintiff must prove that a law enforcement officer "deliberately or with a 'reckless disregard for the truth' made material false statements in his affidavit . . . or omitted from that affidavit 'material facts with the intent to make, or with reckless disregard of whether they

28

thereby made, the affidavit misleading.'" *Miller,* 475 F.3d at 626 (quoting *Franks,* 438 U.S. at 171, and *U.S. v. Colkley*, 899 F.2d 297, 300 (4th Cir. 1990)). "Reckless disregard" means that an officer provided information "with a high degree of awareness of [its] probable falsity," *Miller*, 475 F.3d at 628, such that the officer "must have entertained serious doubts as to the truth of his statements or had obvious reasons to doubt the accuracy of the information he reported." *Id.* (quotations omitted). With regard to omissions, an officer acts with reckless disregard if he "fail[s] to inform the judicial officer of facts [the officer] knew would negate probable cause." *Id.* (citation omitted). However, "[a] plaintiff's 'allegations of negligence or innocent mistake' by a police officer will *not* provide a basis for a Fourth Amendment violation." *Miller*, 475 F.3d at 627 (quoting *Franks,* 438 U.S. at 171).

Second, the plaintiff must demonstrate that the alleged "false statements or omissions" are "'material,' that is, 'necessary to a [neutral and disinterested magistrate's] finding of probable cause.'" *Miller*, 475 F.3d at 628 (quoting *Franks*, 438 U.S. at 155–56) (brackets in original). The test for materiality is whether an affidavit that does not contain the "offending inaccuracies" and includes "the facts recklessly omitted" would "establish probable cause." *Miller*, 475 F.3d at 628.

This Court has cautioned that law enforcement officers "cannot be expected to include in an affidavit every piece of information gathered in the course of an investigation," *Colkley*, 899 F.2d at 300, and that they "are not required to include every piece of exculpatory information in affidavits," *Chalmers,* 703 F.3d at 9. *See Colkley*, 899 F.2d at 300-01 (no finding of intent to mislead where officer seeking arrest warrant omitted from affidavit that none of the six eyewitnesses were able to identify defendant out of a photo lineup); *Simmons v. Poe*, 47 F.3d 1370, 1383-84 (4th Cir. 1995) (same result where officer included in his affidavit for search warrant only the "profile factors" that were consistent with the suspect and omitted several profile factors that were not, as well as fact that victim initially stated attacker was of a different race than suspect). Nor are "[r]easonable law enforcement officers . . . required to 'exhaust every potentially exculpatory lead or resolve every doubt about a suspect's guilt before probable cause is established.'" *Wadkins*, 214 F.3d at 541 (quoting *Torchinsky v. Siwinski*, 942 F.2d 257, 264 (4th Cir. 1991)).

Probable cause "exists where the facts and circumstances within [the officer's] knowledge and of which [the officer] had reasonably trustworthy information are sufficient in themselves to warrant a [person] of reasonable caution in the belief that an offense has been or is being committed by the person to be arrested." *Clipper v. Takoma Park, Md.*, 876 F.2d 17, 19 (4th Cir. 1989) (citations

and quotations omitted). "[T]he substance of all the definitions of probable cause is a reasonable ground for belief of guilt," *Maryland v. Pringle*, 540 U.S. 366, 371 (2003) (quotation omitted), which is satisfied upon "the *probability*, and not a *prima facie* showing, of criminal activity. . . ." *Illinois v. Gates*, 462 U.S. 213, 235 (1983) (quotation omitted) (emphasis added).

### 2. Plaintiffs Do Not Plausibly Allege that State's Attorney Mosby Violated Their Clearly Established Rights Under the Fourth Amendment.

When properly viewed as a malicious prosection claim, plaintiffs' allegations fail to state any violation of the Fourth Amendment against State's Attorney Mosby. First, many of the purported "materially false statements" identified by plaintiffs are legal conclusions that this Court has never held to be the proper basis of a constitutional malicious prosecution claim. For example, plaintiffs do not contest the accuracy of the statement in the application that the knife recovered from Gray "was not a switchblade." (J.A. 218). Instead, they challenge the assertion that the knife was "lawful under Maryland law," and thus characterize as "false" the statement in the application that Nero and Miller "failed to establish probable cause for Mr. Gray's arrest[,] as no crime had been committed by Mr. Gray." (J.A. 43, 218.)

Similarly, plaintiffs do not dispute the factual assertion in the application that they failed to secure Gray with a seat belt after loading him into the

transportation wagon, in contravention of a Baltimore Police Department "General Order." (J.A. 221.) Instead they contend that the order "does not impose a legal duty on police officers" punishable through Maryland's criminal law. (J.A. 221.) Such allegations fail because a law enforcement officer's or prosecutor's assertion that certain unchallenged facts demonstrate a violation of the criminal law, like any other opinion regarding the legal significance or meaning of evidence, does not constitute a "false statement" within the meaning of the rule announced in *Franks* and applied by this Court in *Chalmers* and other cases.

Even if the statements in the applications regarding the legal consequences of the undisputed facts could be properly characterized as factual statements within the false affidavit rule, Plaintiffs have not alleged any facts demonstrating that they were false, or made "with a high degree of awareness of . . . probable falsity." *Miller*, 475 F.3d at 628 (internal quotation omitted). On the contrary, under Maryland law, the knife Gray possessed *was* lawful. The Criminal Law article of the Annotated Code of Maryland enumerates the types of weapons that are illegal to carry concealed on one's person, and that list does not include "a spring-assisted knife." Md. Code Ann., Crim. Law § 4-101(a) (LexisNexis 2012 Repl. Vol.). Likewise, the Baltimore City Code, by its express terms and contrary to plaintiffs' claims, does *not* prohibit such knives. *See* Baltimore, Md., Code Art. 19 § 59-22(b) (2017) ("No person may sell carry, or possess any knife with an

*automatic spring* or other device for opening or closing the blade, *commonly known as a switchblade knife*.") (emphasis added).[13]   Therefore, to attribute any level of plausible falsity to statements describing the legality of the knife is erroneous.

Plaintiffs are also wrong to allege that their failure to comply with the "General Order" requiring the seat-belting of passengers in police transportation vans could not be the basis of criminal charges against them.   In Maryland, a public official, including a police officer, may be charged with the misdemeanor of "misconduct in office" by "nonfeasance" if the official "omit[s] to do an act which is required by the duties of the office."   *Duncan v. State*, 384 A.2d 456, 458 (Md. 1978).   Plaintiffs do not dispute that the General Order requiring the seat belting of passengers had been issued, and do not claim that they seat belted Gray.   Instead, they claim that they did not know about the order because of its recency and delivery by email.   (J.A. 221.)   These claims do not even approach the law's

---

[13] *See* David B. Kopel, et al., *Knives and the Second Amendment*, 47 U. MICH. J. L. REFORM 167 (2013).   An "assisted opening" knife is one in which the user's thumb pushes on an indentation or opening in the handle, and a spring then assists in opening the blade.   Assisted opening knives are "legally unrestricted under federal law and most state laws."   *Id.*   A "switchblade," by contrast, has a "button in the handle, and when the button is pushed, a spring then pushes the blade open automatically."   *Id.*   Switchblades are a type of "automatic knife," *i.e.*, one that is "biased towards opening via a spring," and "some type of latch or lock must keep the blade retained in the handle until needed."   *Id.*

requirement that plaintiffs allege facts showing that Ms. Mosby made "false statements" with "reckless disregard" for the truth. *Miller*, 475 F.3d at 628.

Plaintiffs fare no better in their attempts to satisfy the *Franks* test by pointing to alleged omissions in the Application. Those attempts focus largely on allegations that at various points during the ride from the scene of the arrest to the Western District Police station, during which the vehicle made numerous stops, other witnesses allegedly reported that Gray was "conscious," "banging his head against the wall," and "not . . . in any medical distress." (J.A. 180). Indisputably, however, when Gray arrived at the Western District, he was "*un*responsive" and in need of "emergency assistance." (J.A. 174) (emphasis added). During the entire ride, he was solely in police custody, and plaintiffs do not contend that any other arrestee in the van or other individual was responsible for causing his injuries. Moreover, contrary to plaintiffs' apparent belief, the fact that Gray was "banging his head against the against the wall" of the vehicle is not exculpatory evidence. If anything, it indicates that Gray was in significant distress, and needed additional assistance that plaintiffs failed to provide. And even if it *were* exculpatory, its omission poses no constitutional violation, because, as noted, *Franks* does not require that all such evidence be included in an affidavit, as that requirement "would severely disrupt the warrant process." *Colkley*, 899 F.2d at 302. These omissions thus show no "design[]" or "intent" to mislead on the part of Ms.

Mosby. *See United States v. Tate*, 524 F.3d 449, 455 (4th Cir. 2008).

Plaintiffs' allegations also fail the materiality test, the second prong of a malicious prosecution claim under the Fourth Amendment. When a plaintiff alleges that an affidavit omits material facts, the plaintiff must establish that without such omissions, there would have been no probable cause. *See Miller*, 475 F.3d at 632. Plaintiffs cannot do so. First, even if the applications had stated, as plaintiffs suggest they should have, that the knife found on Gray was illegal under the Baltimore City Code, this statement would have been legally irrelevant because it was legally incorrect, as the knife was not illegal under either the City Code or the Code of Maryland. Thus, the inclusion of such a statement would not have negated the probability that the officers had committed a crime by illegally arresting Gray for possessing the knife. Moreover, as noted previously, plaintiffs overlook the crucial and undisputed fact that regardless of the statements of witnesses regarding Gray's condition at some points during the ride to the Western District, when he arrived there he was unconscious and urgently in need of medical attention. These facts, coupled with the additional undisputed facts that plaintiffs failed to secure Gray with a seatbelt when he was loaded into the transport wagon, and that the medical examiner ruled Gray's death a homicide, amply satisfied the probable cause requirement.

State's Attorney Mosby is entitled to qualified immunity for the additional reason that she had no "fair notice" that she engaged in conduct that "was unlawful." *Brosseau v. Haugen*, 543 U.S. 194, 198 (2004) (per curiam). Public officials "'are not liable for bad guesses in gray areas; they are liable for transgressing bright lines.'" *Springmen*, 122 F.3d at 214 (quoting *Maciariello v. Sumner*, 973 F.2d 295, 298 (4th Cir. 1992)). In this case, plaintiffs' constitutional claims rest in significant part on their contention that the knife found on Gray was illegal, and on their argument that their failure to comply with the seat belt order could not constitute a violation of the criminal law. Even if Ms. Mosby were incorrect in her legal conclusions on these issues, "the most that can be said is that she made a mistake traceable to unsettled law," *Springmen*, 122 F.3d at 214 (quotation omitted), which is "precisely the sort of official action that qualified immunity shields from liability." *Id.* Moreover, "[t]he decision of a Maryland judicial officer to issue the requested Statement of Charges in this case supports the reasonableness of" her assessment of Maryland law. *Id.*

That a grand jury returned indictments against all of the plaintiffs provides further evidence that Ms. Mosby "did not violate clearly established law." *Pearson*, 555 U.S. at 243. Indeed, because "constitutional torts, like their common law brethren, require a demonstration of both but-for and proximate causation," *Chalmers*, 703 F.3d at 636, the indictment of plaintiffs broke any chain of

36

causation that might have existed between Ms. Mosby's alleged violations of plaintiffs' constitutional rights and their purported injuries. *Id. See Durham v. Horner*, 690 F.3d 183, 189-90 (4th Cir. 2012). Although plaintiffs allege that the evidence presented by the prosecutors to the grand jury "was incomplete, misleading, biased and false" (J.A. 223), they allege no concrete facts to support those allegations, which fail to state any plausible claim for relief. Indeed, those claims are themselves barred by Ms. Mosby's absolute immunity. Accordingly, for these additional reasons, the plaintiffs' claims were barred by Ms. Mosby's immunity from suit.

### C.    State's Attorney Mosby Enjoys Statutory Immunity as to All State Law Claims.

In addition to enjoying absolute immunity from plaintiffs' state law malicious prosecution claims, State's Attorney Mosby enjoys statutory immunity from all of plaintiffs' state claims because plaintiffs failed to plausibly allege facts demonstrating that she acted with either actual malice or gross negligence when her Office initiated the charges against plaintiffs and when she subsequently notified the general public of the same. (J.A. 301-03.)

Ms. Mosby's statutory immunity is derived from the Maryland Tort Claims Act ("MTCA"), Md. Code Ann., State Gov't §§ 12-101 – 12-110 (LexisNexis 2014, 2016 Supp.), which confers immunity on "State personnel." The MTCA, by incorporating § 5-522(b) of the Courts and Judicial Proceedings Article, State

Gov't § 12-105, provides that "State personnel" may not be sued in any action predicated on any "tortious act or omission that is within the scope of [their] public duties" and is "made without malice or gross negligence."  Md. Code Ann., Cts. & Jud. Proc. § 5-522(b) (LexisNexis 2016 Supp.).  This statutory immunity extends not only to simple negligence claims, but also to "intentional torts and constitutional torts."  *Lee v. Cline*, 863 A.2d 297, 310 (Md. 2004).

State's Attorney Mosby is "State personnel" for purposes of the MTCA.  Md. Code Ann., State Gov't § 12-101(a)(8) (LexisNexis 2016 Supp.).  Further, the conduct in which she is alleged to have generally engaged – initiating criminal charges and conducting a press conference to advise the public of those charges – clearly is activity within the scope of her public duties.[14]  Thus, unless plaintiffs alleged sufficient facts from which a plausible inference of malice or gross negligence may be drawn, State's Attorney Mosby is immune from plaintiffs' state law claims.

---

[14]    The phrase "within the scope of public duties" "is co-extensive with the common law concept of scope of employment under the doctrine of *respondeat superior*."  *Larsen v. Chinwuba*, 832 A.2d 193, 200 (Md. 2003) (citing  *Sawyer v. Humphries*, 587 A.2d 467, 470 (Md. 1991) (internal quotations omitted)).  The key question is therefore whether the employee's tortious acts "were in furtherance of the employer's business and were 'authorized' by the employer."  *Larsen*, 832 A.2d at 200 (quoting *Sawyer*, 587 A.2d at 470).

Plaintiffs failed to do so. "[T]he malice necessary to defeat immunity under section 5-522 is what is often referred to as 'actual malice.'" *Young v. City of Mount Ranier*, 238 F.3d 567, 578 (4th Cir. 2001) (affirming dismissal of complaint as to Maryland State personnel where complaint did not sufficiently allege facts to support an inference of malice or gross negligence) (quoting *Shoemaker v. Smith*, 725 A.2d 549, 560 (Md. 1999)). To establish actual malice, a plaintiff must demonstrate that the defendant "intentionally performed an act without legal justification or excuse, but with an evil or rancorous motive influenced by hate, the purpose being to deliberately and willfully injure the plaintiff." *Thacker v. City of Hyattsville*, 762 A.2d 172, 189 (Md. App. 2000) (quoting *Shoemaker*, 725 A.2d at 560); *see Newell v. Runnells*, 967 A.2d 729, 763 (Md. 2009) ("In the context of assessing immunity under the MTCA, malice is defined as behavior 'characterized by evil or wrongful motive, intent to injure, knowing and deliberate wrongdoing, ill-will or fraud.'") (quoting *Barbre v. Pope*, 935 A.2d 699, 714 (Md. 2007), and *Lee,* 863 A.2d at 311). A plaintiff may not rely on general allegations of actual malice, as "[m]erely asserting that an act was done maliciously, or without just cause, or illegally, or with wanton disregard, or recklessly, or for improper motive does not suffice." *Elliott v. Kupferman*, 473 A.2d 960, 969 (Md. App. 1984). Thus, "[t]o overcome a motion raising governmental immunity, the plaintiff must

allege with some clarity and precision those facts which make the act malicious." *Id.*

A plaintiff faces a similarly demanding standard for a claim of gross negligence. *Young*, 238 F.3d at 578. Gross negligence is "'an intentional failure to perform a manifest duty in reckless disregard of the consequences as affecting the life or property of another, and also implies a thoughtless disregard of the consequences without the exertion of any effort to avoid them'"; that is, "'a wrongdoer is guilty of gross negligence or acts wantonly and willfully only when he inflicts injury intentionally or is so utterly indifferent to the rights of others that he acts as if such rights did not exist.'" *Barbre*, 935 A.2d at 717 (quoting *Liscombe v. Potomac Edison Co.*, 495 A.2d 838, 846 (Md. 1985)). "[C]onclusory allegations of gross negligence [a]re not enough to bring [a] claim outside of the immunity and non-liability provisions of the MTCA." *Id.* "[S]pecificity is required." *Wells v. State*, 642 A.2d 879, 884 (Md. App. 1994) (citing *Foor v. Juvenile Servs. Admin.*, 552 A.2d 947, 956 (Md. App. 1989)). "It is not good enough simply to parrot the word 'gross': a plaintiff 'must point to specific evidence that raises an inference that the defendant's actions were improperly motivated.'" *Brooks v. Jenkins*, 104 A.3d 899, 909 (Md. App. 2014) (quoting *Chinwuba v. Larsen,* 790 A.2d 83, 115 (Md. App. 2002), *rev'd in part on other grounds,* 832 A.2d 193 (Md. 2003)).

Plaintiffs do not allege any facts from which a reasonable factfinder could draw a plausible inference that State's Attorney Mosby acted with either actual malice or gross negligence. Instead, plaintiffs offer only "'labels and conclusions'" and "'naked assertions'" that cannot withstand a motion to dismiss. *Iqbal*, 556 U.S. at 678 (quoting *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 555, 557) (2007)).

For instance, plaintiffs assert that State's Attorney Mosby "knew, prior to the filing of the Application for Statement of Charges that no probable cause existed that [plaintiffs] had committed any crime" (J.A. 222), yet actual malice may not be "inferred solely from the absence of probable cause," *DiPino v. Davis*, 729 A.2d 354, 374 (Md. 1999). Similarly, plaintiffs assert, without *any* factual support, that State's Attorney Mosby's conduct was "in furtherance of [her] own personal interests and political agendas." (J.A. 223.) However, "[b]ald assertions and conclusory statements regarding an unsavory motive, unsupported by any specific factual detail, are not sufficient to raise an inference of malice, or to withstand a motion to dismiss." *Chinwuba v. Larsen*, 790 A.2d at 116 (finding defamation plaintiff "did not allege or point to any specific facts that would support his bald allegations of personal animus, political gain, or racial bias").

Nor can either malice or gross negligence plausibly be inferred from Ms. Mosby's statements at the press conference. At that event, prosecutor Mosby

(i) recited, *verbatim* and without embellishment, the contents of the criminal charging documents; (ii) listed the resulting criminal charges against each plaintiff; (iii) advised the public of the presumption of plaintiffs' innocence; and (iv) provided general statements regarding the underlying investigations, the judicial process, and the need for peace in the City of Baltimore. (J.A 29-34.) Such statements are wholly consistent with Maryland and national guidelines regarding the kind of permissible public statements that prosecutors may make.

The applicable Maryland ethical rules are set forth in Maryland Rule 19-303.6 ("Trial Publicity"), as supplemented by subsection (e) of Rule 19-303.8 ("Special Responsibilities of a Prosecutor"). Those Rules, while generally prohibiting "extrajudicial comments that have a substantial likelihood of heightening public condemnation of the accused," nevertheless allow prosecutors to make "statements that are necessary to inform the public of the nature and extent of the prosecutor's action and that serve a legitimate law enforcement purpose . . . ." Rule 19-303.8(e). Such statements may include, but are not limited to, the "offense" and "the identity of the persons involved"; "information contained in a public record"; "that an investigation of a matter is in progress;" "the scheduling or result of any step in litigation"; and "the identity of investigating and arresting

officers or agencies and the length of the investigation."  Rule 19-303.6(b)(1) - (4), (7)(A) & (D).[15]

Similarly, the National District Attorneys Association instructs its members, in § 2-14.3 of its *National Prosecution Standards* (3d ed. 2009), that prior to a criminal trial, it is permissible for a prosecutor to publicly comment on such things as the name of the accused, the "substance or text of the charge," and the "existence of probable cause to believe that the accused committed the offense charged."  And the United States Department of Justice, in § 1-7.520 of its *U.S. Attorneys' Manual*, allows federal prosecutor to make public "in any criminal case in which charges have been brought," among other things, "[t]he substance of the charge, limited to that contained in the complaint, indictment, information, or other public documents."  State's Attorney's Mosby's public statements advising of "the existence of probable cause" and stating "the substance or text of the charges," therefore, were appropriate under all of these guidelines,[16] and they cannot serve as the basis to infer actual malice or gross negligence on her part.

---

[15]    As reflected in Comment 1 to Rule 19-303.6, these standards seek to strike a balance between numerous competing interests, such as a defendant's "right to a fair trial" versus the "vital social interests served by the free dissemination of information about events having legal consequences and about legal proceedings themselves."

[16] The Maryland Public Information Act implicitly recognizes this as well in expressly recognizing that limits on disclosure "may not be construed to prohibit" a State's Attorney from releasing "the charging document on which an unserved

In rejecting Ms. Mosby's statutory immunity defense to plaintiffs' Article 26 and malicious prosecution claims, the district court agreed that plaintiffs did not sufficiently allege "that either [d]efendant had actual personal malice toward any plaintiff." (J.A. 275; *see also* J.A. 303.) However, the court concluded that plaintiffs "presented a plausible claim that [d]efendants acted with utter indifference to [p]laintiffs' rights to be free from unreasonable seizure and deprivations of liberty, i.e., with gross negligence." (J.A. 303.) But the conduct that serves as the basis for this finding is the mere initiation of the criminal proceedings themselves, which is conduct fundamentally related to a prosecutor's advocacy function. Facially, then, such conduct is protected by absolute prosecutorial immunity, and so it alone cannot serve as a basis to conclude that prosecutor Mosby "intentional[ly] fail[ed] to perform a manifest duty in reckless disregard of the consequences as affecting the life or property of another," or possessed a "thoughtless disregard of the consequences without the exertion of any effort to avoid them."[17] *Cooper v. Rodriguez*, 118 A.3d 829, 845-46 (Md. 2015) (quoting *Barbre*, 935 A.2d at 717).

---

arrest warrant is based." Md. Code Ann., Gen. Prov. § 4-316(a) & (e)(2) (LexisNexis 2014).

[17] Notably, after the filing of the applications for statements of charges, probable cause to support the charges was found *repeatedly* by other persons and entities within the criminal justice system, including the trial judge.

The district court also erred in failing to reach any determination with respect to whether Ms. Mosby has statutory immunity from plaintiffs' defamation/invasion of privacy claims. (J.A. 301-03.) Because there was no finding that would support denying Ms. Mosby's statutory immunity from those claims, the district court should have dismissed them. Even so, had the district court concluded that the complaint *did* allege facts demonstrating that Ms. Mosby acted with malice or gross negligence, such a conclusion would have been erroneous. The complaints contain no facts or plausible allegations that in doing what State and federal prosecutors do on a routine basis – notifying the general public of the filing of criminal charges or indictments – the State's Attorney acted with either malice or gross negligence.

Because plaintiffs did not advance any facts from which a plausible inference of actual malice or gross negligence can be drawn, State's Attorney Mosby was immune from suit in relation to all of plaintiffs' state law claims. The district court's finding to the contrary is in error.

## III. THE COMPLAINTS FAIL TO STATE PLAUSIBLE CLAIMS OF DEFAMATION AND INVASION OF PRIVACY/FALSE LIGHT.

Should this Court conclude that she is not entitled to statutory immunity with respect to plaintiffs' state law claims, State's Attorney Mosby respectfully requests that the Court exercise its pendent jurisdiction over the district court's ruling on the sufficiency of plaintiffs' defamation and invasion of privacy/false

45

light claims, inasmuch as that assessment, as described below, is "'so interconnected with immediately appealable issues that [it] warrant[s] concurrent review.'" *Evans*, 578 F.App'x at 231-32 (quoting *Rux*, 461 F.3d at 475).

"[U]nder Maryland law, 'regardless of whether a declaration is styled as a defamation action or an invasion of privacy action, the same considerations and legal standards apply.'" *AIDS Counseling and Testing Ctrs. v. Group W Television, Inc.*, 903 F.2d 1000, 1004 n.1 (4th Cir. 1990) (quoting *Phillips v. Washington Magazine, Inc.*, 472 A.2d 98, 101 n.1 (Md. App. 1984)). In each case, "a plaintiff must allege specific facts establishing four elements to the satisfaction of the fact-finder:  (1) that the defendant made a defamatory statement to a third person, (2) that the statement was false, (3) that the defendant was legally at fault in making the statement, and (4) that the plaintiff thereby suffered harm." *Piscatelli v. Van Smith*, 35 A.3d 1140, 1147 (Md. 2012) (quoting *Indep. Newspapers, Inc. v. Brodie,* 966 A.2d 432, 438 (Md. 2009)).

"A defamatory statement is one which tends to expose a person to public scorn, hatred, contempt, or ridicule, thereby discouraging others in the community from having a good opinion of, or from associating or dealing with, that person." *Batson v. Shiflett*, 602 A.2d 1191, 1210 (Md. 1992). Therefore, "[w]ords that falsely impute criminal conduct to a plaintiff are defamatory." *Smith v. Danielczyk*, 928 A.2d 795, 805 (Md. 2007). Words are also false for defamation

purposes if they are "not substantially correct." *Piscatelli*, 35 A.3d at 1147 (quoting *Batson*, 602 A.2d 1213).

### A.   Plaintiffs Do Not Allege that State's Attorney Mosby Possessed the Malice Necessary to Support Their Claims.

When a public official sues for defamation, he or she becomes subject to the heightened burden established by the Supreme Court in *New York Times Co. v. Sullivan*, 376 U.S. 254, 279-80 (1964), which "prohibits a public official from recovering damages for a defamatory falsehood relating to his official conduct unless he proves that the statement was made with 'actual malice'—that is, with knowledge that it was false or with reckless disregard of whether it was false or not." In Maryland, "police officers, from patrol officers to chiefs, are regarded for *New York Times* purposes as public officials." *Smith*, 928 A.2d at 805. Thus, a police officer who sues for defamation must be able to "prove, by clear and convincing evidence, that [a defendant] acted with what has been termed 'Constitutional malice.'" *Id.* *See Batson*, 602 A.2d at 1210 (applying same standard in defamation claim against public figure).

"The actual malice standard is subjective – it rests on the defendant's state of mind at the time of publication." *Batson*, 602 A.2d at 1213. In explaining what satisfies the requisite proof of "reckless disregard," the Supreme Court has "emphasized the necessity for a showing that a false publication was made with a 'high degree of awareness of . . . probable falsity.'" *St. Amant v. Thompson*, 390

47

U.S. 727, 731 (1968) (quoting *Garrison v. State of Louisiana*, 379 U.S. 64, 74 (1964)).  In this context, reckless conduct is not judged by a "reasonably prudent man" standard, but requires "sufficient evidence to permit the conclusion that the defendant in fact entertained serious doubts as to the truth of his publication."  *St. Amant*, 390 U.S. at 731.  Thus, constitutional malice "cannot be established merely by showing that the publication was erroneous, derogatory or untrue, or that the publisher acted

- out of ill will, hatred or a desire to injure the official,
- negligently,
- in reliance on the unverified statement of a third party without personal knowledge, or
- without undertaking the investigation that would have been made by a reasonably prudent person."

*Batson*, 602 A.2d at 1213 (quoting *Capital-Gazette Newspapers v. Stack*, 445 A.2d 1038, 1044 (Md. 1982)).

Plaintiffs do not allege facts from which one can plausibly infer that State's Attorney Mosby possessed constitutional malice when she publicly announced criminal charges against the public official plaintiffs.  Plaintiffs predicate their claims on State's Attorney Mosby's mere recitation of sworn statements contained in the criminal charging documents executed by Major Cogen.  Although plaintiffs assert the statements are incorrect, it is indisputable that they are contained in absolutely privileged public court documents that any Maryland prosecutor could

have ethically disclosed to the public at the time.  *See* Md. Rule 19-303.6(b)(2).[18]

The district court, for its part, appears to have inferred constitutional malice from State's Attorney Mosby's awareness of the materials relating to the underlying investigations by both her Office and the police department (J.A. 277-81), but a prosecutor's ordinary knowledge of such materials, without more, cannot serve as the basis for such an inference, especially where, as here, the charges against plaintiffs survived rounds of judicial scrutiny.[19]  Thus, there are no alleged facts from which one can reasonably infer a plausible claim that State's Attorney Mosby had "serious doubts," or had "a 'high degree of awareness of" the charges' "probable falsity.'"  *St. Amant*, 390 U.S. at 731.  The public official plaintiffs, therefore, fail to state plausible defamation and invasion of privacy-false light claims against State's Attorney Mosby.

### B.    State's Attorney Mosby's Statements Are Privileged and, Therefore, Cannot Serve as a Basis for Plaintiffs' Claims.

Plaintiffs' claims are further barred by a number of applicable qualified and conditional privileges.  "An absolute or qualified privilege defeats a claim of

---

[18]   Major Cogen's sworn statements were absolutely privileged because they were "statements made . . . in the course of judicial proceedings."  *Offen v. Brenner*, 935 A.2d 719, 724 (Md. 2007) (absolute privilege encompasses utterances "contained in pleadings, affidavits, or other documents directly related to the case," as well as "statements that serve to initiate judicial proceedings").

[19]   To draw a plausible inference of constitutional malice in this way would essentially permit a criminal defendant's collateral attack on a prosecutor's absolutely immune charging decision.

defamation, if the defendant did not abuse the privilege." *Piscatelli*, 35 A.3d at 1147. *See Bagwell v. Peninsula Reg'l Med. Ctr.*, 665 A.2d 297, 319 (Md. App. 1995) (defendant in a false light claim is entitled to judgment "where the statement is protected by a qualified privilege"). "A common law conditional privilege arises from the principle that a defendant may not be held liable for an otherwise provable defamatory statement if publication of the statement advances social interests that outweigh a plaintiff's reputational interest." *Seley-Radtke v. Hosmane*, 149 A.3d 573, 575 (Md. 2016). The existence of such a "privilege is a question of law" as to which the "defendant has the burden of proof." *Id.* at 576.

The most obviously applicable privilege to plaintiffs' claims is that which is derived from the public official immunity that Ms. Mosby enjoys under Maryland law. "A governmental representative is entitled to public official immunity under the common law when he or she is acting as a public official, when the tortious conduct occurred while that person was performing discretionary rather than ministerial acts, and when the representative acted without malice." *Livesay v. Baltimore Cnty.*, 862 A.2d 33, 39 (Md. 2004). The immunity "is generally applicable only in negligence actions and defamation actions based on allegedly *negligent* conduct." *Smith,* 928 A.2d at 813 (emphasis in original) (quoting *Lee*, 863 A.2d at 305). In the defamation context, the immunity manifests itself as a conditional privilege, whereby a public official "has a qualified privilege to make a

defamatory communication 'required or permitted in the performance of his or her official duties.'" *Id.* at 816; *see Chinwuba*, 790 A.2d at 120-21 ("conditional privilege affords . . . protection for any [defamatory] statements that the [public official] may make in the proper exercise of his or her discretion"); *Carr v. Watkins*, 177 A.2d 841, 845 (Md. 1962) ("immunity is conditioned upon absence of malice . . . and also upon action within the scope of the actor's duties and authority"). Inasmuch as State's Attorney Mosby, as the elected chief public prosecutor of a major American city, has the authority and discretion to communicate with the public regarding her Office's filing of criminal charges, particularly in a matter involving allegations of police misconduct that involved the death of a citizen, the public official privilege attaches to and protects any purportedly defamatory statements allegedly uttered at her press conference.

State's Attorney Mosby's statements are also protected by the "fair comment privilege," which insulates members of the community from liability when they utter "opinions or comments regarding matters of legitimate public interest," such as "the occurrence or prosecution of crimes." *Piscatelli*, 35 A.3d at 1152. "The fair comment privilege protects an opinion so long as 'the facts on which it is based are truly stated or privileged or otherwise known either because the facts are of common knowledge or because, though perhaps unknown to a particular recipient of the communication, they are readily accessible to him.'" *Id.* at 315

51

(quoting 1 Harper and James, *The Law of Torts* § 5.28 (1954)); *see Peroutka v. Streng*, 695 A.2d 1287, 1297 (Md. App. 1997) ("If the facts from which a defendant forms his or her opinion are given or are readily available and those facts cannot be proved false, the defendant is not subject to liability for the opinion").

Ms. Mosby's statements fall within the fair comment privilege. Without question, the filing of charges against plaintiffs constituted a matter of legitimate public interest. *Piscatelli*, 35 A.3d at 1152. In her remarks (J.A. 29-33), State's Attorney Mosby uttered no false statements of fact, and when she offered her legal opinion that there was probable cause to charge the officers with various crimes (J.A. 29), she supported that statement of legal opinion with a *verbatim* reading of the absolutely privileged and public applications (*compare* J.A. 29-32 with 34-38). Therefore, the fair comment privilege also applies to all statements uttered at the press conference, and the district court should not have rejected the privilege merely because State's Attorney Mosby stated that the charges stemmed from an investigation, which the court apparently inferred to mean that there were "non-disclosed, non-public facts" on which the probable cause opinion was based. (J.A. 287-88.)

"[A] plaintiff seeking to rebut [a conditional or qualified] privilege must do so by demonstrating that the defendant made the alleged statement with malice,

defined [in this context] as 'a person's actual knowledge that his or her statement is false, *coupled with* his or her intent to deceive another by means of that statement.'" *Seley-Radtke*, 149 A.3d at 576 (quoting *Piscatelli*, 35 A.3d at 1147-48) (emphasis added). Although "[a]buse of a conditional privilege is usually a question for the fact-finder, . . . a court can decide the question as a matter of law if," as in this case, "the plaintiff fails to allege or prove facts that would support a finding of abuse." *Shirley v. Heckman*, 75 A.3d 421, 427 (Md. App. 2013). Plaintiffs cannot meet this burden. They do not allege facts that plausibly show that the State's Attorney had "actual knowledge" that any of her statements were false when she uttered them, or, for that matter, that she made the statements with the requisite "intent to deceive." *Piscatelli*, 424 Md. at 307. Plaintiffs, therefore, cannot rebut State's Attorney Mosby's assertions of public official or fair comment privilege.

Nor can plaintiffs' claims withstand the prosecutor's assertion of the fair reporting conditional privilege, which "is a qualified privilege to report legal and official proceedings that are, in and of themselves, defamatory, so long as the account is 'fair and substantially accurate.'" *Piscatelli*, 35 A.3d at 1149 (quoting *Chesapeake Publ'g Corp. v. Williams*, 661 A.2d 1169, 1174 (Md. 1995)).[20] "A

---

[20]    "The privilege arises from the public's interest in having access to information about official proceedings and public meetings." *Id.* "While [it]

defendant abuses his or her fair reporting privilege, not upon a showing of actual malice (as with other common law conditional privileges), but when the defendant's account 'fails the test of fairness and accuracy,'" meaning the account is not "substantially correct, impartial, coherent, and bona fide." *Id.* (quoting *Chesapeake Publ'g Corp.*, 661 A.2d at 1175). State's Attorney Mosby's unembellished statements at the press conference, as described herein, are encompassed by the fair reporting privilege. Despite agreeing with this premise, the district court found the privilege unavailable because, in its view, plaintiffs had plausibly asserted the "self-reported statement exception" to the privilege, which arises when the defendant "mak[es] the original defamatory publication himself[,] and then report[s] to other people what he had stated." *Rosenberg*, 616 A.2d at 876. The district court stated that Ms. Mosby "read false statements in the [a]pplication[s] that she had created and knew were false for such purposes as 'appeasing the public and quelling the riots,' getting the benefit of national attention and media coverage, and promoting her political agenda." (J.A. 286.) (Omitting citations.)

---

usually arises in lawsuits involving the press or electronic media, it is not limited to defendants in the news business." *Rosenberg v. Helinski*, 616 A.2d 866, 874 (Md. 1992).

Maryland courts, however, have never applied the exception to a prosecutor's description of the contents of a criminal charging document, which is not surprising inasmuch as recognizing the exception in this context would essentially permit a defendant to sue a prosecutor for damages on the absolutely immune charging decision, through a defamation claim challenging the prosecutor's announcement of the decision.  Under the district court's reasoning, such a claim could arise any time a prosecutor publicly announced the filing of charges against an individual, and the charges ultimately resulted in an acquittal or dismissal of the criminal case.  This is not Maryland law, and the district court thus erred in ruling that plaintiffs had alleged facts sufficient to overcome State's Attorney Mosby's immunity from the defamation claims.

## CONCLUSION

The January 6, 2017 Order of the United States District Court for the District of Maryland, as corrected on January 27, 2017, should be reversed.

Respectfully submitted,

BRIAN E. FROSH
Attorney General of Maryland

KARL A. POTHIER
Assistant Attorney General
120 West Fayette Street, 5th Floor
Baltimore, Maryland  21201
410-230-3135 (telephone)
410-230-3143 (facsimile)
karl.pothier@maryland.gov

MICHAEL O. DOYLE
Assistant Attorney General
300 East Joppa Road – Ste. 1000
Towson, Maryland  21286
410-339-7567
michaelo.doyle@maryland.gov

Attorneys for Appellant

## CERTIFICATE OF COMPLIANCE WITH RULE 32(a)

1.    This brief complies with the type-volume limitations of Fed. R. App. P. 32(a)(7)(B) because this brief contains 12,986 words, excluding the parts of the brief exempted by Fed. R. App. P. 32(a)(7)(B)(iii).

2.    This brief complies with the typeface requirements of Fed. R. App. P. 32(a)(5) and the type style requirements of Fed. R. App. P. 32(a)(6) because this brief has been prepared in a proportionally spaced typeface using Microsoft Word in fourteen point, Times New Roman.

# PERTINENT STATUTES AND REGULATIONS

## Annotated Code of Maryland, Criminal Law (2012 Repl. Vol.)

### § 4-101. Dangerous weapons

(a) Definitions. –

(1) In this section the following words have the meanings indicated.

(2) "Nunchaku" means a device constructed of two pieces of any substance, including wood, metal, or plastic, connected by any chain, rope, leather, or other flexible material not exceeding 24 inches in length.

(3) (i) "Pepper mace" means an aerosol propelled combination of highly disabling irritant pepper-based products.

(ii) "Pepper mace" is also known as oleoresin capsicum (o.c.) spray.

(4) "Star knife" means a device used as a throwing weapon, consisting of several sharp or pointed blades arrayed as radially disposed arms about a central disk.

(5) (i) "Weapon" includes a dirk knife, bowie knife, switchblade knife, star knife, sandclub, metal knuckles, razor, and nunchaku.

 (ii) "Weapon" does not include:

 1. a handgun; or

 2. a penknife without a switchblade.


## Annotated Code of Maryland, Crim. Proc. (2008 Repl. Vol.)

### § 6-104. Motion for judgment of acquittal on ground of insufficient evidence

**(a) Motion after State's evidence. –**

(1) At the close of the evidence for the State, a defendant may move for judgment of acquittal on one or more counts or on one or more degrees of a crime, on the ground that the evidence is insufficient in law to sustain a conviction as to the count or degree.

*    *    *

**Annotated Code of Maryland, Cts. & Jud. Proc. (2013, 2016 Supp.)**

**§ 2-608. Charging documents against law enforcement officers**

\* \* \*

**(c) Application for statement of charges -- Duties of State's Attorney. –**

(1) Upon receiving an application filed in District Court requesting that a statement of charges be filed against a law enforcement officer, emergency services personnel, or an educator, the State's Attorney shall:

(i) Investigate the circumstances of the matter; and

(ii) Make a recommendation to the District Court Commissioner as to whether a statement of charges should be filed against the law enforcement officer, emergency services personnel, or the educator.

(2) If the State's Attorney recommends to a District Court Commissioner that a statement of charges be filed against a law enforcement officer, emergency services personnel, or an educator, the State's Attorney shall also make a recommendation as to whether a summons or warrant should issue.

**(d) Prerequisites to filing.** -- Notwithstanding any other provision of the Code or the Maryland Rules, a statement of charges for an offense allegedly committed in the course of executing the duties of the law enforcement officer, emergency services personnel, or the educator may not be filed against a law enforcement officer, emergency services personnel, or educator until the State's Attorney has investigated the circumstances of the matter and made recommendations to the District Court Commissioner in accordance with subsection (c) of this section.

\* \* \*

**§ 5-522. Immunity -- State and its personnel and units**

\* \* \*

**(b) In general.** -- State personnel, as defined in § 12-101 of the State Government Article, are immune from suit in courts of the State and from liability in tort for a tortious act or omission that is within the scope of the public duties of the State personnel and is made without malice or gross negligence, and for which the State or its units have waived immunity under Title 12, Subtitle 1 of the State Government Article, even if the damages exceed the limits of that waiver.

**Annotated Code of Maryland, Gen. Prov. (2014, 2015 Supp.)**

### § 4-316. Arrest warrants and charging documents

**(a) In general.** -- Except as provided in subsection (d) of this section and subject to subsection (e) of this section, unless otherwise ordered by the court, files and records of the court pertaining to an arrest warrant issued under Maryland Rule 4-212(d)(1) or (2) and the charging document on which the arrest warrant was issued may not be open to inspection until:

(1) the arrest warrant has been served and a return of service has been filed in accordance with Maryland Rule 4-212(g); or

(2) 90 days have elapsed since the arrest warrant was issued.

\* \* \*

**(e) Construction of section.** -- Subsections (a) and (b) of this section may not be construed to prohibit:

\* \* \*

(2) the release of information by a State's Attorney or peace officer concerning an unserved arrest warrant and the charging document on which the arrest warrant was issued;

\* \* \*

**Annotated Code of Maryland, State Gov't  (2014 Repl. Vol., 2015 Supp.)**

### § 12-101. "State personnel" defined; Montgomery County as unit of State government

\* \* \*

**(a) "State personnel" defined.** -- In this subtitle, unless the context clearly requires otherwise, "State personnel" means:

\* \* \*

(8) a State's Attorney of a county or Baltimore City, or an employee of an office of a State's Attorney;

\* \* \*

### § 12-105. Immunity of State personnel

State personnel shall have the immunity from liability described under § 5-522(b) of the Courts and Judicial Proceedings Article.

**Maryland Rules**

### Rule 4-211. Filing of charging document

\*   \*   \*

**(b) Statement of charges.**

**(1) Before any arrest.** Except as otherwise provided by statute, a judicial officer may file a statement of charges in the District Court against a defendant who has not been arrested for that offense upon written application containing an affidavit showing probable cause that the defendant committed the offense charged. If not executed by a peace officer, the affidavit shall be made and signed before a judicial officer.

\*   \*   \*

### Rule 4-324. Motion for judgment of acquittal.

**(a) Generally.** A defendant may move for judgment of acquittal on one or more counts, or on one or more degrees of an offense which by law is divided into degrees, at the close of the evidence offered by the State and, in a jury trial, at the close of all the evidence. The defendant shall state with particularity all reasons why the motion should be granted. No objection to the motion for judgment of acquittal shall be necessary. A defendant does not waive the right to make the motion by introducing evidence during the presentation of the State's case.

**(b) Action by the court.** If the court grants a motion for judgment of acquittal or determines on its own motion that a judgment of acquittal should be granted, it shall enter the judgment or direct the clerk to enter the judgment and to note that it has been entered by direction of the court. The court shall specify each count or degree of an offense to which the judgment of acquittal applies.

**(c) Effect of denial.** A defendant who moves for judgment of acquittal at the close of evidence offered by the State may offer evidence in the event the motion is not granted, without having reserved the right to do so and to the same extent as if the motion had not been made. In so doing, the defendant withdraws the motion.

## Rule 19-303.6. TRIAL PUBLICITY (3.6)

(a) An attorney who is participating or has participated in the investigation or litigation of a matter shall not make an extrajudicial statement that the attorney knows or reasonably should know will be disseminated by means of public communication and will have a substantial likelihood of materially prejudicing an adjudicative proceeding in the matter.

(b) Notwithstanding section (a) of this Rule, an attorney may state:

(1) the claim, offense or defense involved and, except when prohibited by law, the identity of the persons involved;

(2) information contained in a public record;

(3) that an investigation of a matter is in progress;

(4) the scheduling or result of any step in litigation;

(5) a request for assistance in obtaining evidence and information necessary thereto;

(6) a warning of danger concerning the behavior of a person involved, when there is reason to believe that there exists the likelihood of substantial harm to an individual or to the public interest; and

(7) in a criminal case, in addition to subsections (b)(1) through (6) of this Rule:

(A) the identity, residence, occupation and family status of the accused;

(B) if the accused has not been apprehended, information necessary to aid in apprehension of that person;

(C) the fact, time and place of arrest; and

(D) the identity of investigating and arresting officers or agencies and the length of the investigation.

(c) Notwithstanding section (a) of this Rule, an attorney may make a statement that a reasonable attorney would believe is required to protect a client from the substantial undue prejudicial effect of recent publicity not initiated by the attorney or the attorney's client. A statement made pursuant to this section shall be limited to such information as is necessary to mitigate the recent adverse publicity.

(d) No attorney associated in a firm or government agency with an attorney subject to section (a) of this Rule shall make a statement prohibited by section (a) of this Rule.

## Rule 19-303.8. SPECIAL RESPONSIBILITIES OF A PROSECUTOR (3.8)

The prosecutor in a criminal case shall:

(a) refrain from prosecuting a charge that the prosecutor knows is not supported by probable cause;

(b) make reasonable efforts to assure that the accused has been advised of the right to, and the procedure for obtaining, an attorney and has been given reasonable opportunity to obtain an attorney;

(c) not seek to obtain from an unrepresented accused a waiver of important pretrial rights, such as the right to a preliminary hearing;

(d) make timely disclosure to the defense of all evidence or information known to the prosecutor that tends to negate the guilt of the accused or mitigates the offense, and, in connection with sentencing, disclose to the defense and to the tribunal all unprivileged mitigating information known to the prosecutor, except when the prosecutor is relieved of this responsibility by a protective order of the tribunal; and

(e) except for statements that are necessary to inform the public of the nature and extent of the prosecutor's action and that serve a legitimate law enforcement purpose, refrain from making extrajudicial comments that have a substantial likelihood of heightening public condemnation of the accused and exercise reasonable care to prevent an employee or other person under the control of the prosecutor in a criminal case from making an extrajudicial statement that the prosecutor would be prohibited from making under Rule 19-303.6 (3.6) or this Rule.

**Baltimore City Charter & Code (2017), Article 19**

**§59-22. Switch-blade knives**

\*    \*    \*

**(b) Penalties.** Any person violating the provisions of this section, shall, upon conviction thereof, be fined not more than $500 or be imprisoned for not more than 1 year, or both, in the discretion of the court.

**Offices of the United States Attorneys**
**Title 1: Organization and Functions**
**1-7.000 – Media Relations**

### § 1-7.520 – Release of Information in Criminal and Civil Matters – Disclosable Information

Department personnel, subject to specific limitations imposed by law or court rule or order and consistent with the provisions of these guidelines, may make public the following information in any criminal case in which charges have been brought:

The defendant's name, age, residence, employment, marital status, and similar background information;

A.    The substance of the charge, limited to that contained in the complaint, indictment, information, or other public documents;

B.    The identity of the investigating and/or arresting agency and the length and scope of an investigation;

C.    The circumstances immediately surrounding an arrest, including the time and place of arrest, resistance, pursuit, possession and use of weapons, and a description of physical items seized at the time of arrest. Any such disclosures shall not include subjective observations; and

D.    In the interest of furthering law enforcement goals, the public policy significance of a case may be discussed by the appropriate United States Attorney or Assistant Attorney General.

In civil cases, Department personnel may release similar identification material regarding defendants, the concerned government agency or program, a short statement of the claim, and the government's interest.

**National District Attorneys Association**
**National Prosecution Standards, Third Edition**
**Part II. Relations**

**14.**   **Prosecutors and the Media**

\*    \*    \*

**2-14.3 Information Appropriate for Media Dissemination by Prosecutors**

Prior to and during a criminal trial the prosecutor may comment on the following matters:

a. The accused's name, age, residence, occupation, family status, and citizenship;

b. The substance or text of the charge such as the complaint, indictment,

information, and, where appropriate, the identity of the complainant;

c. The existence of probable cause to believe that the accused committed the

offense charged;

d. The identity of the investigating and arresting agency, the length and scope of the investigation, the thoroughness of the investigative procedures, and the diligence and professionalism of the law enforcement personnel in identifying and apprehending the accused;

e. The circumstances immediately surrounding the arrest, including the time and place of arrest, the identity of the arresting officer or agency, resistance, pursuit, possession and use of weapons, and a description of items seized at the time of arrest or pursuant to a search warrant; and

f. Information contained in a public record, the disclosure of which would serve the public interest.

\*    \*    \*

**IN THE UNITED STATES COURT OF APPEALS
FOR THE FOURTH CIRCUIT**

EDWARD MICHAEL NERO, *et al.*,    *

      Plaintiffs-Appellees,    *

      v.    *    No.  17-1166 (L)

MARILYN MOSBY,    *

      Defendant-Appellant.    *

*    *    *    *    *    *    *    *    *    *    *    *    *

**CERTIFICATE OF SERVICE**

I certify that on this 13th day of June, 2017, the Brief of Appellant and Joint Appendix were filed electronically and served on counsel of record for the appellees, Joseph T. Mallon, Jr., and Andrew J. Toland, Attorneys for Appellees Edward Nero and Garrett Miller; Michael E. Glass, Attorney for Appellees Alicia White and William Porter; and David Ellin, and Brandy Peeples, Attorneys for Appellee Brian Rice.

/s/ Karl A. Pothier

_____

Karl A. Pothier