No.  17-1166 (L)

_____

**IN THE UNITED STATES COURT OF APPEALS
FOR THE FOURTH CIRCUIT**

_____

**EDWARD MICHAEL NERO**, *et al.*,

*Plaintiffs-Appellees*,

**v.**

**MARILYN MOSBY**,

*Defendant-Appellant*.

_____

On Appeal from the United States District Court
for the District of Maryland
(Marvin J. Garbis, District Judge)

_____

**JOINT APPENDIX**

_____

JOSEPH T. MALLON, JR.
MALLON AND MCCOOL LLC
300 E. Lombard Street, Ste. 815
Baltimore, Maryland 21202
410-727-7887

ANDREW J. TOLAND
111 South Calvert Street – Ste. 1950
Baltimore, Maryland 21202
410-296-0780

Attorneys for Appellees Edward Nero
    and Garrett Miller

BRIAN E. FROSH
Attorney General of Maryland

KARL A. POTHIER
Assistant Attorney General
120 W. Fayette Street, 5th Floor
Baltimore, Maryland  21201
410-230-3135

MICHAEL O. DOYLE
Assistant Attorney General
300 East Joppa Road – Ste. 1000
Towson, Maryland  21286
410-339-7567

Attorneys for Appellant

June 13, 2017

DAVID ELLIN
LAW OFFICE OF DAVID ELLIN, PC
154 Westminster Pike
Reisterstown, Maryland 21136
410-833-0044

BRANDY A. PEEPLES
LAW OFFICE OF BRANDY A. PEEPLES, PC
47 East All Saints Street
Frederick, Maryland  21701
301-327-9614

Attorneys for Appellee
    Brian Rice


MICHAEL E. GLASS
THE MICHAEL GLASS LAW FIRM
201 N. Charles Street –Ste. 1900
Baltimore, Maryland 21201
410-779-0600

TONY N. GARCIA
BATES & GARCIA
201 N. Charles Street – Ste. 1900
Baltimore, Maryland 21201
410-814-4600

Attorneys for Appellees Alicia White
    and William Porter

# TABLE OF CONTENTS

Page

Docket Report in *Nero, et al. v. Mosby, et al.*
(Civil No. 1:16-cv-01288-MJG) .................................................. J.A. 1

Docket Report in *Rice v. Mosby, et al.* (Civil No. 1:16-cv-01288-MJG) ......... J.A. 11

Docket Report in *White, et al. v. Mosby, et al.*
(Civil No. 1:16-cv-02663-MJG) ............................................. J.A. 19

Letter Order that Pleadings are Deemed to Incorporate the You Tube
Video and Transcript of the 5/1/15 Press Conference
(*Nero*, ECF No. 19; *Rice*, ECF No. 23; *White*, ECF No. 14)
(8/8/16) ......................................................................... J.A. 28

Transcript of 5/1/15 Press Conference (*Nero*, ECF 19-1; *Rice*,
ECF No. 23-1; *White*, ECF No. 14-1) (8/8/16) ..................................... J.A. 29

Exhibits to Defendant's Dispositive Motion in *Nero* (ECF No. 25) (8/19/16)

    Ex. 1 – Records of the District Court of Maryland for Baltimore
    City in *State v. Nero* (ECF No. 25-3) .......................................... J.A. 34
        -   Application for Statement of Charges
        -   Statement of Charges
        -   Arrest Warrant on Charging Document
        -   Defendant Trial Summary

    Ex. 2 – Records of the District Court of Maryland for Baltimore
    City in *State v. Miller* (ECF No. 25-4) ......................................... J.A. 42
        -   Application for Statement of Charges
        -   Statement of Charges
        -   Arrest Warrant on Charging Document
        -   Defendant Trial Summary

    Ex. 3 – Certificate of Death (Nero/Miller ECF No. 25-5) .................... J.A. 51

    Ex. 4 – Records of the Circuit Court for Baltimore City in *State v.*
    *Miller* (ECF No. 25-6) .......................................................... J.A. 52
        -   Indictment
        -   Excerpt from circuit court docket

    Ex. 5 – Records of the Circuit Court for Baltimore City in *State v.*
    *Nero* (ECF No. 25-7) ............................................................ J.A. 58
        -   Indictment

-    Excerpt from circuit court docket
-    Transcript of 5/23/16 verdict

Exhibits to Defendant's Dispositive Motion in *Rice (*ECF No. 25) (8/19/16)

Ex. 1 – Application for Statement of Charges
        (ECF No. 25-3) .................................................................... J.A. 89

Ex. 3 – Statement of Charges (ECF No. 25-5) ..................................... J.A. 94

Ex. 4 – Arrest Warrant (ECF No. 25-6) ................................................. J.A. 96

Ex. 5 – District Court Trial Summary (ECF No. 25-7) ........................ J.A. 97

Ex. 6 – Indictment (ECF No. 25-8) ....................................................... J.A. 98

Ex. 7 – Circuit Court Docket Excerpt (ECF No. 25-9) ...................... J.A. 101

Ex. 8 – Transcript of 7/18/16 Circuit Court Verdict
        (ECF No. 25-10) ................................................................... J.A. 104

Exhibits to Defendant's Dispositive Motion in *White* (ECF No. 22) (8/19/16)

Ex. 1 – Records of the District Court of Maryland for Baltimore
        City in *State v. Porter* (ECF No. 22-3) ................................... J.A. 130
        -    Application for Statement of Charges
        -    Statement of Charges
        -    Arrest Warrant on Charging Documents
        -    Defendant Trial Summary

Ex. 2 – Records of the District Court of Maryland for Baltimore
        City in *State v. White* (ECF No. 22-4) .................................... J.A. 138
        -    Application for Statement of Charges
        -    Statement of Charges
        -    Arrest Warrant on Charging Documents
        -    Defendant Trial Summary

Ex. 4 – Records of the Circuit Court for Baltimore City in *State v.
        Porter* (ECF No. 22-6) ............................................................ J.A. 146
        -    Indictment
        -    Excerpt from circuit court docket

Ex. 5 – Records of the Circuit Court for Baltimore City in *State v.
        White* (ECF No. 22-7) ............................................................. J.A. 154
        -    Indictment
        -    Excerpt from circuit court docket

ii

Procedural Order (*Nero*, ECF No. 27; *Rice*, ECF No. 26; *White*, ECF No. 28) (8/26/16) ............................................................... J.A. 160

Amended Complaint in *White* (ECF No. 31) (9/7/16) .................................. J.A. 164

Amended Complaint in *Nero* (ECF No. 33-1) (9/9/16) ................................ J.A. 209

Amended Complaint in *Rice* (ECF No. 39-2) (9/19/16) ............................... J.A. 239

Letter Order regarding 10/13/16 Hearing (*Nero*, ECF No. 40; *Rice*, ECF No. 44; *White*, ECF No. 47) (10/11/16) ....................................... J.A. 261

Corrected Memorandum and Order regarding Dismissal (*Nero*, ECF No. 54; *Rice*, ECF No. 56; *White*, ECF No. 58) (1/27/17) ......... J.A. 263

Notice of Interlocutory Appeal in *Nero* (ECF No. 57) (2/3/17) .................... J.A. 328

Notice of Interlocutory Appeal in *Rice* (ECF No. 59) (2/3/17) .................... J.A. 330

Notice of Interlocutory Appeal in *White* (ECF No. 61) (2/3/17) .................. J.A. 332

## IN THE UNITED STATES COURT OF APPEALS
## FOR THE FOURTH CIRCUIT

**EDWARD MICHAEL NERO**, *et al.*,　　*

　　　　*Plaintiff-Appellee*,　　　　*

　　v.　　　　　　　　　　　　　　*　　　　No. 17-1166 (L)

**MARILYN MOSBY**,　　　　　　*

　　　　*Defendant-Appellant*.　　*

　　*　*　*　*　*　*　*　*　*　*　*　*　*

### CERTIFICATE OF SERVICE

I certify that on this 13th day of June, 2017, the Joint Appendix was filed electronically and served on counsel of record for the appellees, Joseph T. Mallon, Jr., and Andrew J. Toland, Attorneys for Appellees Edward Nero and Garrett Miller; Michael E. Glass, and Tony N. Garcia, Attorneys for Appellees Alicia White and William Porter; and David Ellin, and Brandy Peeples, Attorneys for Appellee Brian Rice.


/s/
_____
Karl A. Pothier

# U.S. District Court
## District of Maryland (Baltimore)
## CIVIL DOCKET FOR CASE #: 1:16-cv-01288-MJG

Nero et al v. Mosby et al
Assigned to: Judge Marvin J. Garbis
Referred to: Magistrate Judge J. Mark Coulson
Demand: $75,000
Related Cases: 1:16-cv-02663-MJG
              1:16-cv-01304-MJG
Case in other court: Fourth Circuit Court of Appeals, 17-01166
Cause: 42:1983dp Civil Right Denial of Due Process

Date Filed: 04/29/2016
Jury Demand: Plaintiff
Nature of Suit: 440 Civil Rights: Other
Jurisdiction: Federal Question

**Plaintiff**

**Edward Michael Nero**

represented by **Joseph Thomas Mallon , Jr**
Mallon and McCool LLC
300 E Lombard St Ste 815
Baltimore, MD 21202
14107277887
Fax: 14107274770
Email: jmallon@mallonandmccool.com
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*

**Andrew J Toland , III**
Toland Law LLC
P.O. Box 1130
Sparks, MD 21152
4104995656
Email: andytoland@msn.com
*ATTORNEY TO BE NOTICED*

**Plaintiff**

**Garrett Edward Miller**

represented by **Joseph Thomas Mallon , Jr**
(See above for address)
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*

**Andrew J Toland , III**
(See above for address)
*ATTORNEY TO BE NOTICED*

V.

**Consol Plaintiff**

**Alicia White**

represented by **Michael E Glass**
The Michael Glass Law Firm
201 N. Charles St Ste 1900
Baltimore, MD 21201

4107790600
Fax: 4108144604
Email: mglass@michaelglasslaw.com
*ATTORNEY TO BE NOTICED*

**Tony N Garcia**
Bates & Garcia, LLC.
201 N. Charles Street
Suite 1900
Baltimore, MD 21201
4108144600`
Fax: 4108144604
Email: tony@batesgarcia.com
*ATTORNEY TO BE NOTICED*

**Consol Plaintiff**

**William Porter**                    represented by   **Michael E Glass**
(See above for address)
*ATTORNEY TO BE NOTICED*

**Tony N Garcia**
(See above for address)
*ATTORNEY TO BE NOTICED*

**Consol Plaintiff**

**Brian Scott Rice**                  represented by   **Brandy Ann Peeples**
Law Office of Brandy A Peeples PC
47 East All Saints St
Frederick, MD 21701
13013279614
Fax: 18662777137
Email: Brandy@Peeples-Law.com
*ATTORNEY TO BE NOTICED*

**David Ellin**
Law Office of David Ellin PC
154 Westminster Pike
Reisterstown, MD 21136
14108330044
Fax: 14108330442
Email: dellin@ellinlaw.com
*ATTORNEY TO BE NOTICED*

V.

**Defendant**

**Marilyn Mosby**                     represented by   **Ankush Nayar**
Office of the Attorney General of Maryland
200 Saint Paul Pl
Baltimore, MD 21202
14105766300
Fax: 14105767841
Email: anayar@oag.state.md.us

J.A. 000002

*TERMINATED: 02/07/2017*
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*

**Karl Aram Pothier**
State of Maryland Office of the Attorney
General
Department of Juvenile Services
120 West Fayette Street
Baltimore, MD 21201
14102303135
Fax: 14102303143
Email: karl.pothier@maryland.gov
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*

**Elise Marcela Balkin Ice**
Office of the Attorney General of Maryland
120 W. Fayette Street
Baltimore, MD 21201
4102303140
Email: elise.ice@maryland.gov
*ATTORNEY TO BE NOTICED*

**Defendant**

**Major Samuel Cogen**                    represented by  **Jason Robert Foltin**
Baltimore City Law Department
100 N Holliday St Lower Level
Baltimore, MD 21202
14103963297
Fax: 14108371152
Email: jason.foltin@baltimorecity.gov
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*

**Sara Elaine Gross**
Baltimore City Law Department
100 N. Holliday Street, Room LL04
Baltimore, MD 21202
4103963947
Fax: 410-837-1152
Email: sara.gross@baltimorecity.gov
*ATTORNEY TO BE NOTICED*

V.

**Consol Defendant**

**State of Maryland**                    represented by  **Ankush Nayar**
(See above for address)
*ATTORNEY TO BE NOTICED*

**Karl Aram Pothier**

(See above for address)
*ATTORNEY TO BE NOTICED*

| Date Filed | # | Docket Text |
|---|---|---|
| 04/29/2016 | 1 | COMPLAINT against Samuel Cogen, Marilyn Mosby ( Filing fee $ 400 receipt number 14637089125.), filed by Edward Michael Nero, Garrett Edward Miller. (Attachments: # 1 Civil Cover Sheet)(ca2s, Deputy Clerk) (Additional attachment(s) added on 5/3/2016: # 2 Proposed Summons, # 3 Proposed Summons, # 4 Proposed Summons, # 5 Proposed Summons) (ca2s, Deputy Clerk). (Entered: 05/03/2016) |
| 04/29/2016 | 2 | MOTION to Seal Case and Complaint by Garrett Edward Miller, Edward Michael Nero. Responses due by 5/16/2016 (ca2s, Deputy Clerk) (Entered: 05/03/2016) |
| 05/03/2016 | 3 | Summons Issued 21 days as to Samuel Cogen, Marilyn Mosby. (c/emailed) (ca2s, Deputy Clerk) Modified on 5/19/2016 (ca2s, Deputy Clerk). (Entered: 05/03/2016) |
| 05/19/2016 | 4 | MARGINAL ORDER granting 2 Motion to Seal Case. Signed by Judge Marvin J. Garbis on 5/19/2016. (c/s 5/19/2016 nd2s, Deputy Clerk) (Entered: 05/19/2016) |
| 05/19/2016 | 5 | ORDER directing Plaintiffs' counsel to arrange a conference with defense counsel and the Court re: the matter of sealing and scheduling for future proceedings. Signed by Judge Marvin J. Garbis on 5/19/2016. (c/s 5/19/2016 nd2s, Deputy Clerk) (Entered: 05/19/2016) |
| 05/31/2016 | 6 | ORDER directing Plaintiff to arrange a telephone conference regarding this matter with an attorney who will be representing the Defendants to discuss the matter of the sealing of the file in this case. Signed by Judge Marvin J. Garbis on 5/31/2016. (c/s 5/31/16 ca2s, Deputy Clerk) (Entered: 05/31/2016) |
| 06/06/2016 | 7 | ORDER informing parties of intent to unseal case; directing parties to be prepared to discuss the scheduling of further proceedings at the 6/8/2016 conference. Signed by Judge Marvin J. Garbis on 6/6/2016. (c/s 6/6/2016 nd2s, Deputy Clerk) (Entered: 06/06/2016) |
| 06/07/2016 | 8 | ORDER denying 2 Plaintiffs' Motion to Seal Case and Complaint; unsealing case. Signed by Judge Marvin J. Garbis on 6/7/2016. (nd2s, Deputy Clerk) (Entered: 06/07/2016) |
| 06/08/2016 | 9 | NOTICE of Appearance by Ankush Nayar on behalf of Marilyn Mosby (Nayar, Ankush) (Entered: 06/08/2016) |
| 06/08/2016 |  | Telephone Conference Call re: scheduling held on 6/8/2016 before Judge Marvin J. Garbis. (nd2s, Deputy Clerk) (Entered: 06/09/2016) |
| 06/08/2016 | 10 | ORDER setting the date for Defendants to respond to the Complaint to 8/5/2016. Signed by Judge Marvin J. Garbis on 6/8/2016. (nd2s, Deputy Clerk) (Entered: 06/09/2016) |
| 07/07/2016 | 11 | WAIVER OF SERVICE Returned Executed by Edward Michael Nero, Garrett Edward Miller. Marilyn Mosby waiver sent on 6/30/2016, answer due 8/29/2016. (Mallon, Joseph) (Entered: 07/07/2016) |
| 07/18/2016 | 12 | MOTION to Dismiss for Failure to State a Claim *or for Summary Judgment* by Samuel Cogen Responses due by 8/4/2016 (Attachments: # 1 Supplement Memorandum of Law in Support of Major Cogen's Motion to Dismiss or for Summary Judgment, # 2 Exhibit 1 - Application for Statement of Charges for Plaintiff Nero, # 3 Exhibit 2 - Application for Statement of Charges for Plaintiff Miller, # 4 Exhibit 3 - Baltimore City Police Department Policy No. 1114, # 5 Exhibit 4 - Affidavit of Major Samuel Cogen, # 6 Exhibit 5 - Arrest Warrant on Charging Documents for Plaintiff Nero, # 7 Exhibit 6 - Arrest Warrant on Charging Documents for Plaintiff Miller)(Foltin, Jason) Modified on 10/11/2016 (jnls, Deputy Clerk). (Entered: 07/18/2016) |

| 07/18/2016 | 13 | NOTICE of Appearance by Sara Elaine Gross on behalf of Samuel Cogen (Gross, Sara) (Entered: 07/18/2016) |
|---|---|---|
| 07/27/2016 | 14 | Consent MOTION for Extension of Time to File Response/Reply as to 12 MOTION to Dismiss for Failure to State a Claim *or for Summary Judgment* by Garrett Edward Miller, Edward Michael Nero Responses due by 8/15/2016 (Attachments: # 1 Text of Proposed Order)(Mallon, Joseph) (Entered: 07/27/2016) |
| 07/27/2016 | 15 | ORDER granting 14 Motion for Extension of Time to File Response/Reply re 12 MOTION to Dismiss for Failure to State a Claim *or for Summary Judgment*. Responses due by 8/18/2016. Signed by Judge Marvin J. Garbis on 7/27/2016. (ca2s, Deputy Clerk) (Entered: 07/27/2016) |
| 08/03/2016 | | Telephone Conference Call re: status and scheduling held on 8/3/2016 before Judge Marvin J. Garbis. (ca2s, Deputy Clerk) (Entered: 08/03/2016) |
| 08/03/2016 | 16 | INITIAL SCHEDULING ORDER. Signed by Judge Marvin J. Garbis on 8/3/2016. (ca2s, Deputy Clerk) (Entered: 08/03/2016) |
| 08/03/2016 | 17 | ORDER re Case Schedule. Signed by Judge Marvin J. Garbis on 8/3/2016. (ca2s, Deputy Clerk) (Entered: 08/03/2016) |
| 08/04/2016 | 18 | ORDER re Consolidated Proceedings. Signed by Judge Marvin J. Garbis on 8/4/2016. (ca2s, Deputy Clerk) (Entered: 08/04/2016) |
| 08/08/2016 | 19 | ORDER re Transcript of Press Conference. Signed by Judge Marvin J. Garbis on 8/8/2016. (Attachments: # 1 Transcript)(ca2s, Deputy Clerk) (Entered: 08/08/2016) |
| 08/08/2016 | 20 | (FILED IN ERROR)Statement Letter Order. Signed by Judge Marvin J. Garbis on 8/8/2016. (Attachments: # 1 Transcript)Associated Cases: 1:16-cv-02663-MJG, 1:16-cv-01288-MJG, 1:16-cv-01304-MJG(kw2s, Deputy Clerk) Modified on 8/8/2016 (kw2s, Deputy Clerk). (Entered: 08/08/2016) |
| 08/19/2016 | 21 | FILED IN ERR0R - MOTION for Other Relief *Deny or Defer Entry of Dismissal or Summary Judgment* by Brian Scott Rice Responses due by 9/6/2016 (Attachments: # 1 Memorandum in Support, # 2 Exhibit Exhibit 1 Declaration of David Ellin, # 3 Exhibit Exhibit A, # 4 Exhibit Exhibit B, # 5 Exhibit Exhibit C, # 6 Text of Proposed Order)Associated Cases: 1:16-cv-01304-MJG, 1:16-cv-01288-MJG, 1:16-cv-02663-MJG(Ellin, David) Modified on 8/22/2016 (jnl, Deputy Clerk). (Entered: 08/19/2016) |
| 08/19/2016 | 22 | MOTION to Deny or Defer Entry of Dismissal or Entry of Summary Judgment to Permit Plaintiffs to Conduct Discovery Pursuant to Fed. R. Civ. P. 12(d) and 56(d) by Garrett Edward Miller, Edward Michael Nero Responses due by 9/6/2016 (Attachments: # 1 Exhibit 1, # 2 Text of Proposed Order)(Mallon, Joseph) (Entered: 08/19/2016) |
| 08/19/2016 | 23 | Memorandum re 22 MOTION to Deny or Defer Entry of Dismissal or Entry of Summary Judgment to Permit Plaintiffs to Conduct Discovery Pursuant to Fed. R. Civ. P. 12(d) and 56(d) filed by Garrett Edward Miller, Edward Michael Nero. (Mallon, Joseph) (Entered: 08/19/2016) |
| 08/19/2016 | 24 | NOTICE of Appearance by Karl Aram Pothier on behalf of Marilyn Mosby (Pothier, Karl) (Entered: 08/19/2016) |
| 08/19/2016 | 25 | MOTION to Dismiss for Failure to State a Claim *or, in the Alternative, Motion for Summary Judgment* by Marilyn Mosby Responses due by 9/6/2016 (Attachments: # 1 Memorandum in Support, # 2 Exhibit List, # 3 Exhibit Ex. 1 - Miller district court records, # 4 Exhibit Ex. 2 - Nero district court records, # 5 Exhibit Ex. 3 - Certificate of Death, # 6 |

| | | Exhibit Ex. 4 - Miller circuit court records, # 7 Exhibit Ex. 5 - Nero circuit court records) (Pothier, Karl) Modified on 10/11/2016 (jnls, Deputy Clerk). (Entered: 08/19/2016) |
|---|---|---|
| 08/22/2016 | 26 | QC NOTICE: (21 in 1:16-cv-01288-MJG, 21 in 1:16-cv-02663-MJG) Motion for Other Relief Deny or Defer Entry of Dismissal or Summary Judgment filed by Brian Scott Rice was spread to these cases incorrectly. *\*Case caption and case number are incorrect. It has been noted as FILED IN ERROR, and the document link has been disabled.* Associated Cases: 1:16-cv-02663-MJG, 1:16-cv-01288-MJG(jnls, Deputy Clerk) (Entered: 08/22/2016) |
| 08/26/2016 | 27 | PROCEDURAL ORDER Signed by Judge Marvin J. Garbis on 8/26/2016. (cags, Deputy Clerk) (Entered: 08/29/2016) |
| 09/07/2016 | 28 | [FILED IN ERROR] NOTICE of Appearance by David Ellin on behalf of Brian Scott Rice Associated Cases: 1:16-cv-01304-MJG, 1:16-cv-01288-MJG, 1:16-cv-02663-MJG(Ellin, David) Modified on 9/8/2016 (krs, Deputy Clerk). (Entered: 09/07/2016) |
| 09/08/2016 | 29 | QC NOTICE: 28 Notice of Appearance filed by Brian Scott Rice was filed incorrectly. *\*QC NOTICE: Please do not spread text unless all case captions and case numbers are indicated on the document. It has been noted as FILED IN ERROR, and the document link has been disabled..* (krs, Deputy Clerk) (Entered: 09/08/2016) |
| 09/09/2016 | 30 | Consent MOTION To Modify Briefing Schedule by Garrett Edward Miller, Edward Michael Nero Responses due by 9/26/2016 (Mallon, Joseph) (Entered: 09/09/2016) |
| 09/09/2016 | 31 | [FILED IN ERROR] Consent MOTION for Extension of Time to File Response/Reply by Brian Scott Rice Responses due by 9/26/2016 Associated Cases: 1:16-cv-01304-MJG, 1:16-cv-01288-MJG, 1:16-cv-02663-MJG(Ellin, David) Modified on 9/12/2016 (krs, Deputy Clerk). (Entered: 09/09/2016) |
| 09/09/2016 | 32 | [FILED IN ERROR] Proposed Order re (28 in 1:16-cv-01304-MJG) Consent MOTION for Extension of Time to File Response/Reply by Brian Scott Rice Associated Cases: 1:16-cv-01304-MJG, 1:16-cv-01288-MJG, 1:16-cv-02663-MJG(Ellin, David) Modified on 9/12/2016 (jnls, Deputy Clerk). Modified on 9/12/2016 (krs, Deputy Clerk). (Entered: 09/09/2016) |
| 09/09/2016 | 33 | MOTION for Leave to File *Amended Complaint* by Garrett Edward Miller, Edward Michael Nero Responses due by 9/26/2016 (Attachments: # 1 Proposed Amended Complaint, # 2 Proposed Amended Complaint - Redline)(Mallon, Joseph) (Entered: 09/09/2016) |
| 09/12/2016 | 34 | QC NOTICE: Consent Motion of plaintiffs for Extension of Time - Proposed Order. Document should be filed as a Notice and linked to the Motion for Extension of Time. Your document has been corrected by court staff. No corrective action is required in regard to this filing. Associated Cases: 1:16-cv-01304-MJG, 1:16-cv-01288-MJG, 1:16-cv-02663-MJG(jnls, Deputy Clerk) (Entered: 09/12/2016) |
| 09/13/2016 | 35 | MARGINAL ORDER granting 30 Motion to Modify Briefing Schedule. Signed by Judge Marvin J. Garbis on 9/9/2016. (krs, Deputy Clerk) (Entered: 09/13/2016) |
| 09/16/2016 | 36 | RESPONSE to Motion re (25 in 1:16-cv-01304-MJG) 12 MOTION to Dismiss for Failure to State a Claim*or, in the Alternative, Motion for Summary Judgment,* (8 in 1:16-cv-01304-MJG) 25 MOTION to Dismiss for Failure to State a Claim*or for Summary Judgment* filed by Garrett Edward Miller, Edward Michael Nero. Replies due by 10/3/2016. Associated Cases: 1:16-cv-01288-MJG, 1:16-cv-01304-MJG(Mallon, Joseph) Modified on 9/19/2016 (krs, Deputy Clerk). (Entered: 09/16/2016) |
| 09/30/2016 | 37 | RESPONSE in Opposition re 33 MOTION for Leave to File *Amended Complaint* filed by |

| | | |
|---|---|---|
| | | Marilyn Mosby. Replies due by 10/17/2016. (Attachments: # 1 Memorandum in Support of Opposition)(Pothier, Karl) (Entered: 09/30/2016) |
| 09/30/2016 | 38 | REPLY to Response to Motion re 25 MOTION to Dismiss for Failure to State a Claim *or, in the Alternative, Motion for Summary Judgment* filed by Marilyn Mosby. (Pothier, Karl) (Entered: 09/30/2016) |
| 09/30/2016 | 39 | REPLY to Response to Motion re 12 MOTION to Dismiss for Failure to State a Claim *or for Summary Judgment* filed by Samuel Cogen. (Foltin, Jason) (Entered: 09/30/2016) |
| 10/11/2016 | 40 | ORDER re October 13 hearing. Signed by Judge Marvin J. Garbis on 10/11/2016. (krs, Deputy Clerk) (Entered: 10/12/2016) |
| 10/12/2016 | 41 | NOTICE of Appearance by Joseph Thomas Mallon, Jr on behalf of All Plaintiffs (Mallon, Joseph) (Entered: 10/12/2016) |
| 10/13/2016 | 71 | Motion Hearing held on 10/13/2016 re 25 MOTION to Dismiss for Failure to State a Claim *or, in the Alternative, Motion for Summary Judgment* filed by Marilyn Mosby, 12 MOTION to Dismiss for Failure to State a Claim *or for Summary Judgment* filed by Samuel Cogen before Judge Marvin J. Garbis.(Court Reporter: M. Giordano) (pat, Deputy Clerk) (Entered: 02/16/2017) |
| 01/06/2017 | 42 | ORDER re Case Planning Conference. Signed by Judge Marvin J. Garbis on 1/6/2017. (krs, Deputy Clerk) (Entered: 01/06/2017) |
| 01/06/2017 | 43 | MEMORANDUM AND ORDER granting in part and denying in part 12 Defendant Samuel Cogen's Motion to Dismiss; granting in part and denying in part 25 Marilyn Mosby's Motion to Dismiss. Signed by Judge Marvin J. Garbis on 1/6/2017. (krs, Deputy Clerk) (Entered: 01/06/2017) |
| 01/12/2017 | 44 | ORDER REFERRING CASE to Magistrate Judge J. Mark Coulson for Discovery. Signed by Judge Marvin J. Garbis on 1/12/2017 (cags, Deputy Clerk) (Entered: 01/12/2017) |
| 01/18/2017 | 45 | ORDER re Barristers Law Club meeting. Signed by Judge Marvin J. Garbis on 1/18/2017. (krs, Deputy Clerk) (Entered: 01/19/2017) |
| 01/20/2017 | 46 | Consent MOTION for Extension of Time to File Answer by Samuel Cogen, Marilyn Mosby (Attachments: # 1 Text of Proposed Order)(Pothier, Karl) (Entered: 01/20/2017) |
| 01/20/2017 | 47 | [FILED IN ERROR] ANSWER to 1 Complaint, by Samuel Cogen.(Gross, Sara) Modified on 1/23/2017 (krs, Deputy Clerk). (Entered: 01/20/2017) |
| 01/23/2017 | 48 | QC NOTICE: 47 Answer to Complaint filed by Samuel Cogen was filed incorrectly. ***Incorrect case number on pleading. Please refile corrected pleading with Civil Action No. 16-cv-1288. It has been noted as FILED IN ERROR, and the document link has been disabled.* (krs, Deputy Clerk) (Entered: 01/23/2017) |
| 01/23/2017 | 49 | ORDER granting 46 Consent Motion for Extension of Time. Signed by Judge Marvin J. Garbis on 1/23/2017. (krs, Deputy Clerk) (Entered: 01/23/2017) |
| 01/24/2017 | 50 | ORDER re: Actions Taken on the Record of Proceedings. Signed by Judge Marvin J. Garbis on 1/24/2017. (kw2s, Deputy Clerk) (Entered: 01/24/2017) |
| 01/24/2017 | 51 | [FILED IN ERROR - duplicate] ORDER re confirming actions taken on the record of proceedings. Signed by Judge Marvin J. Garbis on 1/24/2017. (krs, Deputy Clerk) Modified on 1/24/2017 (krs, Deputy Clerk). (Entered: 01/24/2017) |
| 01/24/2017 | 52 | Status Conference held on 1/24/2017 before Judge Marvin J. Garbis and Magistrate Judge J. Mark Coulson.(Court Reporter: Cindy Davis) (kvs, Deputy Clerk) Modified on 1/25/2017 (kvs, Deputy Clerk). (Entered: 01/25/2017) |

| 01/25/2017 | 53 | ANSWER to 1 Complaint, by Samuel Cogen.(Gross, Sara) (Entered: 01/25/2017) |
|---|---|---|
| 01/27/2017 | 54 | CORRECTED MEMORANDUM AND ORDER re: Dismissal Motions; granting in part and denying in part 12 Defendant Samuel Cogen's Motion to Dismiss; granting in part and denying in part 25 Marilyn Mosby's Motion to Dismiss.. Signed by Judge Marvin J. Garbis on 1/27/2017. (krs, Deputy Clerk) (Entered: 01/27/2017) |
| 01/31/2017 | 55 | NOTICE OF FILING OF OFFICIAL TRANSCRIPT of Proceedings, Status Hearing held January 24, 2017, before Judge Margin J. Garbis. Court Reporter Cindy Davis, Telephone number (301)344-3228. Total number of pages filed: 12. Transcript may be viewed at the court public terminal or purchased through the Court Reporter before the deadline for Release of Transcript Restriction. After that date it may be obtained from the Court Reporter or through PACER. Redaction Request due 2/21/2017. Redacted Transcript Deadline set for 3/3/2017. Release of Transcript Restriction set for 5/1/2017.(cd, Court Reporter) Modified on 2/3/2017 (cd, Court Reporter). (Entered: 01/31/2017) |
| 02/03/2017 | 56 | ORDER REGARDING DISCOVERY. Signed by Magistrate Judge J. Mark Coulson on 2/3/2017. (daws, Chambers) (Entered: 02/03/2017) |
| 02/03/2017 | 57 | NOTICE OF INTERLOCUTORY APPEAL by Marilyn Mosby. (Pothier, Karl) (Entered: 02/03/2017) |
| 02/03/2017 | | USCA Appeal Fees received $ 505 receipt number 14637095715 re 57 Notice of Interlocutory Appeal filed by Marilyn Mosby (slss, Deputy Clerk) (Entered: 02/03/2017) |
| 02/03/2017 | 58 | Transmission of Notice of Appeal and Docket Sheet to US Court of Appeals re 57 Notice of Interlocutory Appeal. IMPORTANT NOTICE: To access forms which you are required to file with the United States Court of Appeals for the Fourth Circuit please go to http://www.ca4.uscourts.gov and click on Forms & Notices.(slss, Deputy Clerk) (Entered: 02/03/2017) |
| 02/06/2017 | 59 | USCA Case Number 17-1166 for 57 Notice of Interlocutory Appeal filed by Marilyn Mosby. Case Manager - Anisha Walker (slss, Deputy Clerk) (Entered: 02/06/2017) |
| 02/06/2017 | 60 | MOTION to Stay *Pending Appeal* by Marilyn Mosby (Attachments: # 1 Memorandum in support, # 2 Text of Proposed Order)(Pothier, Karl) (Entered: 02/06/2017) |
| 02/07/2017 | 61 | MOTION to Withdraw *Appearance of Counsel* by Marilyn Mosby (Attachments: # 1 Text of Proposed Order)(Nayar, Ankush) (Entered: 02/07/2017) |
| 02/07/2017 | 62 | ORDER granting 61 Motion to Withdraw Appearance of Counsel. Signed by Judge Marvin J. Garbis on 2/7/2017. (krs, Deputy Clerk) (Entered: 02/08/2017) |
| 02/08/2017 | 63 | REQUEST for Extension of Time to File *the parties' proposed Discovery Plan* (Pothier, Karl) (Entered: 02/08/2017) |
| 02/08/2017 | 64 | ORDER re 60 MOTION to Stay *Pending Appeal* filed by Marilyn Mosby; directing the court will consider responses and replies prior to ruling on motions and discovery shall proceed expeditiously as directed by Judge Coulson, unless and until further Order granting a stay of discovery. Signed by Judge Marvin J. Garbis on 2/8/2017. (dass, Deputy Clerk) (Entered: 02/09/2017) |
| 02/08/2017 | 65 | ORDER consolidating Civil Action No. MJG-16-1288 with Civil Action Nos. MJG-16-1304 and MJG-16-2663 for all purposes. Signed by Judge Marvin J. Garbis on 2/8/2017. (dass, Deputy Clerk) (Entered: 02/09/2017) |
| 02/09/2017 | 66 | MARGINAL ORDER approving 63 Request for Extension of Time to File the parties' proposed Discovery Plan filed by Marilyn Mosby. Signed by Magistrate Judge J. Mark Coulson on 2/8/2017. (dass, Deputy Clerk) (Entered: 02/09/2017) |

| 02/09/2017 | 67 | NOTICE of Appearance by Elise Marcela Balkin Ice on behalf of Marilyn Mosby (Ice, Elise) (Entered: 02/09/2017) |
|---|---|---|
| 02/10/2017 | 68 | Joint Correspondence re: Final Discovery Plan (Gross, Sara) (Entered: 02/10/2017) |
| 02/10/2017 | 69 | Consent MOTION for Extension of Time to File Response/Reply as to 1 Complaint, by Marilyn Mosby (Attachments: # 1 Text of Proposed Order)(Ice, Elise) (Entered: 02/10/2017) |
| 02/13/2017 | 70 | ORDER granting 69 Consent Motion for Extension of Time to File Response to 1 Complaint, . Signed by Judge Marvin J. Garbis on 2/13/2017. (jnls, Deputy Clerk) (Entered: 02/14/2017) |
| 02/16/2017 | 72 | TRANSCRIPT ORDER ACKNOWLEDGMENT by Marilyn Mosby for proceedings held on 10/13/2016 Hearing before Judge Garbis, re 57 Notice of Interlocutory Appeal - Transcript due by 4/24/2017. (Court Reporter: Martin Giordano)(slss, Deputy Clerk) (Entered: 02/16/2017) |
| 02/21/2017 | 73 | NOTICE of Appearance by Andrew J Toland, III on behalf of Garrett Edward Miller, Edward Michael Nero (Toland, Andrew) (Entered: 02/21/2017) |
| 02/21/2017 | 74 | Consent MOTION for Extension of Time to File Response/Reply as to 60 MOTION to Stay *Pending Appeal* by Garrett Edward Miller, Edward Michael Nero, William Porter, Brian Scott Rice, Alicia White. (Attachments: # 1 Text of Proposed Order)(Toland, Andrew) (Entered: 02/21/2017) |
| 02/22/2017 | 75 | ORDER granting 74 Consent Motion for Extension of Time to Respond to Defendant Marilyn Mosby's Motion for Immediate Stay Pending Appeal. Signed by Judge Marvin J. Garbis on 2/22/2017. (krs, Deputy Clerk) (Entered: 02/22/2017) |
| 02/28/2017 | 76 | [FILED IN ERROR - per atty] Consent MOTION for Extension of Time to File Response/Reply as to (60 in 1:16-cv-01288-MJG) MOTION to Stay *Pending Appeal* by Brian Scott Rice (Attachments: # 1 Text of Proposed Order)Associated Cases: 1:16-cv-01288-MJG, 1:16-cv-01304-MJG, 1:16-cv-02663-MJG(Peeples, Brandy) Modified on 3/1/2017 (krs, Deputy Clerk). (Entered: 02/28/2017) |
| 03/01/2017 | 77 | [FILED IN ERROR - per atty] Consent MOTION for Extension of Time to File Response/Reply as to 60 MOTION to Stay *Pending Appeal* by Brian Scott Rice (Attachments: # 1 Text of Proposed Order)(Peeples, Brandy) Modified on 3/1/2017 (krs, Deputy Clerk). (Entered: 03/01/2017) |
| 03/01/2017 | 78 | Consent MOTION for Extension of Time to File Response/Reply as to 60 MOTION to Stay *Pending Appeal* by Garrett Edward Miller, Edward Michael Nero, William Porter, Brian Scott Rice, Alicia White (Attachments: # 1 Text of Proposed Order)(Peeples, Brandy) (Entered: 03/01/2017) |
| 03/01/2017 | 79 | ORDER granting 78 Consent Motion for Extension of Time to Respond to Defendant Marilyn Mosby's Motion for Immediate Stay Pending Appeal. Signed by Judge Marvin J. Garbis on 2/28/2017. (krs, Deputy Clerk) (Entered: 03/01/2017) |
| 03/02/2017 | 80 | RESPONSE to Motion re 60 MOTION to Stay *Pending Appeal* filed by Garrett Edward Miller, Edward Michael Nero, William Porter, Brian Scott Rice, Alicia White.(Peeples, Brandy) (Entered: 03/02/2017) |
| 03/16/2017 | 81 | REPLY to Response to Motion re 60 MOTION to Stay *Pending Appeal* filed by Marilyn Mosby. (Attachments: # 1 Exhibit 6/9/11 Order in Evans v. City of Durham (MDNC No. 1:07CV739))(Pothier, Karl) (Entered: 03/16/2017) |
| 03/20/2017 | 82 | MEMORANDUM AND ORDER denying 60 Motion to Stay Pending Appeal. Signed by |

| | | |
|---|---|---|
| | | Judge Marvin J. Garbis on 3/20/2017. (kw2s, Deputy Clerk) (Entered: 03/20/2017) |
| 03/27/2017 | 83 | Correspondence re: Proposed Discovery Plan (Toland, Andrew) (Entered: 03/27/2017) |
| 03/27/2017 | 84 | (ELECTRONICALLY FILED IN ERROR)ORDER of USCA "consolidating" USCA Case Nos. 17-1166, 17-1168 and 17-1169 as to 57 Notice of Interlocutory Appeal filed by Marilyn Mosby. (slss, Deputy Clerk) Modified on 3/27/2017 (slss, Deputy Clerk). (Entered: 03/27/2017) |
| 03/27/2017 | 85 | ORDER of USCA "consolidating" USCA Case Nos. 17-1166, 17-1168 and 17-1169 as to 57 Notice of Interlocutory Appeal filed by Marilyn Mosby. (slss, Deputy Clerk) (Entered: 03/27/2017) |
| 03/27/2017 | 86 | PAPERLESS ORDER APPROVING re 68 Joint Correspondence re: Final Discovery Plan. Signed by Magistrate Judge J. Mark Coulson on 3/27/2017. (vals, Chambers) (Entered: 03/27/2017) |
| 04/27/2017 | 87 | NOTICE OF FILING OF OFFICIAL TRANSCRIPT of MOTIONS HEARING for the date of 10-13-2016, before Judge Marvin J. Garbis, re 57 Notice of Interlocutory Appeal. Court Reporter: Martin J. Giordano, Telephone number 410-962-4504. Transcript may be viewed at the court public terminal or purchased through the Court Reporter before the deadline for Release of Transcript Restriction. After that date it may be obtained from the Court Reporter or through PACER. Does this satisfy all appellate orders for this reporter? - Y. Redaction Request due 5/18/2017. Redacted Transcript Deadline set for 5/30/2017. Release of Transcript Restriction set for 7/26/2017.(mg, Court Reporter) (Entered: 04/27/2017) |
| 05/04/2017 | 88 | ORDER of USCA "granting" motion for stay and "stays" the District Court proceedings during the pendency of this appeal as to 57 Notice of Interlocutory Appeal filed by Marilyn Mosby (slss, Deputy Clerk) (Entered: 05/05/2017) |

| PACER Service Center | | |
|---|---|---|
| Transaction Receipt | | |
| 05/12/2017 11:05:10 | | |
| PACER Login: | kathylingo:2811705:0 | Client Code: | |
| Description: | Docket Report | Search Criteria: | 1:16-cv-01288-MJG |
| Billable Pages: | 9 | Cost: | 0.90 |

# U.S. District Court
## District of Maryland (Baltimore)
## CIVIL DOCKET FOR CASE #: 1:16-cv-01304-MJG

Rice v. Mosby et al
Assigned to: Judge Marvin J. Garbis
Referred to: Magistrate Judge J. Mark Coulson
Lead case: 1:16-cv-01304-MJG
Member case: (View Member Case)
Related Cases: 1:16-cv-02663-MJG
              1:16-cv-01288-MJG
Case in other court: Fourth Circuit Court of Appeals, 17-01168
Cause: 28:1331 Federal Question: Other Civil Rights

Date Filed: 05/02/2016
Jury Demand: Plaintiff
Nature of Suit: 440 Civil Rights: Other
Jurisdiction: Federal Question

**Plaintiff**

**Brian Scott Rice**

    represented by   **David Ellin**
Law Office of David Ellin PC
154 Westminster Pike
Reisterstown, MD 21136
14108330044
Fax: 14108330442
Email: dellin@ellinlaw.com
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*

**Brandy Ann Peeples**
Law Office of Brandy A Peeples PC
47 East All Saints St
Frederick, MD 21701
13013279614
Fax: 18662777137
Email: Brandy@Peeples-Law.com
*ATTORNEY TO BE NOTICED*

V.

**Defendant**

**Marilyn Mosby**

    represented by   **Ankush Nayar**
Office of the Attorney General of Maryland
200 Saint Paul Pl
Baltimore, MD 21202
14105766300
Fax: 14105767841
Email: anayar@oag.state.md.us
*TERMINATED: 02/07/2017*
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*

**Karl Aram Pothier**

State of Maryland Office of the Attorney General
Department of Juvenile Services
120 West Fayette Street
Baltimore, MD 21201
14102303135
Fax: 14102303143
Email: karl.pothier@maryland.gov
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*

**Defendant**

**Major Samuel Cogen**                    represented by
**Jason Robert Foltin**
Baltimore City Law Department
100 N Holliday St Lower Level
Baltimore, MD 21202
14103963297
Fax: 14108371152
Email: jason.foltin@baltimorecity.gov
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*

**Sara Elaine Gross**
Baltimore City Law Department
100 N. Holliday Street, Room LL04
Baltimore, MD 21202
4103963947
Fax: 410-837-1152
Email: sara.gross@baltimorecity.gov
*ATTORNEY TO BE NOTICED*

| Date Filed | # | Docket Text |
|---|---|---|
| 05/02/2016 | 1 | COMPLAINT *And Request for Jury Trial* against All Defendants ( Filing fee $ 400 receipt number 0416-5993475.), filed by Brian Scott Rice. (Attachments: # 1 Civil Cover Sheet)(Ellin, David) (Entered: 05/02/2016) |
| 05/02/2016 | 2 | MOTION to Seal Case *in its entirety* by Brian Scott Rice Responses due by 5/19/2016 (Attachments: # 1 Exhibit)(Ellin, David) Modified on 6/7/2016 (jnls, Deputy Clerk). (Entered: 05/02/2016) |
| 05/03/2016 | 3 | QC NOTICE re: 1 Complaint filed by Brian Scott Rice.<br>*\*\* This case is treated as sealed by pending motion to seal. Please make all further submissions in paper format unless directed otherwise by Order of court. The following attachments are missing - Prepared Summons. To correct this problem, file Prepared Summons in paper format to the Clerk's Office. (dass, Deputy Clerk) (c/em to counsel and by phone call) (Entered: 05/03/2016)* |
| 05/06/2016 | 4 | Summons Issued 21 days as to Samuel Cogen, Marilyn Mosby. (jnls, Deputy Clerk) Modified on 5/6/2016 (c/emailed - jnls, Deputy Clerk). (Entered: 05/06/2016) |
| 05/26/2016 | 5 | SUMMONS Returned Executed by Brian Scott Rice. Samuel Cogen served on 5/17/2016, answer due 6/7/2016; Marilyn Mosby served on 5/17/2016, answer due 6/7/2016. (jnls, Deputy Clerk) (Entered: 05/26/2016) |

| 06/03/2016 | 6 | ORDER DIRECTING Plaintiff shall FORTHWITH arrange a telephone conference with the Court and with an attorney who will be representing the Defendants or, if none is now known, with a designee of the Maryland Attorney General and/or the Baltimore City Solicitor and/or the Baltimore City States Attorney. Signed by Judge James K. Bredar on 6/3/2016. (c/m 6/3/16 jnls, Deputy Clerk) (Entered: 06/03/2016) |
|---|---|---|
| 06/06/2016 | 7 | ORDER denying 2 Motion of plaintiff to Seal Case and Complaint. Signed by Judge James K. Bredar on 6/6/2016. (jnls, Deputy Clerk) (Entered: 06/07/2016) |
| 06/06/2016 | | Telephone Conference held on 6/6/2016 before Judge James K. Bredar. (hsgs, Deputy Clerk) (Entered: 06/07/2016) |
| 06/07/2016 | 8 | MOTION to Dismiss for Failure to State a Claim *or for Summary Judgment* by Samuel Cogen Responses due by 6/24/2016 (Attachments: # 1 Supplement Memorandum of Law in Further Support of Defendant's Motion to Dismiss or for Summary Judgment, # 2 Exhibit 1 - Application for Statement of Charges, # 3 Exhibit 2 - BPD Policy 1114, # 4 Exhibit 3 - Affidavit of Major Samuel Cogen, # 5 Exhibit 4 - Arrest Warrant on Charging Documents, # 6 Text of Proposed Order)(Foltin, Jason) Modified on 10/11/2016 (jnls, Deputy Clerk). (Entered: 06/07/2016) |
| 06/07/2016 | 9 | NOTICE of Appearance by Sara Elaine Gross on behalf of Samuel Cogen (Gross, Sara) (Entered: 06/07/2016) |
| 06/07/2016 | 10 | Consent MOTION for Extension of Time by Marilyn Mosby Responses due by 6/24/2016 (Attachments: # 1 Text of Proposed Order)(Pothier, Karl) (Entered: 06/07/2016) |
| 06/08/2016 | 11 | ORDER granting 10 Consent Motion for Extension of Time. Signed by Judge James K. Bredar on 6/8/2016. (jnls, Deputy Clerk) (Entered: 06/08/2016) |
| 06/08/2016 | | Set/Reset Deadlines: Marilyn Mosby answer due 8/5/2016. (jnls, Deputy Clerk) (Entered: 06/08/2016) |
| 06/08/2016 | 12 | NOTICE of Appearance by Ankush Nayar on behalf of Marilyn Mosby (Nayar, Ankush) (Entered: 06/08/2016) |
| 06/09/2016 | 13 | Consent MOTION for Extension of Time to File Response/Reply as to 8 MOTION to Dismiss for Failure to State a Claim *for Summary Judgment* by Brian Scott Rice Responses due by 6/27/2016 (Attachments: # 1 Text of Proposed Order Proposed Order) (Ellin, David) (Entered: 06/09/2016) |
| 06/09/2016 | 14 | ORDER granting 13 Consent Motion for Extension of Time to File Response/Reply. Signed by Judge James K. Bredar on 6/9/2016. (jnls, Deputy Clerk) (Entered: 06/09/2016) |
| 07/15/2016 | 15 | Consent MOTION for Extension of Time to File Answer re 14 Order on Motion for Extension of Time to File Response/Reply by Brian Scott Rice Responses due by 8/1/2016 (Attachments: # 1 Text of Proposed Order Proposed Order)(Ellin, David) (Entered: 07/15/2016) |
| 07/15/2016 | 16 | ORDER granting 15 Consent Motion of plaintiff for extension of time to respond to 8 Motion of Samuel Cogen to Dismiss or for Summary Judgment. Signed by Judge James K. Bredar on 7/15/2016. (jnls, Deputy Clerk) (Entered: 07/18/2016) |
| 07/19/2016 | 17 | RESPONSE to Motion re 8 MOTION to Dismiss for Failure to State a Claim *or for Summary Judgment* filed by Brian Scott Rice. Replies due by 8/5/2016. (Attachments: # 1 Exhibit Exhibit 1, # 2 Exhibit Exhibit 2, # 3 Exhibit Exhibit 3, # 4 Text of Proposed Order Order)(Ellin, David) (Entered: 07/19/2016) |
| 07/19/2016 | 18 | MOTION for Other Relief *To Defer Entry of Dismissal or Summary Judgment* by Brian Scott Rice Responses due by 8/5/2016 (Attachments: # 1 Exhibit Exhibit 1, # 2 Text of |

| | | |
|---|---|---|
| | | Proposed Order Order)(Ellin, David) (Entered: 07/19/2016) |
| 08/03/2016 | 19 | REPLY to Response to Motion re 8 MOTION to Dismiss for Failure to State a Claim*or for Summary Judgment* filed by Samuel Cogen. (Foltin, Jason) (Entered: 08/03/2016) |
| 08/03/2016 | 20 | RESPONSE in Opposition re 18 MOTION for Other Relief *To Defer Entry of Dismissal or Summary Judgment* filed by Samuel Cogen. Replies due by 8/22/2016. (Foltin, Jason) (Entered: 08/03/2016) |
| 08/04/2016 | 21 | ORDER re consolidated proceedings. Signed by Judge Marvin J. Garbis on 8/4/2016. Associated Cases: 1:16-cv-01304-JKB, 1:16-cv-02663-JFM(jnls, Deputy Clerk) (Entered: 08/04/2016) |
| 08/05/2016 | 22 | ORDER directing this matter is reassigned to Judge Garbis as related to MJG-16-1288. Signed by Judge James K. Bredar on 8/5/2016. (jnls, Deputy Clerk) (Entered: 08/05/2016) |
| 08/05/2016 | | Case reassigned to Judge Marvin J. Garbis. Judge James K. Bredar no longer assigned to the case. (cags, Deputy Clerk) (Entered: 08/05/2016) |
| 08/08/2016 | 23 | ORDER re Transcript of Press Conference Signed by Judge Marvin J. Garbis on 8/8/2016. (Attachments: # 1 Transcript)Associated (kw2s, Deputy Clerk) (Entered: 08/08/2016) |
| 08/19/2016 | 24 | MOTION for Other Relief *Deny or Defer Entry of Dismissal or Summary Judgment* by Brian Scott Rice Responses due by 9/6/2016 (Attachments: # 1 Memorandum in Support, # 2 Exhibit Exhibit 1 Declaration of David Ellin, # 3 Exhibit Exhibit A, # 4 Exhibit Exhibit B, # 5 Exhibit Exhibit C, # 6 Text of Proposed Order Order)Associated Cases: 1:16-cv-01304-MJG, 1:16-cv-01288-MJG, 1:16-cv-02663-MJG(Ellin, David) (Entered: 08/19/2016) |
| 08/19/2016 | 25 | MOTION to Dismiss for Failure to State a Claim*or, in the Alternative, Motion for Summary Judgment* by Marilyn Mosby Responses due by 9/6/2016 (Attachments: # 1 Memorandum in Support, # 2 Exhibit List, # 3 Exhibit Ex. 1 - App. for Stmt of Charges, # 4 Exhibit Ex. 2 - Cert of Death, # 5 Exhibit Ex. 3 - Stmt of Charges, # 6 Exhibit Ex. 4 - Arrest Warrant, # 7 Exhibit Ex. 5 - District Court Trial Summary, # 8 Exhibit Ex. 6 - Indictment, # 9 Exhibit Ex. 7 - Docket excerpt, # 10 Exhibit Ex. 8 - Transcript of 7/18/16 verdict)(Pothier, Karl) Modified on 10/11/2016 (jnls, Deputy Clerk). (Entered: 08/19/2016) |
| 08/26/2016 | 26 | PROCEDURAL ORDER. Signed by Judge Marvin J. Garbis on 8/26/2016. Associated Cases: 1:16-cv-01304-MJG, 1:16-cv-02663-MJG(jnls, Deputy Clerk) (Entered: 08/29/2016) |
| 09/07/2016 | 27 | NOTICE of Appearance by David Ellin on behalf of Brian Scott Rice Associated Cases: 1:16-cv-01304-MJG, 1:16-cv-01288-MJG, 1:16-cv-02663-MJG(Ellin, David) (Entered: 09/07/2016) |
| 09/09/2016 | 28 | Consent MOTION for Extension of Time to File Response/Reply by Brian Scott Rice Responses due by 9/26/2016 Associated Cases: 1:16-cv-01304-MJG, 1:16-cv-01288-MJG, 1:16-cv-02663-MJG(Ellin, David) (Entered: 09/09/2016) |
| 09/09/2016 | 29 | Proposed Order re (28 in 1:16-cv-01304-MJG) Consent MOTION for Extension of Time to File Response/Reply by Brian Scott Rice Associated Cases: 1:16-cv-01304-MJG, 1:16-cv-01288-MJG, 1:16-cv-02663-MJG(Ellin, David) Modified on 9/12/2016 (jnls, Deputy Clerk). (Entered: 09/09/2016) |
| 09/12/2016 | 30 | QC NOTICE: Consent Motion of plaintiffs for Extension of Time - Proposed Order. Document should be filed as a Notice and linked to the Motion for Extension of Time. Your document has been corrected by court staff. No corrective action is required in regard |

| | | |
|---|---|---|
| | | to this filing. Associated Cases: 1:16-cv-01304-MJG, 1:16-cv-01288-MJG, 1:16-cv-02663-MJG(jnls, Deputy Clerk) (Entered: 09/12/2016) |
| 09/13/2016 | 31 | ORDER granting 28 Consent Motion to Modify Briefing Schedule. Signed by Judge Marvin J. Garbis on 9/12/2016. (jnls, Deputy Clerk) (Entered: 09/13/2016) |
| 09/16/2016 | 32 | NOTICE of Appearance by Brandy Ann Peeples on behalf of Brian Scott Rice (Peeples, Brandy) (Entered: 09/16/2016) |
| 09/16/2016 | 33 | FILED IN ERROR - MOTION to Amend/Correct *Complaint* by Brian Scott Rice Responses due by 10/3/2016 (Attachments: # 1 Text of Proposed Order)(Ellin, David) Modified on 9/19/2016 (jnls, Deputy Clerk). (Entered: 09/16/2016) |
| 09/16/2016 | 34 | FILED IN ERROR - AMENDED COMPLAINT against All Defendants, filed by Brian Scott Rice. (Attachments: # 1 Comparison Copy)(Ellin, David) Modified on 9/19/2016 (jnls, Deputy Clerk). (Entered: 09/16/2016) |
| 09/16/2016 | 35 | RESPONSE to Motion re 25 MOTION to Dismiss for Failure to State a Claim*or, in the Alternative, Motion for Summary Judgment* filed by Brian Scott Rice. Replies due by 10/3/2016. (Attachments: # 1 Text of Proposed Order)(Ellin, David) (Entered: 09/16/2016) |
| 09/16/2016 | 36 | FILED IN ERROR - RESPONSE to Motion re (25 in 1:16-cv-01304-MJG) MOTION to Dismiss for Failure to State a Claim*or, in the Alternative, Motion for Summary Judgment*, (8 in 1:16-cv-01304-MJG) MOTION to Dismiss for Failure to State a Claim*or for Summary Judgment* filed by Garrett Edward Miller, Edward Michael Nero. Replies due by 10/3/2016. Associated Cases: 1:16-cv-01288-MJG, 1:16-cv-01304-MJG(Mallon, Joseph) Modified on 9/19/2016 (jnls, Deputy Clerk). (Entered: 09/16/2016) |
| 09/19/2016 | 37 | QC NOTICE: 34 Amended Complaint and 33 Motion to Amend/Correct filed by Brian Scott Rice needs to be corrected. ***Please re-file the motion for leave to file as the main document and the clean and redline versions as attachments to the motion. It has been noted as FILED IN ERROR, and the document links have been disabled. (jnls, Deputy Clerk) (Entered: 09/19/2016) |
| 09/19/2016 | 38 | QC NOTICE: 36 Response to Motion, filed by Garrett Edward Miller, Edward Michael Nero was filed incorrectly. If a document is being filed in multiple cases, you must list the case caption and case number for each case on the document. It has been noted as FILED IN ERROR, and the document link has been disabled. (jnls, Deputy Clerk) (Entered: 09/19/2016) |
| 09/19/2016 | 39 | MOTION to Amend/Correct by Brian Scott Rice Responses due by 10/6/2016 (Attachments: # 1 Text of Proposed Order, # 2 Exhibit Amended Complaint, # 3 Exhibit Amended Complaint - Comparison Copy)(Ellin, David) (Entered: 09/19/2016) |
| 09/21/2016 | 40 | RESPONSE in Opposition re 39 MOTION to Amend/Correct filed by Samuel Cogen. Replies due by 10/11/2016. (Gross, Sara) (Entered: 09/21/2016) |
| 09/30/2016 | 41 | RESPONSE in Opposition re 39 MOTION to Amend/Correct filed by Marilyn Mosby. Replies due by 10/17/2016. (Attachments: # 1 Memorandum in Support of Opposition) (Pothier, Karl) (Entered: 09/30/2016) |
| 09/30/2016 | 42 | REPLY to Response to Motion re 25 MOTION to Dismiss for Failure to State a Claim*or, in the Alternative, Motion for Summary Judgment* filed by Marilyn Mosby. (Pothier, Karl) (Entered: 09/30/2016) |
| 09/30/2016 | 43 | REPLY to Response to Motion re 8 MOTION to Dismiss for Failure to State a Claim*or for Summary Judgment* filed by Samuel Cogen. (Foltin, Jason) (Entered: 09/30/2016) |
| 10/11/2016 | 44 | ORDER re October 13 hearing. Signed by Judge Marvin J. Garbis on 10/11/2016. |

| | | |
|---|---|---|
| | | Associated Cases: 1:16-cv-02663-MJG, 1:16-cv-01304-MJG(jnls, Deputy Clerk) (Entered: 10/11/2016) |
| 10/13/2016 | 68 | Motion Hearing held on 10/13/2016 re 25 MOTION to Dismiss for Failure to State a Claim or, in the Alternative, Motion for Summary Judgment filed by Marilyn Mosby (pat, Deputy Clerk) (Entered: 02/17/2017) |
| 01/06/2017 | 45 | ORDER re Case Planning Conference. Signed by Judge Marvin J. Garbis on 1/6/2017. (jnls, Deputy Clerk) (Entered: 01/06/2017) |
| 01/06/2017 | 46 | MEMORANDUM AND ORDER granting in part and denying in part (8) Motion of Samuel Cogen to Dismiss ; granting in part and denying in part (25) Motion of Marilyn Mosby to Dismiss in case 1:16-cv-01304 ; granting in part and denying in part (11) Motion of Samuel Cogen to Dismiss ; granting in part and denying in part (22) Motion of Marilyn Mosby to Dismiss in case 1:16-cv-02663-MJG. Signed by Judge Marvin J. Garbis on 1/6/2017. Associated Cases: 1:16-cv-01304-MJG, 1:16-cv-02663-MJG(jnls, Deputy Clerk) (Entered: 01/06/2017) |
| 01/12/2017 | 47 | ORDER REFERRING CASE to Magistrate Judge J. Mark Coulson for Discovery. Signed by Judge Marvin J. Garbis on 1/12/2017 (cags, Deputy Clerk) (Entered: 01/12/2017) |
| 01/18/2017 | 48 | ORDER re Barristers Law Club meeting. Signed by Judge Marvin J. Garbis on 1/18/2017. Associated Cases: 1:16-cv-01304-MJG, 1:16-cv-02663-MJG(jnls, Deputy Clerk) (Entered: 01/18/2017) |
| 01/20/2017 | 49 | Consent MOTION for Extension of Time to File Answer by Samuel Cogen, Marilyn Mosby (Attachments: # 1 Text of Proposed Order)(Pothier, Karl) (Entered: 01/20/2017) |
| 01/20/2017 | 50 | FILED IN ERROR - ANSWER to 1 Complaint by Samuel Cogen.(Gross, Sara) Modified on 1/23/2017 (jnls, Deputy Clerk). (Entered: 01/20/2017) |
| 01/23/2017 | 51 | QC NOTICE: 50 Answer to Complaint filed by Samuel Cogen was filed incorrectly. **Case number is incorrect. It has been noted as FILED IN ERROR, and the document link has been disabled.** (jnls, Deputy Clerk) (Entered: 01/23/2017) |
| 01/23/2017 | 52 | ORDER granting 49 Consent Motion of defendants for Extension of Time to Answer. Signed by Judge Marvin J. Garbis on 1/23/2017. (jnls, Deputy Clerk) (Entered: 01/23/2017) |
| 01/24/2017 | 53 | ORDER re confirming actions taken on the record of proceedings. Signed by Judge Marvin J. Garbis on 1/24/2017. Associated Cases: 1:16-cv-01304-MJG, 1:16-cv-02663-MJG(jnls, Deputy Clerk) (Entered: 01/24/2017) |
| 01/24/2017 | 54 | Status Conference held on 1/24/2017 before Judge Marvin J. Garbis and Magistrate Judge J. Mark Coulson.(Court Reporter: Cindy Davis) (kvs, Deputy Clerk) (Entered: 01/25/2017) |
| 01/25/2017 | 55 | ANSWER to Complaint by Samuel Cogen.(Gross, Sara) (Entered: 01/25/2017) |
| 01/27/2017 | 56 | CORRECTED MEMORANDUM AND ORDER re: Dismissal Motions; granting in part and denying in part (8) Motion of Samuel Cogen to Dismiss ; granting in part and denying in part (25) Motion of Marilyn Mosby to Dismiss in case 1:16-cv-01304 ; granting in part and denying in part (11) Motion of Samuel Cogen to Dismiss ; granting in part and denying in part (22) Motion of Marilyn Mosby to Dismiss in case 1:16-cv-02663-MJG. Signed by Judge Marvin J. Garbis on 1/27/2017. Associated Cases: 1:16-cv-01304-MJG, 1:16-cv-02663-MJG(hmls, Deputy Clerk) (Entered: 01/27/2017) |
| 01/31/2017 | 57 | NOTICE OF FILING OF OFFICIAL TRANSCRIPT of Proceedings, Status Hearing held January 24, 2017, before Judge Marvin J. Garbis. Court Reporter Cindy Davis, Telephone |

| | | |
|---|---|---|
| | | number (301) 344-3228. Total number of pages filed: 12. Transcript may be viewed at the court public terminal or purchased through the Court Reporter before the deadline for Release of Transcript Restriction. After that date it may be obtained from the Court Reporter or through PACER. Redaction Request due 2/21/2017. Redacted Transcript Deadline set for 3/3/2017. Release of Transcript Restriction set for 5/1/2017.(cd, Court Reporter) Modified on 2/3/2017 (cd, Court Reporter). (Entered: 01/31/2017) |
| 02/03/2017 | 58 | ORDER REGARDING DISCOVERY. Signed by Magistrate Judge J. Mark Coulson on 2/3/2017. (daws, Chambers) (Entered: 02/03/2017) |
| 02/03/2017 | 59 | NOTICE OF INTERLOCUTORY APPEAL by Marilyn Mosby. (Pothier, Karl) (Entered: 02/03/2017) |
| 02/03/2017 | | USCA Appeal Fees received $ 505 receipt number 14637095716 re 59 Notice of Interlocutory Appeal filed by Marilyn Mosby (slss, Deputy Clerk) (Entered: 02/03/2017) |
| 02/03/2017 | 60 | Transmission of Notice of Appeal and Docket Sheet to US Court of Appeals re 59 Notice of Interlocutory Appeal. IMPORTANT NOTICE: To access forms which you are required to file with the United States Court of Appeals for the Fourth Circuit please go to http://www.ca4.uscourts.gov and click on Forms & Notices.(slss, Deputy Clerk) (Entered: 02/03/2017) |
| 02/06/2017 | 61 | USCA Case Number 17-1168 for 59 Notice of Interlocutory Appeal filed by Marilyn Mosby. Case Manager - Anisha Walker (slss, Deputy Clerk) (Entered: 02/06/2017) |
| 02/06/2017 | 62 | MOTION to Stay *Pending Appeal* by Marilyn Mosby (Attachments: # 1 Memorandum in support, # 2 Text of Proposed Order)(Pothier, Karl) (Entered: 02/06/2017) |
| 02/07/2017 | 63 | MOTION to Withdraw *Appearance of Counsel* by Marilyn Mosby (Attachments: # 1 Text of Proposed Order)(Nayar, Ankush) (Entered: 02/07/2017) |
| 02/07/2017 | 64 | ORDER granting 63 Motion to Withdraw Appearance of Counsel by Marilyn Mosby. Signed by Judge Marvin J. Garbis on 2/7/2017. (jnls, Deputy Clerk) (Entered: 02/08/2017) |
| 02/08/2017 | 65 | REQUEST for Extension of Time to File *the parties' proposed Discovery Plan* (Pothier, Karl) (Entered: 02/08/2017) |
| 02/08/2017 | 66 | ORDER of Consolidation; Civil Action No. MJG-16-1288 is hereby consolidated for all purposes with Civil Action Nos. MJG-16-1304 and MJG- 16-2663. All pleadings, as of the entry of this Order, shall be captioned as is Exhibit A hereto and shall be filed only in Civil Action No. MJG-16-1288 unless otherwise directed by this Court. Signed by Judge Marvin J. Garbis on 2/8/2017. Associated Cases: 1:16-cv-01304-MJG, 1:16-cv-02663-MJG(jnls, Deputy Clerk) (Entered: 02/09/2017) |
| 02/08/2017 | | Cases associated: Create association to 1:16-cv-01288-MJG. Associated Cases: 1:16-cv-01304-MJG, 1:16-cv-02663-MJG(jnls, Deputy Clerk) (Entered: 02/09/2017) |
| 02/09/2017 | | THIS IS A CONSOLIDATED CASE. PLEASE DO NOT ELECTRONICALLY FILE OR SPREAD TEXT IN THIS CASE. ALL SUBSEQUENT PLEADINGS ARE TO BE ELECTRONICALLY FILED ONLY IN THE LEAD CASE (MJG-16-1288). Associated Cases: 1:16-cv-01304-MJG, 1:16-cv-02663-MJG(jnls, Deputy Clerk) (Entered: 02/09/2017) |
| 02/16/2017 | 67 | TRANSCRIPT ORDER ACKNOWLEDGMENT by Marilyn Mosby for proceedings held on 10/13/2016 Hearing before Judge Garbis, re 59 Notice of Interlocutory Appeal - Transcript due by 4/24/2017. (Court Reporter: Martin Giordano)(slss, Deputy Clerk) (Entered: 02/16/2017) |
| 02/28/2017 | 69 | [FILED IN ERROR - per atty] Consent MOTION for Extension of Time to File |

| | | |
|---|---|---|
| | | Response/Reply as to (60 in 1:16-cv-01288-MJG) MOTION to Stay *Pending Appeal* by Brian Scott Rice (Attachments: # 1 Text of Proposed Order)Associated Cases: 1:16-cv-01288-MJG, 1:16-cv-01304-MJG, 1:16-cv-02663-MJG(Peeples, Brandy) Modified on 3/1/2017 (krs, Deputy Clerk). (Entered: 02/28/2017) |
| 03/01/2017 | 70 | QC NOTICE: 69 Motion for Extension of Time to File Response/Reply, filed by Brian Scott Rice was filed incorrectly. <br> **THIS IS A CONSOLIDATED CASE. PLEASE DO NOT ELECTRONICALLY FILE OR SPREAD TEXT IN THIS CASE. ALL SUBSEQUENT PLEADINGS ARE TO BE ELECTRONICALLY FILED ONLY IN THE LEAD CASE (MJG-16-1288). It has been noted as FILED IN ERROR, and the document link has been disabled.* (jnls, Deputy Clerk) (Entered: 03/01/2017) |
| 03/27/2017 | 71 | (ELECTRONICALLY FILED ERROR)ORDER of USCA "consolidating" USCA Case Nos. 17-1166, 17-1168 and 17-1169 as to 59 Notice of Interlocutory Appeal filed by Marilyn Mosby. (slss, Deputy Clerk) Modified on 3/27/2017 (slss, Deputy Clerk). (Entered: 03/27/2017) |
| 04/27/2017 | 72 | NOTICE OF FILING OF OFFICIAL TRANSCRIPT of MOTIONS HEARING for the date of 10-13-2016, before Judge Marvin J. Garbis, re 59 Notice of Interlocutory Appeal. Court Reporter: Martin J. Giordano, Telephone number 410-962-4504. Transcript may be viewed at the court public terminal or purchased through the Court Reporter before the deadline for Release of Transcript Restriction. After that date it may be obtained from the Court Reporter or through PACER. Does this satisfy all appellate orders for this reporter? - Y. Redaction Request due 5/18/2017. Redacted Transcript Deadline set for 5/30/2017. Release of Transcript Restriction set for 7/26/2017.(mg, Court Reporter) (Entered: 04/27/2017) |
| 05/05/2017 | 73 | ORDER of USCA "granting" motion for stay and "stays" the District Court proceedings during the pendency of this appeal as to 59 Notice of Interlocutory Appeal filed by Marilyn Mosby (slss, Deputy Clerk) (Entered: 05/05/2017) |

| PACER Service Center | | |
|---|---|---|
| **Transaction Receipt** | | |
| 05/12/2017 11:21:23 | | |
| **PACER Login:** | kathylingo:2811705:0 | **Client Code:** | |
| **Description:** | Docket Report | **Search Criteria:** | 1:16-cv-01304-MJG |
| **Billable Pages:** | 7 | **Cost:** | 0.70 |

APPEAL,CASREF,MEM

# U.S. District Court
## District of Maryland (Baltimore)
## CIVIL DOCKET FOR CASE #: 1:16-cv-02663-MJG

White et al v. Mosby et al

Assigned to: Judge Marvin J. Garbis

Referred to: Magistrate Judge J. Mark Coulson

Lead case: 1:16-cv-01288-MJG

Member case: (View Member Case)

Related Cases: 1:16-cv-01304-MJG
                   1:16-cv-01288-MJG

Case in other court:  Fourth Circuit Court of Appeals, 17-01169
                          Circuit Court of Maryland for Baltimore City,
                          24-C-16-002600

Cause: 28:1441 Petition for Removal

Date Filed: 07/26/2016

Jury Demand: Both

Nature of Suit: 440 Civil Rights: Other

Jurisdiction: Federal Question

**Plaintiff**

**Alicia White**                       represented by    **Michael E Glass**
                                                         The Michael Glass Law Firm
                                                         201 N. Charles St Ste 1900
                                                         Baltimore, MD 21201
                                                         4107790600
                                                         Fax: 4108144604
                                                         Email: mglass@michaelglasslaw.com
                                                         *LEAD ATTORNEY*
                                                         *ATTORNEY TO BE NOTICED*

                                                         **Tony N Garcia**
                                                         Bates & Garcia, LLC.
                                                         201 N. Charles Street
                                                         Suite 1900
                                                         Baltimore, MD 21201
                                                         4108144600`
                                                         Fax: 4108144604
                                                         Email: tony@batesgarcia.com
                                                         *LEAD ATTORNEY*
                                                         *ATTORNEY TO BE NOTICED*

**Plaintiff**

**William Porter**                     represented by    **Michael E Glass**
                                                         (See above for address)
                                                         *LEAD ATTORNEY*
                                                         *ATTORNEY TO BE NOTICED*

                                                         **Tony N Garcia**
                                                         (See above for address)
                                                         *LEAD ATTORNEY*
                                                         *ATTORNEY TO BE NOTICED*

V.

**<u>Defendant</u>**

**Marilyn Mosby**                                    represented by   **Ankush Nayar**
                                                                     Office of the Attorney General of Maryland
                                                                     200 Saint Paul Pl
                                                                     Baltimore, MD 21202
                                                                     14105766300
                                                                     Fax: 14105767841
                                                                     Email: anayar@oag.state.md.us
                                                                     *TERMINATED: 02/07/2017*
                                                                     *ATTORNEY TO BE NOTICED*

                                                                     **Karl Aram Pothier**
                                                                     State of Maryland Office of the Attorney
                                                                     General
                                                                     Department of Juvenile Services
                                                                     120 West Fayette Street
                                                                     Baltimore, MD 21201
                                                                     14102303135
                                                                     Fax: 14102303143
                                                                     Email: karl.pothier@maryland.gov
                                                                     *ATTORNEY TO BE NOTICED*

**<u>Defendant</u>**

**Major Samuel Cogan**                              represented by   **Jason Robert Foltin**
                                                                     Baltimore City Law Department
                                                                     100 N Holliday St Lower Level
                                                                     Baltimore, MD 21202
                                                                     14103963297
                                                                     Fax: 14108371152
                                                                     Email: jason.foltin@baltimorecity.gov
                                                                     *ATTORNEY TO BE NOTICED*

                                                                     **Sara Elaine Gross**
                                                                     Baltimore City Law Department
                                                                     100 N. Holliday Street, Room LL04
                                                                     Baltimore, MD 21202
                                                                     4103963947
                                                                     Fax: 410-837-1152
                                                                     Email: sara.gross@baltimorecity.gov
                                                                     *ATTORNEY TO BE NOTICED*

**<u>Defendant</u>**

**State of Maryland**                               represented by   **Ankush Nayar**
                                                                     (See above for address)
                                                                     *TERMINATED: 02/07/2017*
                                                                     *ATTORNEY TO BE NOTICED*

                                                                     **Karl Aram Pothier**
                                                                     (See above for address)
                                                                     *ATTORNEY TO BE NOTICED*

| Date Filed | # | Docket Text |
|---|---|---|
| 07/26/2016 | 1 | NOTICE OF REMOVAL from Circuit Court of Maryland for Baltimore City, case number 24-C-16-002600. ( Filing fee $ 400 receipt number 14637091328), filed by State of Maryland. (Attachments: # 1 Civil Cover Sheet)(jnls, Deputy Clerk) (Entered: 07/26/2016) |
| 07/26/2016 | 2 | COMPLAINT against Samuel Cogan, Marilyn Mosby, State of Maryland, filed by Alicia White, William Porter. (Attachments: # 1 Case Information Report)(jnls, Deputy Clerk) (Entered: 07/26/2016) |
| 07/26/2016 | 3 | Summons Issued as to State of Maryland. (jnls, Deputy Clerk) (Entered: 07/26/2016) |
| 07/26/2016 | 4 | FIRST AMENDED COMPLAINT against Samuel Cogan, Marilyn Mosby, State of Maryland, filed by Alicia White, William Porter. (Attachments: # 1 Redline Amended Complaint)(jnls, Deputy Clerk) (Entered: 07/26/2016) |
| 07/26/2016 | 5 | CONSENT to Removal by Marilyn Mosby (jnls, Deputy Clerk) (Entered: 07/26/2016) |
| 07/26/2016 | 6 | CONSENT to Removal by Samuel Cogan (jnls, Deputy Clerk) (Entered: 07/26/2016) |
| 07/26/2016 | | THE ABOVE DOCUMENTS (2-6) ARE COPIES OF ORIGINAL PAPERS FILED IN THE Circuit Court of Maryland for Baltimore City. (jnls, Deputy Clerk) (Entered: 07/26/2016) |
| 08/01/2016 | 7 | Consent MOTION for Extension of Time by Marilyn Mosby, State of Maryland Responses due by 8/18/2016 (Attachments: # 1 Text of Proposed Order)(Pothier, Karl) (Entered: 08/01/2016) |
| 08/01/2016 | 8 | Local Rule 103.3 Disclosure Statement by State of Maryland. (Pothier, Karl) (Entered: 08/01/2016) |
| 08/01/2016 | 9 | Local Rule 103.3 Disclosure Statement by Marilyn Mosby. (Pothier, Karl) (Entered: 08/01/2016) |
| 08/02/2016 | 10 | Paperless ORDER granting 7 Motion for Extension of Time. Signed by Judge J. Frederick Motz on 8/2/2016. (Motz, J.) (Entered: 08/02/2016) |
| 08/02/2016 | 11 | MOTION to Dismiss for Failure to State a Claim *or for Summary Judgment* by Samuel Cogan Responses due by 8/19/2016 (Attachments: # 1 Supplement Memorandum of Law in Support of Major Cogen's Motion to Dismiss or for Summary Judgment, # 2 Exhibit 1 - Application for Statement of Charges for Plaintiff White, # 3 Exhibit 2 - Application for Statement of Charges for Plaintiff Porter, # 4 Exhibit 3 - Affidavit of Major Samuel Cogen, # 5 Exhibit 4 - Arrest Warrant for Plaintiff White, # 6 Exhibit 5 - Arrest Warrant for Plaintiff Porter, # 7 Text of Proposed Order)(Foltin, Jason) Modified on 10/11/2016 (jnls, Deputy Clerk). (Entered: 08/02/2016) |
| 08/02/2016 | 12 | Local Rule 103.3 Disclosure Statement by Samuel Cogan. (Foltin, Jason) (Entered: 08/02/2016) |
| 08/04/2016 | 13 | ORDER re consolidated proceedings. Signed by Judge Marvin J. Garbis on 8/4/2016. Associated Cases: 1:16-cv-01304-JKB, 1:16-cv-02663-JFM(jnls, Deputy Clerk) (Entered: 08/04/2016) |
| 08/08/2016 | | Case reassigned to Judge Marvin J. Garbis. Judge J. Frederick Motz no longer assigned to the case. (cags, Deputy Clerk) (Entered: 08/08/2016) |
| 08/08/2016 | 14 | ORDER re Transcript of Press Conference Signed by Judge Marvin J. Garbis on 8/8/2016. (Attachments: # 1 Transcript)(kw2s, Deputy Clerk) (Entered: 08/08/2016) |

| 08/17/2016 | 15 | FILED IN ERROR - NOTICE of Appearance by Tony N Garcia on behalf of Alicia White (Garcia, Tony) Modified on 8/18/2016 (jnls, Deputy Clerk). (Entered: 08/17/2016) |
| 08/17/2016 | 16 | FILED IN ERROR - NOTICE of Appearance by Tony N Garcia on behalf of Alicia White (Garcia, Tony) Modified on 8/18/2016 (jnls, Deputy Clerk). (Entered: 08/17/2016) |
| 08/18/2016 | 17 | NOTICE of Appearance by Tony N Garcia on behalf of All Plaintiffs (Garcia, Tony) (Entered: 08/18/2016) |
| 08/19/2016 | 18 | FILED IN ERROR - MOTION for Leave to File *to Amend Complaint* by William Porter, Alicia White Responses due by 9/6/2016 (Garcia, Tony) Modified on 8/22/2016 (jnls, Deputy Clerk). (Entered: 08/19/2016) |
| 08/19/2016 | 19 | MOTION for Extension of Time to Complete Discovery *Pursuant to FED. CIV. P. 12(d) and (56(d)* by William Porter, Alicia White Responses due by 9/6/2016 (Garcia, Tony) (Entered: 08/19/2016) |
| 08/19/2016 | 20 | FILED IN ERR0R - MOTION to Amend/Correct *Second Amended Complaint* by William Porter, Alicia White Responses due by 9/6/2016 (Garcia, Tony) Modified on 8/22/2016 (jnls, Deputy Clerk). (Entered: 08/19/2016) |
| 08/19/2016 | 21 | FILED IN ERROR - MOTION for Other Relief *Deny or Defer Entry of Dismissal or Summary Judgment* by Brian Scott Rice Responses due by 9/6/2016 (Attachments: # 1 Memorandum in Support, # 2 Exhibit Exhibit 1 Declaration of David Ellin, # 3 Exhibit Exhibit A, # 4 Exhibit Exhibit B, # 5 Exhibit Exhibit C, # 6 Text of Proposed Order Order)Associated Cases: 1:16-cv-01304-MJG, 1:16-cv-01288-MJG, 1:16-cv-02663-MJG(Ellin, David) Modified on 8/22/2016 (jnl, Deputy Clerk). (Entered: 08/19/2016) |
| 08/19/2016 | 22 | MOTION to Dismiss for Failure to State a Claim *or, in the Alternative, Motion for Summary Judgment* by Marilyn Mosby, State of Maryland Responses due by 9/6/2016 (Attachments: # 1 Memorandum in Support, # 2 Exhibit List, # 3 Exhibit Ex. 1 - Porter district court records, # 4 Exhibit Ex. 2 - White district court records, # 5 Exhibit Ex. 3 - Certificate of Death, # 6 Exhibit Ex. 4 - Porter circuit court records, # 7 Exhibit Ex. 5 - White circuit court records, # 8 Exhibit Ex. 6 - Affidavit of Tort Claims Litigation Manager)(Pothier, Karl) Modified on 10/11/2016 (jnls, Deputy Clerk). (Entered: 08/19/2016) |
| 08/22/2016 | 23 | QC NOTICE: (21 in 1:16-cv-01288-MJG, 21 in 1:16-cv-02663-MJG) Motion for Other Relief Deny or Defer Entry of Dismissal or Summary Judgment filed by Brian Scott Rice was spread to these cases incorrectly. *\*\*Case caption and case number are incorrect. It has been noted as FILED IN ERROR, and the document link has been disabled.* Associated Cases: 1:16-cv-02663-MJG, 1:16-cv-01288-MJG(jnls, Deputy Clerk) (Entered: 08/22/2016) |
| 08/22/2016 | 24 | QC NOTICE: 18 Motion for Leave to File filed by William Porter, Alicia White and 20 Motion to Amend/Correct filed by William Porter, Alicia White needs to be corrected. Please file the motion for leave to amend as the main document. The clean version of the amended complaint and the redline version of the amended complaint must be two separate attachments to the main document. The case caption of the amended complaint must have all parties listed, please do not use et al. The documents have been noted as FILED IN ERROR, and the document link has been disabled. (jnls, Deputy Clerk) (Entered: 08/22/2016) |
| 08/23/2016 | 25 | AFFIDAVIT of Service for Summons and Complaint *filed per LR 103.5.a.* served on Maryland State Treasurer, Defendant Mosby, and Defendant Cogen on 6/27/16, filed by State of Maryland. (Pothier, Karl) (Entered: 08/23/2016) |
| 08/23/2016 | 26 | NOTICE by State of Maryland *Motion to Seal Case and Complaint and 5/23/16 Order* |

| | | |
|---|---|---|
| | | *denying same* (Pothier, Karl) (Entered: 08/23/2016) |
| 08/23/2016 | 27 | Local Rule 103.5.a. Certification. (Pothier, Karl) (Entered: 08/23/2016) |
| 08/26/2016 | 28 | PROCEDURAL ORDER. Signed by Judge Marvin J. Garbis on 8/26/2016. Associated Cases: 1:16-cv-01304-MJG, 1:16-cv-02663-MJG(jnls, Deputy Clerk) (Entered: 08/29/2016) |
| 09/01/2016 | 29 | MOTION for Leave to File *Second Amended Complaint* by Alicia White Responses due by 9/19/2016 (Attachments: # 1 Errata Redlined Second Amended Complaint, # 2 Second Amended Complaint, # 3 Text of Proposed Order)(Glass, Michael) (Entered: 09/01/2016) |
| 09/07/2016 | 30 | ORDER granting 29 Motion of plaintiffs for Leave to File Second Amended Complaint. Signed by Judge Marvin J. Garbis on 9/6/2016. (jnls, Deputy Clerk) (Entered: 09/07/2016) |
| 09/07/2016 | 31 | SECOND AMENDED COMPLAINT against Samuel Cogan, Marilyn Mosby, State of Maryland, filed by Alicia White, William Porter. (Attachments: # 1 Redline Amended Complaint)(jnls, Deputy Clerk) (Entered: 09/07/2016) |
| 09/07/2016 | 32 | FILED IN ERROR - NOTICE of Appearance by David Ellin on behalf of Brian Scott Rice Associated Cases: 1:16-cv-01304-MJG, 1:16-cv-01288-MJG, 1:16-cv-02663-MJG(Ellin, David) Modified on 9/7/2016 (jnls, Deputy Clerk). (Entered: 09/07/2016) |
| 09/07/2016 | 33 | QC NOTICE: 32 Notice of Appearance filed by Brian Scott Rice was filed incorrectly. Please do not spread text unless all case captions and case numbers are indicated on the document. It has been noted as FILED IN ERROR, and the document link has been disabled. (jnls, Deputy Clerk) (Entered: 09/07/2016) |
| 09/08/2016 | 34 | Supplemental to *Memorandum in Support of Motion to Dismiss*. (Pothier, Karl) (Entered: 09/08/2016) |
| 09/09/2016 | 35 | FILED IN ERROR - Consent MOTION for Extension of Time to File Response/Reply by Brian Scott Rice Responses due by 9/26/2016 Associated Cases: 1:16-cv-01304-MJG, 1:16-cv-01288-MJG, 1:16-cv-02663-MJG(Ellin, David) Modified on 9/12/2016 (jnls, Deputy Clerk). (Entered: 09/09/2016) |
| 09/09/2016 | 36 | Consent MOTION for Extension of Time to File Response/Reply as to 28 Order by William Porter, Alicia White. Responses due by 9/26/2016 (Attachments: # 1 Text of Proposed Order Proposed Order)(Glass, Michael) (Entered: 09/09/2016) |
| 09/09/2016 | 37 | FILED IN ERROR - Proposed Order re (28 in 1:16-cv-01304-MJG) Consent MOTION for Extension of Time to File Response/Reply by Brian Scott Rice Associated Cases: 1:16-cv-01304-MJG, 1:16-cv-01288-MJG, 1:16-cv-02663-MJG(Ellin, David) Modified on 9/12/2016 (jnls, Deputy Clerk). Modified on 9/12/2016 (jnls, Deputy Clerk). (Entered: 09/09/2016) |
| 09/12/2016 | 38 | QC NOTICE: Consent Motion of plaintiffs for Extension of Time - Proposed Order. Document should be filed as a Notice and linked to the Motion for Extension of Time. Your document has been corrected by court staff. No corrective action is required in regard to this filing. Associated Cases: 1:16-cv-01304-MJG, 1:16-cv-01288-MJG, 1:16-cv-02663-MJG(jnls, Deputy Clerk) (Entered: 09/12/2016) |
| 09/13/2016 | 39 | ORDER granting 36 Consent Motion to Modify Briefing Schedule. Signed by Judge Marvin J. Garbis on 9/12/2016. (jnls, Deputy Clerk) (Entered: 09/13/2016) |
| 09/16/2016 | 40 | RESPONSE in Opposition re 22 MOTION to Dismiss for Failure to State a Claim *or, in the Alternative, Motion for Summary Judgment Opposition to Motion to Dismiss* filed by William Porter, Alicia White. Replies due by 10/3/2016. (Attachments: # 1 Memorandum |

| | | |
|---|---|---|
| | | in Support of Opposition to Motion to Dismiss, # 2 Text of Proposed Order Proposed Order)(Glass, Michael) (Entered: 09/16/2016) |
| 09/20/2016 | 41 | Supplemental to *Memorandum in Support of Motion to Dismiss*. (Foltin, Jason) (Entered: 09/20/2016) |
| 09/30/2016 | 42 | REPLY to Response to Motion re 22 MOTION to Dismiss for Failure to State a Claim *or, in the Alternative, Motion for Summary Judgment* filed by Marilyn Mosby, State of Maryland. (Pothier, Karl) (Entered: 09/30/2016) |
| 09/30/2016 | 43 | REPLY to Response to Motion re 11 MOTION to Dismiss for Failure to State a Claim *or for Summary Judgment* filed by Samuel Cogan. (Foltin, Jason) (Entered: 09/30/2016) |
| 10/10/2016 | 44 | MOTION for Leave to File *Surreply* by William Porter, Alicia White Responses due by 10/27/2016 (Attachments: # 1 Text of Proposed Order Proposed Order to File Surreply, # 2 Exhibit Memorandum in Support of Surreply, # 3 Text of Proposed Order Proposed Order Denying Motions to Dismiss)(Glass, Michael) (Entered: 10/10/2016) |
| 10/11/2016 | 45 | ORDER granting 44 Motion of plaintiffs for Leave to File Surreply. Signed by Judge Marvin J. Garbis on 10/11/2016. (jnls, Deputy Clerk) (Entered: 10/11/2016) |
| 10/11/2016 | 46 | SURREPLY re 11 MOTION to Dismiss for Failure to State a Claim *or for Summary Judgment* filed by William Porter, Alicia White. (Attachments: # 1 Text of Proposed Order)(jnls, Deputy Clerk) (Entered: 10/11/2016) |
| 10/11/2016 | 47 | ORDER re October 13 hearing. Signed by Judge Marvin J. Garbis on 10/11/2016. Associated Cases: 1:16-cv-02663-MJG, 1:16-cv-01304-MJG(jnls, Deputy Clerk) (Entered: 10/11/2016) |
| 10/13/2016 | 70 | Motion Hearing held on 10/13/2016 re 25 MOTION to Dismiss for Failure to State a Claim or, in the Alternative, Motion for Summary Judgment filed by Marilyn Mosby (pat, Deputy Clerk) (Entered: 02/17/2017) |
| 01/06/2017 | 48 | ORDER re Case Planning Conference. Signed by Judge Marvin J. Garbis on 1/6/2017. (jnls, Deputy Clerk) (Entered: 01/06/2017) |
| 01/06/2017 | 49 | MEMORANDUM AND ORDER granting in part and denying in part (8) Motion of Samuel Cogen to Dismiss ; granting in part and denying in part (25) Motion of Marilyn Mosby to Dismiss in case 1:16-cv-01304 ; granting in part and denying in part (11) Motion of Samuel Cogen to Dismiss ; granting in part and denying in part (22) Motion of Marilyn Mosby to Dismiss in case 1:16-cv-02663-MJG. Signed by Judge Marvin J. Garbis on 1/6/2017. Associated Cases: 1:16-cv-01304-MJG, 1:16-cv-02663-MJG(jnls, Deputy Clerk) (Entered: 01/06/2017) |
| 01/12/2017 | 50 | ORDER REFERRING CASE to Magistrate Judge J. Mark Coulson for Discovery. Signed by Judge Marvin J. Garbis on 1/12/2017 (cags, Deputy Clerk) (Entered: 01/12/2017) |
| 01/18/2017 | 51 | ORDER re Barristers Law Club meeting. Signed by Judge Marvin J. Garbis on 1/18/2017. Associated Cases: 1:16-cv-01304-MJG, 1:16-cv-02663-MJG(jnls, Deputy Clerk) (Entered: 01/18/2017) |
| 01/20/2017 | 52 | Consent MOTION for Extension of Time to File Answer by Samuel Cogan, Marilyn Mosby (Attachments: # 1 Text of Proposed Order)(Pothier, Karl) (Entered: 01/20/2017) |
| 01/20/2017 | 53 | ANSWER to 31 Amended Complaint by Samuel Cogan.(Gross, Sara) (Entered: 01/20/2017) |
| 01/23/2017 | 54 | ORDER granting 52 Consent Motion of defendants for Extension of Time to Answer. Signed by Judge Marvin J. Garbis on 1/23/2017. (jnls, Deputy Clerk) (Entered: 01/23/2017) |

| | | |
|---|---|---|
| 01/24/2017 | 55 | ORDER re confirming actions taken on the record of proceedings. Signed by Judge Marvin J. Garbis on 1/24/2017. Associated Cases: 1:16-cv-01304-MJG, 1:16-cv-02663-MJG(jnls, Deputy Clerk) (Entered: 01/24/2017) |
| 01/24/2017 | 56 | Status Conference held on 1/24/2017 before Judge Marvin J. Garbis and Magistrate Judge J. Mark Coulson.(Court Reporter: FTR: Vockroth) (kvs, Deputy Clerk) (Entered: 01/25/2017) |
| 01/25/2017 | 57 | AMENDED ANSWER to by Samuel Cogan. (Gross, Sara) (Entered: 01/25/2017) |
| 01/27/2017 | 58 | CORRECTED MEMORANDUM AND ORDER re: Dismissal Motions; granting in part and denying in part (8) Motion of Samuel Cogen to Dismiss ; granting in part and denying in part (25) Motion of Marilyn Mosby to Dismiss in case 1:16-cv-01304 ; granting in part and denying in part (11) Motion of Samuel Cogen to Dismiss ; granting in part and denying in part (22) Motion of Marilyn Mosby to Dismiss in case 1:16-cv-02663-MJG. Signed by Judge Marvin J. Garbis on 1/27/2017. Associated Cases: 1:16-cv-01304-MJG, 1:16-cv-02663-MJG(hmls, Deputy Clerk) (Entered: 01/27/2017) |
| 01/31/2017 | 59 | NOTICE OF FILING OF OFFICIAL TRANSCRIPT of Proceedings, Status Hearing held on January 24, 2017, before Judge Marvin J. Garbis. Court Reporter Cindy Davis, Telephone number (301) 344-3228. Total number of pages filed: 12. Transcript may be viewed at the court public terminal or purchased through the Court Reporter before the deadline for Release of Transcript Restriction. After that date it may be obtained from the Court Reporter or through PACER. Redaction Request due 2/21/2017. Redacted Transcript Deadline set for 3/3/2017. Release of Transcript Restriction set for 5/1/2017.(cd, Court Reporter) Modified on 2/3/2017 (cd, Court Reporter). Modified on 2/3/2017 (cd, Court Reporter). (Entered: 01/31/2017) |
| 02/03/2017 | 60 | ORDER REGARDING DISCOVERY. Signed by Magistrate Judge J. Mark Coulson on 2/3/2017. (daws, Chambers) (Entered: 02/03/2017) |
| 02/03/2017 | 61 | NOTICE OF INTERLOCUTORY APPEAL by Marilyn Mosby. (Pothier, Karl) (Entered: 02/03/2017) |
| 02/03/2017 | | USCA Appeal Fees received $ 505 receipt number 14637095717 re 61 Notice of Interlocutory Appeal filed by Marilyn Mosby (slss, Deputy Clerk) (Entered: 02/03/2017) |
| 02/03/2017 | 62 | Transmission of Notice of Appeal and Docket Sheet to US Court of Appeals re 61 Notice of Interlocutory Appeal. IMPORTANT NOTICE: To access forms which you are required to file with the United States Court of Appeals for the Fourth Circuit please go to http://www.ca4.uscourts.gov and click on Forms & Notices.(slss, Deputy Clerk) (Entered: 02/03/2017) |
| 02/06/2017 | 63 | USCA Case Number 17-1169 for 61 Notice of Interlocutory Appeal filed by Marilyn Mosby. Case Manager - Anisha Walker (slss, Deputy Clerk) (Entered: 02/06/2017) |
| 02/06/2017 | 64 | MOTION to Stay *Pending Appeal* by Marilyn Mosby (Attachments: # 1 memorandum in support, # 2 Text of Proposed Order)(Pothier, Karl) (Entered: 02/06/2017) |
| 02/07/2017 | 65 | MOTION to Withdraw *Appearance of Counsel* by Marilyn Mosby (Attachments: # 1 Text of Proposed Order)(Nayar, Ankush) (Entered: 02/07/2017) |
| 02/07/2017 | 66 | ORDER granting 65 Motion to Withdraw Appearance of Counsel by Marilyn Mosby. Signed by Judge Marvin J. Garbis on 2/7/2017. (jnls, Deputy Clerk) (Entered: 02/08/2017) |
| 02/08/2017 | 67 | REQUEST for Extension of Time to File *the parties' proposed Discovery Plan* (Pothier, Karl) (Entered: 02/08/2017) |
| 02/08/2017 | 68 | ORDER of Consolidation; Civil Action No. MJG-16-1288 is hereby consolidated for all |

| | | purposes with Civil Action Nos. MJG-16-1304 and MJG- 16-2663. All pleadings, as of the entry of this Order, shall be captioned as is Exhibit A hereto and shall be filed only in Civil Action No. MJG-16-1288 unless otherwise directed by this Court. Signed by Judge Marvin J. Garbis on 2/8/2017. Associated Cases: 1:16-cv-01304-MJG, 1:16-cv-02663-MJG(jnls, Deputy Clerk) (Entered: 02/09/2017) |
|---|---|---|
| 02/08/2017 | | Cases associated: Create association to 1:16-cv-01288-MJG. Associated Cases: 1:16-cv-01304-MJG, 1:16-cv-02663-MJG(jnls, Deputy Clerk) (Entered: 02/09/2017) |
| 02/09/2017 | | THIS IS A CONSOLIDATED CASE. PLEASE DO NOT ELECTRONICALLY FILE OR SPREAD TEXT IN THIS CASE. ALL SUBSEQUENT PLEADINGS ARE TO BE ELECTRONICALLY FILED ONLY IN THE LEAD CASE (MJG-16-1288). Associated Cases: 1:16-cv-01304-MJG, 1:16-cv-02663-MJG(jnls, Deputy Clerk) (Entered: 02/09/2017) |
| 02/16/2017 | 69 | TRANSCRIPT ORDER ACKNOWLEDGMENT by Marilyn Mosby for proceedings held on 10/13/2016 Hearing before Judge Garbis, re 61 Notice of Interlocutory Appeal - Transcript due by 4/24/2017.(Court Reporter: Martin Giordano)(slss, Deputy Clerk) (Entered: 02/16/2017) |
| 02/28/2017 | 71 | [FILED IN ERROR - per atty] Consent MOTION for Extension of Time to File Response/Reply as to (60 in 1:16-cv-01288-MJG) MOTION to Stay *Pending Appeal* by Brian Scott Rice (Attachments: # 1 Text of Proposed Order)Associated Cases: 1:16-cv-01288-MJG, 1:16-cv-01304-MJG, 1:16-cv-02663-MJG(Peeples, Brandy) Modified on 3/1/2017 (krs, Deputy Clerk). (Entered: 02/28/2017) |
| 03/01/2017 | 72 | QC NOTICE: 71 Motion for Extension of Time to File Response/Reply, filed by Brian Scott Rice was filed incorrectly.<br>***THIS IS A CONSOLIDATED CASE. PLEASE DO NOT ELECTRONICALLY FILE OR SPREAD TEXT IN THIS CASE. ALL SUBSEQUENT PLEADINGS ARE TO BE ELECTRONICALLY FILED ONLY IN THE LEAD CASE (MJG-16-1288). It has been noted as FILED IN ERROR, and the document link has been disabled.* (jnls, Deputy Clerk) (Entered: 03/01/2017) |
| 04/27/2017 | 73 | NOTICE OF FILING OF OFFICIAL TRANSCRIPT of MOTIONS HEARING for the date of 10-13-2016, before Judge Marvin J. Garbis, re 61 Notice of Interlocutory Appeal. Court Reporter: Martin J. Giordano, Telephone number 410-962-4504. Transcript may be viewed at the court public terminal or purchased through the Court Reporter before the deadline for Release of Transcript Restriction. After that date it may be obtained from the Court Reporter or through PACER. Does this satisfy all appellate orders for this reporter? - Y. Redaction Request due 5/18/2017. Redacted Transcript Deadline set for 5/30/2017. Release of Transcript Restriction set for 7/26/2017.(mg, Court Reporter) (Entered: 04/27/2017) |
| 05/05/2017 | 74 | ORDER of USCA "granting" motion for stay and "stays" the District Court proceedings during the pendency of this appeal as to 61 Notice of Interlocutory Appeal filed by Marilyn Mosby. (slss, Deputy Clerk) (Entered: 05/05/2017) |

| PACER Service Center | | |
|---|---|---|
| **Transaction Receipt** | | |
| 05/12/2017 11:20:37 | | |
| **PACER Login:** | kathylingo:2811705:0 | **Client Code:** | |
| **Description:** | Docket Report | **Search** | 1:16-cv-02663- |

| | | Criteria: | MJG |
|---|---|---|---|
| **Billable Pages:** | 7 | **Cost:** | 0.70 |



**Chambers of**
**Hon. Marvin J. Garbis**
**United States District Judge**

**UNITED STATES DISTRICT COURT**
**DISTRICT OF MARYLAND**
**101 W. LOMBARD STREET**
**BALTIMORE, MARYLAND  21201**

August 8, 2016

ALL COUNSEL OF RECORD

Re:  <u>Related Mosby/Cogen Cases, MJG-16-1288, 1304, 2663</u>

Dear Counsel:

The letter Order of August 4 provided for Defendant Mosby to file her anticipated dismissal motions by August 19, 2016.

Each Complaint asserts claims based upon statements made by Defendant, referring specifically to Defendant Mosby's statements at a press conference on May 1, 2015.  The Complaints include some quotations from the press conference.  However, since there appears no basis for dispute as to what Defendant Mosby said at this press conference, the entirety of the said press conference should be considered in regard to Plaintiffs' claims.

Accordingly:

1.    The Complaint in each case is hereby be deemed to incorporate, by reference, the video of the press conference of May 1, 2015 found at https://www.youtube.com/watch?v=X5lCSxiFREQ.

2.    By September 15, 2016, any proposal for correction of the attached transcript of the press conference shall be filed.

Although in letter form, this document constitutes an Order and shall be docketed as such by the Clerk.

Yours truly,

_____/s/_____
Marvin J. Garbis
United States District Judge

CC: Clerk

Time.com – Transcript of Marilyn J. Mosby's Statement on Freddie Gray

May 1, 2015 - http://time.com/3843870/marilyn-mosby-transcript-freddie-gray/

Good morning. First and foremost I need to publicly express my sympathies for the family and loved ones of Freddie Gray. I had the opportunity to meet with Mr Gray's family to discuss some of the details of the case and the procedural steps going forward. I assured his family that no one is above the law and that I would pursue justice on their behalf.

To the thousands of city residents, community organizers, faith leaders and political leaders that chose to march peacefully throughout Baltimore, I commend your courage to stand for justice. I also commend the brave men and women, both in uniform and out, who have stepped up Monday night to protect our communities from those who wish to destroy it.

As the city's Chief Deputy Prosecutor I've been sworn to uphold justice and to treat every individual within the jurisdiction of Baltimore city equally and fairly under the law. I take this oath seriously and I want the public to know that my administration is committed to creating a fair and equitable justice system for all. No matter what your occupation, your age, your race, your color or your creed. It is my job to examine and investigate the evidence of each case and apply those facts to the elements of a crime, in order to make a determination as to whether individuals should be prosecuted. This is a tremendous responsibility, but one that I saw and accepted when the citizens of Baltimore city elected me as the state's attorney, and it is precisely what I did in the case of Freddie Gray.

Once alerted about this incident on April 13, investigators from my police integrity unit were deployed to investigate the circumstances surrounding Mr. Gray's apprehension. Over the course of our independent investigation, in the untimely death of Mr. Gray, my team worked around the clock; 12 and 14 hour days to canvas and interview dozens of witnesses; view numerous hours of video footage; repeatedly reviewed and listened to hours of police video tape statements; surveyed the route, reviewed voluminous medical records; and we leveraged the information made available by the police department, the community and family of Mr. Gray.

The findings of our comprehensive, thorough and independent investigation, coupled with the medical examiner's determination that Mr. Gray's death was a homicide that we received today, has led us to believe that we have probable cause to file criminal charges.

The statement of probable cause is as follows:

On April, 12 2015 between 8:45 and 9:15 a.m., near the corner of North Avenue and Mount Street. Lt. Rice of the Baltimore Police Department while on bike patrol with Officer Garrett Miller and Edward Nero made eye contact with Freddie Carlos Gray Jr.

1

Having made eye contact with Mr. Gray, Mr. Gray subsequently ran from Lt. Rice. Lt. Rice then dispatched over departmental radio that he was involved in a foot pursuit at which time bike patrol officers and Nero began to pursue Mr. Gray. Having come in contact with pursuing officers, Mr. Gray surrendered to Officers Miller and Nero in the vicinity in the 1700 block of Presbury Street.

Officer Miller and Nero then handcuffed Mr. Gray and moved him to a location a few feet away from his surrendering location Mr. Gray was then placed in a prone position with his arms handcuffed behind his back. It was at this time that Mr. Gray indicated he could not breath and requested an inhaler to no avail. Officer Miller and Nero then placed Mr. Gray in a seated position and substantially found a knife clipped to the inside of his pants pocket. The blade of the knife was folded into the handle. The knife was not a switchblade and is lawful under Maryland law. These officers then removed the knife and placed it on the sidewalk.

Mr. Gray was then placed back down on his stomach at which time Mr. Gray began to flail his legs and scream as Officer Miller placed Mr. Gray in a restraining technique known as a leg lace. While Officer Nero physically held him down against him will while a BPD wagon arrived to transport Mr. Gray.

Lt. Rice, Officer Miller and Officer Nero failed to establish probable cause for Mr. Gray's arrest as no crime had been committed by Mr. Gray. Accordingly Lt. Rice Officer MIller and Office Nero illegally arrested Mr. Gray. Upon arrival of the transport wagon driven by Officer Caesar Goodson. Lt. Rice Officer Miller and Officer Nero loaded Mr. Gray into the wagon and at no point was he secured by a seatbelt while in the wagon contrary to a BPD general order. Lt. Rice then directed the BPD wagon to stop at Baker Street. At Baker Street, Lt. Rice, Officer Nero and Officer Miller removed Mr. Gray from the wagon, placed flexi-cuffs on his wrists, placed leg shackles on his ankles and completed required paperwork.

Officer Miller, Officer Nero and Lt. Rice then loaded Mr. Gray back into the wagon, placing him on his stomach, head first onto the floor of the wagon. Once again Mr. Gray was not secured by a seatbelt in the wagon contrary to a BPD general order.

Lt. Rice then directed Officer Goodson to transport Mr. Gray to the Central Booking & Intake Facility. Following transport from Baker Street, Mr. Gray suffered a severe and critical neck injury as a result of being handcuffed, shackled by his feet and unrestrained inside of the BPD wagon.

From Baker Street, Officer Goodson proceeded to the vicinity of Mosher Street and Fremont Avenue where he subsequently parked the wagon and proceeded to the back of the wagon to observe Mr. Gray. Despite stopping for the purpose of checking on Mr. Gray's condition, at no point did he seek nor did he render any medical assistance for Mr. Gray. Officer Goodson returned to his driver's seat and proceed toward the Central Booking & Intake facility with Mr. Gray still unsecured by a seatbelt contrary to a BPD general order.

J.A. 000030

Several blocks later, Officer Goodson called into dispatch that he needed to check on the status of his prisoner and requested additional units at Dolphin Street and Druid Hill Avenue. Officer William Porter arrived on the scene at Dolphin Street and Druid HIll Avenue. Both Officer Goodson and porter proceeded to the back of the wagon to check on the status of Mr. Gray's condition. Mr. Gray at that time requested help and indicated that he could not breathe. Officer Porter asked Mr. Gray if he needed a medic at which time Mr. Gray indicated at least twice that he was in need of a medic. Officer Porter then physically assisted Mr. Gray from the floor of the van to the bench however despite Mr. Gray's appeal for a medic, both officers assessed Mr. Gray's condition and at no point did either of them restrain Mr. Gray per BPD general order nor did they render or request medical assistance.

While discussing the transportation of Mr. Gray for medical attention, a request for additional units was made for an arrest at the 1600 West North Avenue. Officer Porter left the vicinity of Druid Hill Avenue to assist in the arrest of another prisoner at North Avenue. Despite Mr. Gray's obvious and recognized need for medical assistance, Officer Goodson in a grossly negligent manner chose to respond to the 1600 block of West North Avenue with Mr. Gray still unsecured by a seatbelt in the wagon without rendering to or summoning medical assistance for Mr. Gray.

Officer Goodson arrived at North Avenue to transport the individual arrested at the location of North Avenue and Pennsylvania Avenue at which time he was again met by Officer Nero, Miller and Porter. Once the wagon arrived, Officer Goodson walked to the back of the wagon and again opened the doors to the wagon to make observations of Mr. Gray.

Sgt. Alicia White, Officer Porter and Officer Goodson observed Mr. Gray unresponsive on the floor of the wagon. Sgt. White who is responsible for investigating two citizen complaints pertaining to Mr. Gray's illegal arrest spoke to the back of Mr. Gray's head. When he did not respond, she did nothing further despite the fact that she was advised that he needed a medic. She made no effort to look or assess or determine his condition.

Despite Mr. Gray's seriously deteriorating medical condition, no medical assistance was rendered or summoned for Mr. Gray at that time by any officer.

After completing the North Avenue arrest and loading the additional prisoner into the opposite side of the wagon containing Mr. Gray, Officer Goodson then proceeded to the Western District Station where contrary to the BPD general order, he again failed to restrain Mr. Gray in the wagon for at least the fifth time.

At the Western District Police Station the defendant arrested at North Avenue was unloaded, escorted and secured inside of the police station prior to attending to Mr. Gray.

By the time Officer Zachary Novak and Sgt. White attempted to remove Mr. Gray from the wagon, Mr. Gray was no longer breathing at all. A medic was finally called to the scene where upon arrival, the medic determined Mr. Gray was now in cardiac arrest and was critically and severely injured.

3

Mr. Gray was rushed to the University of Maryland Shock Trauma where he underwent surgery. On April 19, 2015, Mr. Gray succumbed to his injuries and was pronounced dead. The manner of death deemed homicide by the Maryland Medical Examiner is believed to be the result of a fatal injury that occurred while Mr. Gray was unrestrained by a seatbelt in the custody of the Baltimore Police Department wagon.

All events occurred in Baltimore City State of Maryland. While each of these officers are presumed innocent until proven guilty, we have brought the following charges:

Officer Caesar Goodson is being charged with second-degree depraved heart murder, involuntary manslaughter, second-degree negligent assault, manslaughter by vehicle by means of gross negligence, manslaughter by vehicle by means of criminal negligence, misconduct in office by failure to secure prisoner, failure to render aid.

Officer William Porter is being charged with involuntary manslaughter, assault in the second degree, misconduct in office.

Lt. Brian Rice is being charged with involuntary manslaughter, assault in the second degree, assault in the second degree, misconduct in office and false imprisonment.

Officer Edward Nero is being charged with assault in the second degree intentional, assault in the second degree negligent, misconduct in office and false imprisonment.

Officer Garrett Miller is being charged with intentional assault in the second-degree, assault in the second-degree negligent, misconduct in office and false imprisonment.

Sgt. Alicia White is being charged with manslaughter, involuntary manslaughter, second-degree assault, misconduct in office.

While I am committed to transparency, what I have revealed here today is now a matter of public record. However, the evidence we have collected and continue to collect cannot ethically be released to the public and I strongly condemn anyone in law enforcement with access to trial evidence who has leaked information prior resolution of this case. You are are only damaging our ability to conduct a fair and impartial process for all parties involved.

I hope that as we move forward with this case everyone will respect due process and refrain from doing anything that would jeopardize our ability to seek justice.

To the people of Baltimore and the demonstrators across America: I heard your call for 'No justice, no peace.' Your peace is sincerely needed as I work to deliver justice on behalf of this young man.

To those that are angry, hurt or have their own experiences of injustice at the hands of police officers I urge you to channel that energy peacefully as we prosecute this case I have heard your calls for 'No justice, no peace,' however your peace is sincerely needed as I work to deliver justice on behalf of Freddie Gray.

To the rank and file officers of the Baltimore Police Department, please know that these accusations of these six officers are not an indictment on the entire force.

I come from five generations of law enforcement. My father was an officer, my mother was an officer, several of my aunts and uncles, my recently departed and beloved grandfather was one of the founding members of the first black police organization in Massachusetts. I can tell you that the actions of these officers will not and should not, in any way, damage the important working relationships between police and prosecutors as we continue to fight together to reduce crime in Baltimore. Thank you for your courage, committee and sacrifice for the betterment of the community.

Lastly, I'd like to thank my team for working around the clock since the day that we learned of this tragic incident. We have conducted a thorough and independent investigation of this case. This independent investigation was led by my deputy state attorneys, Janice Bledsoe and Michael Schatzow, my investigators Wayne Williams, Avon Mackle and the hardworking investigative team that were here and still are very much committed to pursuing justice.

I'd also like the Baltimore City Police department particularly Major Branford of the homicide unit and Rodney Hill of the Internal Affairs Division for providing us with a hard copy of the investigative material yesterday, information we already had. And lastly. I'd like to thank Baltimore City Sheriff's Department in assisting with us as an independent law enforcement agency with police powers.

To the governor to this great state of Maryland, thank you for expediting the autopsy report which enabled us to do our job.

Last but certainly not least, to the youth of the city. I will seek justice on your behalf. This is a moment. This is your moment. Let's insure we have peaceful and productive rallies that will develop structural and systemic changes for generations to come. You're at the forefront of this cause and as young people, our time is now.

Case 1:16-cv-01288-MJG   Document 25-4   Filed 08/19/16   Page 2 of 9

DISTRICT COURT OF MARYLAND FOR Baltimore City, Wabash Ave.                    (City/County)

LOCATED AT (COURT ADDRESS)
5800 Wabash Ave.

Baltimore, MD  21215-3330

DC Case No: 4B02294450        RELATED CASES:

| COMPLAINANT | DEFENDANT |
|---|---|

Cogen, Maj. Sam
Printed Name

100 N. Calvert Street
Number and Street Address

Baltimore, MD 21202          410-396-1155
City, State, and Zip Code          Telephone

Baltimore City Sheriff's Office #0073
Agency, sub-agency, and I.D. #          (Officer Only)

Nero, Edward Michael

[redacted]
City, State, and Zip Code          Telephone

CC#

DEFENDANT'S DESCRIPTION: Driver's License# [redacted]          Sex M  Race W  Ht 6'1"  Wt 170

Hair ____ Eyes ____ Complexion ____ Other ____          D.O.B [redacted]  ID

## APPLICATION FOR STATEMENT OF CHARGES          Page 1 of 5

I, the undersigned, apply for statement of charges and a summons or warrant which may lead to the arrest of the
above named Defendant because on or about April 12, 2015 at (See Below)
          Date          Place
_____, the above named Defendant
On April 12, 2015, between 8:45 and 9:15 a.m., near the corner of North Avenue and Mount Street, Lieutenant Brian Rice
          (Concise statement of facts showing that there is probable cause to believe that a crime has been committed and that the Defendant has committed it):
of the Baltimore Police Department (BPD), while on bike patrol with Officers Garrett Miller and Edward Nero, made eye

contact with Mr. Freddie Carlos Gray, Jr. (DOB [redacted]). Having made eye contact, Mr. Gray subsequently ran from

Lt. Rice. Lt. Rice then dispatched over a departmental radio that he was involved in a foot pursuit, at which time bike

patrol Officers Miller and Nero also began to pursue Mr. Gray. (continued)

          (Continued on attached 4 pages) (DC/CR 1A)
I solemnly affirm under the penalties of perjury that the contents of this Application are true to the best of my knowledge,
information and belief.
May 1, 2015
          Date          Officer's Signature

I have read or had read to me and I understand the Notice on the back of this form.

May 1, 2015
          Date          Applicant's Signature

Subscribed and sworn to before me this 1st day of May          2015
Time: 8:30 A M     Judge/Commissioner          Linda R. Lewis          Year 1243 I.D.

I understand that a charging document will be issued and that I must appear for trial ☐ on _____
          Date
at _____, ☑ when notified by the Clerk, at the Court location shown at the top of this form.
          Time

          Applicant's Signature

☑ I have advised applicant of shielding right.  ☑ Applicant declines shielding.

☐ I declined to issue a charging document because of lack of probable cause.

5-1-15
          Date          Commissioner

          True Test Copy

          Administrative Clerk

DC/CR 1 (Rev. 12/2006)

          Tr.#141001528894

J.A. 000034          Exhibit 2 Page 1



DISTRICT COURT OF MARYLAND FOR Baltimore City, Wabash Ave. ........................ (City / County )

| LOCATED AT ( COURT ADDRESS ) | |
|---|---|
| 5800 Wabash Ave. | |
| Baltimore, MD 21215-3330 | |



DC Case No: 4B02294450

DEFENDANT'S NAME (LAST, FIRST, M.I.)

Nero, Edward Michael

### APPLICATION FOR STATEMENT OF CHARGES (CONTINUED)    Page 2 of 5

Having come in contact with the pursuing officers, Mr. Gray surrendered to Officers Miller and Nero in the vicinity of the 1700 block of Presbury Street. Officers Miller and Nero then handcuffed Mr. Gray and moved him to a location a few feet away from his surrendering location. Mr. Gray was then placed in a prone position with his arms handcuffed behind his back. It was at this time that Mr. Gray indicated that he could not breathe and requested an inhaler to no avail. Officers Miller and Nero then placed Mr. Gray in a seated position and subsequently found a knife clipped to the inside of his pants pocket. The blade of the knife was folded into the handle. The knife was not a switchblade knife and is lawful under Maryland law. These officers subsequently removed the knife and placed it on the sidewalk. Mr. Gray was then placed back down on his stomach, at which time Mr. Gray began to flail his legs and scream as Officer Miller placed Mr. Gray in a restraining technique known as a "leg lace" while Officer Nero physically held him down against his will until a BPD wagon arrived to transport Mr. Gray. Lt. Rice, Officer Miller and Officer Nero failed to establish probable cause for Mr. Gray's arrest as no crime had been committed by Mr. Gray. Accordingly, Lt. Rice, Officer Miller, and Officer Nero illegally arrested Mr. Gray . Upon arrival of the transport wagon, driven by Officer Ceasar Goodson, Lt. Rice, Officer Nero, and Officer Miller loaded Mr. Gray into the wagon and at no point was he secured by a seat belt while in the wagon, contrary to a BPD General Order.    Lt. Rice then directed the BPD wagon to stop at Baker Street. At Baker Street, Lt. Rice, Officer Nero and Officer Miller removed Mr. Gray from the wagon, placed flex cuffs on his wrists, placed leg shackles on his ankles, and completed required paperwork.   Officer Miller, Officer Nero and Lt. Rice then

05/01/15
_____ Date

_____ Applicant's Signature

True Test Copy
_____ Administrative Clerk
J. Maurer 71316

Tr.# 141001528894

COURT COPY

PC DC/CR 1A (Rev. 1/02)

Exhibit 2 Page 2

J.A. 000035



DISTRICT COURT OF MARYLAND FOR Baltimore City, Wabash Ave. ..........(City / County )



| | |
|---|---|
| LOCATED AT ( COURT ADDRESS )<br>5800 Wabash Ave.<br>Baltimore, MD  21215-3330 | DISTRICT COURT<br>CASE NUMBER |

DEFENDANT'S NAME (LAST, FIRST, M.I.)

Nero, Edward Michael

**APPLICATION FOR STATEMENT OF CHARGES (CONTINUED)**   Page 3 of 5

loaded Mr. Gray back into the wagon, placing him on his stomach, head first onto the floor of the wagon. Once again, Mr. Gray was not secured by a seatbelt in the wagon, contrary to a BPD General Order. Lt. Rice then directed Officer Goodson to transport Mr. Gray to the Central Booking and Intake Facility.

Following transport from Baker Street, Mr. Gray suffered a severe and critical neck injury as a result of being handcuffed, shackled by his feet, and unrestrained inside of the BPD wagon.  From Baker Street, Officer Goodson proceeded to the vicinity of Mosher Street and Fremont Avenue, where he subsequently parked the wagon and proceeded to the back of the wagon in order to observe Mr. Gray. Despite stopping for the purpose of checking on Mr. Gray's condition, at no point did he seek, nor did he render, any medical assistance for Mr. Gray.  Officer Goodson returned to his driver's seat and proceeded toward the Central Booking and Intake Facility, with Mr. Gray still unsecured by a seat belt, contrary to a BPD General Order.

Several blocks later, Officer Goodson called into dispatch that he needed to check on the status of his prisoner and requested additional units at Dolphin Street and Druid Hill Avenue. Officer William Porter arrived on the scene near Dolphin Street and Druid Hill Avenue.  Both Officer Goodson and Officer Porter proceeded to the back of the wagon to check on the status of Mr. Gray's condition.  Mr. Gray requested "help" and indicated that he could not breathe. Officer Porter asked Mr. Gray if he needed a medic, at which time, Mr. Gray indicated at least twice that he was in need of a medic. Officer Porter then physically assisted Mr. Gray from the floor of the van to the bench. However, despite Mr. Gray's appeal for a medic, both officers assessed Mr. Gray's

05/01/15
Date

Applicant's Signature

True Test Copy

Administrative Clerk

Tr.# 141001528894

PC DC/CR 1A (Rev. 1/02)

COURT COPY

Exhibit 2 Page 3

**DISTRICT COURT OF MARYLAND FOR** Baltimore City, Wabash Ave. ...........................(City / County )

LOCATED AT  ( COURT ADDRESS )
5800 Wabash Ave.
Baltimore, MD  21215-3330

DC Case No: 4B02294450



DEFENDANT'S NAME (LAST, FIRST, M.I.)

Nero, Edward Michael

**APPLICATION FOR STATEMENT OF CHARGES (CONTINUED)**   Page 4 of 5

condition and at no point did either of them restrain Mr. Gray, per BPD General Order, nor did they render or request medical assistance.

While discussing the transportation of Mr. Gray for medical attention, a request for additional units was made for an arrest at 1600 W. North Avenue. Officer Porter left the vicinity of Dolphin Street and Druid Hill Avenue to assist in the arrest of another prisoner at North Avenue. Despite Mr. Gray's obvious and recognized need for medical assistance, Officer Goodson, in a grossly negligent manner chose to respond to the 1600 block of W. North Avenue, with Mr. Gray still unsecured by a seat belt in the wagon, without rendering to or summonsing medical assistance for Mr. Gray

Officer Goodson arrived at North Avenue to transport the individual arrested at the location of North and Pennsylvania Avenues, at which time he was again met by Officers Nero, Miller, Porter, and Lt. Rice. Once the wagon arrived, Officer Goodson walked to the back of the wagon and again opened the doors to the wagon to make observations of Mr. Gray. Sgt. Alicia White, Officer Porter, and Officer Goodson observed Mr. Gray unresponsive on the floor of the wagon. Sgt. White, who was responsible for investigating two citizen complaints pertaining to Mr. Gray's illegal arrest, spoke to the back of Mr. Gray's head. When he did not respond, she did nothing further despite the fact that she was advised that he needed a medic. She made no effort to look, assess or determine his condition. Despite Mr. Gray's seriously deteriorating medical condition, no medical assistance was rendered to or summonsed for Mr. Gray at that time by any officer.

After completing the North Avenue arrest and loading the additional prisoner into

05/01/15
Date

Applicant's Signature

True Test Copy

Administrative Clerk

By: _____ Date: 7/3/16

Tr.#141001528894

PC DC/CR 1A (Rev. 1/02)

COURT COPY

Exhibit 2 Page 4

DISTRICT COURT OF MARYLAND FOR

LOCATED AT (COURT ADDRESS)

5800 Wabash Av

Balto, MD 21215

DC Case No: 4B02294450

DEFENDANT'S NAME (LAST, FIRST, M.I.)

Nero, Edward Michael

## APPLICATION FOR STATEMENT OF CHARGES (CONTINUED)  Page 5 of 5

the opposite side of the wagon containing Mr. Gray, Officer Goodson then proceeded to the Western District Police Station, where contrary to the BPD General Order, he again failed to restrain Mr. Gray in the wagon for at least the fifth time.

At the Western District Police Station, the defendant arrested at North Avenue was unloaded, escorted, and secured inside of the police station prior to attending to Mr. Gray. By the time Officer Zachary Novak, Sgt. White, and an unknown officer attempted to remove Mr. Gray from the wagon, Mr. Gray was no longer breathing at all. A medic was finally called to the scene, where upon arrival, the medic determined that Mr. Gray was now in cardiac arrest and was critically and severely injured.

Mr. Gray was rushed to the University of Maryland Shock Trauma Unit, where he underwent surgery. On April 19, 2015, Mr. Gray succumbed to his injuries and was pronounced dead. The manner of death, deemed a homicide by the Maryland State Medical Examiner, is believed to be the result of a fatal injury that occurred while Mr. Gray was unrestrained by a seat belt in the custody of the BDP wagon. All events occurred in Baltimore City, Maryland.

05/01/15
Date

Applicant's Signature

SAM COGEN #0073
Printed Name

True Test Copy

Administrative Clerk

Tr.#141001528894

DC-CR-001A (Rev. 04/2015)

Exhibit 2 Page 5

J.A. 000038



# DISTRICT COURT OF MARYLAND FOR Baltimore City

Located at 5800 Wabash Avenue, Baltimore, Maryland 21215

Case No. 4B02294450

**STATE OF MARYLAND**    VS.    **NERO, EDWARD MICHAEL**

COMPLAINANT:
COGEN, MAJOR SAM
100 N. CALVERT STREET
BALTIMORE, MD 21202

CC#: 7150400000    SID:
LID:    DL#:
Race: 2    Sex: M    Ht: 6' 1"    Wt: 170    Hair:    Eyes:
DOB:    Phone(H):    Phone(W):

## STATEMENT OF CHARGES

UPON THE FACTS CONTAINED IN THE APPLICATION OF COGEN, MAJOR SAM IT IS FORMALLY CHARGED THAT NERO, EDWARD MICHAEL at the dates, times and locations specified below:

| NUM | CHG/CIT | STATUTE | PENALTY | DESCRIPTION OF THE CHARGE |
|-----|---------|---------|---------|---------------------------|
| 001 | 1 1415 | CR 3 203 | 10 Y &/or $2,500.00 | ASSAULT-SEC DEGREE<br>On or About 04/12/2015 - 04/12/2015 at 8:45AM<br>1700 BLOCK OF N. MOUNT STREET<br>BALTIMORE, MARYLAND<br>...did assault Freddie Gray, Jr. in the second degree in violation of CR 3-203, contrary to the form of the act of the assembly in such case made and provided and against the peace, government, and dignity of the state.<br>Against the Peace, Government, and Dignity of the State. |
| 002 | 1 1415 | CR 3 203 | 10 Y &/or $2,500.00 | ASSAULT-SEC DEGREE<br>On or About 04/12/2015 - 04/12/2015 at 8:45AM<br>1600-1700 BLOCKS OF N. MOUNT STREET<br>BALTIMORE, MARYLAND<br>...did assault FREDDIE GRAY, JR. in the second degree in violation of CR 3-203, contrary to the form of the act of the assembly in such case made and provided and against the peace, government, and dignity of the state.<br>Against the Peace, Government, and Dignity of the State. |
| 003 | 2 0645 | CL | | MISCONDUCT IN OFFICE<br>On or About 04/12/2015 - 04/12/2015 at 8:45AM<br>1700 BLOCK OF PRESBURY STREET<br>BALTIMORE, MARYLAND<br>...That Edward Michael Nero, a public officer, while acting under color of his office, corruptly did an unlawful act and corruptly failed to do an act required by the duties of his office and corruptly did a lawful act in violation of the common law of Maryland.<br>Against the Peace, Government, and Dignity of the State. |
| 004 | 2 0645 | CL | | MISCONDUCT IN OFFICE<br>On or About 04/12/2015 - 04/12/2015 at 8:45AM<br>1600-1700 BLOCKS OF N. MOUNT STREET<br>BALTIMORE, MARYLAND<br>...That Edward Michael Nero, a public officer, while acting under color of his office, corruptly did an unlawful act and corruptly failed to do an act required by the duties of his office and corruptly did a lawful act in violation of the common law of Maryland.<br>Against the Peace, Government, and Dignity of the State. |
| 005 | 1 0042 | CL | | FALSE IMPRISONMENT<br>On or About 04/12/2015 - 04/12/2015 at 8:45AM<br>1700 BLOCK OF PRESBURY STREET<br>BALTIMORE, MARYLAND<br>...did unlawfully and intentionally detain Freddie Gray, Jr., in violation of the Common Law.<br>Against the Peace, Government, and Dignity of the State. |

True Test Copy

Administrative Clerk

7 3 16

Date : 05/01/2015  Time : 8:49 AM

Tracking No. 141001528894

Judicial Officer:    1242

# DISTRICT COURT OF MARYLAND FOR Baltimore City

Located at 5800 Wabash Avenue, Baltimore, Maryland 21215

**Case No. 4B02294450**

## STATE OF MARYLAND    VS.    NERO, EDWARD MICHAEL

CC#: 7150400000        SID:
LID:                          DL#:
Race: 2    Sex: M    Ht: 6' 1"    Wt: 170    Hair:    Eyes:
DOB:                          Phone(H):                Phone(W):

| Charge | Statute | Arrest |
|---|---|---|
| ASSAULT-SEC DEGREE | CR 3 203 | |
| MISCONDUCT IN OFFICE | CL | |
| FALSE IMPRISONMENT | CL | |

| Charge | Statute | Arrest |
|---|---|---|
| ASSAULT-SEC DEGREE | CR 3 203 | |
| MISCONDUCT IN OFFICE | CL | |

15671258C

---

## ARREST WARRANT ON CHARGING DOCUMENT - Warrant No. D140689043

STATE OF MARYLAND, Baltimore City
TO ANY PEACE OFFICER, Greetings:

YOU ARE ORDERED to arrest and bring before a judicial officer the above-named Defendant as soon as practicable and without unnecessary delay. If a judicial officer is not readily available, this Warrant shall authorize the prisoner's detention until compliance is had with Rule 4-212 and the arresting officer is authorized and required to comply with Rule 4-212.

**IF THE DEFENDANT IS NOT IN CUSTODY FOR ANOTHER OFFENSE,**
Initial appearance is to be held in county in which Warrant was issued.

IF THE DEFENDANT IS IN CUSTODY FOR ANOTHER OFFENSE, this Warrant is to be lodged as a detainer for the continued detention of the Defendant for the offense charged in the charging document. When the Defendant is served with a copy of the charging document and Warrant, the Defendant shall be taken before a judicial officer of the District Court.

Date: 05/01/2015    Time: 8:53 AM    Judge/Commissioner: _Linda Lewis_    ID: 1243

Given to: **BALTIMORE CITY SHERIFF'S DEPT**

### RETURN OF SERVICE

☑ I certify that at _1:31 P_ M on _5/1/15_ at _CENTRAL BOOKING INTAKE CENTER_, I executed this Arrest Warrant by arresting the Defendant and delivered a copy of the Statement of Charges to the Defendant.

☑ I left a copy of the Warrant and Charging Document as a detainer for the continued detention of the Defendant at:

Facility: _CENTRAL BOOKING INTAKE CENTER_

Location: _300 E. MADISON ST. BALTO MD 21202_

Signature & Title of Peace Officer: _____ / SERGEANT

Printed Name of Officer: _E. SANTIAGO_

Agency, Sub-Agency, I.D.: _ZZ, ZA #0161_

Date: _5/1/15_

True Test Copy
Administrative Clerk
Date: 7/13/16

Tracking No: 141001528894

## ARREST WARRANT ON CHARGING DOCUMENT

COURT

Page: 1
Date: 05/22/2015
Room: 5
Time: 10:17 AM



Case No. 4B02294450



# DISTRICT COURT OF MARYLAND FOR BALTIMORE CITY

Located at 5800 WABASH AVE., BALTIMORE, MD 21215-3330

## STATE OF MARYLAND VS. NERO, EDWARD MICHAEL

| | | | |
|---|---|---|---|
| CC #:7150400000 | | State ID: ▮▮▮ | LocID: |
| Eyes: | Hair: | Height: 6'01" | Weight: 170 lb. |
| Race: 2 | Sex: M | DOB: ▮▮▮ | DL #: |

## DEFENDANT TRIAL SUMMARY

A Hearing on the above case was held today, 05/22/2015
by Judge KEVIN MICHAEL WILSON
Case has been forwarded to the Circuit Court for BALTIMORE CITY

An Indictment has been filed. # 115141033.

    001  ASSAULT-SEC DEGREE

    002  ASSAULT-SEC DEGREE

    003  MISCONDUCT IN OFFICE

    004  MISCONDUCT IN OFFICE

    005  FALSE IMPRISONMENT

Your next Court Appearance will be at the Circuit Court on 05/27/2015.

**05/22/2015**    **Defendant**_____    **(NERO, EDWARD MICHAEL)**

You may be entitled to expunge this record and any DNA Sample and DNA Record relating to the charge or charges against you if you meet certain conditions. Further information on expungement is contained in a brochure available at the Clerk's Office or on our website at http://www.courts.state.md.us/district.

**Tracking No. 141001528894**



True Test Copy

Administrative Clerk

7/13/16

Exhibit 2 Page 8

**DISTRICT COURT OF MARYLAND FOR** Baltimore City, Wabash Ave.

LOCATED AT (COURT ADDRESS)                                                                  (City/County)

5800 Wabash Ave.                                                           RELATED CASES:

Baltimore, MD  21215-3330                     DC Case No: 3B02294449

| COMPLAINANT | | DEFENDANT | |
|---|---|---|---|

Cogen, Maj. Sam
Printed Name

Miller, Garrett Edward
Printed Name

100 N. Calvert Street
Number and Street Address

Number and Street Address

Baltimore, MD 21202                410-396-1155
City, State, and Zip Code              Telephone

City, State, and Zip Code                         Telephone

Baltimore City Sheriff's Office #0073
Agency, sub-agency, and I.D. #          (Officer Only)

CC#

DEFENDANT'S DESCRIPTION: Driver's License# ▮▮▮▮▮          Sex M  Race W  Ht 5'11"  Wt 200

Hair _____ Eyes _____ Complexion _____ Other _____  D.O.B ▮▮▮  ID _____

## APPLICATION FOR STATEMENT OF CHARGES          Page 1 of 5

I, the undersigned, apply for statement of charges and a summons or warrant which may lead to the arrest of the
above named Defendant because on or about April 12, 2015 _____ at (See Below)
                                                              Date                          Place

, the above named Defendant

On April 12, 2015, between 8:45 and 9:15 a.m., near the corner of North Avenue and Mount Street, Lieutenant Brian Rice
(Concise statement of facts showing that there is probable cause to believe that a crime has been committed and that the Defendant has committed it)
of the Baltimore Police Department (BPD), while on bike patrol with Officers Garrett Miller and Edward Nero, made eye
contact with Mr. Freddie Carlos Gray, Jr. (DOB ▮▮▮). Having made eye contact, Mr. Gray subsequently ran from
Lt. Rice. Lt. Rice then dispatched over a departmental radio that he was involved in a foot pursuit, at which time bike
patrol Officers Miller and Nero also began to pursue Mr. Gray. (continued)

(Continued on attached 4 _____ pages) (DC/CR 1A)

I solemnly affirm under the penalties of perjury that the contents of this Application are true to the best of my knowledge,
information and belief.
May 1, 2015
_____
Date                                                                    Officer's Signature

I have read or had read to me and I understand the Notice on the back of this form.
May 1, 2015
_____
Date                                                                    Applicant's Signature

Subscribed and sworn to before me this 1st day of May 2015
Time: 8:30 A M    Judge/Commissioner ___ DeMartino ___ 1315
                                                                                              I.D.

I understand that a charging document will be issued and that I must appear for trial ☐ on _____
at _____, ☐ when notified by the Clerk, at the Court location shown at the top of this form.
        Time                                                                                  Date

☒ I have advised applicant of shielding right. ☒ Applicant declines shielding.
                                                                              Applicant's Signature
☐ I declined to issue a charging document because of lack of probable cause.

05/01/15                                              DeMartino      1315
Date                                                  Commissioner        I.D.

True Test Copy

DC/CR 1 (Rev. 12/2006)                Tr.# 151001323896

Exhibit 1 Page 1
J.A. 000042



**DISTRICT COURT OF MARYLAND FOR** Baltimore City, Wabash Ave. ................(City /County )

LOCATED AT ( COURT ADDRESS )
5800 Wabash Ave.
Baltimore, MD  21215-3330

DC Case No: 3B02294449

DEFENDANT'S NAME (LAST, FIRST, M.I.)
Miller, Garrett Edward

### APPLICATION FOR STATEMENT OF CHARGES (CONTINUED)   Page 2 of 5

Having come in contact with the pursuing officers, Mr. Gray surrendered to Officers Miller and Nero in the vicinity of the 1700 block of Presbury Street. Officers Miller and Nero then handcuffed Mr. Gray and moved him to a location a few feet away from his surrendering location. Mr. Gray was then placed in a prone position with his arms handcuffed behind his back. It was at this time that Mr. Gray indicated that he could not breathe and requested an inhaler to no avail. Officers Miller and Nero then placed Mr. Gray in a seated position and subsequently found a knife clipped to the inside of his pants pocket. The blade of the knife was folded into the handle. The knife was not a switchblade knife and is lawful under Maryland law. These officers subsequently removed the knife and placed it on the sidewalk. Mr. Gray was then placed back down on his stomach, at which time Mr. Gray began to flail his legs and scream as Officer Miller placed Mr. Gray in a restraining technique known as a "leg lace" while Officer Nero physically held him down against his will until a BPD wagon arrived to transport Mr. Gray. Lt. Rice, Officer Miller and Officer Nero failed to establish probable cause for Mr. Gray's arrest as no crime had been committed by Mr. Gray. Accordingly, Lt. Rice, Officer Miller, and Officer Nero illegally arrested Mr. Gray . Upon arrival of the transport wagon, driven by Officer Ceasar Goodson, Lt. Rice, Officer Nero, and Officer Miller loaded Mr. Gray into the wagon and at no point was he secured by a seat belt while in the wagon, contrary to a BPD General Order.   Lt. Rice then directed the BPD wagon to stop at Baker Street. At Baker Street, Lt. Rice, Officer Nero and Officer Miller removed Mr. Gray from the wagon, placed flex cuffs on his wrists, placed leg shackles on his ankles, and completed required paperwork.  Officer Miller, Officer Nero and Lt. Rice then

05/01/15
_Date_

_Applicant's Signature_

True Test Copy

_Administrative Clerk_

Tr.# 151001323896

PC DC/CR 1A (Rev. 1/02)

COURT COPY

Exhibit 1 Page 2

J.A. 000043



**DISTRICT COURT OF MARYLAND FOR** Baltimore City, Wabash Ave. ............... (City / County )

LOCATED AT ( COURT ADDRESS )
5800 Wabash Ave.
Baltimore, MD  21215-3330

DC Case No: 3B02294449

DEFENDANT'S NAME (LAST, FIRST, M.I.)
Miller, Garrett Edward

## APPLICATION FOR STATEMENT OF CHARGES (CONTINUED)   Page ........3........ of ....5....

loaded Mr. Gray back into the wagon, placing him on his stomach, head first onto the floor of the wagon. Once again, Mr. Gray was not secured by a seatbelt in the wagon, contrary to a BPD General Order. Lt. Rice then directed Officer Goodson to transport Mr. Gray to the Central Booking and Intake Facility. Following transport from Baker Street, Mr. Gray suffered a severe and critical neck injury as a result of being handcuffed, shackled by his feet, and unrestrained inside of the BPD wagon. From Baker Street, Officer Goodson proceeded to the vicinity of Mosher Street and Fremont Avenue, where he subsequently parked the wagon and proceeded to the back of the wagon in order to observe Mr. Gray. Despite stopping for the purpose of checking on Mr. Gray's condition, at no point did he seek, nor did he render, any medical assistance for Mr. Gray. Officer Goodson returned to his driver's seat and proceeded toward the Central Booking and Intake Facility, with Mr. Gray still unsecured by a seat belt, contrary to a BPD General Order.
Several blocks later, Officer Goodson called into dispatch that he needed to check on the status of his prisoner and requested additional units at Dolphin Street and Druid Hill Avenue. Officer William Porter arrived on the scene near Dolphin Street and Druid Hill Avenue. Both Officer Goodson and Officer Porter proceeded to the back of the wagon to check on the status of Mr. Gray's condition. Mr. Gray requested "help" and indicated that he could not breathe. Officer Porter asked Mr. Gray if he needed a medic, at which time, Mr. Gray indicated at least twice that he was in need of a medic. Officer Porter then physically assisted Mr. Gray from the floor of the van to the bench. However, despite Mr. Gray's appeal for a medic, both officers assessed Mr. Gray's

05/01/15
Date

Applicant's Signature

True Test Copy

2/3/6

Tr.# 151001323896

PC DC/CR 1A (Rev. 1/02)

COURT COPY

**DISTRICT COURT OF MARYLAND FOR** Baltimore City, Wabash Ave. ..............(City / County )

LOCATED AT  ( COURT ADDRESS )

5800 Wabash Ave.

Baltimore, MD  21215-3330

DC Case No: 3B02294449

DEFENDANT'S NAME (LAST, FIRST, M.I.)

Miller, Garrett Edward

## APPLICATION FOR STATEMENT OF CHARGES (CONTINUED)    Page 4 of 5

condition and at no point did either of them restrain Mr. Gray, per BPD General Order, nor did they render or request medical assistance.

While discussing the transportation of Mr. Gray for medical attention, a request for additional units was made for an arrest at 1600 W. North Avenue. Officer Porter left the vicinity of Dolphin Street and Druid Hill Avenue to assist in the arrest of another prisoner at North Avenue. Despite Mr. Gray's obvious and recognized need for medical assistance, Officer Goodson, in a grossly negligent manner chose to respond to the 1600 block of W. North Avenue, with Mr. Gray still unsecured by a seat belt in the wagon, without rendering to or summonsing medical assistance for Mr. Gray.

Officer Goodson arrived at North Avenue to transport the individual arrested at the location of North and Pennsylvania Avenues, at which time he was again met by Officers Nero, Miller, Porter, and Lt. Rice. Once the wagon arrived, Officer Goodson walked to the back of the wagon and again opened the doors to the wagon to make observations of Mr. Gray. Sgt. Alicia White, Officer Porter, and Officer Goodson observed Mr. Gray unresponsive on the floor of the wagon. Sgt. White, who was responsible for investigating two citizen complaints pertaining to Mr. Gray's illegal arrest, spoke to the back of Mr. Gray's head. When he did not respond, she did nothing further despite the fact that she was advised that he needed a medic. She made no effort to look, assess or determine his condition. Despite Mr. Gray's seriously deteriorating medical condition, no medical assistance was rendered to or summonsed for Mr. Gray at that time by any officer.

After completing the North Avenue arrest and loading the additional prisoner into

05/01/16

Date

Applicant's Signature

True Test Copy

_____

Administrative Clerk

_____ Date: 2/3/16

Tr.# 151001323896

PC DC/CR 1A (Rev. 1/02)

COURT COPY

DISTRICT COURT OF MARYLAND FOR _____

LOCATED AT (COURT ADDRESS)                    Baltimore          (City/County)

5800 Wabash Av

Balto, MD 21215

DC Case No: 3B02294449

DEFENDANT'S NAME (LAST, FIRST, M.I.)
Miller, Garrett Edward

## APPLICATION FOR STATEMENT OF CHARGES (CONTINUED)   Page 5 of 5

the opposite side of the wagon containing Mr. Gray, Officer Goodson then proceeded to the Western District Police Station, where contrary to the BPD General Order, he again failed to restrain Mr. Gray in the wagon for at least the fifth time. At the Western District Police Station, the defendant arrested at North Avenue was unloaded, escorted, and secured inside of the police station prior to attending to Mr. Gray. By the time Officer Zachary Novak, Sgt. White, and an unknown officer attempted to remove Mr. Gray from the wagon, Mr. Gray was no longer breathing at all. A medic was finally called to the scene, where upon arrival, the medic determined that Mr. Gray was now in cardiac arrest and was critically and severely injured. Mr. Gray was rushed to the University of Maryland Shock Trauma Unit, where he underwent surgery. On April 19, 2015, Mr. Gray succumbed to his injuries and was pronounced dead. The manner of death, deemed a homicide by the Maryland State Medical Examiner, is believed to be the result of a fatal injury that occurred while Mr. Gray was unrestrained by a seat belt in the custody of the BDP wagon. All events occurred in Baltimore City, Maryland.

05/01/15
Date

Applicant's Signature

SAM COGEN #573
Printed Name

True Test Copy

Tr.# 151001323896

DC-CR-001A (Rev. 04/2015)



**DISTRICT COURT OF MARYLAND FOR Baltimore City**
Located at 5800 Wabash Avenue, Baltimore, Maryland 21215



**STATE OF MARYLAND      VS.      MILLER, GARRETT EDWARD**                        Case No. 3B02294449

COMPLAINANT:
MAJOR, SAM COGEN
100 N. CALVERT STREET
BALTIMORE, MD  21202

CC#: 7150400000                SID:
LID:                                  DL#                          MD
Race: 2   Sex: M    Ht: 5' 11"      Wt: 200      Hair:        Eyes:
DOB:                                          Phone(W):

## STATEMENT OF CHARGES

UPON THE FACTS CONTAINED IN THE APPLICATION OF MAJOR, SAM COGEN IT IS FORMALLY CHARGED THAT MILLER, GARRETT EDWARD at the dates, times and locations specified below:

| NUM | CHG/CIT | STATUTE | PENALTY | DESCRIPTION OF THE CHARGE |
|-----|---------|---------|---------|---------------------------|
| 001 | 1 1415 | CR 3 203 | 10 Y &/or $2,500.00 | ASSAULT-SEC DEGREE<br>On or About 04/12/2015 - 04/12/2015<br>1700 BLOCK OF N. MOUNT STREET<br>BALTIMORE, MARYLAND<br>...did assault MR. FREDDIE CARLOS GRAY, JR. in the second degree in violation of CR 3-203, contrary to the form of the act of the assembly in such case made and provided and against the peace, government, and dignity of the state.<br>Against the Peace, Government, and Dignity of the State. |
| 002 | 1 1415 | CR 3 203 | 10 Y &/or $2,500.00 | ASSAULT-SEC DEGREE<br>On or About 04/12/2015 - 04/12/2015<br>1600-1700 BLOCK OF N. MOUNT STREET<br>BALTIMORE, MARYLAND<br>...did assault MR. FREDDIE CARLOS GRAY, JR. in the second degree in violation of CR 3-203, contrary to the form of the act of the assembly in such case made and provided and against the peace, government, and dignity of the state.<br>Against the Peace, Government, and Dignity of the State. |
| 003 | 2 0645 | CL | | MISCONDUCT IN OFFICE<br>On or About 04/12/2015 - 04/12/2015<br>1700 BLOCK OF PRESBURY STREET<br>BALTIMORE, MARYLAND<br>THAT GARRETT EDWARD MILLER, A PUBLIC OFFICER, WHILE ACTING UNDER COLOR OF HIS OFFICE, CORRUPTLY DID AN UNLAWFUL ACT AND CORRUPTLY FAILED TO DO AN ACT REQUIRED BY THE DUTIES OF HIS OFFICE AND CORRUPTLY DID A LAWFUL ACT IN VIOLATION OF THE COMMON LAW OF MARYLAND.<br>Against the Peace, Government, and Dignity of the State. |
| 004 | 2 0645 | CL | | MISCONDUCT IN OFFICE<br>On or About 04/12/2015 - 04/12/2015<br>1600-1700 BLOCK OF N. MOUNT STREET<br>BALTIMORE, MARYLAND<br>THAT GARRETT EDWARD MILLER, A PUBLIC OFFICER, WHILE ACTING UNDER COLOR OF HIS OFFICE, CORRUPTLY DID AN UNLAWFUL ACT AND CORRUPTLY FAILED TO DO AN ACT REQUIRED BY THE DUTIES OF HIS OFFICE AND CORRUPTLY DID A LAWFUL ACT IN VIOLATION OF THE COMMON LAW OF MARYLAND.<br>Against the Peace, Government, and Dignity of the State. |
| 005 | 1 0042 | CL | | FALSE IMPRISONMENT<br>On or About 04/12/2015 - 04/12/2015<br>1600-1700 BLOCK OF PRESBURY STREET |

True Test Copy
Administrative Clerk
By:

Date : 05/01/2015  Time : 09:31 AM
Tracking No. 151001323896

Judicial Officer:                                                      1315

*DEFT'S*
Exhibit 1 Page 6

CONTINUATION PAGE 1 OF STATEMENT OF CHARGES



**DISTRICT COURT OF MARYLAND FOR Baltimore City**
Located at 5800 Wabash Avenue, Baltimore, Maryland 21215

**STATE OF MARYLAND**     **VS.**     **MILLER, GARRETT EDWARD**

Case No. 3B02294449

BALTIMORE, MARYLAND
...did unlawfully and intentionally detain MR. FREDDIE CARLOS GRAY, JR, ,
in violation of the Common Law.
Against the Peace, Government, and Dignity of the State.

True Test Copy

Administrative Clerk

By: _____ Date: 2/3/16

Judicial Officer: _____

Date : 05/01/2015  Time : 09:31 AM
Tracking No. 151001323896

Exhibit 1 Page 7

J.A. 000048

# DISTRICT COURT OF MARYLAND FOR Baltimore City

Located at 5800 Wabash Avenue, Baltimore, Maryland 21215

Case No. 3B02294449

**STATE OF MARYLAND    VS.    MILLER, GARRETT EDWARD**

CC#: 7150400000          SID:
LID:                             DL#:                        MD
Race: 2  Sex: M  Ht: 5' 11"    Wt: 200    Hair:      Eyes:
DOB: ▮▮▮▮▮    Phone            Phone(W):

| Charge | Statute | Arrest | Charge | Statute | Arrest |
|---|---|---|---|---|---|
| ASSAULT-SEC DEGREE | CR 3 203 | | ASSAULT-SEC DEGREE | CR 3 203 | |
| MISCONDUCT IN OFFICE | CL | | MISCONDUCT IN OFFICE | CL | |
| FALSE IMPRISONMENT | CL | | | | |

## ARREST WARRANT ON CHARGING DOCUMENT - Warrant No. D150291702

STATE OF MARYLAND,   Baltimore City
TO ANY PEACE OFFICER, Greetings:

   YOU ARE ORDERED to arrest and bring before a judicial officer the above-named Defendant as soon as practicable and without unnecessary delay. If a judicial officer is not readily available, this Warrant shall authorize the prisoner's detention until compliance is had with Rule 4-212 and the arresting officer is authorized and required to comply with Rule 4-212.

   **IF THE DEFENDANT IS NOT IN CUSTODY FOR ANOTHER OFFENSE,**
Initial appearance is to be held in county in which Warrant was issued.

   IF THE DEFENDANT IS IN CUSTODY FOR ANOTHER OFFENSE, this Warrant is to be lodged as a detainer for the continued detention of the Defendant for the offense charged in the charging document. When the Defendant is served with a copy of the charging document and Warrant, the Defendant shall be taken before a judicial officer of the District Court.

Date: 05/01/2015     Time: 09:31 AM     Judge/Commissioner: _Delores Martin_    ID: 1315

Given to: **BALTIMORE CITY SHERIFF'S DEPT**

### RETURN OF SERVICE

☑ I certify that at _1:31 P_ M on _5/1/15_ at _CENTRAL BOOKING INTAKE CENTER_ , I executed this Arrest Warrant by arresting the Defendant and delivered a copy of the Statement of Charges to the Defendant.

☑ I left a copy of the Warrant and Charging Document as a detainer for the continued detention of the Defendant at:

Facility _CENTRAL BOOKING INTAKE CENTER_

Location: _300 E. MADISON ST. BALTO MD 21202_

Signature & Title of Peace Officer: _____ / SERGEANT

Printed Name of Officer: _E. SANTIAGO_

Agency, Sub-Agency, I.D.: _ZZ, 2A #0161_

Date: _5/1/15_

True Test Copy
_____ Administrative Clerk
By: _____ Date: 7/13/16

Tracking No: 151001323896

## ARREST WARRANT ON CHARGING DOCUMENT

COURTS

Exhibit 1 Page 8

Case No. 3B02294449





# DISTRICT COURT OF MARYLAND FOR BALTIMORE CITY
Located at 5800 WABASH AVE., BALTIMORE, MD 21215-3330

## STATE OF MARYLAND  VS.  MILLER, GARRETT EDWARD

CC #:7150400000    State ID:             LocID:
Eyes: BLU   Hair: BR   Height: 5'11"    Weight: 200 lb.
Race:2    Sex: M    DOB:              DL #:

## DEFENDANT TRIAL SUMMARY

A Hearing on the above case was held today, 05/22/2015
by Judge KEVIN MICHAEL WILSON
Case has been forwarded to the Circuit Court for BALTIMORE CITY

An Indictment has been filed. # 115141034.

    001  ASSAULT-SEC DEGREE

    002  ASSAULT-SEC DEGREE

    003  MISCONDUCT IN OFFICE

    004  MISCONDUCT IN OFFICE

    005  FALSE IMPRISONMENT

Your next Court Appearance will be at the Circuit Court on 05/27/2015.

05/22/2015    Defendant_____    (MILLER, GARRETT EDWARD)

You may be entitled to expunge this record and any DNA Sample and DNA Record relating to the charge or charges against you if you meet certain conditions. Further information on expungement is contained in a brochure available at the Clerk's Office or on our website at http://www.courts.state.md.us/district.

Tracking No. 151001323896



VIEW PRESENCE OF WATERMARK    HOLD TO LIGHT TO VIEW

# STATE OF MARYLAND
## Department of Health and Mental Hygiene
### Division of Vital Records
**Certificate of Death**

*32015013508000*    File Number *32015MD013085*

| 1. Decedent's Name, AKA Name (if any) FREDDIE CARLOS GRAY, JR | | 2. Date of Death 04/19/2015 | 3. Time of Death 0559 |
|---|---|---|---|

| 4a. Facility Name UNIVERSITY OF MARYLAND MEDICAL CENTER | 4b. City, Town or Location of Death BALTIMORE | 4c. County of Death BALTIMORE CITY |
|---|---|---|

| 5. Social Security Number | 6. Sex M | 7. Age 25 YR | 8. Date of Birth | 9. Birthplace MARYLAND |
|---|---|---|---|---|

| Usual Residence of Decedent 10a. State MARYLAND | 10b. County BALTIMORE CITY | 10c. City, Town or Location BALTIMORE | 10d. Inside City Limits? YES |
|---|---|---|---|

| 10e. Address | | 10f. Zip Code 21213 |
|---|---|---|

| 11. Marital Status NEVER MARRIED | 12. Ever In U.S. Armed Forces? NO | 13. Hispanic Origin? NO | 14. Race BLACK |
|---|---|---|---|

| 15. Decedent's Education 9 - 12 NO DIPLOMA | 16a. Decedent's Usual Occupation - | 16b. Business/Industry UNEMPLOYED |
|---|---|---|

| 17. Father's Name FREDDIE CARLOS GRAY, SR | 18. Mother's Name Prior to First Marriage GLORIA DARDEN |
|---|---|

| 19. Surviving Spouse's Name |
|---|

| 20a. Informant's Name GLORIA DARDEN | 20b. Informant's Relationship MOTHER | 20c. Informant's Mailing Address 3703 ELMLEY AVENUE, BALTIMORE, MD 21213 |
|---|---|---|

| 21a. Method of Disposition BURIAL | 21b. Place of Disposition WOODLAWN CEMETERY | 21c. Date of Disposition 04/27/2015 | 21d. Location 2130 WOODLAWN DRIVE, BALTIMORE, MD 21207 |
|---|---|---|---|

| 22a. Signature of Funeral Service Licensee GEORGE SPEARS | 22b. License No M01553 | 22c. Name and Address of Funeral Facility. VAUGHN C GREENE FUNERAL SERVICES, P.A. 4905 YORK ROAD, BALTIMORE, MD 21212 |
|---|---|---|

**23a. Part I. Disease, Injuries, or complications that directly caused the death** — Approximate Interval Between Onset and Death

Immediate Cause (final disease a. NECK INJURY
or condition resulting in death    Due to (or as a consequence of):

Conditions, if any, leading b.
to immediate cause    Due to (or as a consequence of):

c.
Due to (or as a consequence of):

d.

Part II. Other significant conditions contributing to death but not resulting in the underlying cause in Part I

| 23b. Did tobacco use contribute to the cause of death? UNK |
|---|

| 24a. Was an autopsy performed? YES | 24b. Were autopsy findings available prior to completion of cause of death? YES | 25a. Was case referred to medical examiner? YES | 25b. Medical Examiner Countersignature |
|---|---|---|---|

| 26. Place of Death INPATIENT | 27. Manner of Death HOMICIDE | 28a. Date of Injury UNK | 28b. Time of Injury UNK |
|---|---|---|---|

| 28c. How injury occurred UNBELTED OCCUPANT OF POLICE TRANSPORT VAN ON 4-12-2015 | 28d. Injury at work? NO | 28e. Transportation Injury? YES | 28f. Place of Injury LOCAL STREET |
|---|---|---|---|

| 28g. Location of Injury UNKNOWN STREET, BALTIMORE CITY, MD — |
|---|

| 29a. Certifier Type MEDICAL EXAMINER | 29b. Signature and Title of Certifier CAROL H. ALLAN, M.D. | 29c. License No O.C.M.E. | 29d. Date signed 04/20/2015 |
|---|---|---|---|

| 30a. Name of person who completed cause of death CAROL H. ALLAN | 30b. Address of person who completed cause of death 900 W. BALTIMORE STREET, BALTIMORE, MD 21223 |
|---|---|

For Office Use Only: MEDICAL amendment 04/27/2015 fields 1; DEMOGRAPHIC amendment 04/30/2015 fields 1; MEDICAL amendment 05/01/2015 fields 23a, 27, 28a, 28b, 28c, 28d, 28e, 28f, 28g; MEDICAL amendment 04/24/2016 fields 28c, 28g

| 31. Date Filed 04/25/2015 | 32. Registrar at Filing GENEVA G. SPARKS | 33. Date Issued 07/05/2016 | 34. This is to certify that this is a true and correct copy of the official record on file in the office of the Maryland Division of Vital Records. Registrar's Signature  Geneva G. Sparks |
|---|---|---|---|

2572596

DO NOT ACCEPT UNLESS ON SECURITY PAPER WITH SEAL OF VITAL RECORDS CLEARLY EMBOSSED

ANY ALTERATION OR ERASURE VOIDS THIS CERTIFICATE

Exhibit 3

WITNESSES:

DETECTIVE DAWNYELL S. TAYLOR, G932
BCPD
242 W. 29TH STREET
BALTIMORE, MARYLAND 21211

# 115141034

## State of Maryland

### vs.

Officer Garrett Edward Miller

SID#

D.O.B.
Trkg# 151001323896
DCCN 3B02294449
CC# 7150400000

Officer Edward Michael Nero

SID#

D.O.B.
Trkg# 141001528894
DCCN 4B02294450
CC# 7150400000

Indictment

(TRUE BILL)

Grand Jury Foreman's
Signature Appears on
Original Document only

JANICE L. BLEDSOE 68776 Police Integrity Unit

TRUE COPY
TEST

LAVINIA G. ALEXANDER, CLERK

6-30-16

---

LINK WITH: CODEFENDANTS

Officer Edward Michael Nero
SID#

LT. BRIAN RICE
SID#

ARR. DATE:

## NOTICE TO THE DEFENDANT

1. This paper charges you with committing a crime.
2. If you have been arrested, you have the right to have a judicial officer decide whether you should be released from jail until trial.
3. You have the right to have a lawyer.
4. A lawyer can be helpful to you by:
   (A) explaining the charges in this paper;
   (B) telling you the possible penalties;
   (C) helping you at trial;
   (D) helping you protect your constitutional rights; and
   (E) helping you get a fair penalty if convicted.
5. Even if you plan to plead guilty, a lawyer can be helpful.
6. If you want a lawyer but do not have the money to hire one, the Public Defender may provide a lawyer for you. The court clerk will tell you how to contact the Public Defender.
7. If you want a lawyer but you cannot get one and the Public Defender will not provide one for you, contact the court clerk as soon as possible.
8. DO NOT WAIT UNTIL THE DATE OF YOUR TRIAL TO GET A LAWYER. If you do not have a lawyer before the trial date, you may have to go to trial without one.

Exhibit 4 Page 1

## *State of Maryland,*

### *City of Baltimore, to wit:*
### IN THE CIRCUIT COURT FOR BALTIMORE CITY

| |
|---|
| **The State of Maryland** |
| -vs- |
| **OFFICER GARRETT EDWARD MILLER** |
| **AND** |
| **OFFICER EDWARD MICHAEL NERO** |
| **Defendant(s):** |

Date of Offense: <u>**April 12, 2015**</u>

Complainant: <u>**DETECTIVE DAWNYELL S. TAYLOR**</u>

## INDICTMENT

The Jurors of the State of Maryland for the body of the City of Baltimore, do on their oath present that the aforesaid DEFENDANT(S), late of said City, heretofore on or about the date(s) **April 12, 2015**, at the **1700 Block of Presbury Street**, in the City of Baltimore, State of Maryland, did assault <u>**Freddie Carlos Gray, Jr.**</u> in the second degree, in violation of Criminal Law Article, Section 3-203 of the Annotated Code of Maryland; against the peace, government and dignity of the State.

[CR 3-201; CR 3-203; CR 3-206]  1 1415

## SECOND COUNT

The Jurors of the State of Maryland for the body of the City of Baltimore, do on their oath present that the aforesaid DEFENDANT(S), late of said City, heretofore on or about the date(s) **April 12, 2015**, at the **1700 Block of Presbury Street**, in the City of Baltimore, State of Maryland, that a public officer, while acting under color of his office, corruptly did an unlawful act and corruptly failed to do an act required by the duties of his office and corruptly did a lawful act in violation of the common law of Maryland; against the peace, government and dignity of the State.

Common Law  2 0645

Exhibit 4 Page 2

### THIRD COUNT

The Jurors of the State of Maryland for the body of the City of Baltimore, do on their oath present that the aforesaid DEFENDANT(S), late of said City, heretofore on or about the date(s) **April 12, 2015**, at the **1600-1700 Blocks of N. Mount Street**, in the City of Baltimore, State of Maryland, that a public officer, while acting under color of his office, corruptly did an unlawful act and corruptly failed to do an act required by the duties of his office and corruptly did a lawful act in violation of the common law of Maryland; against the peace, government and dignity of the State.

Common Law  2 0645

### FOURTH COUNT

The Jurors of the State of Maryland for the body of the City of Baltimore, do on their oath present that the aforesaid DEFENDANT(S), late of said City, heretofore on or about the date(s) **April 12, 2015**, at the **1600-1700 Blocks of N. Mount Street,** in the City of Baltimore, State of Maryland, did recklessly engage in conduct that created a substantial risk of death and serious physical injury to **Freddie Carlos Gray, Jr.**, in violation of Criminal Law Article, Section 3-204 of the Annotated Code of Maryland; against the peace, government and dignity of the State.

[CR 3-201; CR 3-204(a)(1); CR 3-204; CR 3-206] 1 1425

_____

The State's Attorney for the City of Baltimore

Exhibit 4 Page 3

J.A. 000054

```
15:04:35 Wednesday, August 03, 2016
08/03/16  CRIMINAL  COURT  OF  BALTIMORE                        CASE INQUIRY  15:02
   CASE 115141034                   DCM TRACK C DATE 090215     FELONY DRUG INIT
CASE 115141034 STATUS C DATE 072716 PREV ST A 052115 CODEF YES CHANGE 072716
   DEF MILLER, GARRETT EDWARD OFFIC ID A32450  SID ██████████ R: W S: M DOB
   ADDRESS ██████████████
   DOA 000000 CMPL 50400000 PHYS LOC             CASE LOC BAL 050115
   DOF 052115 TRACK NO 15-1001-32389-6 DIST CASE 3B02294449 WAR 00 CJIS R RI 1
001 000 C USER ASLT2 CODE 1 1415        ASSAULT-SEC DEGREE      DISP NP   072716
   ARREST/CITATION NO 0
           PLEA      DATE           VERDICT      DATE
   SENTENCE TYPE     DATE        TIME           BEG           SUSP
           PROBATION TIME           TYPE        COST          FINE
002 000 C USER MISC  CODE 2 0645        MISCONDUCT IN OFFICE   DISP NP   072716
   ARREST/CITATION NO 0
           PLEA      DATE           VERDICT      DATE
   SENTENCE TYPE     DATE        TIME           BEG           SUSP
           PROBATION TIME           TYPE        COST          FINE
003 000 C USER MISC  CODE 2 0645        MISCONDUCT IN OFFICE   DISP NP   072716
   ARREST/CITATION NO 0
           PLEA      DATE           VERDICT      DATE
   SENTENCE TYPE     DATE        TIME           BEG           SUSP
           PROBATION TIME           TYPE        COST          FINE

NEXT PAGE                              P/N                    PAGE 001
```

TRUE COPY
TEST

8-3-16

```
08/03/16  CRIMINAL  COURT  OF  BALTIMORE                CASE INQUIRY  15:02
 CASE 115141034 ST C MILLER, GARRETT EDWARD OFFIC A32450  COD Y DCM C 090215
 004 000 C USER RECKL CODE 1 1425        RECKLESS ENDANGERMENT  DISP NP  072716
     ARREST/CITATION NO 0
           PLEA        DATE         VERDICT       DATE
      SENTENCE TYPE    DATE         TIME         BEG       SUSP
           PROBATION TIME           TYPE        COST       FINE
EVENT DATE   OPER PART TIME ROOM REAS / EVENT COMMENT
CASI 052115   S8T CASE ADDED THROUGH ON-LINE ON THIS DATE  20150522
COMM 052115   S8T INDICTMENT FILED
COMM 052115   S8T CC#7150400000
COMM 052115   S8T FILED ASA - BLEDSOE, JANICE L          , ESQ 68776
COMM 052715   CKW MEMORANDUM IN SUPPORT OF MOTION FOR REMOVAL AND REQUEST
COMM 052715   CKW FOR HEARING FLD- CC JUDGE PETERS
COMM 052715   CKW MOTION FOR REMOVAL AND REQUEST FOR A HEARING-CC JUDGE PETERS
COMM 052715   CKW JOINT MOTION FOR RECUSAL OF BALTIMORE CITY STATE'S
COMM 052715   CKW ATTORNEY'S OFFICE FLD- CC JUDGE PETERS
COMM 052715   CKW JOINT MOTION TO DISMISS FOR PROSECUTORIAL MISCONDUCT, OR IN
COMM 052715   CKW THE ALTERNATIVE, FOR SANCTIONS FLD
COMM 052715   CKW APPENDIX OF DEFS MEMORANDUM IN SUPPORT OF MOTION FOR
COMM 052715   CKW REMOVAL AND REQUEST FOR A HEARING FLD- CC JUDGE PETERS
FILE 052715   CKW FILED ADF - FLYNN, CATHERINE          , ESQ 265434


NEXT PAGE                          P/N                   PAGE 002
```

Exhibit 4 Page 5

```
08/03/16  CRIMINAL  COURT  OF  BALTIMORE                    CASE INQUIRY  15:02
  CASE 115141034 ST C MILLER, GARRETT EDWARD OFFIC A32450  COD Y DCM C 090215
EVENT DATE   OPER PART TIME ROOM REAS / EVENT COMMENT
COMM 072616   SCY JANICE BLEDSOE, DEPUTY STATE'S ATTY)
HCAL 072716 1 SCB P31;0930;528 ;JT  ;NP;JUDG;   ;WILLIAMS, BARRY;8C9
CCAS 072716   SCB CASE CLOSED - NOLLE PROSEQUI            - Q327
COMM 072716   SCB NOLLE PROSEQUI; ALL PARTIES PRESENT
CON FULL NAME/PHONE NUMBER      IDENT ADD/FILE STREET/CITY STATE ZIPCODE V/W
COD GOODSON, CAESAR R OFC        A32384 052215 242 W 29TH ST
                                               BALTIMORE  MD 21211
COD NERO, EDWARD MICHAEL OFC     A32383 052215 242 W 29TH ST
                                               BALTIMORE  MD 21211
COD PORTER, WILLIAM G OFFICER    A32386 052215 242 W 29TH STREET
                                               BALTIMORE  MD 21211
COD WHITE, ALICIA SERGEANT       A32385 052215 242 W 29TH STREET
                                               BALTIMORE  MD 21211

ADF FLYNN, CATHERINE             265434 052915 1 N. CHARLES STREET STE 2470
    410-727-6400                        052715 BALTIMORE  MD 21201
ADF MEAD, BRANDON                545690 090315 1 N. CHARLES STREET  STE 2470
    410-727-6400                        090315 BALTIMORE  MD 21201
ADF ZAYON, MARC L                917967 051016 201 N CHARLES ST #1700
    410-727-3710                        051016 BALTIMORE  MD 21201
```

**NEXT PAGE**                        P/N                    PAGE 042

Exhibit 4 Page 6

WITNESSES:

DETECTIVE DAWNYELL S. TAYLOR, G932
BCPD

LINK WITH: CODEFENDANTS

OFFICER GARRETT MILLER
SID#

LT. BRIAN RICE
SID#

ARR. DATE:

# 115141033

## State of Maryland
### vs.

Officer Edward Michael Nero
SID#

Trkg# 141001528894
DCCN 4B02294450
CC# 7150400000

Officer Garrett Edward Miller
SID#

Trkg# 151001323896
DCCN 3B02294449
CC# 7150400000

Indictment

(TRUE BILL)

Grand Jury Foreman's
Signature Appears on
Original Document only

JANICE L. BLEDSOE 68776 Police Integrity Unit



TRUE COPY
TEST
6-30-16

LAVINIA G. ALEXANDER, CLERK

## NOTICE TO THE DEFENDANT

1. This paper charges you with committing a crime.
2. If you have been arrested, you have the right to have a judicial officer decide whether you should be released from jail until trial.
3. You have the right to have a lawyer.
4. A lawyer can be helpful to you by:
   (A) explaining the charges in this paper;
   (B) telling you the possible penalties;
   (C) helping you at trial;
   (D) helping you protect your constitutional rights; and
   (E) helping you get a fair penalty if convicted.
5. Even if you plan to plead guilty, a lawyer can be helpful.
6. If you want a lawyer but do not have the money to hire one, the Public Defender may provide a lawyer for you. The court clerk will tell you how to contact the Public Defender.
7. If you want a lawyer but you cannot get one and the Public Defender will not provide one for you, contact the court clerk as soon as possible.
8. **DO NOT WAIT UNTIL THE DATE OF YOUR TRIAL TO GET A LAWYER.** If you do not have a lawyer before the trial date, you may have to go to trial without one.

J.A. 000058

Exhibit 5 Page 1

# *State of Maryland,*
### *City of Baltimore, to wit:*
## IN THE CIRCUIT COURT FOR BALTIMORE CITY

The State of Maryland
-vs-
**OFFICER EDWARD MICHAEL NERO**
**AND**
**OFFICER GARRETT EDWARD**
**MILLER**

Defendant(s):

Date of Offense: <u>**April 12, 2015**</u>

Complainant: <u>**DETECTIVE DAWNYELL S. TAYLOR**</u>

## I N D I C T M E N T

The Jurors of the State of Maryland for the body of the City of Baltimore, do on their oath present that the aforesaid DEFENDANT(S), late of said City, heretofore on or about the date(s) **April 12, 2015**, at the **1700 Block of Presbury Street**, in the City of Baltimore, State of Maryland, did assault <u>**Freddie Carlos Gray, Jr.**</u> in the second degree, in violation of Criminal Law Article, Section 3-203 of the Annotated Code of Maryland; against the peace, government and dignity of the State.

[CR 3-201; CR 3-203; CR 3-206]  1 1415

## SECOND COUNT

The Jurors of the State of Maryland for the body of the City of Baltimore, do on their oath present that the aforesaid DEFENDANT(S), late of said City, heretofore on or about the date(s) **April 12, 2015**, at the **1700 Block of Presbury Street**, in the City of Baltimore, State of Maryland, that a public officer, while acting under color of his office, corruptly did an unlawful act and corruptly failed to do an act required by the duties of his office and corruptly did a lawful act in violation of the common law of Maryland; against the peace, government and dignity of the State.

Common Law  2 0645

Exhibit 5 Page 2

### THIRD COUNT

The Jurors of the State of Maryland for the body of the City of Baltimore, do on their oath present that the aforesaid DEFENDANT(S), late of said City, heretofore on or about the date(s) **April 12, 2015**, at the **1600-1700 Blocks of N. Mount Street**, in the City of Baltimore, State of Maryland, that a public officer, while acting under color of his office, corruptly did an unlawful act and corruptly failed to do an act required by the duties of his office and corruptly did a lawful act in violation of the common law of Maryland; against the peace, government and dignity of the State.

Common Law  2 0645

### FOURTH COUNT

The Jurors of the State of Maryland for the body of the City of Baltimore, do on their oath present that the aforesaid DEFENDANT(S), late of said City, heretofore on or about the date(s) **April 12, 2015**, at the **1600-1700 Blocks of N. Mount Street**, in the City of Baltimore, State of Maryland, did recklessly engage in conduct that created a substantial risk of death and serious physical injury to **Freddie Carlos Gray, Jr.**, in violation of Criminal Law Article, Section 3-204 of the Annotated Code of Maryland; against the peace, government and dignity of the State.

[CR 3-201; CR 3-204(a)(1); CR 3-204; CR 3-206] 1 1425

The State's Attorney for the City of Baltimore

Exhibit 5 Page 3

```
12:42:04 Wednesday  June 29, 2016
  06/29/16  CRIMINAL  COURT  OF  BALTIMORE        CASE INQUIRY  12:41
    CASE 115141033                    DCM TRACK C DATE 090215   FELONY DRUG INIT
    CASE 115141033 STATUS C DATE 052316 PREV ST A 052115 CODEF YES CHANGE 061416
    DEF NERO, EDWARD MICHAEL OFC    ID A32383  SID ██████████ R: W S: M DOB ████████
    ADDRESS ████████████████
    DOA 000000 CMPL 71504000 PHYS LOC            CASE LOC BAL 050115
    DOF 052115 TRACK NO 14-1001-52889-4 DIST CASE 4B02294450 WAR 00 CJIS R RI 1
  001 000 C USER ASLT2 CODE 1 1415        ASSAULT-SEC DEGREE      DISP NG  052316
      ARREST/CITATION NO 0
            PLEA NG  DATE 052316      VERDICT NG  DATE 052316
      SENTENCE TYPE    DATE       TIME        BEG        SUSP
            PROBATION TIME            TYPE        COST       FINE
  002 000 C USER MISC  CODE 2 0645        MISCONDUCT IN OFFICE   DISP NG  052316
      ARREST/CITATION NO 0
            PLEA NG  DATE 052316      VERDICT NG  DATE 052316
      SENTENCE TYPE    DATE       TIME        BEG        SUSP
            PROBATION TIME            TYPE        COST       FINE
  003 000 C USER MISC  CODE 2 0645        MISCONDUCT IN OFFICE   DISP NG  052316
      ARREST/CITATION NO 0
            PLEA NG  DATE 052316      VERDICT NG  DATE 052316
      SENTENCE TYPE    DATE       TIME        BEG        SUSP
            PROBATION TIME            TYPE        COST       FINE

  NEXT PAGE                        P/N              PAGE 001
```

Appeal: 17-1166   Doc: 30   Filed: 06/13/2017   Pg: 68 of 339

```
12:42:05 Wednesday, June 29, 2016
  06/29/16  CRIMINAL  COURT  OF  BALTIMORE                 CASE INQUIRY  12:41
   CASE 115141033 ST C NERO, EDWARD MICHAEL OFC    A32383  COD Y DCM C 090215
   004 000 C USER RECKL CODE 1 1425          RECKLESS ENDANGERMENT  DISP NG  052316
       ARREST/CITATION NO 0
             PLEA NG  DATE 052316     VERDICT NG  DATE 052316
        SENTENCE TYPE     DATE        TIME          BEG      SUSP
             PROBATION TIME           TYPE          COST     FINE
  EVENT DATE   OPER PART TIME ROOM REAS / EVENT COMMENT
  CASI 052115  CKW CASE ADDED THROUGH ON-LINE ON THIS DATE  20150522
  COMM 052115  CKW INDICTMENT FLD
  COMM 052115  CKW FILED ASA - BLEDSOE, JANICE L          , ESQ 68776
  COMM 052115  SCB CC# 7150400000
  MOTF 052715  SCY MOTION FOR SPEEDY TRIAL
  MOTF 052715  SCY MOTION TO PRODUCE DOCUMENTS
  MOTF 052715  SCY REQUEST FOR DISCOVERY
  MOTF 052715  SCY MOTION TO SUPPRESS PURSUANT TO MD 4-252 AND 4-253
  MOTF 052715  SCY MOTION FOR GRAND JURY TESTIMONY
  MOTF 052715  SCY DEMAND FOR CHEMIST
  COMM 052715  SCY DEFENDANT NERO'S DEMAND FOR BILL OF PARTICULARS
  COMM 052715  SCY JOINT MOTION TO DISMISS FOR PROSECUTORIAL MISCONDUCT,
  COMM 052715  SCY OR IN THE ALTERNATIVE, FOR SANCTIONS
  COMM 052715  SCY MOTION FOR REMOVAL AND REQUEST FOR A HEARING  CC: PETERS, J

  NEXT PAGE                              P/N                    PAGE 002
```

Exhibit 5 Page 5

```
·06/29·16  CRIMINAL  COURT  OF  BALTIMORE                    CASE  INQUIRY  12:41
  CASE  115141033 ST C NERO, EDWARD MICHAEL OFC    A32383  COD Y DCM C 090215
EVENT DATE    OPER PART TIME ROOM REAS / EVENT COMMENT
COMM 051316    SCY BENCH CONFERENCE IS SEALED.
COMM 051316    SCY WILLIAMS, J (CC: MARC ZAYON, JANICE BLEDSOE)
HCAL 051316 1 CNN P31;0900;528 ;CT  ;  ;CONT;  ;WILLIAMS, BARRY;8C9
COMM 051316    CNN CASE CONT'D TIL 5/16/16 PART 31 @9:30AM; FILE IN COURT
COMM 051616    CNN CSET CT  ; P31; 05/13/16; CNN
COMM 051616    1gj DEFENSE MOTION FOR JUDGEMENT OF ACQUITTAL AT THE END OF THE
COMM 051616    1gj STATE'S CASE WAS HEREBY DENIED; CASE CONTINUED TO 05/17/16
COMM 051616    1gj IN PART 31 AT 9:30AM; FILE IN COURT
HCAL 051716 1 SCB P31;0900;528 ;CT  ;  ;CONT;  ;WILLIAMS, BARRY;8C9
COMM 051716    SCB CSET CT  ; P31; 05/17/16; SCB
COMM 051716    SCB CASE CONTINUES ON 5/18/16 PART 31 AT 9:30AM; FILE IN COURT
HCAL 051816 1 1gj P31;0900;528 ;CT  ;  ;CONT;  ;WILLIAMS, BARRY;8C9
COMM 051816    1gj CSET CT  ; P31; 05/18/16; 1gj
COMM 051816    1gj DEFENSE MOTION TO DISMISS WAS HEREBY HEARD AND DENIED; CASE
COMM 051816    1gj CONTINUED TO 05/19/16 IN PART 31 AT 10AM; FILE IN COURT
HCAL 051816    CPR P31;0900;528 ;CT  ;  ;CONT;  ;WILLIAMS, BARRY;8C9
COMM 051816    CPR DEFENSE MOTION TO DISMISS WAS HEREBY HEARD AND "DENIED"
COMM 051816    CPR CASE CONTINUED TIL 5/19/16 PT.31 @ 10:00; FIC
COMM 051916    SCY DATE STAMPED & ORDERED 5/18/16, ORDER FILED UNDER SEAL FOR
```

**NEXT PAGE**                        P/N                        PAGE 050

Exhibit 5 Page 6

J.A. 000063

IN THE CIRCUIT COURT FOR BALTIMORE CITY, MARYLAND

STATE OF MARYLAND

     vs.                                    Case Number:
                                                115141033

EDWARD NERO,

              DEFENDANT.

_____/

REPORTER'S OFFICIAL TRANSCRIPT OF PROCEEDINGS
(Verdict)

Baltimore, Maryland

Monday, May 23, 2016

BEFORE:

     HONORABLE BARRY G. WILLIAMS, Associate Judge

APPEARANCES:

     For the State:

          JANICE BLEDSOE, ESQUIRE
          MICHAEL SCHATZOW, ESQUIRE
          MATTHEW PILLION, ESQUIRE
          JOHN BUTLER, ESQUIRE
          SARAH AKHTAR, ESQUIRE

     For the Defendant:

          MARC ZAYON, ESQUIRE
          ALLISON LEVINE, ESQUIRE

* Proceedings Digitally Recorded *

Transcribed by:
Patricia Trikeriotis
Chief Court Reporter
Circuit Court for Baltimore City
111 N. Calvert Street
Suite 515, Courthouse East
Baltimore, Maryland 21202

1

# T A B L E   O F   C O N T E N T S

P a g e

Verdict (Not guilty)                                    3

2

```
 1                    P R O C E E D I N G S

 2                       (10:32 a.m.)

 3             THE CLERK:  The Circuit Court for Baltimore

 4    City, Part 31, is now in session.  The Honorable Barry G.

 5    Williams presiding.

 6             THE COURT:  Good morning, everyone.  Please be

 7    seated.

 8             THE GALLERY:  Good morning, Your Honor.

 9             THE COURT:  Call the case.

10             MR. SCHATZOW:  Good morning, Your Honor.  This

11    is the case of State versus Officer Edward Nero, Number

12    115141033.  Present on behalf of the State, I'm Michael

13    Schatzow; Deputy State's Attorney Janice Bledsoe; and

14    Assistant State's Attorneys Matt Pillion, John Butler,

15    and Sarah Akhtar.

16             THE COURT:  Good morning.

17             COUNSEL:  Good morning, Your Honor.

18             MR. ZAYON:  Your Honor, Good morning.  For the

19    record, Marc Zayon.  As the Court knows, I represent

20    Officer Edward Nero, to my left, with Allison Levine, as

21    well.

22             THE COURT:  Good morning.  You may be seated.

23             All right.  This Court has been asked to render

24    a decision in this matter and will give the information

25    as follows:
```

3

1      The State has charged the defendant with

2  assault, misconduct in office by corruptly performing an

3  unlawful act, reckless endangerment and misconduct in

4  office by corruptly failing to do an act that is required

5  by the duties of his office.

6      In order to convict the defendant of assault,

7  the State must prove that the defendant caused offensive

8  physical contact with Freddie Gray; that the contact was

9  the result of an intentional or reckless act of the

10 defendant and was not accidental; and that the contact

11 was not legally justified.

12     In order to convict the defendant of misconduct

13 in office, the State must prove that the defendant was a

14 public officer, that the defendant acted in his official

15 capacity, and that the defendant corruptly did an

16 unlawful act.  For this count, the State alleges that the

17 defendant arrested Freddie Gray without probable cause.

18     In order to convict the defendant of reckless

19 endangerment, the State must prove that the defendant

20 engaged in conduct that created a substantial risk of

21 death or serious physical injury to another; that a

22 reasonable person would not have engaged in that conduct;

23 and that the defendant acted recklessly.

24     Finally, in order to convict the defendant of

25 the second count of misconduct in office, the State must

4

Exhibit 5 Page 10

1  prove that the defendant was a public officer; that the

2  defendant acted in his official capacity; and that the

3  defendant corruptly failed to do an act required by the

4  duties of his office.  For this count, the State alleges

5  that the defendant failed to ensure the safety of Freddie

6  Gray by failing to secure Mr. Gray with a seat belt

7  during the process of Mr. Gray being transported in a

8  police vehicle while he was in police custody.

9       The State has the burden of proving, beyond a

10  reasonable doubt, each and every element of the crimes

11  charged.  If the State fails to meet that burden for any

12  element of a crime, this Court is required to find the

13  defendant not guilty of that crime.

14       I will discuss each allegation in order.

15       Again, the defendant is charged with the crime

16  of assault.

17       In order to convict the defendant of assault,

18  the State must prove that the defendant caused offensive

19  physical contact with Freddie Gray.  The defendant

20  acknowledges that any unwanted or unwarranted contact can

21  be considered offensive, and the evidence is clear that

22  at no point did Mr. Gray want to be touched by any of the

23  officers.

24       Two, that the contact was the result of an

25  intentional or reckless act of the defendant and was not

5

Exhibit 5 Page 11

J.A. 000068

1   accidental.  Clearly, when the defendant touched Mr.

2   Gray, it was done intentionally.  But for reasons that I

3   will soon discuss, I find that it was not reckless, but

4   acknowledge that is not the end of the analysis.

5        And finally, that the contact was not legally

6   justified.  In order to assess whether the contact was

7   not legally justified, it is helpful to discuss some of

8   the facts presented at trial.  All times mentioned are on

9   the morning April 12, 2015.

10       At 8:40:03, video time stamp one minute and

11   fifteen seconds of Exhibit 41, shows the defendant coming

12   down an alley.  And at 8:40:10, video time stamp one

13   minute and thirty-five seconds, it shows Officer Garrett

14   Miller on foot, and the defendant on bike riding over to

15   the area where Mr. Gray is ultimately detained.  At

16   8:40:13, there is a call over KGA, which is Exhibit 40,

17   where either Miller or the defendant calls out, "We got

18   one."

19       Miller testified that he apprehended Mr. Gray,

20   and that Mr. Gray gave up without a fight and did not

21   resist.  He testified that the defendant did not touch

22   Gray at any time prior to the time Miller approached and

23   detained Gray.  By the time Miller cuffed Gray, the

24   defendant was standing to their left at the ramp.  While

25   Miller believed that the defendant was ready to assist

6

1 | because they work together, he reiterated that the
2 | defendant did not have anything to do with the cuffing
3 | and initial detention.  While Miller detained Mr. Gray at
4 | the handicap ramp, he told the defendant to go retrieve
5 | Miller's bike, which Miller had left in the court when he
6 | got off his bike to chase Mr. Gray.
7 | Exhibit 56 and 41 both show the defendant getting
8 | on his bike at 8:40:21, video time stamp fourteen seconds
9 | and four minutes and thirty-seven seconds, respectively.
10 | And approximately twenty seconds, later Exhibit 41 shows
11 | the defendant walking with two bikes toward the area
12 | where he ultimately met with Miller and Mr. Gray.  I note
13 | that the video does not show Miller and Mr. Gray at the
14 | corner at that time.
15 | Finally, Exhibit 41 shows Miller walking towards
16 | the corner with Mr. Gray at 8:40:52, video time stamp
17 | five minutes and sixteen seconds.
18 | The State concedes, that pursuant to Wardlaw and
19 | Terry, that Miller had a right to stop Mr. Gray but,
20 | based on the KGA tape, part of the defendant's statement,
21 | and part of Miller's statement referenced at trial, wants
22 | this Court to find that the defendant was an integral
23 | part of the initial detention and subsequent arrest of
24 | Mr. Gray.
25 | Officer Miller, who testified under a grant of

7

        Exhibit 5 Page 13

1   immunity from the State, stated unequivocally, while on

2   the stand and under oath, that he was the one who

3   detained and handcuffed Mr. Gray, that he was the one who

4   walked Mr. Gray from the handicapped entrance to the wall

5   where the defendant met him after retrieving officer

6   Miller's bike.

7        Mr. Brandon Ross clearly stated that it was not

8   the defendant who was with Mr. Gray initially but another

9   bike officer.  Mr. Ross saw the defendant with two bikes

10  walking towards Mr. Gray and the other officer, and this

11  was after the bike officer cuffed Mr. Gray.

12       There is no value for Brandon Ross to say this

13  because he is not a friend of the defendant.  He saw what

14  he saw, and it corroborates the testimony of Miller

15  stating that he and he alone was involved in detaining,

16  cuffing, and taking Mr. Gray to the wall to await

17  transport, and it is consistent with the statement of the

18  defendant where he stated that he went to get the bikes

19  and met Miller and Mr. Gray at the opening of the court.

20  This is corroborated by State's Exhibit Number 41, which

21  shows the defendant walking with two bikes.

22       The testimony that was presented from Miller and

23  the interview with the defendant, where both indicated

24  that "we handcuffed," is more in line with the habit of

25  Baltimore City Police Officers who testify to speak in

8

1    terms of what was done by the collective and not

2    necessarily what is done by the individual.  Therefore,

3    the Court does not find that the use of the term "we"

4    implicates the defendant in either participating in the

5    initial detention of Mr. Gray or the subsequent decision

6    to arrest Mr. Gray.

7        The Court finds that the only contact that the

8    defendant had with Mr. Gray at the first stop at Presbury

9    Street occurred when he interacted with Gray after Miller

10   walked him to the area to await the van.  By that time,

11   the Wardlaw/Terry stop had been effected by Miller and

12   only Miller.  It was Miller who detained Mr. Gray.  It

13   was Miller who cuffed Mr. Gray.  And it was Miller who

14   walked Mr. Gray over to the area where the defendant met

15   them.

16       When the detention morphed into an arrest, the

17   defendant was not present.  As such, the Court rejects

18   the state's theory that the defendant was involved in the

19   arrest because, absent "I and we," there are no credible

20   facts to show that he was involved in the touching of Mr.

21   Gray before Miller brought him to the corner.

22       Furthermore, the Court does not find, with the

23   facts presented, that there was a duty on the part of the

24   defendant to ask any questions of Miller before he

25   assisted with the continued detention and ultimate arrest

9

1    of Mr. Gray.

2         The defendant was aware of the KGA call from

3    Rice; knew that Miller had detained Mr. Gray and moved

4    him from one area to another; and that a van had been

5    summoned.

6         For the same reasons, minus the van call, the

7    defendant did not have a duty to make an inquiry of Mr.

8    Gray.

9         Since the defendant's contact with Mr. Gray came

10   after Mr. Gray was detained by Miller, this Court finds

11   that the contact by the defendant was legally justified

12   and not reckless.  Therefore, as alleged by the State,

13   there is no assault by the defendant.

14        Next, the State alleges that the defendant

15   corruptly arrested Mr. Gray without probable cause, and

16   that the arrest rises to the level of misconduct in

17   office.  Misconduct in office is corrupt behavior by a

18   public official in the exercise of his duties of office

19   or while acting under color of law.

20        In order to convict the defendant, the State must

21   prove, one, that the defendant was a public officer; two,

22   that he acted in his official capacity; and, three, that

23   he corruptly did an unlawful act.

24        There is no question that elements one and two

25   of the misconduct charge are met since the defendant was

10

1    a public officer acting in his official capacity on the

2    day of Mr. Gray's arrest.

3            But, as noted, the Court does not find that the

4    defendant detained Mr. Gray at the ramp, nor does the

5    court find that any actions by the defendant turned the

6    detention into an arrest.

7            The Court does find, based on a review of

8    Exhibit 41, the testimony of the defendant, Mr. Ross, and

9    Mr. Miller, that the initial contact concerning detention

10   and arrest occurred when Miller, acting alone, interacted

11   with Mr. Gray.

12           As such, this Court does not find that the

13   defendant detained or arrested Mr. Gray without probable

14   cause.  The propriety and basis for Miller's actions are

15   not before this Court and, therefore, have not been

16   assessed by this Court.

17           The State has indicated its belief that the

18   facts as presented lend themselves to the application of

19   accomplice liability for all the charges, and the

20   defendant should be held criminally liable for the

21   actions of Miller and others as an accomplice.

22           In order to convict the defendant of any of the

23   charges under the theory of accomplice liability, the

24   State would have to prove that a crime occurred; and that

25   the defendant, with the intent to make the crime happen,

11

1   knowingly aided, counseled, commanded, or encouraged the

2   commission of the crime, or communicated to the primary

3   actor in the crime that he was ready, willing, and able

4   to lend support, if needed.

5          The State's theory from the beginning has been

6   one of negligence, recklessness, and disregard for duty

7   and orders by this defendant.  There has been no

8   information presented at this trial that the defendant

9   intended for any crime to happen.  Nor has there been any

10  evidence presented that the defendant communicated any

11  information to a primary actor that he was ready,

12  willing, and able to lend support, if needed, to any

13  crime.

14         Since the assault and misconduct are based on a

15  detention and arrest that this Court has already

16  determined was effected by Miller acting alone and on the

17  information provided over KGA, and especially where there

18  is no conspiracy charged, this Court does not find that

19  accomplice liability on the charge of assault and

20  misconduct is an appropriate application of the law.

21         I will now discuss the charges of reckless

22  endangerment and misconduct in office.  The State alleges

23  that the next two criminal acts occurred at what is

24  referred to as the second stop.  After Mr. Gray was

25  placed in the van at the first stop, he was driven a

12

1    block or so away to the Mount Street location where the

2    van was met by the defendant, Miller, Rice, and other

3    officers.

4           When the van driver opened the door, Mr. Gray

5    was seated.  Rice and Miller took Mr. Gray out of the

6    van.  Miller retrieved his cuffs, replaced them with flex

7    cuffs, and placed shackles on Mr. Gray.  At this point,

8    allegedly, Mr. Gray had gone limp.  So, to get him back

9    into the van, Rice got into the van and pulled Mr. Gray

10   by the shoulders while the defendant had Mr. Gray's legs.

11          At three seconds of Exhibit 35, which is the

12   video by Mr. Ross, the video shows the defendant kneeling

13   down and placing his hands on Mr. Gray's lower body.  By

14   eleven seconds, his hands are off.  And at thirteen

15   seconds, Rice jumps out of the van.

16          The State alleges that the failure of the

17   defendant to seat belt Mr. Gray once he was placed back

18   in the van rises to the level of reckless endangerment

19   and misconduct in office.

20          In order to convict the defendant of reckless

21   endangerment, the state must prove that the defendant

22   engaged in conduct that created a substantial risk of

23   death or serious physical injury to another; that a

24   reasonable person would not have engaged in that act; and

25   that the conduct and that the defendant acted recklessly.

13

1      Reckless endangerment focuses on the actions of

2  the defendant and whether or not his conduct created a

3  substantial risk of death or injury to another.  The

4  crime occurs when the actions are found to be

5  unreasonable under the circumstances presented.  It does

6  not focus on the end result, which can be, if charged, a

7  separate crime.

8      Two questions are at issue here.  Question 1:

9  Could an officer, similarly situated as the defendant,

10  reasonably rely on the fact that an officer in the van

11  with the detainee could and would, if required, seat belt

12  the detainee, especially when that person is a superior

13  officer?  Question 2:  Could an officer, similarly

14  situated as the defendant, reasonably assume and rely on

15  the fact that the transport officer, who presumably has

16  custody, would and could make sure that the detainee now

17  inside of his van is properly secured before driving off?

18  The answer to both of those questions, based on the facts

19  presented, is yes.

20      As to the reasonableness of not taking steps to

21  seat belt Mr. Gray, this Court finds that a reasonable

22  officer in the defendant's position and, in particular,

23  the defendant, could reasonably assume that an officer,

24  superior or not, in the back of the van would make a

25  determination as to whether seat belting was appropriate

14

1  under all the facts that that officer was aware of at the

2  moment.

3          This Court does not find that a reasonable

4  officer similarly situated to the defendant, at the point

5  where there are people coming out on the street to

6  observe and comment, would approach the lieutenant, who

7  just got out of the van, to tell him to seat belt Mr.

8  Gray or make an inquiry concerning the issue of whether

9  or not Mr. Gray has been seat belted.  There is no

10  evidence that was part of his training and no evidence

11  that a reasonable officer would do the same.

12          While the State did not present clear evidence

13  of any protocol in the approximately 1500 pages of

14  General Orders or directives concerning transfer of

15  custody from an arresting officer to a transporting

16  officer, a review of policy 1114, Exhibit 2, published on

17  April 3, 2015, which may not have gone into effect until

18  after the incident in question, does shed some light on

19  the issue.

20          Policy 1114 requires that when a person is

21  taken into custody, members shall ensure the safety of a

22  detainee.  Section 1.5 of the policy notes that whenever

23  a detainee is transported in a police vehicle, one must

24  make sure that the detainee is searched and handcuffed by

25  the arresting member before being placed in a police

15

1    transport vehicle, and the transporting officer must also

2    search each detainee prior to placing him in the

3    transport vehicle.  The policy goes on to state that all

4    passengers shall be restrained by seat belts.

5         This Court has to assume that "member" and

6    "one" is in reference to police officers who are required

7    to follow the General Orders.

8         The policy seemingly uses "police vehicle,"

9    "police transport vehicle," and "transport vehicle"

10   interchangeably.  The Court notes that there certainly

11   could be differences that are relevant, but no

12   definitional terms were presented during the trial by the

13   State.

14        It is certainly reasonable to believe that

15   before a vehicle pulls off, the officer who is charged

16   with transporting a detainee may have the duty to make

17   sure that the person being transported is properly

18   secured and, if not, seek help from other officers if

19   there is a need to do so.

20        However, this Court acknowledges that there may

21   be circumstances where that duty may shift or be

22   nonexistent in relation to a particular officer.  But,

23   again, this Court is making its decision only on what has

24   been presented for this trial for this defendant.

16

Exhibit 5 Page 22

J.A. 000079

1          Having found that a reasonable person would act

2     similarly to the defendant, the Court does not find that

3     his actions were reckless and, therefore, finds that

4     there is no criminal liability under the theory that the

5     defendant's failure to act recklessly endangered Mr.

6     Gray.

7          Finally, there is the misconduct charge

8     stemming from the stop on Mount Street.  The State

9     alleges that the defendant failed to ensure the safety of

10    Mr. Gray when he failed to seat belt him after Mr. Gray

11    was placed back in the van.  As stated previously,

12    misconduct in office is corrupt behavior by a public

13    official in the exercise of his duties of office or while

14    acting under color of law.

15         In order to convict the defendant, the State

16    must prove that the defendant was a public officer; that

17    he acted in his official capacity; that he corruptly

18    failed to do an act required by the duties of his office.

19         Again, there is no question that elements one

20    and two of the misconduct charge are met since the

21    defendant was a public officer acting in his capacity as

22    a law enforcement officer on the day of Mr. Gray's

23    arrest.

24         Here, unlike in the other misconduct charge,

25    the State asserts the defendant failed to do an act

17

1   required by his office; and that failure to act is

2   corrupt behavior; and, therefore, the defendant should be

3   convicted of misconduct.

4        Along with the analysis this Court used to

5   determine whether the defendant was guilty of reckless

6   endangerment, I also must determine whether, under this

7   statute, he corruptly failed to do an act required by the

8   duties of his office.  While this Court has already

9   determined that the defendant is not guilty of reckless

10  endangerment, based on the facts presented, I believe I

11  still must determine whether he corruptly failed to do an

12  act that is required of his office.

13       The comments to the Maryland Pattern Jury

14  Instructions note that the committee chose not to define

15  or explain "corrupt" or "corruptly," believing that the

16  words communicate their meaning better than a definition

17  would.

18       A review of relevant case law shows that a

19  police officer corruptly fails to do an act required by

20  the duties of his office if he willfully fails or

21  willfully neglects to perform the duty.  A willful

22  failure or willful neglect is one that is intentional,

23  knowing, and deliberate.  And mere error in judgment is

24  not enough to constitute corruption, but corruption does

18

1    not require that the public official acted for any

2    personal gain or benefit.

3            In order to fail to perform a duty, the

4    defendant had to know about this duty.  Out of the more

5    1500 pages of the General Orders, at best, there seems to

6    be ambiguity on the issue of when custody is transferred

7    concerning someone who has been arrested and is about to

8    be transported by the non-arresting officer.

9            Again, the Court does not find that the

10   defendant was the one who placed Mr. Gray under arrest,

11   but clearly the defendant was involved in placing Mr.

12   Gray back into the van after Miller recovered his

13   handcuffs and placed shackles on Mr. Gray.

14           The State presented Exhibit 7, which is a

15   document that showed on June 26, 2012, the defendant,

16   when he was appointed as police trainee, acknowledged

17   receipt of nine listed items, including the General

18   Orders.  It does not say in what format they were

19   provided, but there was testimony that generally it was

20   presented on a flashdrive.  I do note that this form

21   crossed out "Police Commissioner's Memorandums" [sic].

22   It appears to be a given that any member of an

23   organization is required to follow the rules of that

24   organization once one is aware of the rules.

19

1        Defense Exhibit 10 is General Order A-2, which

2    is titled "Departmental Written Directives."  Under the

3    General Information section, it states, in part, that

4    "Employees shall be responsible for complete familiarity

5    with and adherence to written directives, general orders,

6    and Police Commissioner Memoranda.  As directed, written

7    directives shall be maintained by employees in their

8    General Manuals."

9        It goes on to say that, "Digital versions of

10   General Orders and Police Commissioner's Memoranda shall

11   be distributed in a pdf file, via email. Simultaneously,

12   hard copies of directives shall be printed and

13   distributed to each member.  New directives shall require

14   all supervisors to communicate the content of the new

15   directive to their subordinates at roll call."

16       There was no evidence presented to this Court

17   that at any time between 2012 and the date of this

18   incident that the defendant's General Orders were ever

19   updated pursuant to the policy presented in General Order

20   A-2.  There is no evidence that he was ever given any

21   information at roll call.  This is not to say that the

22   Baltimore City Police Department does not follow General

23   Order A-2 concerning the dissemination of new orders and

24   updates, just that it was not presented to this Court

25   during this trial.

20

1          The audits in Exhibits 20 and 21 concerning

2     seat belting individuals in prisoner transport vehicles

3     was presented to this Court, but clearly they were

4     directed towards transport drivers and what they do by

5     the time they get to Central Booking.  The exhibits had

6     nothing to do with what is done on the streets in an

7     active situation.

8          The State points to Exhibit 22, which shows

9     that at 6:01 p.m., on April 9, 2015, the defendant's

10    police email account received, among other documents,

11    amended policy 1114.  Policy 1114 amended K14,

12    purportedly to take away discretion when seat belting a

13    detainee.

14          Andrew Jaffe who is the director of IT for the

15    police department stated that the emails containing new

16    polices was sent out as a blind copy to all officers

17    under "All BPD," which is a distribution group that

18    includes over 3000 people.  He had no way of knowing if

19    it was opened or read by the defendant, and it was not

20    listed as high priority.

21          The State entered three emails authored by the

22    defendant on April 9, 2015, as evidence that he was using

23    his email account on that day.  I note that Exhibit 23

24    was sent at 1:28 p.m.; Exhibit 24 was sent at 1:39 p.m.;

25    and Exhibit 25 was sent at 2:16 p.m.  The State did not

                                  21

1    present any evidence to show defendant used his email at

2    any time between 2:16 p.m. and 6:01 p.m., and certainly

3    did not present any evidence to show that he used it

4    after 6:01 p.m. on the 9th of April 2015.

5         Concerning the training that the defendant

6    received in the area of transport, Exhibit 27 is the

7    defendant's arrest and control performance evaluation

8    from his time at the Academy.  The State presented

9    Officer Adam Long, who instructed the defendant on the

10   issue of placing a person into a vehicle and how to seat

11   belt them.  In the eighty-hour course, Long noted that

12   there were a number of modules taught, and that the

13   defendant passed the section for placing a suspect into a

14   vehicle.  He did not state that there was separate

15   training for placing someone into a transport wagon or

16   van.  He said there was no specific training for wagon

17   drivers but noted, after the incident with Mr. Gray,

18   there is now.

19        Sergeant Charles Sullivan from the Western

20   District was assigned as the defendant's field training

21   officer in 2012.  Field training is 10 weeks, but he had

22   the defendant for a few weeks less but did not know why.

23   When asked about wagon training, he stated that he did

24   not train the defendant on transport wagon or

25   transporting prisoners, even though it was part of the

Exhibit 5 Page 28

1    required training.  If he had, he would have used a van

2    and shown him how to transport a prisoner.  This was

3    never done.

4            A review of Exhibit 9, which is the defendant's

5    police trainee manual shows that Sergeant Sullivan

6    initialed most of the areas where there is proof that the

7    defendant completed a required task.  Sullivan stated

8    that if there was no check next to the area, the

9    defendant did not complete the task.  Sergeant Sullivan

10   would have referred the defendant to General Orders if it

11   was something that he trained him on.  If he did not

12   train him, he would not have referred him to the General

13   Orders.

14           Brenda Vicenti, who was the field training

15   coordinator, admitted that she was not a trainer, and the

16   area where it is noted for "Arrest Procedures/Processing

17   Prisoners" in Exhibit 9, the very subject matter where

18   the defendant would have received training for the issue

19   at hand, she indicated she did not train him.  She and

20   the defendant initialed "Review," but that was done

21   because she was told to do so by someone at the Academy

22   and believes that the defendant did the same.

23           The Court is not satisfied that the State has

24   shown that the defendant had a duty to seat belt Mr. Gray

25   and, if there was a duty, that the defendant was aware of

                                23

1     the duty.  This Court finds that the State has failed to

2     meet its burden to show that the defendant corruptly

3     failed to do an act required.

4          The Court also finds that, under the facts

5     presented, accomplice liability does not apply for the

6     charges of reckless endangerment and misconduct.

7          Based on the evidence presented, this Court

8     finds that the State has not met its burden to prove,

9     beyond a reasonable doubt, all required elements of the

10    crimes charged.  Therefore, the verdict for each count is

11    not guilty.

12          This Court is in recess.

13          THE CLERK:  All rise.

14          (Whereupon, the matter concluded at 10:57 a.m.)

15

16

17

18

19

20

21

22

23

24

25

24

REPORTER'S CERTIFICATE

I, Patricia A. Trikeriotis, Chief Court Reporter of the Circuit Court for Baltimore City, do hereby certify that the proceedings in the matter of State of Maryland vs. Edward Nero, Case Number 115141033, on May 12, 2016, before the Honorable Barry G. Williams, Associate Judge, were duly recorded by means of digital recording.

I further certify that the page numbers 1 through 24 constitute the official transcript of these proceedings as transcribed by me or under my direction from the digital recording to the within typewritten matter in a complete and accurate manner.

In Witness Whereof, I have affixed my signature this 23rd day of May, 2016.

*Patricia A. Trikeriotis*
Patricia A. Trikeriotis
Chief Court Reporter

25

**DISTRICT COURT OF MARYLAND FOR** Baltimore City, Wabash Ave. _(City/County)_

LOCATED AT (COURT ADDRESS)

5800 Wabash Ave.

Baltimore, MD 21215-3330

DC Case No: 2B02294448

RELATED CASES:

| COMPLAINANT | DEFENDANT |
|---|---|
| Cogen, Maj. Sam | Rice, Brian |
| Printed Name | |
| 100 N. Calvert Street | |
| Number and Street Address | |
| Baltimore, MD 21202    410-396-1155 | City, State, and Zip Code    Telephone |
| City, State, and Zip Code    Telephone | |
| Baltimore City Sheriff's Office #0073 | CC# |
| Agency, sub-agency, and I.D. #    (Officer Only) | |

DEFENDANT'S DESCRIPTION: Driver's License# ▓▓▓▓▓    Sex M Race W Ht 5'8" Wt 190

Hair _____ Eyes _____ Complexion _____ Other _____    D.O.B ▓▓▓▓ ID _____

## APPLICATION FOR STATEMENT OF CHARGES    Page 1 of 5

I, the undersigned, apply for statement of charges and a summons or warrant which may lead to the arrest of the

above named Defendant because on or about  April 12, 2015    at  (See Below)

_____ Date _____    _____ Place _____ , the above named Defendant

On April 12, 2015, between 8:45 and 9:15 a.m., near the corner of North Avenue and Mount Street, Lieutenant Brian Rice

(Concise statement of facts showing that there is probable cause to believe that a crime has been committed and that the Defendant has committed it):

of the Baltimore Police Department (BPD), while on bike patrol with Officers Garrett Miller and Edward Nero, made eye

contact with Mr. Freddie Carlos Gray, Jr. (DOB ▓▓▓▓ ). Having made eye contact, Mr. Gray subsequently ran from

Lt. Rice. Lt. Rice then dispatched over a departmental radio that he was involved in a foot pursuit, at which time bike

patrol Officers Miller and Nero also began to pursue Mr. Gray. (continued)

_____ (Continued on attached  4  pages) (DC/CR 1A) _____

I solemnly affirm under the penalties of perjury that the contents of this Application are true to the best of my knowledge,
information and belief.

May 1, 2015

_____ Date _____    _____ Officer's Signature _____

I have read or had read to me and I understand the Notice on the back of this form.

May 1, 2015

_____ Date _____    _____ Applicant's Signature _____

Subscribed and sworn to before me this  1st  day of  May  2015

Time:  8:30 A M    Judge/Commissioner _____ A Martin _____  1315  I.D.

I understand that a charging document will be issued and that I must appear for trial ☐ on _____

at _____ , ☐ when notified by the Clerk, at the Court location shown at the top of this form.

☒ I have advised applicant of shielding right.  ☒ Applicant declines shielding.

☐ I declined to issue a charging document because of lack of probable cause.

05/01/15

_____ Date _____    _____ A Martin _____ Commissioner  1315  I.D.

Tr.#151001323885

True Test Copy

DC/CR 1 (Rev. 12/2006)

COURTS
CBIF

RECEIVE:    NO. 3374    04/21/2016/THU 02:17PM

Exhibit 1 Page 1

**DISTRICT COURT OF MARYLAND FOR** Baltimore City, Wabash Ave. ................... (City / County )

LOCATED AT ( COURT ADDRESS )
5800 Wabash Ave.
Baltimore, MD 21215-3330

DC Case No: 2B02294448

DEFENDANT'S NAME (LAST, FIRST, M.I.)

Rice, Brian

**APPLICATION FOR STATEMENT OF CHARGES (CONTINUED)**    Page 2 of 5

Having come in contact with the pursuing officers, Mr. Gray surrendered to
Officers Miller and Nero in the vicinity of the 1700 block of Presbury Street.
Officers Miller and Nero then handcuffed Mr. Gray and moved him to a location a
few feet away from his surrendering location. Mr. Gray was then placed in a
prone position with his arms handcuffed behind his back. It was at this time that
Mr. Gray indicated that he could not breathe and requested an inhaler to no avail.
Officers Miller and Nero then placed Mr. Gray in a seated position and
subsequently found a knife clipped to the inside of his pants pocket. The blade of
the knife was folded into the handle. The knife was not a switchblade knife and is
lawful under Maryland law. These officers subsequently removed the knife and
placed it on the sidewalk. Mr. Gray was then placed back down on his stomach,
at which time Mr. Gray began to flail his legs and scream as Officer Miller placed
Mr. Gray in a restraining technique known as a "leg lace" while Officer Nero
physically held him down against his will until a BPD wagon arrived to transport
Mr. Gray. Lt. Rice, Officer Miller and Officer Nero failed to establish probable
cause for Mr. Gray's arrest as no crime had been committed by Mr. Gray.
Accordingly, Lt. Rice, Officer Miller, and Officer Nero illegally arrested Mr. Gray.
Upon arrival of the transport wagon, driven by Officer Ceasar Goodson, Lt. Rice,
Officer Nero, and Officer Miller loaded Mr. Gray into the wagon and at no point
was he secured by a seat belt while in the wagon, contrary to a BPD General
Order.   Lt. Rice then directed the BPD wagon to stop at Baker Street. At Baker
Street, Lt. Rice, Officer Nero and Officer Miller removed Mr. Gray from the
wagon, placed flex cuffs on his wrists, placed leg shackles on his ankles, and
completed required paperwork.  Officer Miller, Officer Nero and Lt. Rice then

05/01/15
Date

Applicant's Signature

PC DC/CR 1A (Rev. 1/02)

Tr.# 151001323885

True Test Copy
COURT COPY
JUN 2 3 2016
By:                          Date:
CBIF

RECEIVE:         NO.3374        04/21/2016/THU 02:17PM

**DISTRICT COURT OF MARYLAND FOR** Baltimore City, Wabash Ave. ............... (City / County)

LOCATED AT ( COURT ADDRESS )
5800 Wabash Ave.
Baltimore, MD 21215-3330

DC Case No: 2B02294448

---

DEFENDANT'S NAME (LAST, FIRST, M.I.)

Rice, Brian

---

**APPLICATION FOR STATEMENT OF CHARGES (CONTINUED)**   Page 3 of 5

loaded Mr. Gray back into the wagon, placing him on his stomach, head first onto the floor of the wagon. Once again, Mr. Gray was not secured by a seatbelt in the wagon, contrary to a BPD General Order. Lt. Rice then directed Officer Goodson to transport Mr. Gray to the Central Booking and Intake Facility.

Following transport from Baker Street, Mr. Gray suffered a severe and critical neck injury as a result of being handcuffed, shackled by his feet, and unrestrained inside of the BPD wagon.  From Baker Street, Officer Goodson proceeded to the vicinity of Mosher Street and Fremont Avenue, where he subsequently parked the wagon and proceeded to the back of the wagon in order to observe Mr. Gray. Despite stopping for the purpose of checking on Mr. Gray's condition, at no point did he seek, nor did he render, any medical assistance for Mr. Gray.  Officer Goodson returned to his driver's seat and proceeded toward the Central Booking and Intake Facility, with Mr. Gray still unsecured by a seat belt, contrary to a BPD General Order.

Several blocks later, Officer Goodson called into dispatch that he needed to check on the status of his prisoner and requested additional units at Dolphin Street and Druid Hill Avenue. Officer William Porter arrived on the scene near Dolphin Street and Druid Hill Avenue. Both Officer Goodson and Officer Porter proceeded to the back of the wagon to check on the status of Mr. Gray's condition.  Mr. Gray requested "help" and indicated that he could not breathe. Officer Porter asked Mr. Gray if he needed a medic, at which time, Mr. Gray indicated at least twice that he was in need of a medic. Officer Porter then physically assisted Mr. Gray from the floor of the van to the bench. However, despite Mr. Gray's appeal for a medic, both officers assessed Mr. Gray's

---

05/01/15
Date

Applicant's Signature

Tr.# 151001323885

True Test Copy

COURT COPY

PC DC/CR 1A (Rev. 1/02)

RECEIVE:        NO.3374        04/21/2016/THU 02:17PM

**DISTRICT COURT OF MARYLAND FOR** Baltimore City, Wabash Ave. ............ (City / County )

LOCATED AT ( COURT ADDRESS )

5800 Wabash Ave.

Baltimore, MD 21215-3330

DC Case No: 2B02294448

DEFENDANT'S NAME (LAST, FIRST, M.I.)

Rice, Brian

**APPLICATION FOR STATEMENT OF CHARGES (CONTINUED)** Page ....4.... of ....5....

condition and at no point did either of them restrain Mr. Gray, per BPD General Order, nor did they render or request medical assistance.

While discussing the transportation of Mr. Gray for medical attention, a request for additional units was made for an arrest at 1600 W. North Avenue. Officer Porter left the vicinity of Dolphin Street and Druid Hill Avenue to assist in the arrest of another prisoner at North Avenue. Despite Mr. Gray's obvious and recognized need for medical assistance, Officer Goodson, in a grossly negligent manner chose to respond to the 1600 block of W. North Avenue, with Mr. Gray still unsecured by a seat belt in the wagon, without rendering to or summonsing medical assistance for Mr. Gray

Officer Goodson arrived at North Avenue to transport the individual arrested at the location of North and Pennsylvania Avenues, at which time he was again met by Officers Nero, Miller, Porter, and Lt. Rice. Once the wagon arrived, Officer Goodson walked to the back of the wagon and again opened the doors to the wagon to make observations of Mr. Gray. Sgt. Alicia White, Officer Porter, and Officer Goodson observed Mr. Gray unresponsive on the floor of the wagon. Sgt. White, who was responsible for investigating two citizen complaints pertaining to Mr. Gray's illegal arrest, spoke to the back of Mr. Gray's head. When he did not respond, she did nothing further despite the fact that she was advised that he needed a medic. She made no effort to look, assess or determine his condition. Despite Mr. Gray's seriously deteriorating medical condition, no medical assistance was rendered to or summonsed for Mr. Gray at that time by any officer.

After completing the North Avenue arrest and loading the additional prisoner into

05/01/15

Date

Applicant's Signature

Tr.# 151001323885

COURT COPY

JUN 2 ? 2016

**PC DC/CR 1A (Rev. 1/02)**

**DISTRICT COURT OF MA_____ ) FOR _____** (City/County)

LOCATED AT (COURT ADDRESS)

5800 Wabash Av

Balto, MD 21215

DC Case No: 2B02294

DEFENDANT'S NAME (LAST, FIRST, M.I.)
Rice, Brian

## APPLICATION FOR STATEMENT OF CHARGES (CONTINUED)   Page 5   of 5

the opposite side of the wagon containing Mr. Gray, Officer Goodson then proceeded to the Western District Police Station, where contrary to the BPD General Order, he again failed to restrain Mr. Gray in the wagon for at least the fifth time.
At the Western District Police Station, the defendant arrested at North Avenue was unloaded, escorted, and secured inside of the police station prior to attending to Mr. Gray. By the time Officer Zachary Novak, Sgt. White, and an unknown officer attempted to remove Mr. Gray from the wagon, Mr. Gray was no longer breathing at all. A medic was finally called to the scene, where upon arrival, the medic determined that Mr. Gray was now in cardiac arrest and was critically and severely injured.
Mr. Gray was rushed to the University of Maryland Shock Trauma Unit, where he underwent surgery. On April 19, 2015, Mr. Gray succumbed to his injuries and was pronounced dead. The manner of death, deemed a homicide by the Maryland State Medical Examiner, is believed to be the result of a fatal injury that occurred while Mr. Gray was unrestrained by a seat belt in the custody of the BDP wagon. All events occurred in Baltimore City, Maryland.

05/01/15
Date

Applicant's Signature

SAM COGEN    0073
Printed Name

Tr.# 151001323885

**DC-CR-001A** (Rev. 04/2015)

RECEIVE:          NO.3374        04/21/2016/THU 02:17PM





# DISTRICT COURT OF MARYLAND FOR Baltimore City

Located at 5800 Wabash Avenue, Baltimore, Maryland 21215

Case No. 2B02294448

**STATE OF MARYLAND    VS.    RICE, BRIAN**

COMPLAINANT:
MAJOR, SAM COGEN
100 N. CALVERT STREET
BALTIMORE, MD  21202

CC#: 7150400000        SID:
LID:                          DL#:
Race: 2    Sex: M    Ht: 5' 8"    Wt: 190    Hair:    Eyes:
DOB:          Phone(H):          Phone(W):

## STATEMENT OF CHARGES

UPON THE FACTS CONTAINED IN THE APPLICATION OF MAJOR, SAM COGEN IT IS FORMALLY CHARGED
THAT RICE, BRIAN          at the dates, times and locations specified below:

| NUM | CHG/CIT | STATUTE | PENALTY | DESCRIPTION OF THE CHARGE |
|---|---|---|---|---|
| 001 | 1 0910 | CR 2 207 ((a) | 10 Y &/or $500.00 | **MANSLAUGHTER**<br>On or About 04/12/2015 - 04/12/2015 at 8:45AM<br>VARIOUS LOCATIONS IN BALTIMORE CITY<br>BALTIMORE, MARYLAND<br>...did, feloniously, without malice aforethought, kill and slay MR. FREDDIE CARLOS GRAY, JR. , against the peace, government, and dignity of the State.<br>Against the Peace, Government, and Dignity of the State. |
| 002 | 1 1415 | CR 3 203 | 10 Y &/or $2,500.00 | **ASSAULT-SEC DEGREE**<br>On or About 04/12/2015 - 04/12/2015 at 8:45AM<br>1700 BLCK OF PRESBURY STREET<br>BALTIMORE, MARYLAND<br>...did assault MR. FREDDIE CARLOS GRAY, JR. in the second degree in violation of CR 3-203, contrary to the form of the act of the assembly in such case made and provided and against the peace, government, and dignity of the state.<br>Against the Peace, Government, and Dignity of the State. |
| 003 | 1 1415 | CR 3 203 | 10 Y &/or $2,500.00 | **ASSAULT-SEC DEGREE**<br>On or About 04/12/2015 - 04/12/2015 at 8:45AM<br>1600-1700 BLOCKS OF N. MOUNT STREET<br>BALTIMORE, MARYLAND<br>...did assault MR. FREDDIE CARLOS GRAY, JR. in the second degree in violation of CR 3-203, contrary to the form of the act of the assembly in such case made and provided and against the peace, government, and dignity of the state.<br>Against the Peace, Government, and Dignity of the State. |
| 004 | 2 0645 | CL | | **MISCONDUCT IN OFFICE**<br>On or About 04/12/2015 - 04/12/2015 at 8:45AM<br>1700 BLOCK OF PRESBURY STREET<br>BALTIMORE, MARYLAND<br>THAT BRIAN WESLEY RICE, A PUBLIC OFFICER, WHILE ACTING UNDER COLOR OF HIS OFFICE, CORRUPTLY DID AN UNLAWFUL ACT AND CORRUPTLY FAILED TO DO AN ACT REQUIRED BY THE DUTIES OF HIS OFFICE AND CORRUPTLY DID A LAWFUL ACT IN VIOLATION OF THE COMMON LAW OF MARYLAND.<br>Against the Peace, Government, and Dignity of the State. |
| 005 | 2 0645 | CL | | **MISCONDUCT IN OFFICE**<br>On or About 04/12/2015 - 04/12/2015 at 8:45AM<br>1600-1700 BLOCKS OF N. MOUNT STREET<br>BALTIMORE, MARYLAND<br>THAT BRIAN WESLEY RICE, A PUBLIC OFFICER, WHILE ACTING UNDER COLOR OF HIS OFFICE, CORRUPTLY DID AND UNLAWFUL ACT AND CORRUPTLY FAILED TO DO AN ACT REQUIRED BY THE DUTIES OF HIS OFFICE AND CORRUPTLY DID A LAWFUL ACT IN |

Date : 05/01/2015  Time : 08:55 AM

Tracking No. 151001323885

Judicial Officer:                                    1315

JUN 2 3 2015



**DISTRICT COURT OF MARYLAND FOR Baltimore City**
Located at 5800 Wabash Avenue, Baltimore, Maryland 21215

Case No. 2B02294448

**STATE OF MARYLAND    VS.    RICE, BRIAN**

CONTINUATION PAGE OF STATEMENT OF CHARGES

VIOLATION OF THE COMMON LAW OF MARYLAND.
Against the Peace, Government, and Dignity of the State.

006    I 0042    CL

FALSE IMPRISONMENT
On or About 04/12/2015 - 04/12/2015 at 8:45AM
1700 BLOCK OF PRESBURY STREET
BALTIMORE, MARYLAND
...did unlawfully and intentionally detain MR. FREDDIE CARLOS GRAY, JR. .
in violation of the Common Law.
Against the Peace, Government, and Dignity of the State.

True Test Copy

By: _____  Date: MAY 2 3 2016

Date : 05/01/2015  Time : 08:55 AM
Tracking No. 151001323885

Judicial Officer: _____ Martin  1315

COURTS
CBIF

RECEIVE:          NO. 3374        04/21/2016/THU 02:17PM

Exhibit 3    Page 2

J.A. 000095





## DISTRICT COURT OF MARYLAND FOR Baltimore City
Located at 5800 Wabash Avenue, Baltimore, Maryland 21215

Case No. 2B02294448

**STATE OF MARYLAND    VS.    RICE, BRIAN ~~SCOTT~~**

CC#: 7150400000    SID:
LID:    DL#:
Race: 2    Sex: M    Ht: 5' 8"    Wt: 190    Hair:    Eyes:
DOB:    Phone(H):    Phone(W):

| Charge | Statute | Arrest | Charge | Statute | Arrest |
|---|---|---|---|---|---|
| MANSLAUGHTER | CR 2 207 (A) | | ASSAULT-SEC DEGREE | CR 3 203 | |
| ASSAULT-SEC DEGREE | CR 3 203 | | MISCONDUCT IN OFFICE | CL | |
| MISCONDUCT IN OFFICE | CL | | FALSE IMPRISONMENT | CL | |

## ARREST WARRANT ON CHARGING DOCUMENT - Warrant No. D150291691

STATE OF MARYLAND,    Baltimore City
TO ANY PEACE OFFICER, Greetings:

YOU ARE ORDERED to arrest and bring before a judicial officer the above-named Defendant as soon as practicable and without unnecessary delay. If a judicial officer is not readily available, this Warrant shall authorize the prisoner's detention until compliance is had with Rule 4-212 and the arresting officer is authorized and required to comply with Rule 4-212.

**IF THE DEFENDANT IS NOT IN CUSTODY FOR ANOTHER OFFENSE,**
Initial appearance is to be held in county in which Warrant was issued.

**IF THE DEFENDANT IS IN CUSTODY FOR ANOTHER OFFENSE,** this Warrant is to be lodged as a detainer for the continued detention of the Defendant for the offense charged in the charging document. When the Defendant is served with a copy of the charging document and Warrant, the Defendant shall be taken before a judicial officer of the District Court.

Date: 05/01/2015    Time: 08:55 AM    Judge/Commissioner: _Delores Martin_    ID: 1315

Given to: **BALTIMORE CITY SHERIFF'S DEPT**

### RETURN OF SERVICE

☑ I certify that at _1:31 P_ M on _5/1/15_ at _CENTRAL BOOKING INTAKE CENTER_ _____, I executed this Arrest Warrant by arresting the Defendant and delivered a copy of the Statement of Charges to the Defendant.

☑ I left a copy of the Warrant and Charging Document as a detainer for the continued detention of the Defendant at:

Facility: _CENTRAL BOOKING INTAKE CENTER_
Location: _300 E. MADISON ST. BALTO MD 21202_
Signature & Title of Peace Officer: _____ /_SERGEANT_
Printed Name of Officer: _E. SANTIAGO_
Agency, Sub-Agency, I.D.: _22, 24 #0161_
Date: _5/1/15_

True Test Copy

Tracking No: 151001323885

**ARREST WARRANT ON CHARGING DOCUMENT**

_COURTS_

Exhibit 4

J.A. 000096

Page: 1                Date: 05/22/2015
Room: 5                Time: 10:31 AM

Case No. 2B02294448





# DISTRICT COURT OF MARYLAND FOR BALTIMORE CITY
Located at 5800 WABASH AVE., BALTIMORE, MD 21215-3330

## STATE OF MARYLAND VS. RICE, BRIAN SCOTT

CC #: 7150400000      State ID:          LocID:
Eyes:         Hair:        Height: 5'08"      Weight: 190 lb.
Race: 2       Sex: M       DOB:              DL #:

## DEFENDANT TRIAL SUMMARY

A Hearing on the above case was held today, 05/22/2015
by Judge KEVIN MICHAEL WILSON
Case has been forwarded to the Circuit Court for BALTIMORE CITY

An Indictment has been filed. # 115141035.
    001 MANSLAUGHTER

    002 ASSAULT-SEC DEGREE

    003 ASSAULT-SEC DEGREE

    004 MISCONDUCT IN OFFICE

    005 MISCONDUCT IN OFFICE

    006 FALSE IMPRISONMENT

Your next Court Appearance will be at the Circuit Court on 05/27/2015.

05/22/2015      Defendant_____      (RICE, BRIAN SCOTT)

You may be entitled to expunge this record and any DNA Sample and DNA Record relating to the charge or charges against you if you meet certain conditions. Further information on expungement is contained in a brochure available at the Clerk's Office or on our website at http://www.courts.state.md.us/district.

Tracking No. 151001323885



# 15141035

**STATE OF MARYLAND**

vs.

**LT. BRIAN RICE**
1034 N. Mount Street
Baltimore, MD 21217
- - - D.O.B:
BPI# ___ SID#
Trkg.# 151001323885
District Cc# 2B02294448
CC# 7150400000

## Indictment

(TRUE BILL)

Grand Jury Foreman's
Signature Appears on
Original Document only

JANICE L. BLEDSOE 68776
Police Integrity Unit

### WITNESSES

**DETECTIVE DAWNYELL S. TAYLOR, G932**
BCPD

**LINK WITH: CODEFENDANTS**

Officer Edward Michael Nero
SID#

Officer Garrett Edward Miller
SID#

ARR. DATE:

## NOTICE TO THE DEFENDANT

1. This paper charges you with committing a crime.
2. If you have been arrested, you have the right to have a judicial officer decide whether you should be released from jail until trial.
3. You have the right to have a lawyer.
4. A lawyer can be helpful to you by:
   (A) explaining the charges in this paper;
   (B) telling you the possible penalties;
   (C) helping you at trial;
   (D) helping you protect your constitutional rights; and
   (E) helping you plan to plead guilty if convicted.
5. Even if you plan to plead guilty, a lawyer can be helpful.
6. If you want a lawyer but do not have the money to hire one, the Public Defender may provide a lawyer for you. The court clerk will tell you how to contact the Public Defender.
7. If you want a lawyer but you cannot get one and the Public Defender will not provide one for you, contact the court clerk as soon as possible.
8. **DO NOT WAIT UNTIL THE DATE OF YOUR TRIAL TO GET A LAWYER.** If you do not have a lawyer before the trial date, you may have to go to trial without one.

**TRUE COPY**
TEST

6-30-16

LAVINIA G. ALEXANDER, CLERK

Exhibit 6  Page 1

J.A. 000098

*State of Maryland,*
### City of Baltimore, to wit:
## IN THE CIRCUIT COURT FOR BALTIMORE CITY

| |
|---|
| The State of Maryland<br>-vs-<br>**LT. BRIAN RICE**<br><br><br><br>Defendant(s): |

Date of Offense: **April 12, 2015**

Complainant:   **DETECTIVE DAWNYELL S. TAYLOR**

## INDICTMENT

The Jurors of the State of Maryland for the body of the City of Baltimore, do on their oath present that the aforesaid DEFENDANT(S)**,** late of said City, heretofore on or about the date(s) **April 12, 2015**, at **various locations**, in the City of Baltimore, State of Maryland, feloniously did act in a grossly negligent manner and that DEFENDANT'S grossly negligent conduct did cause the death of **Freddie Carlos Gray, Jr.,** in violation of the Common Law of Maryland and section 2-207 of the Annotated Code of Maryland;; against the peace, government and dignity of the State.

[Common Law; CR 2-207; CR 2-208]  1 0910

## SECOND COUNT

The Jurors of the State of Maryland for the body of the City of Baltimore, do on their oath present that the aforesaid DEFENDANT(S), late of said City, heretofore on or about the date(s) **April 12, 2015**, at the **1600-1700 Blocks of N. Mount Street**, in the City of Baltimore, State of Maryland, did assault **Freddie Carlos Gray, Jr.** in the second degree, in violation of Criminal Law Article, Section 3-203 of the Annotated Code of Maryland; against the peace, government and dignity of the State.

[CR 3-201; CR 3-203; CR 3-206] 1 1415

Exhibit 6 Page 2

### THIRD COUNT

The Jurors of the State of Maryland for the body of the City of Baltimore, do on their oath present that the aforesaid DEFENDANT(S), late of said City, heretofore on or about the date(s) **April 12, 2015**, at the **1700 Block of Presbury Street**, in the City of Baltimore, State of Maryland, that a public officer, while acting under color of his office, corruptly did an unlawful act and corruptly failed to do an act required by the duties of his office and corruptly did a lawful act in violation of the common law of Maryland; against the peace, government and dignity of the State.

Common Law  2 0645

### FOURTH COUNT

The Jurors of the State of Maryland for the body of the City of Baltimore, do on their oath present that the aforesaid DEFENDANT(S), late of said City, heretofore on or about the date(s) **April 12, 2015**, at the **1600-1700 Blocks of N. Mount Street**, in the City of Baltimore, State of Maryland, that a public officer, while acting under color of his office, corruptly did an unlawful act and corruptly failed to do an act required by the duties of his office and corruptly did a lawful act in violation of the common law of Maryland; against the peace, government and dignity of the State.

Common Law  2 0645

### FIFTH COUNT

The Jurors of the State of Maryland for the body of the City of Baltimore, do on their oath present that the aforesaid DEFENDANT(S), late of said City, heretofore on or about the date(s) **April 12, 2015**, at the **1600-1700 Blocks of N. Mount Street**, in the City of Baltimore, State of Maryland, did recklessly engage in conduct that created a substantial risk of death and serious physical injury to **Freddie Carlos Gray, Jr.**, in violation of Criminal Law Article, Section 3-204 of the Annotated Code of Maryland; against the peace, government and dignity of the State.

[CR 3-201; CR 3-204(a)(1); CR 3-204; CR 3-206] 1 1425

_____

The State's Attorney for the City of Baltimore

Exhibit 6 Page 3

J.A. 000100

```
10:28:31 Thursday July 21, 2016
     07/21/16  CRIMINAL  COURT  OF  BALTIMORE          CASE INQUIRY  10:28
      CASE 115141035                    DCM TRACK C DATE 090215    FELONY DRUG INIT
      CASE 115141035 STATUS C DATE 071816 PREV ST A 052115 CODEF YES CHANGE 071816
      DEF RICE, BRIAN LT          ID A32449  SID ████████  R: W S: M DOB ████
       ADDRESS  ██████████████████
       DOA 000000 CMPL 50400000 PHYS LOC            CASE LOC BAL 050115
       DOF 052115 TRACK NO 15-1001-32388-5 DIST CASE 2B02294448 WAR 00 CJIS   RI 1
     001 000 C USER MANS1 CODE 1 0910       MANSLAUGHTER          DISP NG   071816
       ARREST/CITATION NO 0
            PLEA NG   DATE 071816      VERDICT NG   DATE 071816
        SENTENCE TYPE    DATE          TIME          BEG       SUSP
            PROBATION TIME            TYPE          COST       FINE
     002 000 C USER ASLT2 CODE 1 1415       ASSAULT-SEC DEGREE    DISP ACGA 071816
       ARREST/CITATION NO 0
            PLEA      DATE          VERDICT     DATE
        SENTENCE TYPE    DATE          TIME          BEG       SUSP
            PROBATION TIME            TYPE          COST       FINE
     003 000 C USER MISC  CODE 2 0645       MISCONDUCT IN OFFICE  DISP NP   070716
       ARREST/CITATION NO 0
            PLEA      DATE          VERDICT     DATE
        SENTENCE TYPE    DATE          TIME          BEG       SUSP
            PROBATION TIME            TYPE          COST       FINE

  NEXT PAGE                            P/N              PAGE 001
```

LAVINIA G. ALEXANDER, CLERK      7-21-16

Exhibit 7 Page 1

J.A. 000101

```
10:28:32 Thursday July 21 2016

  07/21/16  CRIMINAL  COURT  OF  BALTIMORE                    CASE INQUIRY  10:28
   CASE 115141035 ST C RICE, BRIAN LT          A32449  COD Y DCM C 090215
 004 000 C USER MISC  CODE 2 0645      MISCONDUCT IN OFFICE  DISP NG  071816
      ARREST/CITATION NO 0
             PLEA NG  DATE 071816    VERDICT NG  DATE 071816
      SENTENCE TYPE      DATE        TIME            BEG        SUSP
             PROBATION TIME          TYPE            COST       FINE
 005 000 C USER RECKL CODE 1 1425      RECKLESS ENDANGERMENT  DISP NG  071816
      ARREST/CITATION NO 0
             PLEA NG  DATE 071816    VERDICT NG  DATE 071816
      SENTENCE TYPE      DATE        TIME            BEG        SUSP
             PROBATION TIME          TYPE            COST       FINE
 EVENT DATE   OPER PART TIME ROOM REAS / EVENT COMMENT
 CASI 052115    S8T CASE ADDED THROUGH ON-LINE ON THIS DATE  20150522
 COMM 052115    S8T INDICTMENT FILED
 COMM 052115    S8T CC#7150400000
 COMM 052115    S8T FILED ASA - BLEDSOE, JANICE L          , ESQ 68776
 MOTF 052715    SCB MOTION FOR SPEEDY TRIAL
 MOTF 052715    SCB MOTION TO PRODUCE DOCUMENTS
 MOTF 052715    SCB REQUEST FOR DISCOVERY
 MOTF 052715    SCB MOTION TO SUPPRESS PURSUANT TO MD 4-252 AND 4-253
 MOTF 052715    SCB MOTION FOR GRAND JURY TESTIMONY

 NEXT PAGE                        P/N              PAGE 002
```

```
10:28:57 Thursday, July 21, 2016
07/21/16  CRIMINAL  COURT  OF  BALTIMORE                    CASE INQUIRY  10:28
   CASE 115141035 ST C RICE, BRIAN LT          A32449  COD Y DCM C 090215
EVENT DATE   OPER PART TIME ROOM REAS / EVENT COMMENT
COMM 070516    SCB DEF'S MOTION FOR RELIEF ON CONTINUED DISCOVERY VIOLATION ON
COMM 070516    SCB 6/30/16 IS HEREBY HEARD AND GRANTED
COMM 070516    SCB CASE CONTINUES ON 7/7/16 PART 31 AT 9:30AM
COMM 070516    CPR COPIES MAILED TO DEFENSE COUNSEL AND STATE'S ATTORNEY
HCAL 070716 1 SCB P31;0900;528 ;CT  ;  ;CONT;   ;WILLIAMS, BARRY;8C9
COMM 070716    SCB STATE ENTER A NOLLE PROSEQUI AS TO COUNT 3 ONLY; FILE IN
COMM 070716    SCB COURT; CASE CONTINUES ON 7/8/16 AT 9:30AM
HCAL 070716    SCB P31;0900;528 ;CT  ;NP;JUDG;   ;WILLIAMS, BARRY;8C9
COMM 070816    SCB CSET CT  ; P31; 07/07/16; SCB
COMM 070816    SCB CSET CT  ; P31; 07/07/16; SCB
HCAL 070816 1 lgj P31;0900;528 ;CT  ;  ;CONT;   ;WILLIAMS, BARRY;8C9
COMM 070816    lgj CONTINUED TO 07/11/16 IN PART 31 AT 9:30AM; FILE IN COURT
COMM 071116    CKW AT THE END OF STATE'S CASE DEFENSE MOTION FOR JUDGEMENT OF
COMM 071116    CKW ACQUITTAL IS GRANTED TO CT2 (ASSAULT 3RD DEGREE) AND DENIED
COMM 071116    CKW AS TO CT1,4,AND 5;CONTINUED 7/12/16 PT31 9:30A;DILE IN COURT
HCAL 071216 1 CPR P31;0900;528 ;CT  ;  ;CONT;   ;WILLIAMS, BARRY;8C9
COMM 071216    CPR DEFENSE MOTION TO ALLOW OFFICER PORTER TRANSCRIPT FROM
COMM 071216    CPR 12/9/15 UNDER 5804 B1 IS HEREBY HEARD AND "GRANTED"; STATES
COMM 071216    CPR MOTION TO REQUEST THAT CROSS EXAM COME IN ON OFFICER IS
```

**NEXT PAGE**                              P/N                    PAGE 059

IN THE CIRCUIT COURT FOR BALTIMORE CITY, MARYLAND

STATE OF MARYLAND

     vs.                       Case Number:
                                115141035

BRIAN RICE,

          DEFENDANT.
      _____/

REPORTER'S OFFICIAL TRANSCRIPT OF PROCEEDINGS
(Trial on the Merits - Verdict)

Baltimore, Maryland

Monday, July 18, 2016

BEFORE:

     HONORABLE BARRY G. WILLIAMS, Associate Judge

APPEARANCES:

     For the State:

         JANICE BLEDSOE, ESQUIRE
         MICHAEL SCHATZOW, ESQUIRE
         JOHN BUTLER, ESQUIRE
         SARAH AKHTAR, ESQUIRE

     For the Defendant:

         MICHAEL BELKSY, ESQUIRE
         CHAZ BALL, ESQUIRE
         MICHAEL DAVEY, ESQUIRE

* Proceedings Digitally Recorded *

Transcribed by:
Christopher W. Metcalf
Deputy Court Reporter
Circuit Court for Baltimore City
111 N. Calvert Street
Suite 515, Courthouse East
Baltimore, Maryland 21202

1

Exhibit 8

TABLE OF CONTENTS

Page

The Court's Ruling (Not Guilty)                    3

2

Exhibit 8

1              P R O C E E D I N G S

2                  ( 10:06:00 a.m.)

3          THE CLERK:  All rise.  The Circuit Court for

4    Baltimore City, Part 31, will start the morning session.

5    The Honorable Barry G. Williams presiding.

6          THE COURT:  Good morning.  Everyone, please be

7    seated.  Call the case.

8          MR. SCHATZOW:  Good morning, Your Honor.  This

9    is the case of the State of Maryland versus Brian Rice.

10   Number 115141035.  Mike Schatzow on behalf of the State

11   together with Deputy State's Attorney, Janice Bledsoe and

12   Assistant State's Attorneys, John Butler and Sarah Akhtar

13   and our law clerk, Michael Fiarenso, Your Honor.

14         THE COURT:  Good morning.

15         MR. SCHATZOW:  Good morning, Your Honor.

16         MR. BELSKY:  Good morning, Your Honor.  Michael

17   Belsky on behalf of Lieutenant Rice, who is present

18   standing to my left.  Also, on behalf of the defendant is

19   Chaz Ball, Mike Davey and behind us are our law clerks

20   Marty Spirlene, Adam Davey.  Good morning, Your Honor.

21         THE COURT:  Good morning.  All right. The court

22   will issue it's ruling.

23       The State has charged the defendant with Involuntary

24   Manslaughter, Reckless Endangerment and Misconduct in

25   Office.  As the finder of fact, and in determining the

                           3

Exhibit 8

1   outcome of the charges, the court must be guided by the

2   law that pertains to the pending charges.

3       In order to convict the defendant of involuntary

4   manslaughter, the State must prove that the defendant

5   acted in a grossly negligent manner and that this grossly

6   negligent conduct caused the death of Freddie Gray.

7       In order to convict the defendant of reckless

8   endangerment, the State must prove that the defendant

9   engaged in conduct that created a substantial risk of

10  death or serious physical injury to another; that a

11  reasonable person would not have engaged in that conduct

12  and that the defendant acted recklessly.

13      Finally, in order to convict the defendant of

14  misconduct in office the State must prove that the

15  defendant was a public officer, that the defendant acted

16  in his official capacity and that the defendant corruptly

17  failed to do an act required by the duties of his office.

18  The State has the burden of proving, beyond a reasonable

19  doubt, each and every element of the crimes charged.  If

20  the State fails to meet that burden for any element of

21  any of the charged offenses, this court is

22  constitutionally required to find the defendant not

23  guilty of that crime.

24      As would be the case if this matter was tried before

25  a jury, as trial judge and the finder of fact, this court

4

Exhibit 8

1    has, and I am paraphrasing Maryland Pattern Jury

2    Instruction 2:04, an obligation "to consider and decide

3    this case fairly and impartially." The court must

4    "perform this duty without bias or prejudice as to any

5    party."   This court cannot "be swayed by sympathy,

6    prejudice or public opinion."

7    At this time, and all times, it is critical for this

8    court not to base any decision on public opinion or

9    emotion.

10        In order to assess this case the court finds it

11    helpful to discuss some of the facts presented at trial.

12    All times mentioned occurred on the morning of April 12,

13    2015.  Based on a call placed over KGA by the defendant,

14    Mr. Gray was stopped by police officers in the area of

15    Presbury and Mount.  Throughout trial, the area was

16    referred to as stop 1.  A review of the Kevin Moore video

17    (State's exhibit 51), the KGA transcript (State's exhibit

18    56), the CCTV video of the area around stop 1 (exhibit

19    57), and a still shot of the CCTV video (exhibit 58C)

20    shows that Officer Garrett Miller twice called for a

21    wagon over KGA at approximately 8:43a.m.

22        At the same time he noted that Gilmor Homes was

23    starting to empty out.  The defendant was on KGA both

24    before and after Miller's transmissions.  The wagon

25    arrived and the defendant was on the scene within

5

Exhibit 8

1   minutes.  Mr. Moore and Mr. Brandon Ross were within 5 to

2   10 feet of Miller, Officers Edward Nero, Zachary Novak

3   and Caesar Goodson when Mr. Gray was placed into the

4   wagon at stop 1.  As the officers attempted to place Mr.

5   Gray in the wagon he was yelling and complaining about

6   his handcuffs being too tight.  Mr. Gray did not complain

7   about any back or neck pain.

8        At stop 1 the defendant was not involved in placing

9   Mr. Gray into the wagon but interacted with citizens,

10  including Mr. Ross, by telling them to clear the area.

11  At last 11 citizens were in the area at the time Mr. Gray

12  was on the ground, picked up, walked to and placed into

13  the wagon.  Some citizens were yelling, some were not.

14  Mr. Ross stated that at stop 1, the defendant threatened

15  him and told him to leave the area.  Mr. Ross left and

16  called 911.  At some point he heard screaming through the

17  Gilmore Homes and went to Mount and Baker, which has been

18  identified as stop 2.

19       It is there that he saw Mr. Gray out of the wagon,

20  on the ground and on his knees.  The defendant, along

21  with other officers, picked up Mr. Gray and placed him on

22  the floor of the wagon.  Mr. Ross testified that he could

23  hear Mr. Gray inside the vehicle and he believed that Mr.

24  Gray was kicking while inside the vehicle.  He was angry

25  because he believed that Mr. Gray had been tased by

Exhibit 8

1      officers.

2         Officer Novak testified that he responded to Stop 1

3      and helped Officer Nero pick up Mr. Gray and take him to

4      the wagon.  Mr. Gray did not assist them in placing him

5      in the wagon.  Novak stated that Mr. Gray was not seat-

6      belted at stop 1 because there was a crowd and for

7      officer safety they wanted to get out of the area.  He

8      heard Mr. Gray yelling and rocking the wagon.

9         According to Officer Nero he, Miller and the

10     defendant met after Mr. Gray was placed in the wagon at

11     stop 1.  This meeting is corroborated by exhibit 69A

12     which shows the three of them on a CCTV still photo at

13     8:45:50.  According to Nero, it was at this meeting that

14     the defendant stated shackles should be placed on Mr.

15     Gray and that the wagon should go to the Western District

16     instead of Central Booking.  He was not asked, and did

17     not say, why the decision was made.  The three proceeded

18     to meet the wagon at Mount Street.  When the wagon driver

19     opened the door, Mr. Gray was seated.  Nero testified

20     that Mr. Gray was flailing, screaming and either actively

21     or passively resisting when he came out of the wagon.

22     People were screaming that the officers had injured Mr.

23     Gray.  The defendant and Miller took Mr. Gray out of the

24     wagon.  Miller retrieved his cuffs, replaced them with

25     flex cuffs and placed shackles on Mr. Gray.  At this

7

Exhibit 8

1   point, Mr. Gray had gone limp so, to get him back into

2   the wagon, the defendant got into the wagon and pulled

3   Mr. Gray by the shoulders while Nero had his hands on Mr.

4   Gray's legs.

5       Officer William Porter testified under immunity

6   granted by the State.  Because the State chose not to ask

7   questions concerning stops 1 and 2, the defense requested

8   permission to present evidence of Porter's testimony from

9   his trial in December of 2015 pursuant to MD. Rule 5-804

10  (b)(1).  After a hearing this court ruled that under the

11  circumstances presented, it would be appropriate to allow

12  the defendant's request and allowed into evidence defense

13  exhibit 18.  The State sought to present other portions

14  of Porter's testimony from that trial.  The defense did

15  not object and without the necessity of a ruling from

16  this court, the court received State's exhibit 91.

17      At his trial, Porter stated that at stop 2 he was

18  there when Mr. Gray was placed into the wagon but did not

19  assist because, either he was not looking or there were

20  enough officers on the scene.  He then proceeded to

21  assist with crowd control and approached Mr. Ross who was

22  seeking to talk to a supervisor because of what was

23  happening to Mr. Gray.  He informed Mr. Ross if the

24  defendant was a supervisor.  Porter said that he walked

25  back to the van where he heard bumping and noted that the

8

Exhibit 8

1    wagon was shaking side to side.

2        Mr. Ross is responsible for State's exhibit 53,

3    which has been referred to as the Ross video, which shows

4    Mr. Gray being placed into the wagon and some of the

5    other activity at stop 2.  At the beginning of the video,

6    Mr. Ross is cursing and loudly voicing his displeasure

7    that Mr. Gray had been arrested.  The court notes that

8    there were other individuals in the area when this

9    occurred.  At 7 seconds of the video, Mr. Gray is on the

10   ground.  At 10 seconds, Porter arrives and at 13 seconds,

11   Nero kneels down and grabs Mr. Gray's legs.  At 22

12   seconds, the defendant steps out of the van after having

13   grabbed Mr. Gray under the arms and placing him on the

14   floor of the wagon.

15       Simultaneously an unknown female voice asks "is he

16   alright?" Mr. Ross says "No." At 34 seconds, Mr. Ross

17   asks Porter for a supervisor and when told that the

18   defendant was a supervisor, wanted someone else.  At 1

19   minute and 01 second, Mr. Ross says to Porter, in a loud

20   voice, that the officers had taken Mr. Gray out of the

21   wagon, took off his handcuffs and tased him. Ross stated

22   that he had it on camera and again expressed his

23   displeasure with the actions of the officers.  At 1

24   minute and 10 seconds, he advised Porter that the

25   officers would get no respect if they "do that."  At 1:39

9

Exhibit 8

1    there are a number of unknown voices, some telling Mr.

2    Ross to walk.  At 1 minute and 45 seconds, a female voice

3    says "you can hear him banging in the police car.  You

4    can hear him kicking."  At 2 minutes, an unknown male

5    voice says what sounds like "jail, jail, jail."  At 2

6    minutes and 18 seconds, an unknown male voice says what

7    sounds like "smoke this dumbass" and at 2 minutes and 21

8    second, a different male voice states "I'll bust all

9    three of them"   At 3 minutes and 11 seconds, an unknown

10   female voice states " you could hear him kicking the

11   cruiser.  You could hear him screaming."

12   Mr. Ross acknowledged that no one used a taser on Mr.

13   Gray.  This court is satisfied that in the circumstance

14   of the moment Mr. Ross actually believed, based on a

15   sound or sounds that he heard, Mr. Gray had been tased by

16   police officers although now it is clear that it did not

17   happen.

18       After reviewing the video evidence solely from that

19   perspective, the court noted that between 8:47, when the

20   defendant comes in view of the van,  and 8:53, there

21   were, at various times, anywhere from 0 to 9 citizens on

22   the street in range of the officers at stop 2.

23   Nero and Porter called it a crowd of people at stop 2.

24   The State showed snippets of time when no one was at the

25   scene and others that showed people in the area.

10

Exhibit 8

1    There is no finite definition of crowd.  To one

2    officer, 3 people may be a crowd; to 3 other officers, 9

3    may not be a crowd.  It is a matter of perspective.  As

4    this court has noted its willingness to acknowledge that

5    in the circumstances of the moment, Mr. Ross' perception

6    that Mr. Gray was tased was believable for him, this

7    court is equally willing to acknowledge from the

8    viewpoint of Nero and Porter that there may have been

9    issues with what they called the crowd.  This is

10   especially true given the concern being voiced by Mr.

11   Ross, and others, which was projected in a loud and

12   animated manner.

13        Based on the evidence presented, it is clear to this

14   court that emotions and tensions ran high on April 12,

15   2015 at Mount and Baker.  It is clear that law

16   enforcement and citizens alike were yelling and upset.

17   It is clear that information did not flow efficiently

18   between law enforcement and citizens.  While there are

19   different views as to what happened, and a clear

20   disagreement on the number of people at any given time,

21   none of individuals who testified indicated that it was a

22   quiet time at Mount and Baker while Mr. Gray was being

23   placed into the wagon.

24        During closing arguments, this court noted that the

25   parties would like this court's assessment of the scene

11

Exhibit 8

1    at Mount and Baker to be made in a vacuum based solely on

2    their view of the evidence.  The reality of what was

3    going on at Mount and Baker is not particularly clear cut

4    or one-sided.  The defendant's decision to place Mr. Gray

5    inside the van without seat-belting him must be viewed

6    from that perspective.

7         The question then is, did the defendant have a duty

8    to seatbelt Mr. Gray after he placed him in the wagon?

9    If not, then the analysis must end.  This court does

10   find, that as a police officer with a number of years of

11   service, this defendant was required to follow the

12   polices set forth by the Baltimore City Police Department

13   and as the officer who pulled Mr. Gray into the van, may

14   have a had a duty to seatbelt him at stop 2.

15        Of course the question then becomes, did the

16   defendant have any discretion to not seatbelt Mr. Gray.

17   If K14 was in effect, he may have.  If he was aware of

18   Policy 1114, he likely lacked discretion.

19        Through exhibit 11, the State was able to prove that

20   on April 9, 2015 the defendant did in fact receive the

21   email that included the change in policy from K-14 to

22   1114.  Through Exhibit 8, which is Police Commissioner's

23   memorandum 19-99, the State proved, as of 2014, officers

24   had an obligation to ensure that prisoners transported in

25   prisoner transportation vehicles were secured with a seat

12

Exhibit 8

1    belt.

2         What the State has not shown to this court is that

3    the defendant actually read 1114 or for that matter 19-

4    99.   The State also failed to present to the court any

5    evidence that the defendant knew about the change from

6    K14 to 1114.

7         Finally, the State has failed to present any

8    evidence whatsoever that 19-99 negated the discretion

9    that the defendant had to not seatbelt under K14.

10        State's exhibit 5 is General Order A-2, which is

11   titled "DEPARTMENTAL WRITTEN DIRECTIVES".  Under the

12   General Information section it states in part that

13   "employees shall be responsible for complete familiarity

14   with and adherence to written directives, general orders

15   and Police Commissioner Memoranda.  As directed, written

16   directives shall be maintained by employees in their

17   General Manuals."  It goes on to say that "Digital

18   versions of General Orders and Police Commissioner's

19   Memoranda shall be distributed in a (PDF) file, via

20   email. Simultaneously, hard copies of directives shall be

21   printed and distributed to each member.  New directives

22   shall require all supervisors to communicate the content

23   of the new directive to their subordinates at roll call."

24        According to Captain Martin Bartness, Chief of Staff

25   to Commissioner Davis, A-2 was the procedure in place on

                             13

Exhibit 8

1   April 12, 2015, but he does not know whether A-2 was

2   followed or whether 1114 was ever read at roll call and

3   did not know whether the defendant was ever aware of it.

4   Furthermore, he testified that there was no policy in

5   place that required officers to open emails daily or

6   weekly.  In fact, at the time there was no requirement at

7   all to open emails.

8        There was no evidence presented to this court that

9   at any time prior to April 12, 2015, that the defendant's

10  General Orders where ever updated pursuant to the policy

11  presented in General Order A-2. There is no evidence that

12  the defendant was ever given any information at roll call

13  and there was no information presented that he ever gave

14  information out at roll call on April 9, April 10, April

15  11 or April 12, 2015 concerning Policy 1114.

16       The State would have this court look at Policy 1114

17  and presume that in the short time after having been

18  implemented, the defendant knew he no longer had any

19  discretion concerning the seat-belting of a detainee. The

20  State wants this court to presume and/or assume that the

21  defendant was aware of the new policy, possibly because

22  he was a supervisor. This court's findings and

23  determinations cannot rest upon presumptions or

24  assumptions.  In this criminal proceeding, this court

25  cannot apply strict liability standards in order to reach

14

Exhibit 8

1   the State's desired result.  The State did not prove the

2   defendant was on notice of the new policy.

3       Since this court has found that the State has not

4   proven that the defendant was on notice of the new

5   policy, it follows that on the date Mr. Gray was

6   arrested, the defendant was governed by K14 which

7   afforded him discretion when determining whether to seat

8   belt Mr. Gray.  Since the evidence shows that the

9   defendant did not seatbelt Mr. Gray at stop 2, the next

10  questions the court must consider are why not and whether

11  the failure to do so was unreasonable?  And finally, if

12  the court finds the failure to seatbelt Mr. Gray was

13  unreasonable, the court must consider whether the failure

14  to seatbelt Mr. Gray at stop 2 rose to the level of

15  criminal conduct.

16      The State alleges that the failure to seat belt Mr.

17  Gray, combined with his injuries that he suffered while

18  in the van resulting in his death, constitute Involuntary

19  Manslaughter.  In order to convict the defendant of

20  involuntary manslaughter the State must prove

21  that the defendant acted in a grossly negligent manner;

22  and that this grossly negligent conduct caused the death

23  of Mr. Gray.

24      The term "grossly negligent" means that the

25  defendant, while aware of the risk, acted in a manner

15

Exhibit 8

1    that created a high risk to, and showed a reckless

2    disregard for, human life.  The evidence shows that Mr.

3    Gray, while in the custody of the police at stop 1, was

4    yelling as he entered the wagon.  The evidence also shows

5    that after Mr. Gray was place in the wagon at stop 1, the

6    defendant had a meeting with Officers Miller and Nero who

7    were on the scene at stop 1 and had the initial

8    interaction with Mr. Gray.

9        The court was not provided any evidence concerning

10   what, if anything the officers told the defendant about

11   Mr. Gray's behavior and actions at stop 1.  What is in

12   evidence is that the defendant, during the discussion,

13   made the decision to have Mr. Gray shackled and

14   transported to the Western District instead of Central

15   Booking.  There are a number of possibilities the court

16   could entertain, some that are innocent and some that are

17   not.  However, the burden of proof rests with the State,

18   and the court's imaginings do not serve as a substitute

19   for evidence.

20       At stop 2, Mr. Gray was removed from the wagon,

21   recuffed, shackled and placed in the wagon without being

22   seat-belted by the defendant.  At the same time, various

23   citizens arrived at stop 2 and the environment becomes

24   tense, as evidenced by the Ross video which made it clear

25   that based on their perception of how the officers were

16

Exhibit 8

1    treating Mr. Gray,  some citizens were concerned.

2         With the individuals in the area, having ordered Mr.

3    Gray to Mount and Baker to switch cuffs, a decision was

4    made to place shackles on him.   The court does not know

5    why that decision was made.  It could have been based on

6    the conversation between Miller, Nero and the defendant.

7    It could have been made independently.  The State would

8    have court to simply infer that it was for reasons that

9    were criminal.  In that vein, the State also seeks to

10   have this court find that the failure to seatbelt, under

11   the circumstances, was grossly negligent - not a mistake,

12   not an error in judgment, but a grossly negligent act,

13   that effectively, on its face should rise to the level of

14   wanton and abandoned indifference to human life required

15   to meet the standard of gross criminal negligence.

16        Based on the evidence presented, the court does not

17   make that finding.  Furthermore, this court does not find

18   that the State has proven that the defendant was aware

19   that the failure to seatbelt created a risk of death or

20   serious physical injury to Mr. Gray under the facts

21   presented.  The State presented no evidence to this court

22   concerning the defendant's training or knowledge

23   concerning the issue of death or serious physical injury

24   occurring in police transport vehicles.

25   Even had that information been available and presented,

17

Exhibit 8

 1    this court would note that the State produced no evidence

 2    that the defendant, had he had been aware of the danger,

 3    consciously disregarded the risk when he did not seatbelt

 4    Mr. Gray.

 5         Finally, even if the court found that the failure to

 6    seatbelt Mr. Gray was grossly negligent conduct, which

 7    again the court does not, the State failed to prove

 8    beyond a reasonable doubt that the failure of the

 9    defendant to seatbelt Mr. Gray at stop 2 was the conduct

10    that caused the death of Mr. Gray.  For those reasons the

11    court finds the defendant not guilty on the charge of

12    Involuntary Manslaughter.

13         The State alleges that the failure of the defendant

14    to seat belt Mr. Gray once he was placed back in the

15    wagon at stop 2 rises to the level of reckless

16    endangerment.  In order to convict the defendant of

17    reckless endangerment, the State must prove that the

18    defendant engaged in conduct that created a substantial

19    risk of death or serious physical injury to another.

20    That a reasonable person would not have engaged in that

21    conduct and that the defendant acted recklessly.

22    The defendant acted recklessly if he was aware that his

23    conduct created a risk of death or serious physical

24    injury to another and then he consciously disregarded

25    that risk.

                              18

Exhibit 8

1        Reckless endangerment focuses on the actions of the

2    defendant and whether or not his conduct created a

3    substantial risk of death or injury to another.  The

4    crime occurs when the actions are found to be

5    unreasonable under the circumstances presented.  It does

6    not focus on the end result which can be, and in this

7    case was, charged as a separate crime.  That crime was

8    Involuntary Manslaughter.

9        Since again the conduct is the failure to seatbelt

10   Mr. Gray, the analysis is similar to the analysis for

11   Involuntary Manslaughter except there is no need for the

12   court to determine whether the failure to seatbelt led to

13   the death of Mr. Gray.

14       Md. Code Crim. Law, Section 3-204(a)(1) states that

15   a person may not recklessly engage in conduct that

16   creates a substantial risk of death or serious physical

17   injury to another. However, Section 3-204(c)(1) states

18   that (a)(1) does not apply to conduct involving the use

19   of a motor vehicle as defined in Section 11-135 of the

20   Transportation Article. Section 11-135 defines a motor

21   vehicle as a vehicle that is self-propelled.

22       This Court finds that a police wagon or van

23   constitutes a motor vehicle and that the reckless

24   endangerment statute would prohibit prosecution of

                              19

Exhibit 8

1    conduct arising from the use of a motor vehicle in this

2    case, a police transport wagon.  This court finds that

3    the Reckless Endangerment charge should fail as a matter

4    of law because the alleged reckless conduct is failing to

5    seat belt Mr. Gray in a vehicle.

6        In order for the defendant's failure to seatbelt Mr.

7    Gray to rise to the level of reckless conduct and create

8    a risk of death or serious physical injury, there has to

9    be some use and movement of the vehicle.  The simple

10   placement of a person in a vehicle that is not used,

11   without seat-belting him, cannot and does not constitute

12   a crime.

13       Therefore, the alleged misconduct on the defendant's

14   part for failure to seatbelt would not fall within the

15   conduct proscribed by this statute.  Nevertheless, the

16   court will review Reckless Endangerment solely in the

17   context of the failure to seat belt.

18       Again, the State has failed to show that the

19   defendant was aware, not that he should have been aware,

20   but that he was aware that his conduct created a risk of

21   death or serious physical injury.  The State also failed

22   to show that the defendant, even if he was aware of the

23   risk, consciously disregarded that risk.  So even looking

24   at this charge solely on the issue of failing to seatbelt

20

Exhibit 8

1    Mr. Gray, this court finds that the State has failed to

2    meet the burden required and the verdict on the charge of

3    Reckless Endangerment is not guilty.

4        This court finds that the State has failed to prove

5    that the defendant's failure to seat belt Mr. Gray, under

6    the circumstances presented at stop 2, was unreasonable.

7    Given that the State did not charge the defendant with

8    failing to render medical aid, and the State's failure to

9    show that the defendant's failure to seatbelt Mr. Gray

10   was grossly negligent, there is no need the for this

11   court to assess the medical evidence and testimony

12   presented at trial in reference to the charges.

13       That said, while preparing this opinion the court

14   did review all the medical evidence and testimony

15   presented by the State and the Defense and agree with the

16   parties that Mr. Gray was not injured while being taken

17   into custody at Presbury and Mount. The evidence shows

18   that he received his injuries at some point after he was

19   placed in the van.

20       Finally, there is the misconduct charge stemming

21   from the stop on Mount and Baker. The State alleges that

22   the defendant failed to ensure Mr. Gray's safety when the

23   defendant failed to secure him with a seatbelt during the

24   process of Mr. Gray being transported in a police vehicle

21

J.A. 000124

Exhibit 8

1   while in police custody.  In order to convict the

2   defendant the State must prove that the defendant was a

3   public officer, that he acted in his official capacity;

4   and that he corruptly failed to do an act required by the

5   duties of his office.

6        There is no question that elements one and two of

7   the misconduct charge are met since the defendant was a

8   public officer acting in his capacity as a law

9   enforcement officer on the day of Mr. Gray's arrest.

10  The State asserts the defendant failed to do an act

11  required by his office, and that failure to act is

12  corrupt behavior that warrants a conviction for

13  misconduct.

14       While this court has already determined that the

15  defendant is not guilty of reckless endangerment based on

16  the facts presented, the court still must determine

17  whether the State has provided sufficient evidence to

18  prove beyond a reasonable doubt that the defendant

19  corruptly failed to do an act that is required by the

20  duties of his office.  The comments to the Maryland

21  Pattern Jury Instructions note that the committee chose

22  not to define or explain "corrupt" or "corruptly"

23  believing that the words communicate their meaning better

24  than a definition would.  A review of relevant case law

22

Exhibit 8

1    shows that a police officer corruptly fails to do an act

2    required by the duties of his office if he willfully

3    fails or willfully neglects to perform the duty.  A

4    willful failure or willful neglect is one that is

5    intentional, knowing and deliberate. A mere error in

6    judgment is not enough to constitute corruption, but

7    corruption does not require that the public official

8    acted for any personal gain or benefit.

9        The court is satisfied that pursuant to General

10   Order K-14, the defendant had a duty to assess whether or

11   not to seatbelt Mr. Gray in the back of the van.  While

12   this court notes there is a duty to assess, the State

13   retains the burden to present evidence that the defendant

14   corruptly failed to follow his duty, not that the

15   defendant a mistake, and not that the defendant made an

16   error in judgment. Rather, the State bears the burden to

17   show that the defendant corruptly failed to follow his

18   duty.  The law is clear that the standard for the State

19   to secure a criminal conviction is higher than mere civil

20   negligence.

21       The State did not offer the defendant's academy

22   records or training records into evidence.  The court is

23   mindful of the fact that as a discovery sanction, the

24   State was precluded from presenting certain documents

23

Exhibit 8

1    into evidence and that those documents may or may not

2    have been relevant to the defendant's training concerning

3    seat-belting a prisoner in a transport wagon.  But again,

4    the inability to present that evidence was based on a

5    discovery violation by the State and the State must bear

6    responsibility for its failure to provide discovery.

7    The State's choice not to, or inability to, produce such

8    evidence would leave the court to merely assume facts,

9    which of course, it cannot do.

10    In order for there to be a conviction the State must

11    show not simply that the defendant failed to do an act

12    required by the duties of his office but that the

13    defendant corruptly failed to do an act required by the

14    duties of his office.  Here the duty stems from K-14, a

15    Baltimore City Police Department General Order.  The

16    commission of a crime is not, and cannot be, simply

17    equated to failure to follow a general order of the

18    police department. The court notes that the duty does not

19    stem from a federal, state or local statute or law.  Case

20    law makes it abundantly clear that a violation of a

21    general order may be an indicator that there is a

22    violation of criminal law, but failing to seatbelt a

23    detainee in a transport wagon is not inherently criminal

24    conduct.  More must be proven for a conviction.  As

24

J.A. 000127

Exhibit 8

1    stated at the outset, the burden is on the State to prove

2    the elements of each charge.  It is not the defendant's

3    job to disprove the allegations.

4        Here, the failure to seatbelt may have been a

5    mistake or it may have been bad judgement, but without

6    showing more than has been presented to the court

7    concerning the failure to seatbelt and the surrounding

8    circumstances, the State has failed to meet its burden to

9    show that the actions of the defendant rose above mere

10   civil negligence.  What the court cannot do, based on the

11   evidence presented, is find that that the defendant's

12   failure to seatbelt Mr. Gray, based on all that went on

13   at Mount and Baker, rose to the level of corruptly

14   failing to do an act required.

15       For all the reasons stated, this court finds that

16   the State has failed to meet its burden of proving that

17   the defendant is guilty beyond a reasonable doubt of

18   misconduct in office.  Therefore the verdict is not

19   guilty on all counts. This court is in recess.

20           THE CLERK:  All rise.

21           (The proceeding concluded at 10:34:45.)

22

23

25

J.A. 000128

Exhibit 8

<u>REPORTER'S CERTIFICATE</u>

I, Christopher W. Metcalf, Deputy Court Reporter of the Circuit Court for Baltimore City, do hereby certify that the proceedings in the matter of State of Maryland vs. Brian Rice, Case Number 115141035, on July 18, 2016, before the Honorable Barry G. Williams, Associate Judge, were duly recorded by means of digital recording.

I further certify that the page numbers 1 through 25 constitute the official transcript of the morning session of these proceedings as transcribed by me or under my direction from the digital recording to the within typewritten matter in a complete and accurate manner.

In Witness Whereof, I have affixed my signature this 18th day of July, 2016.

_____
Christopher W. Metcalf
Deputy Court Reporter

26

J.A. 000129

Exhibit 8

DISTRICT COURT OF MARYLAND FOR _____ City, _____ (City/County)

LOCATED AT (COURT ADDRESS)

5800 Wabash Ave.

Baltimore, MD 21215-3330

DC Case No: 0B02294453    RELATED CASES:

| COMPLAINANT | DEFENDANT |
|---|---|
| Cogen, Maj. Sam | Porter, William Geralds |
| Printed Name | Printed Name |
| 100 N. Calvert Street | |
| Number and Street Address | |
| Baltimore, MD 21202    410-396-1155 | City, State, and Zip Code    Telephone |
| City, State, and Zip Code    Telephone | |
| Baltimore City Sheriff's Office #0073 | CC# |
| Agency, sub-agency, and I.D. #    (Officer Only) | |

DEFENDANT'S DESCRIPTION: Driver's License# _____    Sex M  Race Blk  Ht 6'2"  Wt 200

Hair ____ Eyes ____ Complexion ____ Other _____    D.O.B _____  ID ____

## APPLICATION FOR STATEMENT OF CHARGES    Page 1 of 5

I, the undersigned, apply for statement of charges and a summons or warrant which may lead to the arrest of the above named Defendant because on or about __April 12, 2015__ at __(See Below)__

Date          Place

_____, the above named Defendant

On April 12, 2015, between 8:45 and 9:15 a.m., near the corner of North Avenue and Mount Street, Lieutenant Brian Rice

(Concise statement of facts showing that there is probable cause to believe that a crime has been committed and that the Defendant has committed it):
of the Baltimore Police Department (BPD), while on bike patrol with Officers Garrett Miller and Edward Nero, made eye

contact with Mr. Freddie Carlos Gray, Jr. (DOB _____). Having made eye contact, Mr. Gray subsequently ran from

Lt. Rice. Lt. Rice then dispatched over a departmental radio that he was involved in a foot pursuit, at which time bike

patrol Officers Miller and Nero also began to pursue Mr. Gray. (continued)

(Continued on attached __4__ pages) (DC/CR 1A)

I solemnly affirm under the penalties of perjury that the contents of this Application are true to the best of my knowledge, information and belief.

__May 1, 2015__
Date                                    Officer's Signature

I have read or had read to me and I understand the Notice on the back of this form.

__May 1, 2015__
Date                                    Applicant's Signature

Subscribed and sworn to before me this ____ day of ____ MAY ____ 2015

Time: __9=08 A__ M    ~~Judge~~/Commissioner ____ (DOBRS) 1169
                                                              I.D.

I understand that a charging document will be issued and that I must appear for trial ☐ on _____

at _____, ☒ when notified by the Clerk, at the Court location shown at the top of this form.
      Time                                                                      Applicant's Signature

☒ I have advised applicant of shielding right.  ☒ Applicant declines shielding.

☐ I declined to issue a charging document because of lack of probable cause.

__5/1/15__
Date                                    Commissioner        I.D.

DC/CR 1 (Rev. 12/2006)    Tr.#151001301920

True Test Copy
_____
Administrative Clerk
L. Maurer    2/3/16

J.A. 000130    Exhibit 1 Page 1

DISTRICT COURT OF MARYLAND FOR Baltimore City, Wabash Ave. .......................... (City / County)

LOCATED AT  ( COURT ADDRESS )

5800 Wabash Ave.
Baltimore, MD  21215-3330

DC Case No: 0B02294453

DEFENDANT'S NAME (LAST, FIRST, M.I.)

Porter, William Geralds

**APPLICATION FOR STATEMENT OF CHARGES (CONTINUED)**  Page 2 of 5

Having come in contact with the pursuing officers, Mr. Gray surrendered to Officers Miller and Nero in the vicinity of the 1700 block of Presbury Street. Officers Miller and Nero then handcuffed Mr. Gray and moved him to a location a few feet away from his surrendering location. Mr. Gray was then placed in a prone position with his arms handcuffed behind his back. It was at this time that Mr. Gray indicated that he could not breathe and requested an inhaler to no avail. Officers Miller and Nero then placed Mr. Gray in a seated position and subsequently found a knife clipped to the inside of his pants pocket. The blade of the knife was folded into the handle. The knife was not a switchblade knife and is lawful under Maryland law. These officers subsequently removed the knife and placed it on the sidewalk. Mr. Gray was then placed back down on his stomach, at which time Mr. Gray began to flail his legs and scream as Officer Miller placed Mr. Gray in a restraining technique known as a "leg lace" while Officer Nero physically held him down against his will until a BPD wagon arrived to transport Mr. Gray. Lt. Rice, Officer Miller and Officer Nero failed to establish probable cause for Mr. Gray's arrest as no crime had been committed by Mr. Gray. Accordingly, Lt. Rice, Officer Miller, and Officer Nero illegally arrested Mr. Gray. Upon arrival of the transport wagon, driven by Officer Ceasar Goodson, Lt. Rice, Officer Nero, and Officer Miller loaded Mr. Gray into the wagon and at no point was he secured by a seat belt while in the wagon, contrary to a BPD General Order.   Lt. Rice then directed the BPD wagon to stop at Baker Street. At Baker Street, Lt. Rice, Officer Nero and Officer Miller removed Mr. Gray from the wagon, placed flex cuffs on his wrists, placed leg shackles on his ankles, and completed required paperwork.  Officer Miller, Officer Nero and Lt. Rice then

05/01/15
Date

Applicant's Signature

True Test Copy

_____ _____
Administrative Clerk

for L. Maurer    Date 2/3/16

COURT COPY

PC DC/CR 1A (Rev. 1/02)

Tr.#151001301920

Exhibit 1 Page 2

DISTRICT COURT OF MARYLAND FOR Baltimore City, Wabash Ave. ..................(City / County )

| LOCATED AT ( COURT ADDRESS )<br>5800 Wabash Ave.<br>Baltimore, MD  21215-3330 | DC Case No: 0B02294453 |



| DEFENDANT'S NAME (LAST, FIRST, M.I.) |
| Porter, William Geralds |

### APPLICATION FOR STATEMENT OF CHARGES (CONTINUED)    Page 3 of 5

loaded Mr. Gray back into the wagon, placing him on his stomach, head first onto the floor of the wagon. Once again, Mr. Gray was not secured by a seatbelt in the wagon, contrary to a BPD General Order. Lt. Rice then directed Officer Goodson to transport Mr. Gray to the Central Booking and Intake Facility. Following transport from Baker Street, Mr. Gray suffered a severe and critical neck injury as a result of being handcuffed, shackled by his feet, and unrestrained inside of the BPD wagon. From Baker Street, Officer Goodson proceeded to the vicinity of Mosher Street and Fremont Avenue, where he subsequently parked the wagon and proceeded to the back of the wagon in order to observe Mr. Gray. Despite stopping for the purpose of checking on Mr. Gray's condition, at no point did he seek, nor did he render, any medical assistance for Mr. Gray. Officer Goodson returned to his driver's seat and proceeded toward the Central Booking and Intake Facility, with Mr. Gray still unsecured by a seat belt, contrary to a BPD General Order.

Several blocks later, Officer Goodson called into dispatch that he needed to check on the status of his prisoner and requested additional units at Dolphin Street and Druid Hill Avenue. Officer William Porter arrived on the scene near Dolphin Street and Druid Hill Avenue. Both Officer Goodson and Officer Porter proceeded to the back of the wagon to check on the status of Mr. Gray's condition. Mr. Gray requested "help" and indicated that he could not breathe. Officer Porter asked Mr. Gray if he needed a medic, at which time, Mr. Gray indicated at least twice that he was in need of a medic. Officer Porter then physically assisted Mr. Gray from the floor of the van to the bench. However, despite Mr. Gray's appeal for a medic, both officers assessed Mr. Gray's

05/01/15
Date

Applicant's Signature

True Test Copy

Administrative Clerk

L Maurer  7/13/16

Tr.#151001301920

PC DC/CR 1A (Rev. 1/02)

COURT COPY

Exhibit 1 Page 3

**DISTRICT COURT OF MARYLAND FOR** Baltimore City, Wabash Ave. .............. (City / County )



| LOCATED AT  ( COURT ADDRESS ) | DC Case No: 0B02294453 |
|---|---|
| 5800 Wabash Ave. | |
| Baltimore, MD  21215-3330 | |

DEFENDANT'S NAME (LAST, FIRST, M.I.)

Porter, William Geralds

**APPLICATION FOR STATEMENT OF CHARGES (CONTINUED)**   Page ⁴ of ⁵

condition and at no point did either of them restrain Mr. Gray, per BPD General Order, nor did they render or request medical assistance.

While discussing the transportation of Mr. Gray for medical attention, a request for additional units was made for an arrest at 1600 W. North Avenue. Officer Porter left the vicinity of Dolphin Street and Druid Hill Avenue to assist in the arrest of another prisoner at North Avenue. Despite Mr. Gray's obvious and recognized need for medical assistance, Officer Goodson, in a grossly negligent manner chose to respond to the 1600 block of W. North Avenue, with Mr. Gray still unsecured by a seat belt in the wagon, without rendering to or summonsing medical assistance for Mr. Gray

Officer Goodson arrived at North Avenue to transport the individual arrested at the location of North and Pennsylvania Avenues, at which time he was again met by Officers Nero, Miller, Porter, and Lt. Rice. Once the wagon arrived, Officer Goodson walked to the back of the wagon and again opened the doors to the wagon to make observations of Mr. Gray. Sgt. Alicia White, Officer Porter, and Officer Goodson observed Mr. Gray unresponsive on the floor of the wagon. Sgt. White, who was responsible for investigating two citizen complaints pertaining to Mr. Gray's illegal arrest, spoke to the back of Mr. Gray's head. When he did not respond, she did nothing further despite the fact that she was advised that he needed a medic. She made no effort to look, assess or determine his condition. Despite Mr. Gray's seriously deteriorating medical condition, no medical assistance was rendered to or summonsed for Mr. Gray at that time by any officer.

After completing the North Avenue arrest and loading the additional prisoner into

05/01/15
_____
Date

_____
Applicant's Signature

True Test Copy
_____
_____
Maurer  7-13-16

PC DC/CR 1A (Rev. 1/02)

Tr.#151001301920

COURT COPY

Exhibit 1 Page 4

LOCATED AT (COURT ADDRESS)

5800 Wabash Av

Balto. MD 21215

DC Case No: 0B02294453

DEFENDANT'S NAME (LAST, FIRST, M.I.)

Porter, William Geralds

## APPLICATION FOR STATEMENT OF CHARGES (CONTINUED)  Page 5 of 5

the opposite side of the wagon containing Mr. Gray, Officer Goodson then proceeded to the Western District Police Station, where contrary to the BPD General Order, he again failed to restrain Mr. Gray in the wagon for at least the fifth time.

At the Western District Police Station, the defendant arrested at North Avenue was unloaded, escorted, and secured inside of the police station prior to attending to Mr. Gray. By the time Officer Zachary Novak, Sgt. White, and an unknown officer attempted to remove Mr. Gray from the wagon, Mr. Gray was no longer breathing at all. A medic was finally called to the scene, where upon arrival, the medic determined that Mr. Gray was now in cardiac arrest and was critically and severely injured.

Mr. Gray was rushed to the University of Maryland Shock Trauma Unit, where he underwent surgery. On April 19, 2015, Mr. Gray succumbed to his injuries and was pronounced dead. The manner of death, deemed a homicide by the Maryland State Medical Examiner, is believed to be the result of a fatal injury that occurred while Mr. Gray was unrestrained by a seat belt in the custody of the BDP wagon. All events occurred in Baltimore City, Maryland.

05/01/15
_____
Date

_____
Applicant's Signature

SAM COGEN #0073
_____
Printed Name

True Test Copy

P. Maurer  Date 7-13-16

Tr.#151001301920

DC-CR-001A (Rev. 04/2015)

J.A. 000134

Exhibit 1 Page 5





# DISTRICT COURT OF MARYLAND FOR Baltimore City
Located at 5800 Wabash Avenue, Baltimore, Maryland 21215

Case No. 0B02294453

**STATE OF MARYLAND        VS.        PORTER, WILLIAM GERALDS**

COMPLAINANT:
COGEN, SAM MAJ
100 N CALVERT ST
BALTIMORE, MD 21202

| | |
|---|---|
| CC#: 7150400000 | SID: |
| LID: | DL#: |

Race: 1    Sex: M    Ht: 6' 2"    Wt: 200    Hair:    Eyes:
DOB:    Phone(H):    Phone(W):

## STATEMENT OF CHARGES

UPON THE FACTS CONTAINED IN THE APPLICATION OF COGEN, SAM MAJ IT IS FORMALLY CHARGED
THAT PORTER, WILLIAM GERALDS at the dates, times and locations specified below:

| NUM | CHG/CIT | STATUTE | PENALTY | DESCRIPTION OF THE CHARGE |
|---|---|---|---|---|
| 001 | 1 0910 | CR 2 207 ((a)) | 10 Y &/or $500.00 | **MANSLAUGHTER**<br>On or About 04/12/2015<br>VARIOUS LOCATIONS IN BALTO CITY, MD<br>...did feloniously, without malice aforethought, kill and slay Freddie Carlos Gray, Jr., against the peace, government, and dignity of the State.<br>Against the Peace, Government, and Dignity of the State. |
| 002 | 1 1415 | CR 3 203 | 10 Y &/or $2,500.00 | **ASSAULT-SEC DEGREE**<br>On or About 04/12/2015<br>VARIOUS LOCATIONS IN BALTO CITY, MD<br>...did assault Freddie Carlos Gray, Jr. in the second degree, in violation of CR 3-203, contrary to the form of the act of the assembly in such case made and provided and against the peace, government, and dignity of the state.<br>Against the Peace, Government, and Dignity of the State. |
| 003 | 2 0645 | CL | | **MISCONDUCT IN OFFICE**<br>On or About 04/12/2015<br>VARIOUS LOCATIONS IN BALTO CITY, MD<br>...that William Geralds Porter, a public officer, while acting under color of his office, corruptly did an unlawful act and corruptly failed to do an act required by the duties of his office and corruptly did a lawful act in violation of the common law of Maryland.<br>Against the Peace, Government, and Dignity of the State. |

True Test Copy

By: J Maurer Date: 2/3/16

Date : 05/01/2015  Time : 9:20 AM          Judicial Officer: _____
Tracking No. 151001301920                                        FRANK J DOBRY #1169

1169

J.A. 000135

Exhibit 1 Page 6

# DISTRICT COURT OF MARYLAND FOR Baltimore City

Located at 5800 Wabash Avenue, Baltimore, Maryland 21215

Case No. 0B02294453

## STATE OF MARYLAND    VS.    PORTER, WILLIAM GERALDS

CC#: 7150400000    SID:
LID:    DL#:

Race: 1    Sex: M    Ht: 6' 2"    Wt: 200    Hair:    Eyes:
DOB:    Phone(H):    Phone(W):

**Charge | Statute | Arrest**
MANSLAUGHTER | CR 2 207 (A) |
MISCONDUCT IN OFFICE | CL |

**Charge | Statute | Arrest**
ASSAULT-SEC DEGREE | CR 3 203 |

## ARREST WARRANT ON CHARGING DOCUMENT - Warrant No. D150316810

STATE OF MARYLAND,   Baltimore City
TO ANY PEACE OFFICER, Greetings:

YOU ARE ORDERED to arrest and bring before a judicial officer the above-named Defendant as soon as practicable and without unnecessary delay. If a judicial officer is not readily available, this Warrant shall authorize the prisoner's detention until compliance is had with Rule 4-212 and the arresting officer is authorized and required to comply with Rule 4-212.

**IF THE DEFENDANT IS NOT IN CUSTODY FOR ANOTHER OFFENSE,**
Initial appearance is to be held in county in which Warrant was issued.

IF THE DEFENDANT IS IN CUSTODY FOR ANOTHER OFFENSE, this Warrant is to be lodged as a detainer for the continued detention of the Defendant for the offense charged in the charging document. When the Defendant is served with a copy of the charging document and Warrant, the Defendant shall be taken before a judicial officer of the District Court.

Date: 05/01/2015    Time: 9:21 AM    ~~Judge~~/Commissioner: _____    ID:  1169

Given to: **BALTIMORE CITY SHERIFF'S DEPT**

### RETURN OF SERVICE

☑ I certify that at _1:31 p_ M on _5/1/15_ at _CENTRAL BOOKING INTAKE CENTER_, I executed this Arrest Warrant by arresting the Defendant and delivered a copy of the Statement of Charges to the Defendant.

☑ I left a copy of the Warrant and Charging Document as a detainer for the continued detention of the Defendant at:

Facility: _CENTRAL BOOKING INTAKE CENTER_

Location: _300 E. MADISON ST. BALTO MD 21202_

Signature & Title of Peace Officer _____ / SERGEANT_

Printed Name of Officer: _E. SANTIAGO_

Agency, Sub-Agency, I.D.: _22, 24 #0161_

Date: _5/1/15_

Tracking No:   151001301920

**ARREST WARRANT ON CHARGING DOCUMENT**

J.A. 000136

Exhibit 1 Page 7

Case No. 0B02294453





# DISTRICT COURT OF MARYLAND FOR BALTIMORE CITY
Located at 5800 WABASH AVE., BALTIMORE, MD 21215-3330

## STATE OF MARYLAND VS. PORTER, WILLIAM GERALDS

CC #:7150400000    State ID ████    LocID:
Eyes: BRN  Hair: BR  Height: 6'02"    Weight: 200 lb.
Race: 1   Sex: M  DOB ████    DL #:

## DEFENDANT TRIAL SUMMARY

A Hearing on the above case was held today, 05/22/2015
by Judge KEVIN MICHAEL WILSON
Case has been forwarded to the Circuit Court for BALTIMORE CITY

An Indictment has been filed. # 115141037.

    001 MANSLAUGHTER

    002 ASSAULT-SEC DEGREE

    003 MISCONDUCT IN OFFICE

Your next Court Appearance will be at the Circuit Court on 05/27/2015.

05/22/2015    Defendant_____    (PORTER, WILLIAM GERALDS)

You may be entitled to expunge this record and any DNA Sample and DNA Record relating to the charge or charges against you if you meet certain conditions. Further information on expungement is contained in a brochure available at the Clerk's Office or on our website at http://www.courts.state.md.us/district.

Tracking No. 151001301920



J.A. 000137    Exhibit 1 Page 8

Appeal: 17-1166    Doc: 30    Filed: 06/13/2017    Pg: 144 of 339
Case 1:16-cv-02663-MJG   Document 22-4   Filed 08/19/16   Page 2 of 9
Case 1:16-cv-02663-JFM   Document 11-2   Filed 08/02/16   Page 2 of 6

**DISTRICT COURT OF MARYLAND FOR** Baltimore City, Wabash Ave.

(City/County)

LOCATED AT (COURT ADDRESS)

5600 Wabash Ave.

Baltimore, MD 21215-3330

DC Case No: 5B02294451

RELATED CASES: _____

_____

| COMPLAINANT | DEFENDANT |
|---|---|

**Cogen, Maj. Sam**
Printed Name

**100 N. Calvert Street**
Number and Street Address

**Baltimore, MD 21202**    **410-396-1155**
City, State, and Zip Code    Telephone

**Baltimore City Sheriff's Office #0073**
Agency, sub-agency, and I.D #    (Officer Only)

**White, Alicia Danielle**
Printed Name

_____
Number and Street Address

_____    _____
City, State, and Zip Code    Telephone

CC# _____

**DEFENDANT'S DESCRIPTION:** Driver's License# _____    Sex **F**   Race **Blk**  Ht **5'2"**  Wt **215**

Hair _____  Eyes _____  Complexion _____  Other _____    D.O.B _____  ID _____

## APPLICATION FOR STATEMENT OF CHARGES    Page 1 of **5**

I, the undersigned, apply for statement of charges and a summons or warrant which may lead to the arrest of the

above named Defendant because on or about **April 12, 2015**    at **(See Below)**
_____
Date    Place

, the above named Defendant

On April 12, 2015, between 8:45 and 9:15 a.m., near the corner of North Avenue and Mount Street, Lieutenant Brian Rice

(Concise statement of facts showing that there is probable cause to believe that a crime has been committed and that the Defendant has committed it):

of the Baltimore Police Department (BPD), while on bike patrol with Officers Garrett Miller and Edward Nero, made eye

contact with Mr. Freddie Carlos Gray, Jr. (DOB _____ ). Having made eye contact, Mr. Gray subsequently ran from

Lt. Rice. Lt. Rice then dispatched over a departmental radio that he was involved in a foot pursuit, at which time bike

patrol Officers Miller and Nero also began to pursue Mr. Gray. (continued)

(Continued on attached **4** pages) (DC/CR 1A)

I solemnly affirm under the penalties of perjury that the contents of this Application are true to the best of my knowledge,
information and belief.

**May 1, 2015**
Date    Officer's Signature

I have read or had read to me and I understand the Notice on the back of this form.

**May 1, 2015**
Date    Applicant's Signature

Subscribed and sworn to before me this **1st** day of **May** **2015**

Time: **8:30  A** M    Judge/Commissioner **Linda M. Lewis**    **1243**
I.D.

I understand that a charging document will be issued and that I must appear for trial ☐ on _____
Date

at _____ , ☑ when notified by the Clerk, at the Court location shown at the top of this form.
Time

Applicant's Signature

☒ I have advised applicant of shielding right.  ☒ Applicant declines shielding.

☐ I declined to issue a charging document because of lack of probable cause.

**6-1-15**
Date    Commissioner    **1243**
I.D.

Tr.# 141001528905

DC/CR 1 (Rev. 12/2006)

Exhibit 2 Page 1

J.A. 000138

Appeal: 17-1166    Doc: 30    Filed: 06/13/2017    Pg: 145 of 339
Case 1:16-cv-02663-MJG   Document 22-4   Filed 08/19/16   Page 3 of 9
Case 1:16-cv-02663-JFM   Document 11-2   Filed 08/02/16   Page 3 of 6



**DISTRICT COURT OF MARYLAND FOR** Baltimore City, Wabash Ave. ......(City , County )

| LOCATED AT  ( COURT ADDRESS ) |
| 5800 Wabash Ave. |
| Baltimore, MD  21215-3330 |

DC Case No: 5B02294451

**DEFENDANT'S NAME (LAST, FIRST, M.I.)**

White, Alicia Danielle

### APPLICATION FOR STATEMENT OF CHARGES (CONTINUED)   Page  2  of  5

Having come in contact with the pursuing officers, Mr. Gray surrendered to Officers Miller and Nero in the vicinity of the 1700 block of Presbury Street. Officers Miller and Nero then handcuffed Mr. Gray and moved him to a location a few feet away from his surrendering location. Mr. Gray was then placed in a prone position with his arms handcuffed behind his back. It was at this time that Mr. Gray indicated that he could not breathe and requested an inhaler to no avail. Officers Miller and Nero then placed Mr. Gray in a seated position and subsequently found a knife clipped to the inside of his pants pocket. The blade of the knife was folded into the handle. The knife was not a switchblade knife and is lawful under Maryland law. These officers subsequently removed the knife and placed it on the sidewalk. Mr. Gray was then placed back down on his stomach, at which time Mr. Gray began to flail his legs and scream as Officer Miller placed Mr. Gray in a restraining technique known as a "leg lace" while Officer Nero physically held him down against his will until a BPD wagon arrived to transport Mr. Gray. Lt. Rice, Officer Miller and Officer Nero failed to establish probable cause for Mr. Gray's arrest as no crime had been committed by Mr. Gray. Accordingly, Lt. Rice, Officer Miller, and Officer Nero illegally arrested Mr. Gray. Upon arrival of the transport wagon, driven by Officer Ceasar Goodson, Lt. Rice, Officer Nero, and Officer Miller loaded Mr. Gray into the wagon and at no point was he secured by a seat belt while in the wagon, contrary to a BPD General Order.   Lt. Rice then directed the BPD wagon to stop at Baker Street. At Baker Street, Lt. Rice, Officer Nero and Officer Miller removed Mr. Gray from the wagon, placed flex cuffs on his wrists, placed leg shackles on his ankles, and completed required paperwork.  Officer Miller, Officer Nero and Lt. Rice then

05/01/15
Date

Applicant's Signature

PC DC/CR 1A (Rev. 1/02)

Tr.#141001528905

COURT COPY

Exhibit 2 Page 2

J.A. 000139

Appeal: 17-1166    Doc: 30    Filed: 06/13/2017    Pg: 146 of 339
Case 1:16-cv-02663-MJG   Document 22-4   Filed 08/19/16   Page 4 of 9
Case 1:16-cv-02663-JFM   Document 11-2   Filed 08/02/16   Page 4 of 6

**DISTRICT COURT OF MARYLAND FOR** Baltimore City, Wabash Ave. _____ (City / County)

LOCATED AT ( COURT ADDRESS )

5800 Wabash Ave.

Baltimore, MD  21215-3330

DC Case No: 5B02294451

**DEFENDANT'S NAME (LAST, FIRST, M.I.)**

White, Alicia Danielle

**APPLICATION FOR STATEMENT OF CHARGES (CONTINUED)**    Page 3 of 5

loaded Mr. Gray back into the wagon, placing him on his stomach, head first onto the floor of the wagon. Once again, Mr. Gray was not secured by a seatbelt in the wagon, contrary to a BPD General Order. Lt. Rice then directed Officer Goodson to transport Mr. Gray to the Central Booking and Intake Facility.

Following transport from Baker Street, Mr. Gray suffered a severe and critical neck injury as a result of being handcuffed, shackled by his feet, and unrestrained inside of the BPD wagon. From Baker Street, Officer Goodson proceeded to the vicinity of Mosher Street and Fremont Avenue, where he subsequently parked the wagon and proceeded to the back of the wagon in order to observe Mr. Gray. Despite stopping for the purpose of checking on Mr. Gray's condition, at no point did he seek, nor did he render, any medical assistance for Mr. Gray.  Officer Goodson returned to his driver's seat and proceeded toward the Central Booking and Intake Facility, with Mr. Gray still unsecured by a seat belt, contrary to a BPD General Order.

Several blocks later, Officer Goodson called into dispatch that he needed to check on the status of his prisoner and requested additional units at Dolphin Street and Druid Hill Avenue. Officer William Porter arrived on the scene near Dolphin Street and Druid Hill Avenue.  Both Officer Goodson and Officer Porter proceeded to the back of the wagon to check on the status of Mr. Gray's condition.  Mr. Gray requested "help" and indicated that he could not breathe. Officer Porter asked Mr. Gray if he needed a medic, at which time, Mr. Gray indicated at least twice that he was in need of a medic. Officer Porter then physically assisted Mr. Gray from the floor of the van to the bench. However, despite Mr. Gray's appeal for a medic, both officers assessed Mr. Gray's

05/01/15

Date

Applicant's Signature

PC DC/CR 1A (Rev. 1/02)

Tr.# 141001528905

COURT COPY

Exhibit 2 Page 3

J.A. 000140

Appeal: 17-1166    Doc: 30    Filed: 06/13/2017    Pg: 147 of 339
Case 1:16-cv-02663-MJG   Document 22-4   Filed 08/19/16   Page 5 of 9
Case 1:16-cv-02663-JFM   Document 11-2   Filed 08/02/16   Page 5 of 6



**DISTRICT COURT OF MARYLAND FOR** Baltimore City, Wabash Ave. ...............(City / County )

| LOCATED AT ( COURT ADDRESS ) |
| --- |
| 5800 Wabash Ave. |
| Baltimore, MD  21215-3330 |

DC Case No: 5B02294451

| DEFENDANT'S NAME (LAST, FIRST, M I.) |
| --- |
| White, Alicia Danielle |

**APPLICATION FOR STATEMENT OF CHARGES (CONTINUED)**   Page 4 of 5

condition and at no point did either of them restrain Mr. Gray, per BPD General Order, nor did they render or request medical assistance.

While discussing the transportation of Mr. Gray for medical attention, a request for additional units was made for an arrest at 1600 W. North Avenue. Officer Porter left the vicinity of Dolphin Street and Druid Hill Avenue to assist in the arrest of another prisoner at North Avenue. Despite Mr. Gray's obvious and recognized need for medical assistance, Officer Goodson, in a grossly negligent manner chose to respond to the 1600 block of W. North Avenue, with Mr. Gray still unsecured by a seat belt in the wagon, without rendering to or summonsing medical assistance for Mr. Gray.

Officer Goodson arrived at North Avenue to transport the individual arrested at the location of North and Pennsylvania Avenues, at which time he was again met by Officers Nero, Miller, Porter, and Lt. Rice. Once the wagon arrived, Officer Goodson walked to the back of the wagon and again opened the doors to the wagon to make observations of Mr. Gray. Sgt. Alicia White, Officer Porter, and Officer Goodson observed Mr. Gray unresponsive on the floor of the wagon. Sgt. White, who was responsible for investigating two citizen complaints pertaining to Mr. Gray's illegal arrest, spoke to the back of Mr. Gray's head. When he did not respond, she did nothing further despite the fact that she was advised that he needed a medic. She made no effort to look, assess or determine his condition. Despite Mr. Gray's seriously deteriorating medical condition, no medical assistance was rendered to or summonsed for Mr. Gray at that time by any officer.

After completing the North Avenue arrest and loading the additional prisoner into

05/01/15
Date

Applicant's Signature

Appeal: 17-1166    Doc: 30    Filed: 06/13/2017    Pg: 148 of 339
Case 1:16-cv-02663-MJG   Document 22-4   Filed 08/19/16   Page 6 of 9
Case 1:16-cv-02663-JFM   Document 11-2   Filed 08/02/16   Page 6 of 6

**DISTRICT COURT OF MARYLAND FOR** _____  **.**  **.**  Baltimore

_____ (City/County)

| LOCATED AT (COURT ADDRESS) | |
|---|---|
| 5800 Wabash Av | DISTRICT COURT CASE NUMBER |
| Balto, MD 21215 | |

DEFENDANT'S NAME (LAST, FIRST, M.I.)
White, Alicia Danielle

## APPLICATION FOR STATEMENT OF CHARGES (CONTINUED)  Page 5  of 5

the opposite side of the wagon containing Mr. Gray, Officer Goodson then proceeded to the Western District Police Station, where contrary to the BPD General Order, he again failed to restrain Mr. Gray in the wagon for at least the fifth time.
At the Western District Police Station, the defendant arrested at North Avenue was unloaded, escorted, and secured inside of the police station prior to attending to Mr. Gray. By the time Officer Zachary Novak, Sgt. White, and an unknown officer attempted to remove Mr. Gray from the wagon, Mr. Gray was no longer breathing at all. A medic was finally called to the scene, where upon arrival, the medic determined that Mr. Gray was now in cardiac arrest and was critically and severely injured.
Mr. Gray was rushed to the University of Maryland Shock Trauma Unit, where he underwent surgery. On April 19, 2015, Mr. Gray succumbed to his injuries and was pronounced dead. The manner of death, deemed a homicide by the Maryland State Medical Examiner, is believed to be the result of a fatal injury that occurred while Mr. Gray was unrestrained by a seat belt in the custody of the BDP wagon. All events occurred in Baltimore City, Maryland.

05/01/15
Date

_Applicant's Signature_

SAM COGEN
Printed Name

Tr.#141001528905

DC-CR-001A (Rev. 04/2015)

Exhibit 2 Page 5

J.A. 000142

Appeal: 17-1166   Doc: 30   Filed: 06/13/2017   Pg: 149 of 339
Case 1:16-cv-02663-MJG   Document 22-4   Filed 08/19/16   Page 7 of 9
Case 1:16-cv-02663-JFM   Document 11-5   Filed 08/02/16   Page 8 of 9



**DISTRICT COURT OF MARYLAND FOR Baltimore City**
Located at 5800 Wabash Avenue, Baltimore, Maryland 21215

Case No. 5B02294451

**STATE OF MARYLAND      VS.      WHITE, ALICIA DANIELLE**

COMPLAINANT:
COGAN, MAJ. SAM
100 N. CALVERT STREET
BALTIMORE, MD 21202

CC#: 7150400000        SID:
LID:                   DL#:
Race: 1   Sex: F    Ht: 5' 2"    Wt: 215    Hair:    Eyes:
DOB: ███████    Phone(H):              Phone(W):

## STATEMENT OF CHARGES

UPON THE FACTS CONTAINED IN THE APPLICATION OF COGAN, MAJ. SAM IT IS FORMALLY CHARGED
THAT WHITE, ALICIA DANIELLE at the dates, times and locations specified below:

| NUM | CHG/CIT | STATUTE | PENALTY | DESCRIPTION OF THE CHARGE |
|---|---|---|---|---|
| 001 | 1 0910 | CR 2 207 ((u)) | 10 Y &/or $500.00 | **MANSLAUGHTER** <br> On or About 04/12/2015 - 04/12/2015 <br> PENNSYLVANIA & NORTH AVENUES <br> BALTIMORE, MARYLAND <br> ...did, feloniously, without malice aforethought, kill and slay FREDDIE GRAY, JR., against the peace, government, and dignity of the State. <br> Against the Peace, Government, and Dignity of the State. |
| 002 | 1 1415 | CR 3 203 | 10 Y &/or $2,500.00 | **ASSAULT-SEC DEGREE** <br> On or About 04/12/2015 - 04/12/2015 <br> PENNSYLVANIA & NORTH AVENUES <br> BALTIMORE, MARYLAND <br> ...did assault FREDDIE GRAY, JR in the second degree in violation of CR 3-203, contrary to the form of the act of the assembly in such case made and provided and against the peace, government, and dignity of the state. <br> Against the Peace, Government, and Dignity of the State. |
| 003 | 2 0645 | CL | | **MISCONDUCT IN OFFICE** <br> On or About 04/12/2015 - 04/12/2015 <br> PENNSYLVANIA & NORTH AVENUES <br> BALTIMORE, MARYLAND <br> ...That Alicia Danielle White, a public officer, while acting under color of her office, corruptly did an unlawful act and corruptly failed to do an act required by the duties of her office and corruptly did a lawful act in violation of the common law of Maryland. <br> Against the Peace, Government, and Dignity of the State. |

Date : 05/01/2015  Time : 9:05 AM          Judicial Officer: _Linda Lewis_  1243
Tracking No. 141001528905

# DISTRICT COURT OF MARYLAND FOR Baltimore City

Located at 5800 Wabash Avenue, Baltimore, Maryland 21215

Case No. 5B02294451

**STATE OF MARYLAND**    VS.    **WHITE, ALICIA**    *(Alicia Lenae White)*

CC#: 7150400000    SID:
LID:    DL#:
Race: 1    Sex: F    Ht: 5' 2"    Wt: 215    Hair:    Eyes:
DOB:    Phone(H):    Phone(W):

Charge | Statute | Arrest                    Charge | Statute | Arrest
MANSLAUGHTER | CR 2 207 (A) |              ASSAULT-SEC DEGREE | CR 3 203 |
MISCONDUCT IN OFFICE | CL |

## ARREST WARRANT ON CHARGING DOCUMENT - Warrant No. D140689054

STATE OF MARYLAND,   Baltimore City
TO ANY PEACE OFFICER, Greetings:

YOU ARE ORDERED to arrest and bring before a judicial officer the above-named Defendant as soon as practicable and without unnecessary delay. If a judicial officer is not readily available, this Warrant shall authorize the prisoner's detention until compliance is had with Rule 4-212 and the arresting officer is authorized and required to comply with Rule 4-212.

**IF THE DEFENDANT IS NOT IN CUSTODY FOR ANOTHER OFFENSE,**
Initial appearance is to be held in county in which Warrant was issued.

IF THE DEFENDANT IS IN CUSTODY FOR ANOTHER OFFENSE, this Warrant is to be lodged as a detainer for the continued detention of the Defendant for the offense charged in the charging document. When the Defendant is served with a copy of the charging document and Warrant, the Defendant shall be taken before a judicial officer of the District Court.

Date: 05/01/2015    Time: 9:06 AM    Judge/Commissioner: _Linda Lewis_    ID:  1243

Given to: **BALTIMORE CITY SHERIFF'S DEPT**

### RETURN OF SERVICE

☑ I certify that at _1:31 P_ M on _5/1/15_ at _CENTRAL BOOKING INTAKE CENTER_ , I executed this Arrest Warrant by arresting the Defendant and delivered a copy of the Statement of Charges to the Defendant.

☑ I left a copy of the Warrant and Charging Document as a detainer for the continued detention of the Defendant at:

Facility: _CENTRAL BOOKING INTAKE CENTER_

Location: _300 E. MADISON ST. BALTO MD 21202_

Signature & Title of Peace Officer: _____ / SERGEANT

Printed Name of Officer: _E. SANTIAGO_

Agency, Sub-Agency, I.D.: _22, 24 #0161_

Date: _5/1/15_

True Test Copy
Administrative Clerk
By: _____ Date: 7/13/16

**Tracking No:  141001528905**

**ARREST WARRANT ON CHARGING DOCUMENT**

J.A. 000144

Exhibit 2 Page 7

Case 1:16-cv-02663-MJG    Document 22-4    Filed 08/19/16    Page 9 of 9    Room: Time: 10:31 AM

**Case No. 5B02294451**





# DISTRICT COURT OF MARYLAND FOR BALTIMORE CITY

Located at 5800 WABASH AVE., BALTIMORE, MD 21215-3330

## STATE OF MARYLAND VS. WHITE, ALICIA LENAE



| | | |
|---|---|---|
| CC #:7150400000 | State ID: | LocID: |
| Eyes: | Hair: | Height: 5'02" | Weight: 116 lb. |
| Race: 1 | Sex: F | DOB: | DL #: |

## DEFENDANT TRIAL SUMMARY

A Hearing on the above case was held today, 05/22/2015
by Judge KEVIN MICHAEL WILSON
Case has been forwarded to the Circuit Court for BALTIMORE CITY

An Indictment has been filed. # 115141036.

    001  MANSLAUGHTER

    002  ASSAULT-SEC DEGREE

    003  MISCONDUCT IN OFFICE

Your next Court Appearance will be at the Circuit Court on 05/27/2015.

05/22/2015    Defendant_____    (WHITE, ALICIA LENAE)

You may be entitled to expunge this record and any DNA Sample and DNA Record relating to the charge or charges against you if you meet certain conditions. Further information on expungement is contained in a brochure available at the Clerk's Office or on our website at http://www.courts.state.md.us/district.

**Tracking No. 141001528905**



True Test Copy
Administrative Clerk
By: T. Mauser  Date: 7-13-16

Exhibit 2 Page 8

LINK WITH:

ARR. DATE:

# 115141037

## NOTICE TO THE DEFENDANT

1. This paper charges you with committing a crime.
2. If you have been arrested, you have the right to have a judicial officer decide whether you should be released from jail until trial.
3. You have the right to have a lawyer.
4. A lawyer can be helpful to you by:
   (A) explaining the charges in this paper;
   (B) telling you the possible penalties;
   (C) helping you at trial;
   (D) helping you protect your constitutional rights; and
   (E) helping you get a fair penalty if convicted.
5. Even if you plan to plead guilty, a lawyer can be helpful.
6. If you want a lawyer but do not have the money to hire one, the Public Defender may provide a lawyer for you. The court clerk will tell you how to contact the Public Defender.
7. If you want a lawyer but you cannot get one and the Public Defender will not provide one for you, contact the court clerk as soon as possible.
8. **DO NOT WAIT UNTIL THE DATE OF YOUR TRIAL TO GET A LAWYER.** If you do not have a lawyer before the trial date, you may have to go to trial without one.

**STATE OF MARYLAND**
vs.
**Officer William G. Porter**

BPI#   SID#
Trkg.# 151001301920
District C# 0B02294453
CC# 7150400000

Filed

### Indictment

(TRUE BILL)

Grand Jury Foreman's
Signature Appears on
Original Document only

JANICE L. BLEDSOE 68776
Police Integrity Unit

WITNESSES

DETECTIVE DAWNYELL S. TAYLOR, G932
BCPD
242 W. 29TH STREET
BALTIMORE, MARYLAND 21211

TRUE COPY
TEST

LEVINA G. ALEXANDER, CLERK

J.A. 000146

Exhibit 4 Page 1

## State of Maryland,
### City of Baltimore, to wit:
### IN THE CIRCUIT COURT FOR BALTIMORE CITY

| |
|---|
| **The State of Maryland**<br>-vs-<br>**OFFICER WILLIAM G. PORTER**<br><br><br><br>Defendant(s): |

Date of Offense: **April 12, 2015**

Complainant:    **DETECTIVE DAWNYELL S. TAYLOR**

## INDICTMENT

The Jurors of the State of Maryland for the body of the City of Baltimore, do on their oath present that the aforesaid DEFENDANT(S), late of said City, heretofore on or about the date(s) **April 12, 2015**, at **various locations**, in the City of Baltimore, State of Maryland, feloniously did act in a grossly negligent manner and that DEFENDANT'S grossly negligent conduct did cause the death of **Freddie Carlos Gray, Jr.**, in violation of the Common Law of Maryland and section 2-207 of the Annotated Code of Maryland; against the peace, government and dignity of the State.

[Common Law; CR 2-207; CR 2-208]  1 0910

## SECOND COUNT

The Jurors of the State of Maryland for the body of the City of Baltimore, do on their oath present that the aforesaid DEFENDANT(S), late of said City, heretofore on or about the date(s) **April 12, 2015**, at **Dolphin Street and Druid Hill Avenue**, in the City of Baltimore, State of Maryland, did assault **Freddie Carlos Gray, Jr.**, in the second degree, in violation of Criminal Law Article, Section 3-203 of the Annotated Code of Maryland; against the peace, government and dignity of the State.

[CR 3-201; CR 3-203; CR 3-206] 1 1415

Exhibit 4 Page 2

## THIRD COUNT

The Jurors of the State of Maryland for the body of the City of Baltimore, do on their oath present that the aforesaid DEFENDANT(S), late of said City, heretofore on or about the date(s) **April 12, 2015**, at **various locations**, in the City of Baltimore, State of Maryland, that a public officer, while acting under color of his office, corruptly did an unlawful act and corruptly failed to do an act required by the duties of his office and corruptly did a lawful act in violation of the common law of Maryland; against the peace, government and dignity of the State.

Common Law  2 0645

## FOURTH COUNT

The Jurors of the State of Maryland for the body of the City of Baltimore, do on their oath present that the aforesaid DEFENDANT(S), late of said City, heretofore on or about the date(s) **April 12, 2015**, at **Dolphin Street and Druid Hill Avenue**, in the City of Baltimore, State of Maryland, did recklessly engage in conduct that created a substantial risk of death and serious physical injury to **Freddie Carlos Gray, Jr.**, in violation of Criminal Law Article, Section 3-204 of the Annotated Code of Maryland; against the peace, government and dignity of the State.

[CR 3-201; CR 3-204(a)(1); CR 3-204; CR 3-206] 1 1425

The State's Attorney for the City of Baltimore

Exhibit 4 Page 3

J.A. 000148

Appeal: 17-1166    Doc: 30    Filed: 06/13/2017    Pg: 155 of 339

```
08/03/16  CRIMINAL  COURT  OF  BALTIMORE                    CASE INQUIRY  15:07
 CASE 115141037                    DCM TRACK C DATE 090215   FELONY DRUG INIT
CASE 115141037 STATUS C DATE 072716 PREV ST A 052115 CODEF YES CHANGE 080316
 DEF PORTER, WILLIAM G OFFICER     ID A32386  SID           R: B S: M DOB
 ADDRESS
 DOA 000000 CMPL 50400000 PHYS LOC          CASE LOC BAL 050115
 DOF 052115 TRACK NO 15-1001-30192-0 DIST CASE 0B02294453 WAR 00 CJIS R RI 1
001 000 C USER MANS1 CODE 1 0910      MANSLAUGHTER           DISP NP  072716
     ARREST/CITATION NO 0
           PLEA      DATE           VERDICT     DATE
     SENTENCE TYPE   DATE      TIME           BEG          SUSP
           PROBATION TIME           TYPE       COST         FINE
002 000 C USER ASLT2 CODE 1 1415      ASSAULT-SEC DEGREE     DISP NP  072716
     ARREST/CITATION NO 0
           PLEA      DATE           VERDICT     DATE
     SENTENCE TYPE   DATE      TIME           BEG          SUSP
           PROBATION TIME           TYPE       COST         FINE
003 000 C USER MISC  CODE 2 0645      MISCONDUCT IN OFFICE   DISP NP  072716
     ARREST/CITATION NO 0
           PLEA      DATE           VERDICT     DATE
     SENTENCE TYPE   DATE      TIME           BEG          SUSP
           PROBATION TIME           TYPE       COST         FINE

NEXT PAGE                            P/N              PAGE 001
```

TRUE COPY
TEST

8-3-16

FRIDA C. ALEXANDER, CLERK

Exhibit 4 Page 4

```
 08/03/16  CRIMINAL  COURT  OF  BALTIMORE                     CASE INQUIRY  15:07
  CASE 115141037 ST C PORTER, WILLIAM G OFFICER     A32386   COD Y DCM C.090215
 004 000 C USER RECKL CODE 1 1425           RECKLESS ENDANGERMENT  DISP NP  072716
        ARREST/CITATION NO 0
                PLEA       DATE              VERDICT       DATE
           SENTENCE TYPE      DATE         TIME         BEG      SUSP
                PROBATION TIME           TYPE       COST      FINE
 EVENT DATE   OPER PART TIME ROOM REAS / EVENT COMMENT
 CASI 052115    SCB CASE ADDED THROUGH ON-LINE ON THIS DATE  20150522
 COMM 052115    SCB INDICTMENT FILED
 COMM 052115    SCB CC# 7150400000
 COMM 052115    SCB FILED ASA - BLEDSOE, JANICE L          , ESQ 68776
 MOTF 052715    1gj MOTION FOR SPEEDY TRIAL
 MOTF 052715    1gj MOTION TO PRODUCE DOCUMENTS
 MOTF 052715    1gj REQUEST FOR DISCOVERY
 MOTF 052715    1gj MOTION TO SUPPRESS PURSUANT TO MD 4-252 AND 4-253
 MOTF 052715    1gj MOTION FOR GRAND JURY TESTIMONY
 MOTF 052715    1gj DEMAND FOR CHEMIST
 FILE 052715    1gj FILED ADF - MURTHA, JOSEPH              , ESQ 602352
 COMM 052715    1gj DEFENDANT PORTER'S DEMAND FOR BILL OF PARTICULARS
 COMM 052715    1gj JOINT MOTION TO DISMISS FOR PROSECUTORIAL MISCONDUCT, OR IN
 COMM 052715    1gj THE ALTERNATIVE, FOR SANCTIONS
```

**NEXT PAGE**                              P/N              PAGE 002

Exhibit 4 Page 5

```
08/03/16  CRIMINAL  COURT  OF  BALTIMORE                   CASE INQUIRY  15:07
 CASE 115141037 ST C PORTER, WILLIAM G OFFICER      A32386  COD Y DCM C 090215
EVENT DATE   OPER PART TIME ROOM REAS / EVENT COMMENT
COMM 121015    1gj COURT
COMM 121115    SCY BENCH CONFERENCE SEALED; STATE'S MOTION TO PRECLUDE
COMM 121115    SCY CHARACTER TESTIMONY TO TRAIT OF PEACE AND GOOD ORDER
COMM 121115    SCY IS HEARD AND DENIED; STATE'S MOTION TO PREVENT TESTIMONY
COMM 121115    SCY BY CAPT. JUSTIN REYNOLDS IS HEARD AND DENIED; AT THE
COMM 121115    SCY END OF STATE'S CASE DEFENSE MOTION FOR JUDGMENT OF
COMM 121115    SCY ACQUITTAL IS HEARD AND DENIED; AT THE END OF ENTIRE CASE
COMM 121115    SCY DEFENSE RENEWED JUDGMENT OF ACQUITTAL HEARD AND DENIED;
COMM 121115    SCY CASE CONTINUE ON 12/14/15 PT-31; @9:30AM
HCAL 121115 1 SCY P31;0900;528 ;JT  ;  ;CONT;   ;WILLIAMS, BARRY;8C9
HCAL 121415 1 SCY P31;0900;528 ;JT  ;  ;CONT;   ;WILLIAMS, BARRY;8C9
COMM 121415    SCY CSET JT  ; P31; 12/14/15; SCY
COMM 121415    1gj CSET JT  ; P31; 12/10/15; 1gj
HCAL 121415   CKW P31;0900;528 ;JT  ;  ;CONT;   ;WILLIAMS, BARRY;8C9
COMM 121415    CKW CASE CONTINUED TIL 12/15/15 PT31 AT 8:30AM; FILE IN COURT
COMM 121515    CKW CSET JT  ; P31; 12/14/15; CKW
COMM 121515    CNA CSET JT  ; P31; 12/15/15; CNA DKT 12/14/15 PG.A
COMM 121515    SCY BENCH MEMORANDUM DEFENDANT'S MOTION TO RECONSIDER THE
COMM 121515    SCY COURT'S PROPOSED JURY INSTRUCTION ON MISCONDUCT IN OFFICE
```

**NEXT PAGE**                         P/N                PAGE 050

Exhibit 4 Page 6

```
08/03/16  CRIMINAL COURT OF BALTIMORE                 CASE INQUIRY  15:07
 CASE 115141037 ST C PORTER, WILLIAM G OFFICER     A32386  COD Y DCM C 090215
EVENT DATE   OPER PART TIME ROOM REAS / EVENT COMMENT
HCAL 121515 1 CPR P31;0900;528 ;JT  ;JT;JUDG;   ;WILLIAMS, BARRY;8C9
COMM 121515   CPR DEFENSE MOTION FOR MISTRIAL IS HEREBY HEARD AND "DENIED"
COMM 121515   CPR DEFENSE MOTION TO CHANGE VENUE IS HEREBY HEARD AND "DENIED"
COMM 121515   CPR DEFENSE MOTION TO VOIR DIRE JURORS ABOUT A LETTER SENT HOME
COMM 121515   CPR FROM SCHOOL TO PREPARE STUDENTS FOR VERDICT IS HEREBY HEARD
COMM 121515   CPR AND "DENIED"; DEFENSE RENEWED MOTION FOR A MISTRIAL WAS
COMM 121515   CPR HEREBY "DENIED"; JURY HAS BEEN ALLEN CHARGED; CASE
COMM 121515   CPR CONTINUED TIL 12/16/15 PT.31 @ 8:30
COMM 121615   CML CSET JT  ; P31; 12/16/15; CML
HCAL 121615   S8P P31;0830;528 ;JT  ;  ;XFER;   ;WILLIAMS, BARRY;8C9
COMM 121615   S8P THE JURY IS BEING WITHDRAWN WITHOUT FURTHER CONSIDERATION.
COMM 121615   S8P A HUNG/MISTRIAL HAS BEEN DECLARED. JURY PANEL DISMISSED.
COMM 121615   S8P ALL EXHIBITS RETURNED TO PARTIES. CASE REFERRED TO
COMM 121615   S8P RECEPTION COURT P46.
COMM 122215   CHH CSET JT  ; P31; 06/13/16; CHH
HWNO 122215   S8T POSTPONEMENT FORM FILED; HICKS (MD RULE 4-271) NOT WAIVED
COMM 122215   CKW RESET 6/13/16 PT31 9:30A; DEFS ATTY SIGNED SUMMONS FOR DEF;
COMM 122215   CKW DEFS PRESENCE WAIVED; NO COURT FILE; INSERT SHEET FILED
COMM 010416   1gj STATE'S SUPPLEMENTAL DISCLOSURE OF EXPERT WITNESS
```

**NEXT PAGE**                              P/N                    PAGE 051

Exhibit 4 Page 7

```
 08/03/16  CRIMINAL COURT  OF  BALTIMORE                  CASE INQUIRY 15:07
  CASE 115141037 ST C PORTER, WILLIAM G OFFICER      A32386  COD Y DCM C 090215
 EVENT DATE   OPER PART TIME ROOM REAS / EVENT COMMENT
 COMM 061616    SCB WILLIAMS,  J; (CC: JOSEPH MURTHA, JANICE BLEDSOE DEPUTY
 COMM 061616    SCB STATE'S ATTY)
 COMM 062716    1gj MOTION TO DISMISS INDICTMENT(S) FOR DEFECT IN THE
 COMM 062716    1gj INSTITUTION OF THE PROSECUTION AND REQUEST FOR A HEARING
 COMM 062716    1gj MOTION TO DISCLOSE GRAND JURY MINUTES AND TESTIMONY AND
 COMM 062716    1gj REQUEST FOR A HEARING
 COMM 071316    SCJ TIME STAMPED 7/13/16 - ORDER DATED 7/13/16 THAT THE
 COMM 071316    SCJ DEFENDANT AND STATE SHALL FILE ANY OUTSTANDING PRE-TRIAL
 COMM 071316    SCJ MOTIONS FOR THIS MATTER BY 8/5/16. RESPONSES TO THESE
 COMM 071316    SCJ MOTIONS SHALL BE FILED BY 8/22/16 (SEE ORDER) PER
 COMM 071316    SCJ JUDGE B WILLIAMS, FD - COPIES SENT TO ALL PARTIES
 HCAL 072716 1 SCB P31;0900;528 ;JT  ;NP;JUDG;   ;WILLIAMS, BARRY;8C9
 COMM 072716    SCB CSET JT  ; P31; 07/27/16; SCB
 CCAS 072716    SCB CASE CLOSED - NOLLE PROSEQUI            - Q327
 COMM 072716    SCB NOLLE PROSEQUI ALL COUNTS
 COMM 072916    SCB ORDER DATED AND DATE STAMPED 7/28/2016 THAT DEF'S MOTION IN
 COMM 072916    SCB LIMINE TO PRECLUDE TESTIMONY OF CAROL ALLEN, M.D. AND
 COMM 072916    SCB REQUEST FOR AN EVIDENTIARY HEARING BE UNSEALED; AND FURTHER
 COMM 072916    SCB ORDERED THAT THE STATE'S MOTION TO EXPAND THE COURT'S


 NEXT PAGE                        P/N                PAGE 054
```

LDK WITH:

ARR. DATE:

# 1151410_36

WITNESSES

DETECTIVE DAWNYELL S. TAYLOR, G932
BCPD
242 W. 29TH STREET
BALTIMORE, MARYLAND 21211

STATE OF MARYLAND
vs.
Sergeant Alicia White

BPI#    SID#
Trkg.# 14100152890S
District C# 5B02294451
CC# 7150400000

Indictment

(TRUE BILL)

Grand Jury Foreman's
Signature Appears on
Original Document only

JANICE L. BLEDSOE 68776
Police Integrity Unit

### NOTICE TO THE DEFENDANT

1. This paper charges you with committing a crime.
2. If you have been arrested, you have the right to have a judicial officer decide whether you should be released from jail until trial.
3. You have the right to have a lawyer.
4. A lawyer can be helpful to you by:
   (A) explaining the charges in this paper;
   (B) telling you the possible penalties;
   (C) helping you at trial;
   (D) helping you protect your constitutional rights; and
   (E) helping you get a fair penalty if convicted.
5. Even if you plan to plead guilty, a lawyer can be helpful.
6. If you want a lawyer but do not have the money to hire one, the Public Defender may provide a lawyer for you. The court clerk will tell you how to contact the Public Defender.
7. If you want a lawyer but you cannot get one and the Public Defender will not provide one for you, contact the court clerk as soon as possible.
8. **DO NOT WAIT UNTIL THE DATE OF YOUR TRIAL TO GET A LAWYER.** If you do not have a lawyer before the trial date, you may have to go to trial without one.

TRUE COPY
TEST

LAVINIA G. ALEXANDER, CLERK

6-30-1

Exhibit 5 Page 1

*State of Maryland,*
*City of Baltimore, to wit:*
## IN THE CIRCUIT COURT FOR BALTIMORE CITY

The State of Maryland
-vs-
**SERGEANT ALICIA WHITE**

Defendant(s):

Date of Offense: <u>**April 12, 2015**</u>

Complainant:   <u>**DETECTIVE DAWNYELL S. TAYLOR**</u>

### INDICTMENT

The Jurors of the State of Maryland for the body of the City of Baltimore, do on their oath present that the aforesaid DEFENDANT(S), late of said City, heretofore on or about the date(s) **April 12, 2015**, at **Pennsylvania and North Avenues**, in the City of Baltimore, State of Maryland, feloniously did act in a grossly negligent manner and that DEFENDANT'S grossly negligent conduct did cause the death of <u>**Freddie Carlos Gray, Jr.,**</u> in violation of the Common Law of Maryland and section 2-207 of the Annotated Code of Maryland;; against the peace, government and dignity of the State.

[Common Law; CR 2-207; CR 2-208] 1 0910

### SECOND COUNT

The Jurors of the State of Maryland for the body of the City of Baltimore, do on their oath present that the aforesaid DEFENDANT(S), late of said City, heretofore on or about the date(s) **April 12, 2015**, at **Pennsylvania and North Avenues**, in the City of Baltimore, State of Maryland, did assault <u>**Freddie Carlos Gray, Jr.**</u> in the second degree, in violation of Criminal Law Article, Section 3-203 of the Annotated Code of Maryland; against the peace, government and dignity of the State.

[CR 3-201; CR 3-203; CR 3-206] 1 1415

Exhibit 5 Page 2

### THIRD COUNT

The Jurors of the State of Maryland for the body of the City of Baltimore, do on their oath present that the aforesaid DEFENDANT(S), late of said City, heretofore on or about the date(s) **April 12, 2015**, at **Pennsylvania and North Avenues**, in the City of Baltimore, State of Maryland, that, a public officer, while acting under color of his office, corruptly did an unlawful act and corruptly failed to do an act required by the duties of his office and corruptly did a lawful act in violation of the common law of Maryland; against the peace, government and dignity of the State.

Common Law  2 0645

### FOURTH COUNT

The Jurors of the State of Maryland for the body of the City of Baltimore, do on their oath present that the aforesaid DEFENDANT(S), late of said City, heretofore on or about the date(s) **April 12, 2015**, at **Pennsylvania and North Avenues**, in the City of Baltimore, State of Maryland, did recklessly engage in conduct that created a substantial risk of death and serious physical injury to **Freddie Carlos Gray, Jr.**, in violation of Criminal Law Article, Section 3-204 of the Annotated Code of Maryland; against the peace, government and dignity of the State.

[CR 3-201; CR 3-204(a)(1); CR 3-204; CR 3-206] 1 1425

_____

The State's Attorney for the City of Baltimore

Exhibit 5 Page 3

```
08/03/16   CRIMINAL   COURT   OF   BALTIMORE                  CASE INQUIRY  15:06
  CASE 115141036                   DCM TRACK C DATE 090215     FELONY DRUG INIT
  CASE 115141036 STATUS C DATE 072716 PREV ST A 052115 CODEF YES CHANGE 080316
  DEF WHITE, ALICIA SERGEANT       ID A32385   SID ██████████ R: B S: F DOB ████
    ADDRESS ██████████                              ██████████
    DOA 000000 CMPL 50400000 PHYS LOC              CASE LOC BAL 050115
    DOF 052115 TRACK NO 14-1001-52890-5 DIST CASE 5B02294451 WAR 00 CJIS R RI 1
001 000 C USER MANS1 CODE 1 0910          MANSLAUGHTER            DISP NP   072716
    ARREST/CITATION NO 0
            PLEA       DATE             VERDICT      DATE
    SENTENCE TYPE      DATE       TIME            BEG          SUSP
            PROBATION TIME             TYPE       COST         FINE
002 000 C USER ASLT2 CODE 1 1415          ASSAULT-SEC DEGREE     DISP NP   072716
    ARREST/CITATION NO 0
            PLEA       DATE             VERDICT      DATE
    SENTENCE TYPE      DATE       TIME            BEG          SUSP
            PROBATION TIME             TYPE       COST         FINE
003 000 C USER MISC  CODE 2 0645          MISCONDUCT IN OFFICE   DISP NP   072716
    ARREST/CITATION NO 0
            PLEA       DATE             VERDICT      DATE
    SENTENCE TYPE      DATE       TIME            BEG          SUSP
            PROBATION TIME             TYPE       COST         FINE

NEXT PAGE                              P/N                    PAGE 001
```

TRUE COPY
TEST

8-3-16

ALEXANDER, CLERK

Exhibit 5 Page 4

J.A. 000157

Appeal: 17-1166   Doc: 30   Filed: 06/13/2017   Pg: 164 of 339

```
15:06 PDT Wednesday, August 03, 2016

08/03/16  CRIMINAL  COURT  OF  BALTIMORE                CASE INQUIRY  15:06
 CASE 115141036 ST C WHITE, ALICIA SERGEANT      A32385  COD Y DCM C 090215
004 000 C USER RECKL CODE 1 1425        RECKLESS ENDANGERMENT  DISP NP   072716
      ARREST/CITATION NO 0
            PLEA        DATE          VERDICT     DATE
      SENTENCE TYPE       DATE        TIME         BEG       SUSP
            PROBATION TIME            TYPE         COST      FINE
EVENT DATE   OPER PART TIME ROOM REAS / EVENT COMMENT
CASI 052115     SCB CASE ADDED THROUGH ON-LINE ON THIS DATE  20150522
COMM 052115     SCB INDICTMENT FILED
COMM 052115     SCB CC# 7150400000
COMM 052115     SCB FILED ASA - BLEDSOE, JANICE L          , ESQ 68776
MOTF 052715     CNN MOTION FOR SPEEDY TRIAL
MOTF 052715     CNN MOTION TO PRODUCE DOCUMENTS
MOTF 052715     CNN REQUEST FOR DISCOVERY
MOTF 052715     CNN MOTION TO SUPPRESS PURSUANT TO MD 4-252 AND 4-253
MOTF 052715     CNN MOTION FOR GRAND JURY TESTIMONY
MOTF 052715     CNN DEMAND FOR CHEMIST
FILE 052715     CNN FILED ADF - BATES, IVAN             , ESQ 43061
COMM 052715     CNN DEFENDANT WHITE'S DEMAND FOR BILL OF PARTICULARS FILED
COMM 052715     CNN JOINT MOTION TO DISMISS FOR PROSECUTORIAL MISCONDUCT,
COMM 052715     CNN OR IN THE ALTERNATIVE, FOR SANCTIONS FILED

NEXT PAGE                        P/N                      PAGE 002
```

Exhibit 5 Page 5

Appeal: 17-1166    Doc: 30    Filed: 06/13/2017    Pg: 165 of 339

```
08/03/16  CRIMINAL COURT OF BALTIMORE                     CASE INQUIRY 15:06
 CASE 115141036 ST C WHITE, ALICIA SERGEANT      A32385  COD Y DCM C 090215
EVENT DATE   OPER PART TIME ROOM REAS / EVENT COMMENT
COMM 062716    CKW INSTITUTION OF THE PROSECUTION AND REQUEST FOR A HEARING FLD
COMM 062716    CKW MOTION TO DISCLOSE GRAND JURY MINUTES AND TESTIMONY AND
COMM 062716    CKW REQUEST FOR A HEARING FLD
COMM 070716    CKW STATE'S RESPONSE TO DEFENDANT'S MOTION TO DISMISS THE
COMM 070716    CKW INDICTMENT FOR A DEFECT IN THE INSTITUTION OF THE
COMM 070716    CKW PROSECUTION AND REQUEST FOR A HEARING FLD
COMM 070716    CKW STATE'S RESPONSE TO DEFENDANT'S MOTION TO DISCLOSE GRAND
COMM 070716    CKW JURY MINUTES AND TESTIMONY AND REQUEST FOR A HEARING FLD
HCAL 072716 1 SCB P31;0900;528 ;JT  ;NP;JUDG;   ;WILLIAMS, BARRY;8C9
COMM 072716    SCB CSET JT  ; P31; 07/27/16; SCB
CCAS 072716    SCB CASE CLOSED - NOLLE PROSEQUI           - Q327
COMM 072716    SCB NOLLE PROSEQUI ALL COUNTS; DEF NOT PRESENT
COMM 072916    CNN ORDER DATE & STAMPED 7/28/16 THAT THE DEFT'S MOTION TO ALLOW
COMM 072916    CNN LAW CLERK TO BE PRESENT FOR DISCOVERY REVIEW BE UNSEALED,
COMM 072916    CNN AND FURTHER ORDERED THAT DEFENDANT'S MOTION TO SEAL THE
COMM 072916    CNN DEFENDANT'S MOTION TO ALLOW LAW CLERK TO BE PRESENT FOR
COMM 072916    CNN DISCOVERY REVIEW BE UNSEALED, AND FURTHER ORDERED THAT
COMM 072916    CNN STATE'S RESPONSE TO DEFENDANT'S MOTION TO ALLOW LAW CLERK
COMM 072916    CNN TO BE PRESENT FOR DISCOVERY REVIEW BE UNSEALED, AND
```

**NEXT PAGE**                          P/N                  PAGE 042

Exhibit 5 Page 6

IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND

EDWARD MICHAEL NERO, et al.          *

        Plaintiffs                *

          vs.                      * CIVIL ACTION NO. MJG-16-1288

MARILYN MOSBY, et al.                *

        Defendants                *

*       *       *       *       *       *       *       *       *

BRIAN SCOTT RICE                     *

        Plaintiffs                *

          vs.                      * CIVIL ACTION NO. MJG-16-1304

MARILYN MOSBY, et al.                *

        Defendants                *

*       *       *       *       *       *       *       *       *

ALICIA WHITE, et al.                 *

        Plaintiffs                *

          vs.                      * CIVIL ACTION NO. MJG-16-2663

MARILYN MOSBY, et al.                *

        Defendants                *

*       *       *       *       *       *       *       *       *

<u>PROCEDURAL ORDER</u>

In each of these cases, Defendants Mosby and Cogen have filed motions seeking dismissal or, in the alternative, for summary judgment. This Order is issued (1) denying all motions

for summary judgment as premature and (2) coordinating these
cases so that a consolidated hearing on dismissal motions can be
held, in all cases, at a mutually convenient time (other than
Columbus Day) during the week of October 10.

Accordingly:

1. In MJG-16-1288:

    a. Defendant Samuel Cogen's Motion To Dismiss Or For
       Summary Judgment [ECF No. 12] is DENIED without
       prejudice with regard to summary judgment and remains
       pending as to dismissal.

    b. Plaintiffs' Motion to Deny Or Defer Entry of Dismissal
       Or Entry of Summary Judgment to Permit Plaintiffs to
       Conduct Discovery Pursuant to Fed. R. Civ. P. 12(d)
       and 56(d) [ECF No. 22] is DENIED AS MOOT.

    c. Defendant Mosby's Motion to Dismiss or, In The
       Alternative, Motion for Summary Judgment [ECF No. 25]
       is DENIED without prejudice with regard to summary
       judgment and remains pending as to dismissal.

2. In MJG-16-1304:

    a. Defendant Samuel Cogen's Motion To Dismiss Or For
       Summary Judgment [ECF No. 8] is DENIED without
       prejudice with regard to summary judgment and remains
       pending as to dismissal.

    b. Plaintiff's Motion to Deny Or Defer Entry of Dismissal
       Or Entry of Summary Judgment to Permit Plaintiffs to
       Conduct Discovery Pursuant to Fed. R. Civ. P. 12(d)
       and 56(d) [ECF No. 18] is DENIED AS MOOT.

    c. Plaintiff's [Second] Motion to Deny Or Defer Entry of
       Dismissal Or Entry of Summary Judgment to Permit
       Plaintiffs to Conduct Discovery Pursuant to Fed. R.
       Civ. P. 12(d) and 56(d) [ECF No. 24] is DENIED AS
       MOOT.

      d. Defendant Mosby's Motion to Dismiss or, In The
         Alternative, Motion for Summary Judgment [ECF No. 25]
         is DENIED without prejudice with regard to summary
         judgment and remains pending as to dismissal.

3. In MJG-16-2663:

      a. Defendant Samuel Cogen's Motion To Dismiss Or For
         Summary Judgment [ECF No. 11] is DENIED without
         prejudice with regard to summary judgment and remains
         pending as to dismissal.

      b. Plaintiffs' Motion to Deny Or Defer Entry of Dismissal
         Or Entry of Summary Judgment to Permit Plaintiffs to
         Conduct Discovery Pursuant to Fed. R. Civ. P. 12(d)
         and 56(d) [ECF No. 19] is DENIED AS MOOT.

      c. Defendant Mosby's Motion to Dismiss or, In The
         Alternative, Motion for Summary Judgment [ECF No. 22]
         is DENIED without prejudice with regard to summary
         judgment and remains pending as to dismissal.

      d. If Plaintiffs wish to file a Second Amended Complaint.[1]

        i. They may do so if it is filed by September 1.

        ii. The aforesaid dismissal motions are deemed to
           apply to any Second Amended Complaint.

       iii. Defendants may file any supplementation to their
           dismissal motions by September 8.

        iv. Plaintiffs shall respond to the pending dismissal
           motion (including any supplementation) by
           September 12.

4. In all cases:

      a. All responses to dismissal motions shall be filed by
         September 12.[2]

      b. All replies shall be filed by September 26.

---

[1] The docket indicates that Plaintiffs may be seeking to file a
Second Amended Complaint but have not yet filed a motion seeking
leave to do so.
[2] All dates referred to herein are in the year 2016.

c. Counsel promptly shall coordinate and advise Chambers
   of mutually convenient times (except Columbus Day)
   during the week of October 10 for a motions hearing.


SO ORDERED, this Friday, August 26, 2016.


                        _____/s/_____
                          Marvin J. Garbis
                        United States District Judge

UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND
(Northern Division)

| | |
|---|---|
| ALICIA WHITE, | ) |
|   c/o Fraternal Order of Police | ) |
| 242 West 29th Street | ) |
| Baltimore, Maryland 21211 | ) |
| | ) |
| And | ) |
| | ) |
| WILLIAM PORTER | ) |
| 242 West 29th Street | ) |
| Baltimore, Maryland  21211 | ) |
| | ) |
|     Plaintiffs, | ) |
| vs. | )    Civil No.: MJG-16-2663 |
| | ) |
| MARILYN MOSBY | ) |
| c/o Office of State's Attorney | ) |
| 120 East Baltimore Street | ) |
| Baltimore, Maryland 21202 | ) |
| | ) |
| AND | ) |
| | ) |
| MAJOR SAMUEL COGEN, e | ) |
| c/o  Baltimore City Sheriff's Office | ) |
| 250 City Hall | ) |
| Baltimore, Maryland 21202 | ) |
| | ) |
|    And | ) |
| | ) |
| STATE OF MARYLAND | ) |
| Serve on: | ) |
| Nancy Kopp, Treasurer | ) |
| Louis L. Goldstein Treasury Building | ) |
| 80 Calvert Street, Room 109 | ) |
| Annapolis, MD 21401 | ) |
| | ) |
|    Defendants. | ) |

## SECOND-AMENDED COMPLAINT & JURY DEMAND

Plaintiffs Alicia White and William Porter, by and through their attorneys, Michael E.

Glass, MBA, Esq. and The Michael Glass Law Firm and Tony N. Garcia, Esq and Bates and

1

Garcia LLC, file suit against Defendants Marilyn Mosby, Samuel Cogen, and the State of Maryland, file this Second-Amended Complaint and Jury Demand, and state the following in support thereof:

The Complaint and Jury Demand filed on May 2, 2016 is incorporated as if fully set forth herein with the intention of relating back to the initial filing on May 2, 2016.

### THE PARTIES

1.    Plaintiff Alicia White is and was, at all times relevant, a resident of Baltimore, Maryland, and a sergeant with the Baltimore City Police Department.

2.    Plaintiff William Porter is and was, at all times relevant, a resident of Baltimore County, Maryland, and an officer with the Baltimore City Police Department.

3.    Defendant Marilyn Mosby is and was, at all times relevant, the State's Attorney for Baltimore City, Maryland.

4.    Defendant Samuel Cogen is and was, at all time relevant, a Major with the Baltimore City Sheriff's Office.

5.    Defendant, the State of Maryland, employs Defendants Mosby and Cogen through the Baltimore City State's Attorney's Office and the Baltimore City Sheriff's Department, respectively.

### JURISDICTION & VENUE

6.    Plaintiffs placed Defendants on notice of their claims as required by the Maryland Tort Claims Act (Maryland Code, State Government, §§ 12-101 *et seq.*) by mailing the required notices (and supplemental notices) via certified, first-class U.S. mail, postage prepaid, return receipt requested (and hand-delivered), to Nancy Kopp, State Treasurer, Goldstein Treasury Building, 80 Calvert Street, Annapolis, Maryland 21401, within the requisite period of time. Alternatively, Plaintiffs placed Defendants on notice of their claims

J.A. 000165

in substantial compliance with the Maryland Tort Claims Act. Alternatively, Defendants waived the notice requirement for Plaintiffs under the Maryland Tort Claims Act and/or such notice was not required to the extent that Defendants conduct was outside the scope of employment, committed with malice, and/or was grossly negligent.

7.    This Court has subject matter jurisdiction as the amount in controversy exceeds $30,000.00, and venue is proper pursuant to MARYLAND CODE ANNOTATED, COURTS & JUDICIAL PROCEEDINGS Article, § 6-201 and §6-202 since the actions Plaintiffs complain of occurred and arose in the City of Baltimore, State of Maryland.

*Facts as to Plaintiff Alicia White*

8.    On or about May 1, 2015, Plaintiff Alicia White was wrongfully arrested and imprisoned as a result of her involvement in the lawful arrest of Freddie Carlos Gray, Jr. which occurred on April 12, 2015.

9.    On the morning of April 12, 2015, Officers Edward Nero ("Nero") and Garrett Miller ("Miller") were on bicycle patrol on North Avenue in Baltimore, Maryland.

10.    Lieutenant Rice was ahead of Plaintiffs Nero and Miller on his bicycle.

11.    Lieutenant Rice began pursuing two suspects on Calhoun Street and announced the pursuit over his police radio.

12.    In response to the radio call, Nero and Miller rode down Mount Street in the direction of Lieutenant Rice.

13.    Nero observed one of the two suspects and attempted to apprehend him.

14.    Miller pursued the second suspect, later identified as Freddie Carlos Gray, Jr. (hereinafter, "Mr. Gray").

15.    Miller detained Mr. Gray for officer safety and requested Nero to retrieve his

3

J.A. 000166

bicycle, which he had left behind in the foot chase.

16.    Nero –who had been an Emergency Medical Technician in New Jersey—did not observed that Mr. Gray was in medical crisis.

17.    Miller recovered a knife from Mr. Gray's person and lawfully placed him under arrest.

18.    As soon as Mr. Gray realized he was being placed under arrest, he became physically and verbally combative. As a result of his combativeness, a crowd of citizens began to form.

19.    When the police wagon arrived to take custody of Mr. Gray, Mr. Gray was uncooperative and refused to walk on his own to the wagon.

20.    Nero and Officer Novak then picked up Mr. Gray and took him to the wagon. At this time, Mr. Gray continued to be uncooperative.

21.    Before he was placed fully into the police wagon, Mr. Gray stood on the back step of the wagon while Nero conducted a second search to confirm that Mr. Gray did not possess any other weapons or contraband on his person. During this search, Mr. Gray was standing under his own power.

22.    Once Mr. Gray was fully inside the police wagon, he began banging and slamming himself against the inside of the wagon causing the wagon to visibly shake.

23.    Due to Mr. Gray's continuous screaming and yelling, a larger crowd of citizens had formed around the Nero and Miller and the other officers. In the interest of officer safety, Rice directed Miller to tell the police wagon driver to take the wagon approximately one block south in order to complete the paperwork for Mr. Gray's arrest and then to proceed directly to Central Booking.

24.    At that time, Mr. Gray was taken out of the police wagon so that his handcuffs

4

could be switched with flex ties and leg shackles could be placed on him. Nero was setting his bicycle on the ground next to the police wagon as Mr. Gray was being taken out of the vehicle.

25.    During this time, Mr. Gray continued to be uncooperative. He was alert and responsive, and continued to yell and scream. Another crowd of citizens began to crowd around the police wagon. The citizens were yelling and shouting at the officers.

26.    Once Mr. Gray had been placed in leg shackles and flex ties, he was placed back into the wagon. At this time, he continued to bang the inside of the wagon causing the wagon to violently shake back and forth.

27.    Nero and Miller arrested a second man and called for a police wagon to respond to their current location. The police wagon still containing Mr. Gray responded to the scene on North Avenue to collect the second arrestee.

28.    At this time, Miller and Rice took Mr. Gray out of the wagon, where his handcuffs were switched out with flex ties. Shackles were placed on Mr. Gray's legs because he was thrashing and banging the inside of the police wagon. Mr. Gray continued to flail and scream during this time. Rice called for additional units, as a crowd of citizens had, once again, begun to gather around the police wagon.

29.    Mr. Gray was placed back into the police wagon, where he continued to bang against the door, causing the wagon to rock back and forth. Miller handed Mr. Gray's paperwork to the driver of the police wagon, and the wagon departed.

30.    After the police wagon departed, Plaintiffs Miller and Nero traveled back to North Avenue, where they stopped another suspect. The suspect was subsequently arrested, and Lieutenant Rice called for additional units and a police wagon to transport the individual.

31.    Plaintiff White responded to the call for backup with Officer Wood and proceeded to North Avenue.

5

32.     She spoke with Lt. Rice and asked about what they had, whether the person apprehended was young or old, and what was going on because she had received supervisor complaints.  Lt. Rice stated that she could go over and speak with him.

33.     Plaintiff White approached the rear of the police wagon and looked in.

34.     She saw Mr. Gray sitting in-between the seat and the floor of the back of the police wagon, with his head down, leaning over.

35.     She attempted to speak with him, but he did not respond, however, Plaintiff White heard him making noises.  She also saw him breathing.  At this time, she did not see that Mr. Gray was in any kind of distress, and concluded that his non-responsiveness was due to Mr. Gray continuing to be uncooperative and non-compliant.

36.     At that point, Plaintiff White stopped speaking to Mr. Gray, got back into her patrol car and left the scene.

37.     Plaintiff White did not have any conversations up until that point with anyone else suggesting that Mr. Gray was in distress and needed medical attention.

38.     After the second arrestee was placed inside the wagon at North Avenue, the wagon departed.

39.     When Plaintiff White returned to the Western District, she saw officers attempting to take Mr. Gray out of the police wagon.

40.     Plaintiff White heard one officer ask whether Mr. Gray was breathing, at which point, Plaintiff White advised to call a medic.  This was the first time that Plaintiff White had any reason to believe that Mr. Gray needed medical attention.

41.     At that point, an officer informed Plaintiff White that a medic had already been called.  Plaintiff White then got on the radio to confirm that a medic was en route.  Indeed, as soon as Plaintiff White was aware that Mr. Gray was in distress, she took immediate steps to

6

facilitate him getting medical attention.

*Facts Common to Plaintiff Porter*

42.    This case arises from the wrongful arrest and imprisonment of Plaintiff William Gerald Porter ("Porter") on May 1, 2015. Plaintiff Porter was wrongfully arrested and imprisoned as a result of his involvement in the legal arrest of Freddie Carlos Gray, Jt. in Baltimore City, Maryland on April 12, 2015.

43.    On the morning of April 12, 2015, Plaintiff Porter was working "Baker Shift" during the hours of 7:00 a.m. to 5:30 p.m. in the capacity as a patrol officer. Plaintiff Porter was assigned to a Baltimore Police Department patrol car, and was required to patrol the Western District geographic area.

44.    On the morning of April 12, 2015, Officer Porter was in the midst of inspecting the assigned patrol vehicle when he received a radio dispatch announcing a foot chase in the area of Westwood Avenue and Bruce Street. Plaintiff Porter discontinued the inspection of the vehicle and responded to the area of the foot chase.

45.    In the process of monitoring the radio transmissions pertaining to the foot chase, Plaintiff Porter discerned that Officer Edward Nero and Officer Garrett Miller had detained a suspect. Further, Plaintiff Porter leaned that Lieutenant Brian Rice had requested help canvassing the rear of Mount Street, near Bruce Street and Fulton Avenue.

46.    Plaintiff Porter proceeded to the area of Bruce Street and Fulton Avenue to assist Lt. Rice in the search for the second person believed to be with the individual detained by Officer Edward Nero and/or Officer Garrett Miller. Neither Plaintiff Porter or Lieutenant Rice located the second individual.

47.    While with Lieutenant Rice Plaintiff Porter could hear an individual yelling. The yelling appeared to be coming from the area where Officer Nero and Officer Miller had detained an individual. Additionally, Plaintiff Porter heard residents of the neighborhood yelling random

7

statements and voicing opinions about the detention of the suspect. The yelling appeared to be coming from an area approximately one block from Plaintiff Porter's location, in the area of Presbury Street.

48.     Plaintiff Porter proceeded to walk over to the area of Presbury Street and Mount Street to assist in crowd control. It was not uncommon for residents of the area where the activity was taking place to become vocal and interject opinions concerning police activity.  At this time Plaintiff Porter was unaware of the identity of the individual who was arrested by Officer Nero and/or Officer Miller, nor did he have any interaction with the individual who was arrested.

49.     Plaintiff Porter returned to his patrol car and heard radio communication indicating a request for an additional unit at Baker Street and Mount Street. At this time Plaintiff Porter responded to the area of Baker Street and Mount Street. Plaintiff Porter pulled his patrol vehicle within approximately 20 feet of the location of a Baltimore Police Department transport wagon, observing from a distance several officers engaged in the placement of an individual into the transport wagon.

50.     While at this location Plaintiff Porter observed more loud and continuous interjecting by neighborhood residents, and engaged in conversation with at least one of the residents who was loudly objecting to the arrest of the individual who was taken into custody.

51.     At this time Plaintiff Porter could observe that the arrested individual who was fully inside the police wagon appeared to be banging and slamming himself against the inside of the wagon causing the wagon to visibly shake. It is at this time that Plaintiff Porter was advised that the individual inside of the transport wagon was Freddie Gray. At this time the transport wagon left the area.

52.     Plaintiff Porter returned to his patrol vehicle and intended on commencing his patrol duties when he heard a radio call from the operator of the transport wagon requesting

8

that an additional police unit respond to the intersection of Druid Hill Avenue and Dolphin Street. Plaintiff Porter responded to this intersection to assist the transport wagon operator. Officer Caesar Goodson was operating the transport wagon.

53.     When Plaintiff Porter responded to the intersection of Druid Hill Avenue and Dolphin Street the transport wagon was stopped and parked at this location.

54.     Officer Goodson exited the transport wagon and was greeted by Plaintiff Porter. Officer Goodson opened the exterior door to the transport wagon and Plaintiff Porter opened the interior door.

55.     Plaintiff Porter observed Freddie Gray lying on the floor of the vehicle. Mr. Gray's head was at the front of the transport compartment of the vehicle and his body was wedged between the interior dividing wall and the wheel well partition that was secured to the bench that runs along the exterior wall of the transport wagon. Mr. Gray was in a prone position, with his feet at the rear area of the transport compartment.

56.     Mr. Gray said "help" as he appeared to notice that Plaintiff Porter was opening the rear interior door. Plaintiff Porter responded by saying "what do you mean help?" Mr. Gray then replied by requesting that Plaintiff Porter provide assistance in helping him get up. Mr. Gray did not appear to be in any medical distress, nor did he complain of any injury at this time. Plaintiff Porter grabbed Mr. Gray under his arms, which were handcuffed behind his back, and assisted Mr. Gray to a sitting position on the bench of the transport wagon. Plaintiff Porter was unable to fit into the compartment with Mr. Gray in the compartment, and removed himself by backing out of the transport compartment.

57.     While interacting with Mr. Gray, Plaintiff Porter inquired how they were going to be able to continue with transporting Mr. Gray to the Baltimore City Central Booking and Intake Facility. Knowing that many detainees are trying to avoid being transported to the

detention facility, Plaintiff Porter inquired if Mr. Gray wanted to see a medic and/or if he wanted medical help. Although making this request, Plaintiff Porter observed no exigent medical need, and observed Mr. Gray to be able to sit upright, breathe and communicate with Plaintiff Porter.

58.    Mr. Gray, despite no signs of exigent medical needs, indicated that he did want to have medical assistance. Plaintiff Porter anticipated that Mr. Gray would not be permitted to be processed through the Baltimore City Central Booking and Intake Facility because of his request for some medical assistance. As such, Plaintiff Porter advised Officer Goodson that he would need to transport Mr. Gray to the hospital.

59.    Plaintiff Porter returned to his patrol car. Both the interior and exterior rear doors of the transport wagon were open when he walked away from the transport wagon, leaving Officer Goodson with Mr. Gray.

60.    As Plaintiff Porter returned to his patrol car he heard a radio transmission that requested additional units at the area of North Avenue and Carey Street. Plaintiff Porter proceeded to that location.

61.    Upon arriving at this location Plaintiff Porter observed that several officers had arrested another individual and they were in the process of placing him in the transport wagon that contained Mr. Gray. The police wagon containing Mr. Gray had traveled to North Avenue, at which point the second arrestee was placed in the wagon. Plaintiff Porter did not have involvement with the arrest of the second subject, but was able to look into the back of the transport wagon and observed Mr. Gray to be kneeling on the floor of the transport wagon, leaning against the bench within the transport compartment of the wagon. Plaintiff Porter inquired of Mr. Gray if he still wanted to go to the hospital and Mr. Gray responded in the affirmative. Plaintiff Porter conveyed this information to another police officer at the scene.

10

62.      Plaintiff Porter was advised that he would need to respond to the hospital with Mr. Gray since the other officers, who were operating bicycles, would need to stay together. Plaintiff Porter was instructed to meet the transport wagon at the Western District.

63.      Plaintiff Porter traveled to the Western District as instructed. When he arrived at the district, the second subject arrested at North Avenue and Carey Street had already been removed from the transport wagon. Plaintiff Porter walked to the transport wagon and upon opening the door of the transport wagon on the side of the compartment where Mr. Gray was confined called out Mr. Gray's name. Mr. Gray was unresponsive.

64.      Plaintiff Porter tapped Mr. Gray and Mr. Gray did not respond. At this time another officer started to render emergency assistance and Plaintiff Porter called for a medic.

65.      Plaintiff Porter was ordered to accompany the medic unit to the hospital, where he stayed until relieved of his duty.

*Facts Common to all Counts*

66.      Mr. Gray was taken to the University of Maryland Shock Trauma Unit.

67.      On April 19, 2015, Mr. Gray passed away after undergoing surgery at the University of Maryland Shock Trauma Unit.

68.      On May 1, 2015, charges were filed against Plaintiffs White and Porter concerning their alleged actions during the legal arrest of Mr. Gray on April 12, 2015 pursuant to an Application for Statement of Charges submitted by Defendant Cogen.  Plaintiff White was charged with manslaughter, involuntary manslaughter, second degree assault, and misconduct in office. Plaintiff Porter was charged with involuntary manslaughter, assault in the second degree, and misconduct in office.

69.      The Application for Statement of Charges submitted by Defendant Cogen stated that Mr. Gray's death was ruled a homicide by the Office of the Chief Medical

11

J.A. 000174

Examiner.

70.    The State's Attorney's Office, however, sought to influence the Medic Examiner's opinions and finding by withholding relevant, material, and truthful information (including, but not limited to prior conditions and injuries, such as a prior back injury).

71.    The same day, Plaintiffs were arrested and processed at Baltimore City's Central Booking Intake Center. The process took several hours to complete, during which time Plaintiffs White and Porter were deprived of their liberty and held against their will. There existed no legal justification to arrest or detain Plaintiffs.

72.    Also on May 1, 2015, Marilyn Mosby ("Mosby"), State's Attorney for Baltimore City, gave a press conference concerning her office's decisions to press charges against Plaintiffs White and Porter, along with four other officers of the Baltimore City Police Department.

73.    During this press conference, Ms. Mosby read the Application for Statement of Charges filed against Plaintiffs White and Porter, and the other charged officers, which contained false statements, and spoke in a divisive and inciting manner.

74.    At the time of the press conference, Ms. Mosby knew that this incident had garnered national attention and that there would be wide-spread media coverage. She also knew or should have known that her press conference violated Maryland Rule of Professional Conduct 3.6(a) ("A lawyer who is participating or has participated in the investigation or litigation of a matter shall not make an extrajudicial statement that the lawyer knows or reasonably should know will be disseminated by means of public communication and will have a substantial likelihood of materially prejudicing an adjudicative proceeding in the matter.").

75.    Ms. Mosby stated that the knife recovered from Mr. Gray by Plaintiffs was "not

12

J.A. 000175

a switchblade and [was] lawful under Maryland law." The knife recovered from Mr. Gray was spring-assisted and was, therefore, illegal under Article 19, Section 59-22 of the Baltimore City Code. Ms. Mosby had served as an Assistant State's Attorney for Baltimore City from 2005- 2012 and knew that spring-assisted knives were illegal in Baltimore City.

76.     Ms. Mosby stated that Officers Goodson, Miller and Nero "failed to establish probable cause for Mr. Gray's arrest as no crime had been committed by Mr. Gray. Accordingly . . . Officer Miller and Officer Nero illegally arrested Mr. Gray." This statement was false, as the knife, which was legally seized from Mr. Gray, was illegal under Article 19, Section 59-22 of the Baltimore City Code. Ms. Mosby knew that Plaintiffs Miller and Nero had probable cause to arrest Mr. Gray.

77.     Ms. Mosby state that "Sgt. Alicia White [and] Officer Porter observed Mr. Gray unresponsive on the floor of the wagon. Sgt. White who is responsible for investigating two citizen complaints pertaining to Mr. Gray's illegal arrest spoke to the back of Mr. Gray's head. When he did not respond, she did nothing further despite the fact that she was advised that he needed a medic. She made no effort to look or assess or determine his condition."

78.     The State's Attorney went outside the scope of her employment, as a State's Attorney by acting in an investigative capacity that formed the basis for the charges brought against Plaintiffs.

79.     The State's Attorney's Office, however, allegedly did an investigation wherein it manipulated evidence to facilitate indictments of the Plaintiffs and other officers.

80.     Ms. Mosby also made several statements during her May 1, 2015 press conference regarding the independent investigation conducted by the Office of the State's Attorney for Baltimore City.

81.     The press conference statements include, but are not limited to, the following:

13

J.A. 000176

a.      "Once alerted about this incident on April 13, investigators from my police integrity unit were deployed to investigate the circumstances surrounding Mr. Gray's apprehension. Over the course of our independent investigation, in the untimely death of Mr. Gray, my team worked around the clock; 12 and 14 hour days to canvass and interview dozens of witnesses; view numerous hours of video taped statements; surveyed the route; reviewed voluminous medical records; and we leveraged the information made available to us by the police department, the community, and the family of Mr. Gray."

b.      "The findings of our comprehensive, thorough and independent investigation, coupled with the medical examiner's determination that Mr. Gray's death was a homicide, which we received today, has led us to believe that we have probable cause to file criminal charges."

c.      "We have conducted a thorough and independent investigation of this case."

d.      "We have been working with the police department from day one, and from day one I also sent my own investigators to the scene."

e. "We independently verified those facts and everything we received from the police department, so it's a culmination of the independent investigation that we conducted as well as the information we received from the police department."

f. "Well, what I can say is that from the beginning, we knew that this was a serious case, we've been working independently, and I can tell you that we put all of our resources to make sure that we are pursuing and

14

J.A. 000177

leading where the facts took us in this case, which was to pursue justice."

g.    "I can tell you that from day one, we independently investigated, we're not just relying solely upon what we were given by the police department, period."

h.    "I thought it was very important to have an independent analysis as to what took place and transpired from the very beginning. We are independent agencies from the police department."

i. "I can tell you, as I stated, we had a number of investigators, you can see it's been an all hands on approach, from the very beginning, so I sent my investigators out to the scene, we have a number of them who are right here, we have a working collaboration and are working with the Baltimore Sheriff's Department, who has police powers and, again, independent from the Baltimore City Police Department. So yes, we have leveraged the police investigation, but at no point did we compromise our own independent investigation into this case."

82.    Further, Ms. Mosby's made statements for purposes of quelling the riots rather than prosecuting police officers who had committed crimes, such as: "To the people of Baltimore and the demonstrators across America: I heard your call for 'No justice, no peace.' Your peace is sincerely needed as I work to deliver justice on behalf of this young man.  To those that are angry, hurt or have their own experiences of injustice at the hands of police officers I urge you to channel that energy peacefully as we prosecute this case.  I have heard your calls for 'No justice, no peace,' however your peace is sincerely needed as I work to deliver justice on behalf of Freddie Gray."

83.    She also stated: "Last but certainly not least, to the youth of the city.  I will seek

J.A. 000178

justice on your behalf.  This is a moment.  This is your moment.  Let's insure we have peaceful and productive rallies that will develop structural and systemic changes for generations to come.  You're at the forefront of this case and as young people, our time is now."

84.    In so doing, Ms. Mosby went well beyond and exceeded the authority and role of the State's Attorney's Office as prosecutor and brought charges against police officers that were wholly unsupported by evidence and probable cause and for a purpose other than her role: prosecuting those who had committed crimes, and by conducting a bogus and sham investigation that did not turn up any evidence that supported the charges against Plaintiffs

85.    Indeed, during her alleged investigation, Mosby created false facts and omitted material facts in order to create, with Cogen's complicity and assistance, a false Statement of Charges designed to support securing indictments against Plaintiffs.

86.    During her alleged investigation, Mosby further created false and misleading facts to present to the grand jury, and omitted material exculpatory facts, to secure an indictment.

87.    By way of example but not limitation, Mosby represented to the grand jury, upon information and belief, and to the Commissioner (with and through Cogen) in the Statement of Charges that:

a.  Plaintiffs were under a legal duty to restrain Mr. Gray in a seatbelt when, in fact, no such legal duty existed;

b.  Plaintiffs observed "Mr. Gray unresponsive on the floor of the wagon," which was not true.  Indeed, Mosby and Cogen omitted that Plaintiffs specifically stated that they did not observe that Mr. Gray was in any distress (until the final stop at the Western District).

J.A. 000179

c. "When [Mr. Gray] did not respond, [Plaintiff White] did nothing further despite the fact that she was advised that he needed a medic." Yet, such statement was patently false since, indeed, Plaintiff White called for a medic as soon as she was aware that Mr. Gray was in medical distress.

d. "Despite Mr. Gray's seriously deteriorating medical condition, no medical assistance was rendered or summonses for Mr. Gray at that time by [either Plaintiff]. Such statement, however, was patently false since there was no evidence to support that Mr. Gray was in medical distress at any point that Plaintiffs had any interaction with him, until Plaintiff White called for medical assistance at the van's final stop.

88.   Mosby developed these false and misleading facts during her so-called independent investigation.

89.   Mosby, however, omitted that a first-hand witness, Donta Allen –who was in the van with Freddie Gray— noting that not only was Freddie Gray conscious during much of the ride, but was banging his head against the wall, indicating that he was not in a serious state for much of the ride.

90.   Mosby and Cogen omitted that another witness, Mark Gladhill, saw Mr. Gray in the van and observed that he was in a "praying position," not that he was in any medical distress.

91.   Mosby and Cogen omitted that the medics who came onto the scene and examined Mr. Gray after Plaintiff White called them not once, but twice, determined that Freddie Gray's neck was "Normal," and that other "significant physical exam findings" stated that "client was arrested for suspected drug possession **so possible drug ingestion or overdose was treated** as well as trauma etiology." Indeed, Mosby and Cogy withheld from

17

J.A. 000180

the Commissioner and the grand jury that not even the medical professionals that arrived on
the scene were able to determine that Gray had suffered any serious physical trauma.

92.    Upon information and belief, Mosby proceeded to prepare a script that was to
be read  to the grand jury by Detective Dawnyell Taylor that contained misleading facts –
including but not limited to those in the Statement of Charges—and omitted exculpatory facts.

93.    Mosby and Cogen had a legal obligation not to mislead a grand jury into
indicting Plaintiffs based on false and misleading evidence, and omitting material, exculpatory
facts.

94.    At the time that Defendant Cogen filed the Application for Statement of
Charges, Defendant Cogen knew that no probable cause existed that neither Plaintiff White
nor Plaintiff Porter had committed any crime.

95.    Defendant Cogen either knew that no evidence supported the Statement of
Charges against Plaintiffs by directly or indirectly participating in the State's Attorney's
alleged "thorough," "independent" investigation, or made materially false statements and
omitted material facts in the Statement of Charges deliberately, with a reckless disregard of
the truth, and with a reckless indifference to determining the veracity of the allegations which
he attested to under oath under penalty of perjury.

96.    Such material omissions included that when Mr. Gray when and how Mr. Gray
died was undetermined, that Plaintiff Porter and Plaintiff White did not know, and could not
reasonably have known, that Mr. Gray was in distress prior to the last stop when help was
immediately summoned, at that when Mr. Gray was severely injured was not known.

97.    Defendant Cogen further falsely described Mr. Gray's physical condition as
him being in "obvious and recognized need for medical assistance" without any facts
whatsoever to support this bald allegation.

18

J.A. 000181

98.    Defendant Cogen falsely stately that Plaintiff White "did nothing further [to help Mr. Gray] despite the fact that she was advised that he needed a medic." Defendant Cogen, however, falsely and deliberately omitted that Officer Porter believed that Mr. Gray asked for a medic for purposes of being taken to the hospital to avoid being processed, rather than because that he was in need of medical assistance.

99.    Without any probable cause, Defendant Cogen baldly and falsely stated that Plaintiff White "made no effort to look, assess or determine [Mr. Gray's] condition" when, in fact, she did check on Mr. Gray and did not see any indication that he was in distress.

100.    Defendant Cogen materially omitted that it was Plaintiff White who instructed other officers to call for a medic, and then followed up again when the medic did not promptly arrive, as soon as she knew that Mr. Gray was in distress, as she clearly stated in her Recorded Statement.

101.    In the alternative, Defendant Mosby instructed Defendant Cogen to file the Application for Statement of Charges, either directly and/or by instructing another member of the Baltimore City State's Attorney's office to instruct Defendant Cogen to file the Application for Statement of Charges. Defendant's Mosby's direct involvement in the filing of the Application for Statement of Charges is evidenced by her statements during the May 1, 2015 press conference that "we have probable cause to file criminal charges" and "We have brought the following charges" even though the Application for Statement of Charges was filed by Defendant Cogen and not by the Baltimore City State's Attorney's Office.

102.    Alternatively, Mosby provided erroneous legal advice to Defendant Cogen, prior to his filing of the Application for Statement of Charges, that probable cause existed to charge and arrest Plaintiffs White and Porter, even though Defendant Mosby knew, prior to the filing of the Application for Statement of Charges that no probable cause existed that either

19

J.A. 000182

Plaintiff White or Porter had committed any crime. Defendant Mosby provided this erroneous legal advice either directly to Defendant Cogen and/or instructing another member of the Baltimore City State's Attorney's office to provide this erroneous legal advice to Defendant Cogen. Notwithstanding this erroneous legal advice, Defendant Cogen knew, or should have known, that no probable cause existed to bring charges against and arrest Plaintiffs Porter and White.

103.    As a result of the improper actions of Defendants Mosby and Cogen, Plaintiffs White and Porter were illegally arrested on May 1, 2015. Their illegal arrests were made without probable cause and were done either negligently or, in the alternative, intentionally, with ill will, improper motivation and/or evil purpose. They were falsely charged as a direct result of an improperly motivated investigation, false charges and deliberate and reckless false statements made by Defendants Mosby and Cogen with a reckless disregard for the truth--and improper legal advice provided to Defendant Cogen and the Office of the State's Attorney for Baltimore City—brought for the purpose of stopping the riots rather than prosecuting charges supported by probable cause.

104.    Indictments of the Plaintiffs were obtained from the grand jury by the State's Attorney offering false and misleading statements, omitting material facts, and presenting the purported evidence in a biased and materially suggestive manner.

105.    On or about May 11th, 2015  Baltimore City Police Detective Dawnyell Taylor was assigned as lead detective in the criminal investigation into the death of Freddy Gray.

106.    On or about May 21st 2015, a Grand Jury was convened for the presentation of evidence by agents of Defendant Mosby in order to secure an indictment of Plaintiffs as well as Baltimore City Police Officers, Edward Nero, Officer Miller, Officer Goodson, and Lieutenant Brian Rice.

J.A. 000183

107.    On or about May 21st, 2015 Detective Dawnyell Taylor was given a four-page document from Assistant State's Attorney Janice Bledsoe to be read to the Grand Jury that was incomplete, misleading, biased, and partially false.

108.    On or about May 21, 2015 Detective Dawnyell Taylor was sworn in to testify before the Baltimore City Grand Jury, and even after expressing her concern to the agents of Defendant Mosby that information was going to be provided to the Grand Jury which was misleading she was instructed to read aloud a four page document containing false information including but limited to that Freddy Gray was tasered prior to arrest by the arresting Officers.

109.    On or about May 21, 2015, Detective Dawnyell Taylor was sworn in before the Baltimore City Grand Jury, and even after expressing her concern to the agents of Defendant Mosby that information was going to be provided to the Grand Jury which was misleading such as, and not limited to,  statements from the plaintiffs and other Baltimore City Police Officers which were incomplete, lacking context, and doctored in order to make it appear that the plaintiffs and other Officers gave statements incriminating each other.

110.    On or about May 21, 2015, Detective Dawnyell Taylor observed Defendant Marilyn Mosby sitting in the Grand Jury room joking, laughing, and talking with members of the sworn Grand Jury panel prior to their decision to indict Plaintiffs as well as Baltimore City Police Officers, Edward Nero, Officer Miller, Officer Goodson, and Lieutenant Brian Rice. Defendant Mosby remained sitting in the Grand Jury room next to a Deputy State's Attorney during the swearing in of the Detetctive, the reading of a four page document containing the misleading and partially false information, questions presented by the Grand Jury members and answered by agents of Defendant Mosby.

111.    On or about May 21, 2015, before the Grand Jury convened to decide whether to indict Plaintiffs, Marilyn Mosby watched as her agents interjected and prevented Detective

Dawnyell Taylor from responding to Grand Jury questions.

112.    On or about May 21, 2015, before the Grand Jury convened to decide whether to indict Plaintiffs, Marilyn Mosby watched as Detective Dawnyell Taylor repeatedly informed the Grand Jury that the information that the Grand Jury received was not from her investigation but from a four page document provided by the agents of Defendant Mosby.

113.    As a result of this incident, Plaintiffs Porter and White lost their freedom and dignity and suffered physical and psychological harm from being arrested and detained without cause.

114.    At all times, Defendants Mosby and Cogen were acting under the color of law and within the scope of their employment or, in the alternative, beyond the scope of their employment.

115.    At all times, Defendant Mosby and Cogen acted negligently or, in the alternative, with gross negligence and/or with actual malice directed at Plaintiff White and Plaintiff Porter, with the intent to cause harm to the Plaintiffs by trampling on the Plaintiffs' rights in furtherance of the Defendants' own personal interests and political agendas, and/or with reckless disregard for the truth in the allegations brought in the Statement of Charges.

## COUNT I – DEFAMATION
### *(Plaintiffs White & Porter v. State of Maryland)*

116.    The foregoing paragraphs are incorporated by reference as if fully set forth herein.

117.    Defendant Mosby sought to falsely charge, arrest and imprison Plaintiffs White and Porter.

118.    Defendant Cogen drafted and signed the Statement of Charges and Defendant Mosby read them at a press conference on May 1, 2015.

22

J.A. 000185

119. In the press conference on May 1, 2015, Defendant Mosby announced that both Plaintiffs "assessed Mr. Gray's condition and at no point did either of them restrain Mr. Gray per BPD general order nor did they render or request medical assistance."

120. Defendant Mosby further stated in her press conference in an effort to falsely charge Plaintiffs White and Porter that "Sgt. Alicia White, Officer Porter and Officer Goodson observed Mr. Gray unresponsive on the floor of the wagon. Sgt. White who is [sic] responsible for investigating two citizen complaints pertaining to Mr. Gray's illegal arrest spoke to the back of Mr. Gray's head. When he did not respond, she did nothing further despite the fact that she was advised that he needed a medic. She made no effort to look or assess or determine his condition."

121. These statements were defamatory because they exposed Plaintiffs to public scorn, hatred, and contempt, thereby discouraging others in the community from having a favorable opinion of, or associating with, Plaintiffs.

122. These statements were published verbally, in the written media, broadcast on local and national television, and disseminated on the worldwide web and are reasonably recognizable as being defamatory.

123. These statements are provably false as the facts and evidence in no way support that Plaintiffs White and Porter determined that Mr. Gray was in crisis and then ignored his need for medical attention. Indeed, the facts and evidence show that both Plaintiffs sought medical attention as soon as it was determined that Mr. Gray was in distress.

124. Defendant Mosby had a duty to not publish false and defamatory statements about Plaintiffs, and breached that duty in her press conference by making and publishing such statements.

125. As a direct and proximate result of the false and defamatory statements

23

published by Defendant Mosby, the character and reputation of each of the Plaintiffs were harmed, their standing and reputation in the Baltimore City Police Department and the community at large –locally, nationally, and internationally—were impaired, they suffered and continue to suffer mental pain and anguish, and humiliation.

126.   As a direct and proximate result of the false and defamatory statements, Plaintiffs were placed on administrative leave with no pay, and have suffered, and continue to suffer, monetary damages in the form of lost income, lost raises in salary, and lost promotions.

WHEREFORE, Plaintiffs White and Porter demand compensatory damages in excess of $75,000, plus interest, costs, attorneys' fees, and any other relief as this Court deems proper.

COUNT II – DEFAMATION (Malice in the Alternative)
*(Plaintiffs White & Porter v. Defendants Mosby & Cogen)*

127.   The foregoing paragraphs are incorporated by reference as if fully set forth herein.

128.   Defendants Mosby and Cogen sought to falsely charge, arrest and imprison Plaintiffs White and Porter.

129.   Defendant Cogen drafted and signed the State of Charges, which Defendant Mosby read at a press conference on May 1, 2015.

130.   Among other comments, in the press conference on May 1, 2015, Defendant Mosby announced that both Plaintiffs "assessed Mr. Gray's condition and at no point did either of them restrain Mr. Gray per BPD general order nor did they render or request medical assistance."

131.   Defendant Mosby further stated in her press conference in an effort to falsely charge Plaintiffs White and Porter that "Sgt. Alicia White, Officer Porter and Officer Goodson observed Mr. Gray unresponsive on the floor of the wagon. Sgt. White who is [sic] responsible

24

J.A. 000187

for investigating two citizen complaints pertaining to Mr. Gray's illegal arrest spoke to the back of Mr. Gray's head. When he did not respond, she did nothing further despite the fact that she was advised that he needed a medic. She made no effort to look or assess or determine his condition."

132.    These statements were defamatory because they exposed Plaintiffs to public scorn, hatred, and contempt, thereby discouraging others in the community from having a favorable opinion of, or associating with, Plaintiffs.

133.    These statements were published verbally, in the written media, broadcast on local and national television, and disseminated on the worldwide web and are reasonably recognizable as being defamatory.

134.    These statements are provably false as the facts and evidence in no way support that Plaintiffs White and Porter determined that Mr. Gray was in crisis and ignored his need for medical attention. Indeed, the facts and evidence show that both Plaintiffs sought medical attention as soon as it was determined that Mr. Gray was in distress.

135.    Defendant Mosby went outside the scope of her employment as a State's Attorney by holding a press conference, acting in an investigative capacity, reading the statement of charges to the public, and made the aforementioned false and defamatory statements with knowledge of their falsity and with the intent to harm Plaintiffs White and Porter. Specifically, Defendant Mosby falsely charged Plaintiffs and made false and defamatory statements for purposes other than prosecuting criminal acts, such as appeasing the public and quelling the riots.

136.    As a direct and proximate result of the false and defamatory statements published by Defendant Mosby, the character and reputation of each of the Plaintiffs were harmed, their standing and reputation in the Baltimore City Police Department and the

community at large –locally, nationally, and internationally—were impaired, they suffered and continue to suffer mental pain and anguish, and humiliation.

137.    Additionally, as a direct and proximate result of the false and defamatory statements, Plaintiffs were placed on administrative leave with no pay, and have suffered, and continue to suffer, monetary damages in the form of lost income, lost raises in salary, and lost promotions.

WHEREFORE, Plaintiffs White and Porter demand compensatory damages in excess of $75,000, punitive damages in excess of $75,000, plus interest, costs, attorneys' fees,  , and any other relief as this Court deems proper.

### COUNT III– INVASION OF PRIVACY: FALSE LIGHT
*(Plaintiffs White and Porter v. Defendant State of Maryland)*

138.    The foregoing paragraphs are incorporated by reference as if fully set forth herein.

139.    Defendants Mosby and Cogen sought to falsely charge, arrest and imprison Plaintiffs White and Porter.

140.    Defendant Cogen drafted and signed the Statement of Charges.

141.    In a press conference on May 1, 2015, Defendant Mosby announced that both Plaintiffs "assessed Mr. Gray's condition and at no point did either of them restrain Mr. Gray per BPD general order nor did they render or request medical assistance."

142.    Defendant Mosby further stated in her press conference in an effort to falsely charge Plaintiffs White and Porter that "Sgt. Alicia White, Officer Porter and Officer Goodson observed Mr. Gray unresponsive on the floor of the wagon.  Sgt. White who is [sic] responsible for investigating two citizen complaints pertaining to Mr. Gray's illegal arrest spoke to the back of Mr. Gray's head.  When he did not respond, she did nothing further despite the fact

J.A. 000189

that she was advised that he needed a medic.  She made no effort to look or assess or determine his condition."

143.    These statements were highly published and publicized not only verbally in the press conference, but also in the written media, broadcast on local and national television, and disseminated on the worldwide web.

144.    These statements were intended to support criminal charges and to create the impression and conclusion among the public that Plaintiffs knew that Mr. Gray was in distress and in need of medical attention, but then ignored his medical needs and did nothing.

145.    These statements therefore placed Plaintiffs in a false position by attributing to them characteristics, conduct and beliefs which are false.

146.    Indeed, the statements and evidence reviewed by Defendants Mosby and Cogen supported that as soon as Plaintiffs White and Porter were aware that Mr. Gray was in distress, they immediately sought medical attention for Mr. Gray.

147.    Defendant Cogen drafted and signed the Statement of Charges that Defendant Mosby publicized to the public at large.

148.    Defendants Mosby and Cogen knew, based on the officers' statements and other evidence they reviewed, that the statement of charges and other statements Defendant Mosby made in her May 1, 2015 press conference were false.

149.    Defendants Cogen and Mosby had a duty to Plaintiffs not to criminally charge Plaintiffs when such charges were unsupported by the facts and evidence.  Defendant Mosby further had a duty not to publish such false statements about Plaintiffs.

150.    Defendants Cogen and Mosby breached their duty to Plaintiffs by bringing unsupported criminal charges and then publicly publishing same.

151.    These among other statements were made not for purposes of prosecuting

27

crimes that had allegedly been committed by White and Porter, but rather for purposes of quelling the riots in Baltimore.

152.    The false charges brought by Defendants Cogen and Mosby and publicized by Mosby, along with other statements, were made in a manner which is highly offensive to a reasonable person considering the customs of the time and place of the alleged wrongdoing by Defendants.

153.    As a direct and proximate result of the false statements published by Defendant Mosby and placing Plaintiffs in a false light, the character and reputation of each of the Plaintiffs were harmed, their standing and reputation in the Baltimore City Police Department and the community at large –locally, nationally, and internationally—were impaired, they suffered and continue to suffer mental pain and anguish, and humiliation.

154.    Additionally, as a direct and proximate result of the false statements and placing Plaintiffs in a false light, Plaintiffs were placed on administrative leave with no pay, and have suffered, and continue to suffer, monetary damages in the form of lost income, lost raises in salary, and lost promotions.

WHEREFORE, Plaintiffs White and Porter demand compensatory damages in excess of $75,000, plus interest, costs, attorneys' fees, punitive damages in excess of $75,000, and any other relief as this Court deem proper.

### COUNT IV– INVASION OF PRIVACY: FALSE LIGHT (Malice in the Alternative)
*(Plaintiffs White and Porter v. Defendants Mosby & Cogen)*

155.    The foregoing paragraphs are incorporated by reference as if fully set forth herein.

156.    Defendants Mosby and Cogen sought to falsely charge, arrest and imprison Plaintiffs White and Porter.

J.A. 000191

157.    Defendant Cogen drafted and signed the Statement of Charges.

158.    In a press conference on May 1, 2015, Defendant Mosby announced that both Plaintiffs "assessed Mr. Gray's condition and at no point did either of them restrain Mr. Gray per BPD general order nor did they render or request medical assistance."

159.    Defendant Mosby further stated in her press conference in an effort to falsely charge Plaintiffs White and Porter that "Sgt. Alicia White, Officer Porter and Officer Goodson observed Mr. Gray unresponsive on the floor of the wagon. Sgt. White who is [sic] responsible for investigating two citizen complaints pertaining to Mr. Gray's illegal arrest spoke to the back of Mr. Gray's head. When he did not respond, she did nothing further despite the fact that she was advised that he needed a medic. She made no effort to look or assess or determine his condition."

160.    These statements were highly published and publicized not only verbally in the press conference, but also in the written media, broadcast on local and national television, and disseminated on the worldwide web.

161.    These statements were intended to support criminal charges and to create the impression and conclusion among the public that Plaintiffs knew that Mr. Gray was in distress and in need of medical attention, but then ignored his medical needs and did nothing.

162.    These statements therefore placed Plaintiffs in a false position by attributing to them characteristics, conduct and beliefs which are false.

163.    Indeed, the statements and evidence reviewed by Defendants Mosby and Cogen supported that as soon as Plaintiffs White and Porter were aware that Mr. Gray was in distress, they immediately sought medical attention for Mr. Gray.

164.    Defendant Cogen drafted and signed the Statement of Charges that Defendant Mosby publicized to the public at large.

J.A. 000192

165.    Defendants Mosby and Cogen knew, based on the officers' statements and other evidence they reviewed, that the statement of charges and other statements Defendant Mosby made in her May 1, 2015 press conference were false.

166.    Indeed, Mosby made the statements with knowledge of their falsity and with reckless disregard of their falsity in a manner that is highly offensive to a reasonable person.

167.    These among other statements were made not for purposes of prosecuting crimes that had allegedly been committed by White and Porter, but rather for purposes of quelling the riots in Baltimore.

168.    The false charges brought by Defendants Cogen and Mosby and publicized by Mosby, along with other statements, were made in a manner which is highly offensive to a reasonable person considering the customs of the time and place of the alleged wrongdoing by Defendants.

169.    As a direct and proximate result of the false statements published by Defendant Mosby and placing Plaintiffs in a false light, the character and reputation of each of the Plaintiffs were harmed, their standing and reputation in the Baltimore City Police Department and the community at large –locally, nationally, and internationally—were impaired, they suffered and continue to suffer mental pain and anguish, and humiliation.

170.    Additionally, as a direct and proximate result of the false statements and placing Plaintiffs in a false light, Plaintiffs were placed on administrative leave with no pay, and have suffered, and continue to suffer, monetary damages in the form of lost income, lost raises in salary, and lost promotions.

WHEREFORE, Plaintiffs White and Porter demand compensatory damages in excess of $75,000, punitive damages in excess of $75,000, plus interest, costs, attorneys' fees, and any other relief as this Court deems proper.

J.A. 000193

## COUNT V–FALSE ARREST
### *(Plaintiffs White and Porter v. Defendant State of Maryland)*

171.    The foregoing paragraphs are incorporated by reference as if fully set forth herein.

172.    Defendants, their agents, and their employees unlawfully deprived Plaintiffs of their liberty.

173.    Plaintiffs did not consent to the deprivation of their liberty and were held against their will for an extended period of time.

174.    Defendants, their agents, and their employees were without legal justification for depriving Plaintiffs of their liberty.

175.    As a direct and proximate result of the false imprisonment by Defendants, their agents, and their employees, Plaintiffs have sustained emotional, mental, and physical pain and suffering, missed time from work and leisure activities, past and future medical expenses; and loss of earning capacity.

WHEREFORE, Plaintiffs White and Porter demand compensatory and monetary damages in excess of $75,000, plus interest, costs, attorneys' fees, and any other relief as this Court deems proper.

### COUNT VI–FALSE ARREST (Actual Malice in the Alternative)
### *(Plaintiffs White and Porter v. Defendants Mosby & Cogen)*

176.    The foregoing paragraphs are incorporated by reference as if fully set forth herein.

177.    Defendants Cogen and Mosby, their agents, and their employees unlawfully deprived Plaintiffs of their liberty.

178.    Plaintiffs did not consent to the deprivation of their liberty and were held against their will for an extended period of time.

31

179.   Defendants, their agents, and their employees were without legal justification for depriving Plaintiffs of their liberty.

180.   The conduct of Defendants, their agents, and their employees was grossly negligent, reckless, and/or perpetrated with actual malice. Indeed, Plaintiffs were arrested not in pursuit of prosecuting criminal conduct allegedly perpetrated by Plaintiffs, but rather for a personal and political agenda of Defendants Cogen and Mosby to, among other things, (1) assuage an angry constituency by placing blame on Plaintiffs for the death of Freddie Gray, (2) quell the riots, (3) further the personal ambitions and political agenda of Mosby and Cogen, among other reasons.

181.   There was no probable cause for arresting Plaintiffs, and the arrests were made with a reckless disregard of the consequences affecting the life and property of Plaintiffs, and a thoughtless disregard of the grave consequences to Plaintiffs, without any effort on the part of Defendants Mosby and Cogen to avoid them.

182.   The injuries inflicted on Plaintiffs by Defendants Cogen and Mosby were done wantonly and willfully with such utter indifference to the rights of Plaintiffs that Defendants Mosby and Cogen acted in complete disregard of Plaintiffs' rights as if such rights did not exist.

183.   As a direct and proximate result of the false imprisonment by Defendants, their agents, and their employees, Plaintiffs have sustained emotional, mental, and physical pain and suffering, missed time from work and leisure activities, past and future medical expenses; and loss of earning capacity.

WHEREFORE, Plaintiffs White and Porter demand compensatory and monetary damages in excess of $75,000, punitive damages in excess of $75,000, plus interest, costs, attorneys' fees, and any other relief as this Court deems proper.

J.A. 000195

## COUNT VII–FALSE IMPRISONMENT
### *(Plaintiffs White and Porter v. Defendant State of Maryland)*

184.    The foregoing paragraphs are incorporated by reference as if fully set forth herein.

185.    Defendant Mosby and Cogen, their agents, and their employees unlawfully deprived Plaintiffs of their liberty.

186.    Plaintiffs did not consent to the deprivation of their liberty and were held against their will for an extended period of time.

187.    Defendants Mosby and Cogen, their agents, and their employees were without legal justification for depriving Plaintiffs of their liberty.

188.    As a direct and proximate result of the false imprisonment by Defendants, their agents, and their employees, Plaintiffs have sustained emotional, mental, and physical pain and suffering, missed time from work and leisure activities, past and future medical expenses; and loss of earning capacity.

WHEREFORE, Plaintiffs White and Porter demand compensatory damages in excess of $75,000, punitive damages in excess of $75,000, plus interest, costs, attorneys' fees, and any other relief as this Court deems proper.

## COUNT VIII–FALSE IMPRISONMENT (Malice in the Alternative)
### *(Plaintiffs White and Porter v. Defendants Mosby and Cogen)*

189.    The foregoing paragraphs are incorporated by reference as if fully set forth herein.

190.    Defendants Mosby and Cogen, their agents, and their employees unlawfully deprived Plaintiffs of their liberty.

191.    Plaintiffs White and Porter did not consent to the deprivation of their liberty and were held against their will for an extended period of time.

J.A. 000196

192.    Defendants, their agents, and their employees were without legal justification for depriving Plaintiffs White and Porter of their liberty.

193.    The conduct of Defendants, their agents, and their employees was grossly negligent, reckless, and/or perpetrated with actual malice.  Indeed, Plaintiffs were arrested not in pursuit of prosecuting criminal conduct allegedly perpetrated by Plaintiffs, but rather for a personal and political agenda of Defendants Cogen and Mosby to, among other things, (1) assuage an angry constituency by placing blame on Plaintiffs for the death of Freddie Gray, (2) quell the riots, (3) further the personal ambition and political agendas of Mosby and Cogen, among other reasons.

194.    There was no probable cause for arresting Plaintiffs, and the arrests were made with a reckless disregard of the consequences affecting the life and property of Plaintiffs, and a thoughtless disregard of the grave consequences to Plaintiffs, without any effort on the part of Defendants Mosby and Cogen to avoid them.

195.    The injuries inflicted on Plaintiffs by Defendants Cogen and Mosby were done wantonly and willfully with such utter indifference to the rights of Plaintiffs that Defendants Mosby and Cogen acted in complete disregard of Plaintiffs' rights as if such rights did not exist.

196.    As a direct and proximate result of the false imprisonment by Defendants, their agents, and their employees, Plaintiffs have sustained emotional, mental, and physical pain and suffering, missed time from work and leisure activities, past and future medical expenses; and loss of earnings and earning capacity.

WHEREFORE, Plaintiffs White and Porter demand monetary and compensatory damages in excess of $75,000, punitive damages in excess of $75,000, plus interest, costs, and attorneys' fees, and any other relief as this Court deems proper.

34

## COUNT IX – MARYLAND DECLARATION OF RIGHTS (Articles 24 & 26)
### (*Plaintiffs White and Porter v. Mosby & Cogen*)

197.    The foregoing paragraphs are incorporated by reference as if fully set forth herein.

198.    Defendants Mosby and Cogen, their agents, and their employees violated Plaintiffs' civil and constitutional rights, including their rights under Articles 24 and 26 of the Maryland Declaration of Rights.

199.    The Defendants' actions were without legal justification and resulted in the false arrest and false imprisonment of Plaintiffs and directly caused injury to Plaintiffs.

200.    As a direct result of Defendants Mosby's and Cogen's actions, Plaintiffs were taken, imprisoned, disseized of their freehold, liberties and privileges, outlawed, exiled, destroyed, deprived of their life, liberty and property without the judgment of their peers or by the law of the land and were subjected to an illegal search and seizure.

201.    All of Plaintiffs' injuries, damages, and losses were solely and proximately caused by Defendants Mosby and Cogen, their agents, and their employees, with no negligence on the part of Plaintiffs contributing thereto.

202.    As a direct and proximate result of Defendants Mosby and Cogen violating articles 24 and 26 of the Maryland Constitution, Plaintiffs have sustained emotional, mental, and physical pain and suffering, missed time from work and leisure activities, past and future medical expenses; and loss of earnings and earning capacity.

WHEREFORE, Plaintiffs White and Porter demand compensatory and monetary damages in excess of $75,000, punitive damages in excess of $75,000, plus interest, costs, attorneys' fees, and any other relief as this Court deems proper.

J.A. 000198

COUNT X – VIOLATION OF RIGHTS SECURED UNDER 42 U.S.C. §1983
*(Plaintiffs White and Porter v. Mosby & Cogen)*

203.   The foregoing paragraphs are incorporated by reference as if fully set forth herein.

204.   Defendants Mosby and Cogen, in their individual capacity and within the scope of their employment, acted intentionally to violate Plaintiff White's and Porter's rights secured under Chapter 42, Section 1983 of the United States Code. Defendants Mosby and Cogen engaged in activities that violated Plaintiffs White's and Porter's rights as protected under the Constitution of United States of America.

205.   The acts and omissions of Defendants Mosby and Cogen detailed within this Complaint, including, but not limited to, the filing of the Application for Statement of Charges without probable cause, the allegations made by Cogen either with actual malice or with a reckless disregard for the truth, the false arrest and false imprisonment of Plaintiffs White and Porter, without probable cause or a valid arrest warrant, the providing of erroneous legal advice by Defendant Mosby to Defendant Cogen, and the false statements made by Defendant Mosby at her May 1, 2015 press conference regarding Plaintiffs White and Porter, deprived Plaintiffs White and Porter of their rights under 42 U.S.C. § 1983, including, but not limited to:

a.   freedom from the deprivation of liberty without due process of the law, as guaranteed by the Fourteenth Amendment to the Constitution of the United States of America; and

b.   freedom from arrest without probable cause, as guaranteed by the Fourth Amendment to the Constitution of the United States of America.

206.   Plaintiffs White and Porter have a right to be free from arrest and detention without probable cause, legal excuse, or justification and without a valid warrant. This right

36

J.A. 000199

was denied when Plaintiffs White and Porter were arrested and detained without probable cause, legal excuse, or justification or a valid arrest warrant.

207. Plaintiffs White and Porter have a right to be free from wrongful imprisonment. This right was denied when Plaintiffs White and Porter were wrongfully imprisoned without legal cause, excuse, or justification.

208. Plaintiffs White and Porter have a protected property interest in their freedom, their ability to exercise their free will and domain over their persons, and their ability to be free from unlawful and unwelcome detention by Defendant Mosby.

209. Plaintiffs White and Porter were afforded less process than was due under law by Defendant Mosby and Defendant Cogen, in depriving them of the rights in question.

210. Defendant Mosby and Defendant Cogen, at all times relevant hereto, acted under color of law and in a manner that was not objectively reasonable.

211. Additionally, Defendant Mosby, at all times relevant hereto, acted in an investigatory role and participated in investigative work to decide whether Plaintiffs White and Porter should be arrested and in instructing Defendant Cogen to file the Application for Statement of Charges.

212. Furthermore, in making the false statements regarding Plaintiffs White and Porter during her May 1, 2015 press conference, Defendant Mosby was not acting in her role as an advocate for the State or as a prosecutor of criminal conduct.

213. By the actions detailed above, Defendant Mosby's and Defendant Cogen's conduct violated Plaintiffs White's and Porter's clearly established statutory or constitutional rights of which a reasonable person would have known. Defendant Mosby and Defendant Cogen deprived Plaintiffs White and Porter of their constitutional rights under 42 U.S.C. § 1983, including, but not limited to, freedom from wrongful arrest and detention without

J.A. 000200

probable cause or valid arrest warrant, and freedom from wrongful imprisonment without probable cause or valid arrest warrant.

214.   As a result of the deprivation of Plaintiffs White's and Porter's rights, Plaintiffs White and Porter were subjected to unnecessary and unlawful arrest, detention, and imprisonment.

215.   Plaintiffs White and Porter further alleges that all of their injuries, losses, and damages – past, present and prospective – were caused solely by the conduct, actions, and inactions of Defendant Mosby and Defendant Cogen, as set forth herein, without any negligence, want of due care, or provocation on the part of the Plaintiffs White and Porter, either directly or indirectly.

216.   As a direct and proximate result of these acts, Plaintiffs White and Porter suffered damages including, among others, the following: personal injuries; pain and suffering; severe mental anguish; emotional distress; loss of income; infliction of physical illness; inadequate medical care; humiliation; indignities and severe embarrassment; degradation; injury to reputation; permanent loss of natural psychological development; restrictions of all forms of personal freedom including, but not limited to, diet, sleep, personal contact, educational opportunity, vocational and professional opportunity, athletic opportunity, personal fulfillment, family relations, reading, television, movies, travel, enjoyment, and expression.

WHEREFORE, Plaintiffs White and Porter demand monetary and compensatory damages in excess of $75,000, punitive damages in excess of $75,000, plus interest, costs, and attorneys' fees, and any other relief as this Court deems proper.

COUNT XI- MALICIOUS PROSECUTION
(Plaintiff White and Porter v Mosby and Cogen)

217.    The foregoing paragraphs are incorporated by reference as if fully set forth herein.

218.    On or about May 1, 2015 Defendant Mosby, her agents, and their employees caused Defendant Cogen to swear out an application for an arrest warrant before a Commissioner of the District Court of Maryland for Baltimore City for the arrest of Plaintiffs charging the Plaintiff White with manslaughter, involuntary manslaughter, second degree assault, and misconduct in office. Plaintiff Porter was charged with involuntary manslaughter, assault in the second degree, and misconduct in office.

219.    At the time Defendant Cogen and Defendant Mosby filed the Application for Statement of Charges, Defendants knew that no probable cause existed that Plaintiffs had committed any crime.

220.    Pursuant to the said application, a warrant was issued, and Plaintiffs on May 1, 2015 was arrested, booked, fingerprinted, photographed, and detained at the Central Booking Intake Facility for hours. Thereafter Plaintiff was released after posting bail to appear in the District Court of Maryland for Baltimore City for a preliminary hearing on the aforementioned charges.

221.    On or about July 27, 2016 Defendant Mosby entered a nolle prosequi in both Plaintiffs' cases.

222.    Defendants acted with malice and/or with a reckless disregard of the truth, and without probable cause in causing the warrant against Plaintiffs to be issued and in prosecution of the case. Malice was the primary purpose of Defendants in instituting the

J.A. 000202

proceeding against Plaintiffs.

223.   Plaintiff Porter has been engaged as full time Baltimore City Police Officer since June 21, 2013, while Plaintiff White has worked for the Baltimore City Police since 2010. They worked until April 21st 2015, when they were placed on leave. In this capacity, Plaintiffs were authorized to make arrests and perform other such duties as required. Defendants Mosby and Cogen were at all times fully aware that the Plaintiffs possessed such authority.

224.   Plaintiffs were placed on leave as a direct result of Defendant's false accusations.

225.   As a result of the actions of the Defendants, Plaintiffs White and Porter suffered, and will continue to suffer: personal injuries; pain and suffering; severe mental anguish; emotional distress; loss of income; infliction of physical illness; inadequate medical care; humiliation; indignities and severe embarrassment; degradation; injury to reputation; permanent loss of natural psychological development; restrictions of all forms of personal freedom including, but not limited to, diet, sleep, personal contact, educational opportunity, vocational and professional opportunity, athletic opportunity, personal fulfillment, family relations, reading, television, movies, travel, enjoyment, and expression.

226.   WHEREFORE, Plaintiffs White and Porter demand monetary and compensatory damages in excess of $75,000, punitive damages in excess of $75,000, plus interest, costs, and attorneys' fees, and any other relief as this Court deems proper.

### COUNT XII- ABUSE OF PROCESS
(Plaintiff White and Porter v. Mosby and Cogen)

227.   The foregoing paragraphs are incorporated by reference as if fully set forth

J.A. 000203

herein.

228.    On or about May 1, 2015 Defendant Mosby, her agents, and their employees caused Defendant Cogen to swear out an application for an arrest warrant before a Commissioner, District Court of Maryland for Baltimore City for the arrest of Plaintiffs charging the Plaintiff White with manslaughter, involuntary manslaughter, second degree assault, and misconduct in office. Plaintiff Porter was charged with involuntary manslaughter, assault in the second degree, and misconduct in office.

229.    At the time Defendant Cogen and Defendant Mosby filed the Application for Statement of Charges, Defendants knew that no probable cause existed that Plaintiffs had committed any crime.

230.    Pursuant to the said application, a warrant was issued, and on May 1, 2015 Plaintiffs were arrested, booked, fingerprinted, photographed, and detained at the Central Booking Intake Facility for hours. Thereafter Plaintiffs were released after posting bail to appear in the District Court of Maryland for Baltimore City for a preliminary hearing on the aforementioned charges.

231.    On or about July 27, 2016 Defendant Mosby entered a nolle prosequi in both Plaintiffs' cases.

232.    By instituting the aforesaid proceedings, Defendants Mosby and Cogen, in their individual capacity and within the scope of their employment, willfully misused the criminal process for an improper purpose, namely, to create a public spectacle for political purposes. In doing so, they willfully used process after it had issued in a manner not contemplated by law. Defendants acted with the ulterior motive of furthering political support

41

J.A. 000204

for Mosby and motivating the legislature to act, rather than seeking an end result through the judicial system.

233.    As a result of the actions of the Defendants, Plaintiffs White and Porter suffered, and will continue to suffer: personal injuries; pain and suffering; severe mental anguish; emotional distress; loss of income; infliction of physical illness; inadequate medical care; humiliation; indignities and severe embarrassment; degradation; injury to reputation; permanent loss of natural psychological development; restrictions of all forms of personal freedom including, but not limited to, diet, sleep, personal contact, educational opportunity, vocational and professional opportunity, athletic opportunity, personal fulfillment, family relations, reading, television, movies, travel, enjoyment, and expression.

WHEREFORE, Plaintiffs White and Porter demand monetary and compensatory damages in excess of $75,000, punitive damages in excess of $75,000, plus interest, costs, and attorneys' fees, and any other relief as this Court deems proper.

### COUNT XIII- CIVIL CONSPIRACY
(Plaintiff White and Porter v. Mosby and Cogen)

234.    The foregoing paragraphs are incorporated by reference as if fully set forth herein.

235.    On or about May 1, 2015 Defendant Mosby, her agents, and their employees caused Defendant Cogen to swear out an application for an arrest warrant before a Commisioner, District Court of Maryland for Baltimore City for the arrest of Plaintiffs charging the Plaintiff White with manslaughter, involuntary manslaughter, second degree assault, and misconduct in office. Plaintiff Porter was charged with involuntary manslaughter, assault in the second degree, and misconduct in office.

236.    At the time Defendant Cogen and Defendant Mosby filed the Application for Statement of Charges, Defendants knew that no probable cause existed that Plaintiffs had

42

committed any crime.  In filing the false charges, Defendants entered into an agreement

whereby Defendant Cogen agreed to the false charges requested by Defendant Mosby, for

the purpose of allowing  Defendant Mosby to pursue an improper political agenda by

abusing the judicial system.

237.    Defendants Mosby and Cogen, knowing that the Statement of Charges were

not supported by probable cause, entered into an agreement whereby the two would work

jointly to file the Statement of Charges for purposes other than to prosecute criminal

conduct, including but not limited to for political purposes.

238.    Cogen and Mosby conspired to work together to file the Statement of

Charges despite knowing of the falsity of the claims and the lack of probable cause.

239.  As a result of Defendants Cogen and Mosby's conspiracy, Plaintiffs White and

Porter suffered, and will continue to suffer: personal injuries; pain and suffering; severe mental

anguish; emotional distress; loss of income; infliction of physical illness; inadequate medical

care; humiliation; indignities and severe embarrassment; degradation; injury to reputation;

permanent loss of natural psychological development; restrictions of all forms of personal

freedom including, but not limited to, diet, sleep, personal contact, educational opportunity,

vocational and professional opportunity, athletic opportunity, personal fulfillment, family

relations, reading, television, movies, travel, enjoyment, and expression.

WHEREFORE, Plaintiffs White and Porter demand monetary and compensatory

damages in excess of $75,000, punitive damages in excess of $75,000, plus interest, costs, and

attorneys' fees, and any other relief as this Court deems proper.

J.A. 000206

Respectfully submitted,

_____/S/_____

Tony N. Garcia, Esq
201 N. Charles Street, Suite 1900
Baltimore, Maryland 21201
( 410-814-4600
(410) 814-4604 (f)
tony@batesgarcia.com

_____/S/_____
Michael E. Glass, MBA, Esq.
The Michael Glass Law Firm
201 N. Charles Street, Suite 1901
Baltimore, MD  21201
(410) 779-0600
(410) 814-4604 (f)
mglass@mglasslaw.com

*Attorney for Plaintiffs Alicia White and William Porter*

## PRAYER FOR JURY TRIAL

Plaintiffs respectfully demand a trial by jury on all issues raised herein.

_____

Tony N. Garcia, Esq.

J.A. 000207

## CERTIFICATE OF SERVICE

**I HEREBY CERTIFY** that on this September 1, 2016, a copy of the foregoing

Motion, Order, and clean and stricken Amended Complaint were served, via first class mail, postage

prepaid, and via the Court's electronic filing system on:

Ankush Nayar, Esq.
Office of the Attorney General of Maryland
200 St. Paul Place
Baltimore, MD 21202
tel. (410) 576-6300
fax (410) 576-7841
email: anayar@oag.state.md.us
*Attorney for Defendants*

Jason Robert Foltin, Esq.
Baltimore City Law Department
100 Holliday St. Lower Level
Baltimore, MD 21202
tel. (410) 396-3297
fax (410) 837-1152
email: Jason.foltin@oag.state.md.us
*Attorney for Defendants*

Sarah Elaine Gross, Esq.
Baltimore City Law Department
100 Holliday St. Lower Level
Baltimore, MD 21202
tel. (410) 396-3297
fax (410) 837-1152
email: sarah.gross@oag.state.md.us
*Attorney for Defendants*

_____/s/ Tony Garcia_____,
Tony Garcia, Esq.

J.A. 000208

**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND**

| | | |
|---|---|---|
| EDWARD MICHAEL NERO, et al. | * | |
| Plaintiffs, | * | |
| | | **Civil Action No. MJG-16-1288** |
| v. | * | |
| MARILYN MOSBY, et al. | * | |
| Defendants. | * | |
| | * | |

\*    \*    \*    \*    \*    \*    \*    \*    \*    \*    \*    \*    \*    \*    \*

<u>**AMENDED COMPLAINT & JURY DEMAND**</u>

Plaintiffs Edward Michael Nero and Garrett Edward Miller, by and through their attorneys, Joseph T. Mallon, Jr. and Mallon & McCool, LLC, file suit against Defendants Marilyn Mosby and Samuel Cogen and state the following in support thereof:

<u>THE PARTIES</u>

1.    Plaintiff Edward Nero is and was, at all times relevant, a resident of Harford County, Maryland, and an officer with the Baltimore City Police Department.

2.    Plaintiff Garrett Miller is and was, at all times relevant, a resident of Baltimore County, Maryland, and an officer with the Baltimore City Police Department.

3.    Defendant Marilyn Mosby is and was, at all times relevant, the State's Attorney for Baltimore City, Maryland.

4.    Defendant Samuel Cogen is and was, at all times relevant, a Major with the Baltimore City Sheriff's Office.

<u>JURISDICTION & VENUE</u>

J.A. 000209

5.      Plaintiffs placed Defendants on notice of their claims as required by the Maryland Tort Claims Act (Maryland Code, State Government, § 12-101 *et seq.*) by mailing the required notices (and supplemental notices) via certified, first-class U.S. mail, postage prepaid, return receipt requested (and hand-delivered), to Nancy Kopp, State Treasurer, Goldstein Treasury Building, 80 Calvert Street, Annapolis, Maryland 21401, within the requisite period of time. Alternatively, Plaintiffs placed Defendants on notice of their claims in substantial compliance with the Maryland Tort Claims Act.  Alternatively, Defendants waived the notice requirement for Plaintiffs under the Maryland Tort Claims Act.

6.      Plaintiffs have complied with all legal and other preconditions (and/or conditions precedent) to properly file this suit including any and all notice requirements and/or exhaustion of remedies.

7.      Plaintiffs have complied with all legal and other post-conditions (and/or conditions subsequent) to properly file this suit including any and all notice requirements and/or exhaustion of remedies.

8.      Alternatively, all parties waived all legal and other preconditions (and/or conditions precedent) to properly file this suit including any and all notice requirements and/or exhaustion of remedies.

9.      Alternatively, all parties waived all legal and other post-conditions (and/or conditions subsequent) to properly file this suit including any and all notice requirements and/or exhaustion of remedies.

10.     The jurisdiction of this Court is properly invoked pursuant to 28 U.S.C. § 1331; 28 U.S.C. § 1343; and/or 42 U.S.C. § 1983, this being, in part, an action authorized by law to redress the deprivation of rights secured to the Plaintiffs by the United States Constitution.

J.A. 000210

11.　　Venue is proper in this Court pursuant to 28 U.S.C. § 1391 and 42 U.S.C. § 1983 since the actions Plaintiffs complain of occurred and arose in the City of Baltimore, State of Maryland.

*Facts as to Plaintiff Edward Michael Nero*

12.　　This case arises from the wrongful arrest and imprisonment of Plaintiff Edward Michael Nero ("Nero") on May 1, 2015.  Plaintiff Nero was wrongfully arrested and imprisoned as a result of his involvement in the legal arrest of Freddie Carlos Gray, Jr. in Baltimore City, Maryland on April 12, 2015.

13.　　On the morning of April 12, 2015, Plaintiff Nero was on bicycle patrol with Plaintiff Garrett Edward Miller ("Miller") and Lieutenant Brian Rice ("Lieutenant Rice") on North Avenue in Baltimore, Maryland.

14.　　Lieutenant Rice was ahead of Plaintiffs Nero and Miller on his bicycle.

15.　　Lieutenant Rice began pursuing two suspects on Calhoun Street and announced the pursuit over his police radio.

16.　　In response to the radio call, Plaintiffs Nero and Miller rode down Mount Street in the direction of Lieutenant Rice.

17.　　Plaintiff Nero observed one of the two suspects and attempted to apprehend him.

18.　　At this time, Plaintiff Nero observed Plaintiff Miller pursuing the second suspect, later identified as Freddie Carlos Gray, Jr. (hereinafter, "Mr. Gray").

19.　　Plaintiff Miller detained and handcuffed Mr. Gray for officer safety reasons and requested Plaintiff Nero to retrieve his bicycle, which he had left behind in the foot chase.

20.　　Prior to joining the Baltimore City Police Department, Plaintiff Nero was an Emergency Medical Technician in New Jersey.  Given his medical training, Plaintiff Nero

monitored Mr. Gray during their encounter to ensure that he was not experiencing a medical emergency.   Plaintiff Nero did not observe Mr. Gray exhibiting symptoms of a medical emergency at any time during his interaction with Mr. Gray.

21.     During their encounter with Mr. Gray, Plaintiff Miller recovered a knife from Mr. Gray's person and placed it on the ground.

22.     The knife was a spring-assisted knife.  Such knives are illegal under Article 19, Section 59-22 of the Baltimore City Code, which states, "[i]t shall be unlawful for any person to sell, carry, or possess any knife with an automatic spring or other device for opening and/or closing the blade, commonly known as a switch-blade knife."  As a result, Mr. Gray was placed under arrest. As soon as Mr. Gray realized he was being placed under arrest, he became physically and verbally combative. As a result of his combativeness, a crowd of citizens began to form around Mr. Gray, Plaintiff Miller and Plaintiff Nero.

23.     When the police wagon arrived to take custody of Mr. Gray, Mr. Gray was uncooperative and refused to walk on his own to the wagon.

24.     Plaintiff Nero and Officer Novak picked up Mr. Gray and took him to the wagon. At this time, Mr. Gray continued to be uncooperative.

25.      Under established law, Plaintiff Nero was authorized to detain, touch and restrain Mr. Gray.

26.     Before he was placed fully into the police wagon, Mr. Gray stood on the back step of the wagon while Plaintiff Nero conducted a second search to confirm that Mr. Gray did not possess any other weapons or contraband on his person.  During this search, Mr. Gray was standing under his own power.

27.     Once Mr. Gray was fully inside the police wagon, he began banging and slamming himself against the inside of the wagon causing the wagon to visibly shake.

28.     Due to Mr. Gray's continuous screaming and yelling, a larger crowd of citizens had formed around the Plaintiffs and other officers.  In the interest of officer safety, Lieutenant Rice directed Plaintiff Miller to tell the police wagon driver to take the wagon approximately one block south in order to complete the paperwork for Mr. Gray's arrest and then to proceed directly to Baltimore City's Central Booking Intake Center ("Central Booking").

29.     Once the police wagon had been relocated approximately one block south, Mr. Gray was taken out of the wagon so that his handcuffs could be switched with flex cuffs and leg shackles could be placed on him.  Plaintiff Nero was setting his bicycle on the ground next to the police wagon as Mr. Gray was being taken out of the vehicle.

30.     During this process, Mr. Gray continued to be uncooperative.  Mr. Gray was alert and responsive, and continued to yell and scream.  Another crowd of citizens began to crowd around the police wagon.  The citizens were yelling and shouting at the officers.

31.     Once Mr. Gray had been placed in leg shackles and flex cuffs, he was placed back into the wagon.  At this time, he continued to bang the inside of the wagon, causing the wagon to violently shake back and forth.

32.     After completing the arrest paperwork for Mr. Gray, Plaintiffs Nero and Miller returned to their assigned patrol duties.

33.     Plaintiffs subsequently arrested a second man and called for a police wagon to respond to their current location.  The police wagon still containing Mr. Gray responded to the scene on North Avenue to collect the second arrestee.

34.    When the police wagon arrived, Plaintiff Nero was standing to the side of the police wagon, speaking with the second arrestee.  At no time did Plaintiff Nero approach the wagon.

35.    Plaintiff Nero had no further contact with Mr. Gray.

36.    At no point during his interactions with Mr. Gray did Plaintiff Nero see any officers use excessive force, strike, or tase Mr. Gray.

### *Facts as to Plaintiff Garrett Edward Miller*

37.    This case arises from the wrongful arrest and imprisonment of Plaintiff Garrett Edward Miller on May 1, 2015.  Plaintiff Miller was wrongfully arrested and imprisoned as a result of his involvement in the legal arrest of Mr. Gray in Baltimore City, Maryland on April 12, 2015.

38.    On the morning of April 12, 2015, Plaintiff Miller was on bicycle patrol with Plaintiff Nero and Lieutenant Brian Rice on North Avenue in Baltimore, Maryland.

39.    During their patrol, Lieutenant Rice called out a foot chase.  Plaintiff Miller observed Lieutenant Rice pursuing two suspects.

40.    Plaintiff Miller travelled south on Mount Street from North Avenue encountering one of the suspects, who was sprinting out of a connecting alley.

41.    Plaintiff Miller pursued this suspect, later identified as Freddie Carlos Gray, Jr., and subsequently jumped off of his bike to pursue Mr. Gray on foot.

42.    As Plaintiff Miller was pursuing Mr. Gray, Plaintiff Miller yelled that he had a taser and instructed Mr. Gray to get on the ground.

43.    Plaintiff Nero emerged from an alley in front of Mr. Gray.  At that time, Mr. Gray put his hands up and was placed on the ground in a prone position.

44.     Plaintiff Miller detained and handcuffed Mr. Gray for officer safety reasons and requested Plaintiff Nero to retrieve his bicycle which he had left behind in the foot chase.

45.     Plaintiff Miller then escorted Mr. Gray to Plaintiff Nero's location and returned Mr. Gray to a prone position.

46.     Plaintiffs then moved Mr. Gray to a seated position on the ground.   Plaintiff Miller recovered a spring-assisted knife from Mr. Gray's front pocket.   Spring-assisted knives are illegal under Article 19, Section 59-22 of the Baltimore City Code.  As a result, Mr. Gray was told that he was being placed under arrest. Plaintiff Miller placed the knife on the ground behind Mr. Gray.  As soon as Plaintiff Miller placed the knife on the ground, however, Mr. Gray began moving towards the knife.  To ensure that Mr. Gray did not seize the knife, Plaintiff Miller grabbed the knife and placed Mr. Gray back on the ground in a prone position.

47.     Under established law, Plaintiff Miller was authorized to detain, touch and restrain Mr. Gray.

48.     When he was placed back on the ground, Mr. Gray became physically and verbally combative.  Plaintiffs Miller and Nero called for additional units to respond, due to the fact that a crowd of citizens began approaching the scene from the surrounding housing development.

49.     A police wagon arrived on the scene to transport Mr. Gray.  Mr. Gray continued to be uncooperative as Plaintiffs escorted him to the police wagon.  Mr. Gray was not lethargic and was resisting going to the wagon.  Plaintiff Miller did not observe Mr. Gray exhibiting symptoms of a medical emergency at any time during his interaction with Mr. Gray.

50.     Once Mr. Gray was fully inside the police wagon, he began banging and slamming himself against the inside of the wagon, causing the wagon to visibly shake.

51.    Plaintiff Miller observed the police wagon shaking due to the force with which Mr. Gray was striking the inside of the wagon.

52.    In the interest of officer safety, Lieutenant Rice directed Plaintiff Miller to instruct the police wagon driver to take the wagon approximately one block south in order to complete the paperwork for Mr. Gray's arrest and then to proceed directly to Central Booking. Plaintiffs Miller and Nero met the police wagon at this new location, *i.e.*, approximately one block south.

53.    At this time, Plaintiff Miller and Lieutenant Rice took Mr. Gray out of the wagon, where his handcuffs were switched out with flex cuffs.  Shackles were placed on Mr. Gray's legs due to the fact that he was thrashing and banging against the inside of the police wagon.  Mr. Gray continued to flail and scream during this time.  Lieutenant Rice called for additional units, as a crowd of citizens had, once again, begun to gather around the police wagon.

54.    Mr. Gray was placed back into the police wagon, where he continued to bang against the door.  Plaintiff Miller was standing to the side of the police wagon completing Mr. Gray's paperwork as the wagon was rocking back and forth due to Mr. Gray's constant banging. Plaintiff Miller handed Mr. Gray's paperwork to the driver of the police wagon, and the wagon departed.

55.    After the police wagon departed, Plaintiffs Miller and Nero traveled back to North Avenue, where they stopped another suspect.  The suspect was subsequently arrested, and Lieutenant Rice called for additional units and a police wagon to transport the individual.

56.    The police wagon containing Mr. Gray reported to North Avenue, at which point the second arrestee was placed in the wagon.  Plaintiff Miller did not have any interaction with Mr. Gray when the police wagon arrived at North Avenue, as he was collecting evidence the

second arrestee had thrown on the ground. After the second arrestee was placed inside the wagon, the wagon departed North Avenue.

57.    Plaintiff Miller did not have any further contact with Mr. Gray.

58.    At no point during his interactions with Mr. Gray did Plaintiff Miller see any officers use excessive force, strike, or tase Mr. Gray.

### *Facts Common to all Counts*

59.    The police department investigation presented to the State's Attorney's Office included statements from two witnesses, Donta Allen and Mark Gladhill, who established that Mr. Gray was not injured and/or in any form of medical distress during stops that occurred after Plaintiffs Nero and Miller had ceased any interaction with Mr. Gray.

60.    On April 19, 2015, Mr. Gray passed away after undergoing surgery at the University of Maryland Shock Trauma Unit.

61.    On May 1, 2015, charges were filed against Plaintiffs Miller and Nero concerning their alleged actions during the legal arrest of Mr. Gray on April 12, 2015 pursuant to an Application for Statement of Charges submitted by Defendant Samuel Cogen ("Cogen"). Plaintiffs Miller and Nero were both charged with two counts of Assault in the Second Degree, two counts of Misconduct in Office, and one count of False Imprisonment.

62.    The Application for Statement of Charges submitted by Defendant Cogen stated that Mr. Gray's death was ruled a homicide by the Office of the Chief Medical Examiner.

63.    The same day, Plaintiffs Miller and Nero were both arrested and processed at Central Booking. The process took approximately eight hours to complete, during which time Plaintiffs Miller and Nero were both deprived of their liberty and held against their will. There existed no legal justification to arrest or detain Plaintiffs Miller and Nero.

J.A. 000217

Appeal: 17-1166    Doc: 30    Filed: 06/13/2017    Pg: 224 of 339

64. Also on May 1, 2015, Defendant Marilyn Mosby ("Mosby"), State's Attorney for Baltimore City, gave a press conference concerning her office's decision to press charges against Plaintiffs Miller and Nero, along with four other officers of the Baltimore City Police Department.

65. During this press conference, Ms. Mosby read the Application for Statement of Charges filed against Plaintiffs Miller and Nero, which contained false statements, and spoke in a divisive and inciting manner. At the time of the press conference, Ms. Mosby knew that this incident had garnered national attention and that there would be wide-spread media coverage. She also knew or should have known that her press conference violated Maryland Rule of Professional Conduct 3.6(a), which states, "[a] lawyer who is participating or has participated in the investigation or litigation of a matter shall not make an extrajudicial statement that the lawyer knows or reasonably should know will be disseminated by means of public communication and will have a substantial likelihood of materially prejudicing an adjudicative proceeding in the matter."

66. Ms. Mosby stated that the knife recovered from Mr. Gray by Plaintiffs was "not a switchblade and [was] lawful under Maryland law." The knife recovered from Mr. Gray was spring-assisted and was, therefore, illegal under Article 19, Section 59-22 of the Baltimore City Code. Ms. Mosby had served as an Assistant State's Attorney for Baltimore City from approximately 2005 through 2012 and knew that spring-assisted knives were illegal in Baltimore City.

67. Ms. Mosby later stated that Plaintiffs Miller and Nero "failed to establish probable cause for Mr. Gray's arrest as no crime had been committed by Mr. Gray. Accordingly . . . Officer Miller and Officer Nero illegally arrested Mr. Gray." This statement was false, as the

knife, which was legally seized from Mr. Gray, was illegal under Article 19, Section 59-22 of the Baltimore City Code.  Ms. Mosby knew that Plaintiffs Miller and Nero had probable cause to arrest Mr. Gray.

68.    The statement of charges filed against Mr. Gray on April 12, 2015 (Case No. 6B02294074) specifically referenced that Mr. Gray was alleged to have violated Article 19, Section 59-22 of the Baltimore City Code.

69.    At the time of the April 12, 2015 incident, the Baltimore City State's Attorneys' Office had several cases pending against persons charged under Article 19, Section 59-22 of the Baltimore City Code for possession of spring-assisted knives.

70.    Upon information and belief, the Baltimore City Police Department informed Defendant Mosby and the State's Attorney's Office that the knife that was in Mr. Gray's possession was illegal under Article 19, Section 59-22 of the Baltimore City Code.

71.    Ms. Mosby also made several statements during her May 1, 2015 press conference regarding the independent investigation conducted by the Office of the State's Attorney for Baltimore City into Mr. Gray's arrest and subsequent death.  The press conference statements included, but were not limited to, the following:

     a.    "Once alerted about this incident on April 13, investigators from my police integrity unit were deployed to investigate the circumstances surrounding Mr. Gray's apprehension.  Over the course of our independent investigation, in the untimely death of Mr. Gray, my team worked around the clock; 12 and 14 hour days to canvass and interview dozens of witnesses; view numerous hours of video taped statements; surveyed the route; reviewed voluminous medical

records; and we leveraged the information made available to us by the police department, the community, and the family of Mr. Gray."

b. "The findings of our comprehensive, thorough and independent investigation, coupled with the medical examiner's determination that Mr. Gray's death was a homicide, which we received today, has led us to believe that we have probable cause to file criminal charges."

c. "We have conducted a thorough and independent investigation of this case."

d. "We have been working with the police department from day one, and from day one I also sent my own investigators to the scene."

e. "We independently verified those facts and everything we received from the police department, so it's a culmination of the independent investigation that we conducted as well as the information we received from the police department."

f. "Well, what I can say is that from the beginning, we knew that this was a serious case, we've been working independently, and I can tell you that we put all of our resources to make sure that we are pursuing and leading where the facts took us in this case, which was to pursue justice."

g. "I can tell you that from day one, we independently investigated, we're not just relying solely upon what we were given by the police department, period."

h. "I thought it was very important to have an independent analysis as to what took place and transpired from the very beginning. We are independent agencies from the police department."

J.A. 000220

  i. "I can tell you, as I stated, we had a number of investigators, you can see it's been an all hands on approach, from the very beginning, so I sent my investigators out to the scene, we have a number of them who are right here, we have a working collaboration and are working with the Baltimore Sheriff's Department, who has police powers and, again, independent from the Baltimore City Police Department.  So yes, we have leveraged the police investigation, but at no point did we compromise our own independent investigation into this case."

72. Mr. Gray was arrested by Plaintiff Miller and Plaintiff Nero because he was in possession of an illegal knife.  Plaintiff Miller and Plaintiff Nero had probable cause to effectuate Mr. Gray's arrest.

73. The allegation made by Defendant Cogen in the Application for Statement of Charges, that Plaintiffs Miller and Nero "loaded Mr. Gray into the wagon and at no point was he secured by a seat belt while in the wagon, contrary to a BPD [Baltimore Police Department] General Order," did not provide probable cause that a crime had been committed by either Plaintiff Miller or Plaintiff Nero.  Under law, a Baltimore City General Order does not impose a legal duty on police officers and the violation of any such General Order does not constitute a violation of criminal law.

74. The General Order had been issued on April 3, 2015, only days before the incident and was disseminated to officers by email.  No evidence existed that Plaintiffs Nero or Miller had read the email containing the new General Order or that they otherwise were aware of the new General Order.

75. Therefore, at the time that Defendant Cogen filed the Application for Statement of Charges, Defendant Cogen knew that no probable cause existed that either Plaintiff Miller or Plaintiff Nero had committed any crime.

76. Defendant Mosby instructed Defendant Cogen to file the Application for Statement of Charges, either directly and/or by instructing another member of the Baltimore City State's Attorney's office to instruct Defendant Cogen to file the Application for Statement of Charges. Defendant's Mosby's direct involvement in the filing of the Application for Statement of Charges is evidenced by her statements during the May 1, 2015 press conference that "we have probable cause to file criminal charges" and "we have brought the following charges" even though the Application for Statement of Charges was filed by Defendant Cogen and not by the Baltimore City State's Attorney's Office.

77. Alternatively, Mosby provided legal advice to Defendant Cogen that violated Plaintiff Nero and Miller's constitutional rights, prior to his filing of the Application for Statement of Charges, that probable cause existed to charge and arrest Plaintiffs Miller and Nero, even though Defendant Mosby knew, prior to the filing of the Application for Statement of Charges that no probable cause existed that either Plaintiff Miller or Plaintiff Nero had committed any crime because the knife in Mr. Gray's possession was illegal and any alleged failure to seatbelt Mr. Gray would not constitute a criminal act. Defendant Mosby provided this legal advice either directly to Defendant Cogen and/or by instructing another member of the Baltimore City State's Attorney's office to provide this legal advice to Defendant Cogen. Notwithstanding this legal advice, Defendant Cogen knew, or should have known, that no probable cause existed to bring charges against and arrest Plaintiffs Miller and Nero.

78.     As a result of the improper actions of Defendants Mosby and Cogen, Plaintiff Miller and Plaintiff Nero were illegally arrested on May 1, 2015.  Their illegal arrests were made without probable cause and demonstrated ill will, improper motivation and/or evil purpose. They were falsely charged as a direct result of an improperly motivated investigation, false charges and false statements made by Defendants Mosby and Cogen and legal advice provided to Defendant Cogen in violation of Plaintiff Nero and Miller's constitutional rights by the Office of the State's Attorney for Baltimore City.

79.     As a result of this incident, Plaintiff Miller and Plaintiff Nero lost their freedom and dignity and suffered physical and psychological harm from being arrested and detained without cause.

80.     At all times, Defendants Mosby and Cogen were acting under the color of law and within the scope of their employment.

81.     At all times, Defendant Mosby and Cogen acted with gross negligence and/or with actual malice directed at Plaintiff Nero and Plaintiff Miller, with the intent to cause harm to the Plaintiffs by trampling on the Plaintiffs' rights in furtherance of the Defendants' own personal interests and political agendas.

82.     Indictments of the Plaintiffs subsequently were obtained from a grand jury by the State's Attorney's Office through the use of false and misleading statements, the omission of material facts and the presentation of purported evidence in a biased and materially suggestive manner.   This included the presentation by Deputy State's Attorney Bledsoe of a four page statement that Detective Dawnyell Taylor was instructed to read; the statement was incomplete, misleading, biased and false.  Ms. Bledsoe prevented Det. Taylor from responding to questions

from the grand jury and Ms. Bledsoe responded herself to those questions.  Defendant Mosby was present during the entire grand jury process.

83.     The criminal trial of Plaintiff Nero resulted in Plaintiff Nero's acquittal on May 23, 2016.  Charges against Plaintiff Miller were dropped by the State's Attorney's Office on July 27, 2016.

## COUNT I – FALSE ARREST

### (*Plaintiff Nero v. All Defendants*)

84.     Plaintiff Nero incorporates by reference the preceding paragraphs as if set forth fully herein, and states further:

85.     Defendants, their agents, and their employees unlawfully deprived Plaintiff Nero of his liberty.

86.     Plaintiff Nero did not consent to the deprivation of his liberty.

87.     Defendants, their agents, and their employees were without legal justification for depriving Plaintiff Nero of his liberty.

88.     The conduct of Defendants, their agents, and their employees was perpetrated with actual malice.

89.     As a direct and proximate result of the false arrest by Defendants, their agents, and their employees, Plaintiff Nero has sustained the following damages:

      a.   Emotional, mental, and physical pain and suffering;

      b.   Missed time from work and leisure activities;

      c.   Past and future medical expenses; and

      d.   Loss of earning capacity.

## COUNT II – FALSE ARREST

J.A. 000224

(*Plaintiff Miller v. All Defendants*)

90.     Plaintiff Miller incorporates by reference the preceding paragraphs as if set forth fully herein, and states further:

91.     Defendants, their agents, and their employees unlawfully deprived Plaintiff Miller of his liberty.

92.     Plaintiff Miller did not consent to the deprivation of his liberty.

93.     Defendants, their agents, and their employees were without legal justification for depriving Plaintiff Miller of his liberty.

94.     The conduct of Defendants, their agents, and their employees was perpetrated with actual malice.

95.     As a direct and proximate result of the false arrest by Defendants, their agents, and their employees, Plaintiff Miller has sustained the following damages:

    a.   Emotional, mental, and physical pain and suffering;

    b.   Missed time from work and leisure activities;

    c.   Past and future medical expenses; and

    d.   Loss of earning capacity.

## COUNT III – FALSE IMPRISONMENT
### (*Plaintiff Nero v. All Defendants*)

96.     Plaintiff Nero incorporates by reference the preceding paragraphs as if set forth fully herein, and states further:

97.     Defendants, their agents, and their employees unlawfully deprived Plaintiff Nero of his liberty.

98.     Plaintiff Nero did not consent to the deprivation of his liberty and was held against his will for an extended period of time.

J.A. 000225

99.    Defendants, their agents, and their employees were without legal justification for depriving Plaintiff Nero of his liberty.

100.    The conduct of Defendants, their agents, and their employees was perpetrated with actual malice.

101.    As a direct and proximate result of the false imprisonment by Defendants, their agents, and their employees, Plaintiff Nero has sustained the following damages:

      a.  Emotional, mental, and physical pain and suffering;

      b.  Missed time from work and leisure activities;

      c.  Past and future medical expenses; and

      d.  Loss of earning capacity.

## COUNT IV – FALSE IMPRISONMENT
### (*Plaintiff Miller v. All Defendants*)

102.    Plaintiff Miller incorporates by reference the preceding paragraphs as if set forth fully herein, and states further:

103.    Defendants, their agents, and their employees unlawfully deprived Plaintiff Miller of his liberty.

104.    Plaintiff Miller did not consent to the deprivation of his liberty and was held against his will for an extended period of time.

105.    Defendants, their agents, and their employees were without legal justification for depriving Plaintiff Miller of his liberty.

106.    The conduct of Defendants, their agents, and their employees was perpetrated with actual malice.

107.    As a direct and proximate result of the false imprisonment by Defendants, their agents, and their employees, Plaintiff Miller has sustained the following damages:

    a.   Emotional, mental, and physical pain and suffering;

    b.   Missed time from work and leisure activities;

    c.   Past and future medical expenses; and

    d.   Loss of earning capacity.

### COUNT V – MARYLAND DECLARATION OF RIGHTS
*(Plaintiff Nero v. All Defendants)*

108.   Plaintiff Nero incorporates by reference the preceding paragraphs as if set forth fully herein, and states further:

109.   Defendants, their agents, and their employees violated Plaintiff Nero's civil and constitutional rights, including his rights under Articles 24 and 26 of the Maryland Declaration of Rights.

110.   The Defendants' actions were without legal justification and resulted in the false arrest and false imprisonment of Plaintiff Nero and directly caused injury to Plaintiff Nero.

111.   As a direct result of Defendants' actions, Plaintiff Nero was taken, imprisoned, disseized of his freehold, liberties and privileges, outlawed, exiled, destroyed, deprived of his life, liberty and property without the judgment of his peers or by the law of the land and was subjected to an illegal search and seizure.

112.   All of Plaintiff Nero's injuries, damages, and losses were solely and proximately caused by the Defendants, their agents, and their employees, with no negligence on the part of Plaintiff Nero contributing thereto.

### COUNT VI – MARYLAND DECLARATION OF RIGHTS
*(Plaintiff Miller v. All Defendants)*

113.   Plaintiff Miller incorporates by reference the preceding paragraphs as if set forth fully herein, and states further:

114.    Defendants, their agents, and their employees violated Plaintiff Miller's civil and constitutional rights, including his rights under Articles 24 and 26 of the Maryland Declaration of Rights.

115.    The Defendants' actions were without legal justification and resulted in the false arrest and false imprisonment of Plaintiff Miller and directly caused injury to Plaintiff Miller.

116.    As a direct result of Defendants' actions, Plaintiff Miller was taken, imprisoned, disseized of his freehold, liberties and privileges, outlawed, exiled, destroyed, deprived of his life, liberty and property without the judgment of his peers or by the law of the land and was subjected to an illegal search and seizure.

117.    All of Plaintiff Miller's injuries, damages, and losses were solely and proximately caused by the Defendants, their agents, and their employees, with no negligence on the part of Plaintiff Miller contributing thereto.

COUNT VII – VIOLATION OF RIGHTS
SECURED UNDER 42 U.S.C. § 1983
*(Plaintiff Nero v. All Defendants)*

118.    Plaintiff Nero incorporates by reference the preceding paragraphs as if set forth fully herein, and states further:

119.    Defendants Mosby and Cogen, in their individual capacity and within the scope of their employment, acted intentionally to violate Plaintiff Nero's rights secured under Chapter 42, Section 1983 of the United States Code. Defendants Mosby and Cogen engaged in activities that violated Plaintiff Nero's rights as protected under the Constitution of United States of America.

120.    The acts and omissions of Defendants Mosby and Cogen detailed within this Complaint, including, but not limited to, the filing of the Application for Statement of Charges without probable cause, the false arrest and false imprisonment of Plaintiff Nero, without probable cause or a valid arrest warrant, the providing of legal advice by Defendant Mosby to

Defendant Cogen, and the false statements made by Defendant Mosby at her May 1, 2015 press conference regarding Plaintiff Nero, deprived Plaintiff Nero of his rights under 42 U.S.C. § 1983, including, but not limited to:

      a.   freedom from the deprivation of liberty without due process of the law, as guaranteed by the Fourteenth Amendment to the Constitution of the United States of America; and

      b.   freedom from arrest without probable cause, as guaranteed by the Fourth Amendment to the Constitution of the United States of America.

121.   Plaintiff Nero has a right to be free from arrest and detention without probable cause, legal excuse, or justification and without a valid warrant. This right was denied when Plaintiff Nero was arrested and detained without probable cause, legal excuse, or justification or a valid arrest warrant.

122.   Plaintiff Nero has a right to be free from wrongful imprisonment.  This right was denied when Plaintiff Nero was wrongfully imprisoned without legal cause, excuse, or justification.

123.   Plaintiff Nero has a protected property interest in his freedom, his ability to exercise his free will and domain over his person, and his ability to be free from unlawful and unwelcome detention by Defendants Mosby and Cogen.

124.   Plaintiff Nero was afforded less process than was due under law by Defendant Mosby and Defendant Cogen, in depriving him of the rights in question.

125.   Defendant Mosby and Defendant Cogen, at all times relevant hereto, acted under color of law and in a manner that was not objectively reasonable.

126.    Additionally, Defendant Mosby, at all times relevant hereto, acted in an investigatory role and participated in investigative work to decide whether Plaintiff Nero should be arrested and in instructing Defendant Cogen to file the Application for Statement of Charges.

127.    Furthermore, in making the false statements regarding Plaintiff Nero during her May 1, 2015 press conference, Defendant Mosby was not acting in her role as an advocate for the State.

128.    By the actions detailed above, Defendant Mosby and Defendant Cogen's conduct violated clearly Plaintiff Nero's established statutory or constitutional rights of which a reasonable person would have known.  Defendant Mosby and Defendant Cogen deprived Plaintiff Nero of his constitutional rights under 42 U.S.C. § 1983, including, but not limited to, freedom from wrongful arrest and detention without probable cause or a valid arrest warrant, and freedom from wrongful imprisonment without probable cause or a valid arrest warrant.

129.    As a result of the deprivation of Plaintiff Nero's rights, Plaintiff Nero was subjected to an unnecessary and unlawful arrest, detention, and imprisonment.

130.    Plaintiff Nero further alleges that all of his injuries, losses, and damages – past, present and prospective – were caused solely by the conduct, actions, and inactions of Defendant Mosby and Defendant Cogen, as set forth herein, without any negligence, want of due care, or provocation on the part of Plaintiff Nero, either directly or indirectly.

131.    As a direct and proximate result of these acts, Plaintiff Nero suffered damages including, among others, the following: personal injuries; pain and suffering; severe mental anguish; emotional distress; loss of income; infliction of physical illness; inadequate medical care; humiliation; indignities and severe embarrassment; degradation; injury to reputation; permanent loss of natural psychological development; restrictions of all forms of personal

freedom including, but not limited to, diet, sleep, personal contact, educational opportunity, vocational and professional opportunity, athletic opportunity, personal fulfillment, family relations, reading, television, movies, travel, enjoyment, and expression.

COUNT VIII – VIOLATION OF RIGHTS
SECURED UNDER 42 U.S.C. § 1983
(*Plaintiff Miller v. All Defendants*)

132.    Plaintiff Miller incorporates by reference the preceding paragraphs as if set forth fully herein, and states further:

133.    Defendants Mosby and Cogen, in their individual capacity and within the scope of their employment, acted intentionally to violate Plaintiff Miller's rights secured under Chapter 42, Section 1983 of the United States Code. Defendants Mosby and Cogen engaged in activities that violated Plaintiff Miller's rights as protected under the Constitution of United States of America.

134.    The acts and omissions of Defendants Mosby and Cogen detailed within this Complaint, including, but not limited to, the filing of the Application for Statement of Charges without probable cause, the false arrest and false imprisonment of Plaintiff Miller, without probable cause or a valid arrest warrant, the providing of legal advice by Defendant Mosby to Defendant Cogen, and the false statements made by Defendant Mosby at her May 1, 2015 press conference regarding Plaintiff Miller, deprived Plaintiff Miller of his rights under 42 U.S.C. § 1983, including, but not limited to:

  a. freedom from the deprivation of liberty without due process of the law, as guaranteed by the Fourteenth Amendment to the Constitution of the United States of America; and

  b. freedom from arrest without probable cause, as guaranteed by the Fourth Amendment to the Constitution of the United States of America.

135.    Plaintiff Miller has a right to be free from arrest and detention without probable cause, legal excuse, or justification and without a valid warrant. This right was denied when Plaintiff Miller was arrested and detained without probable cause, legal excuse, or justification or a valid arrest warrant.

136.    Plaintiff Miller has a right to be free from wrongful imprisonment. This right was denied when Plaintiff Miller was wrongfully imprisoned without legal cause, excuse, or justification.

137.    Plaintiff Miller has a protected property interest in his freedom, his ability to exercise his free will and domain over his person, and his ability to be free from unlawful and unwelcome detention by Defendants Mosby and Cogen.

138.    Plaintiff Miller was afforded less process than was due under law by Defendant Mosby and Defendant Cogen, in depriving him of the rights in question.

139.    Defendant Mosby and Defendant Cogen, at all times relevant hereto, acted under color of law and in a manner that was not objectively reasonable.

140.    Additionally, Defendant Mosby, at all times relevant hereto, acted in an investigatory role and participated in investigative work to decide whether Plaintiff Miller should be arrested and in instructing Defendant Cogen to file the Application for Statement of Charges.

141.    Furthermore, in making the false statements regarding Plaintiff Miller during her May 1, 2015 press conference, Defendant Mosby was not acting in her role as an advocate for the State.

142.    By the actions detailed above, Defendant Mosby and Defendant Cogen's conduct violated clearly Plaintiff Miller's established statutory or constitutional rights of which a reasonable person would have known. Defendant Mosby and Defendant Cogen deprived

Plaintiff Miller of his constitutional rights under 42 U.S.C. § 1983, including, but not limited to, freedom from wrongful arrest and detention without probable cause or a valid arrest warrant and freedom from wrongful imprisonment without probable cause or a valid arrest warrant.

143.    As a result of the deprivation of Plaintiff Miller's rights, Plaintiff Miller was subjected to an unnecessary and unlawful arrest, detention, and imprisonment.

144.    Plaintiff Miller further alleges that all of his injuries, losses, and damages – past, present and prospective – were caused solely by the conduct, actions, and inactions of Defendant Mosby and Defendant Cogen, as set forth herein, without any negligence, want of due care, or provocation on the part of Plaintiff Miller, either directly or indirectly.

145.    As a direct and proximate result of these acts, Plaintiff Miller suffered damages including, among others, the following: personal injuries; pain and suffering; severe mental anguish; emotional distress; loss of income; infliction of physical illness; inadequate medical care; humiliation; indignities and severe embarrassment; degradation; injury to reputation; permanent loss of natural psychological development; restrictions of all forms of personal freedom including, but not limited to, diet, sleep, personal contact, educational opportunity, vocational and professional opportunity, athletic opportunity, personal fulfillment, family relations, reading, television, movies, travel, enjoyment, and expression.

## COUNT IX – DEFAMATION OF CHARACTER
### (*Plaintiff Nero v. Defendant Marilyn Mosby*)

146.    Plaintiff Nero incorporates by reference the preceding paragraphs as if set forth fully herein, and states further:

147.    Defendant Mosby sought to falsely charge, arrest and imprison Plaintiff Nero.

148.    Beginning on or about May 1, 2015, Defendant Mosby, in an effort to falsely charge, arrest and imprison Plaintiff Nero, maliciously stated that Plaintiff Nero had arrested Mr.

Gray without probable cause. These statements were defamatory because they exposed Plaintiff Nero to public scorn, hatred and contempt, thereby discouraging others in the community from having a good opinion of, or associating with, Plaintiff Nero.

149.    In making these statements, Defendant Mosby knowingly made the aforementioned false and defamatory statements with actual malice or did so with reckless and/or intentional disregard for the truth.

150.    Defendant Mosby published these false and defamatory statements to countless people as a result of the televised press conference held on May 1, 2015. The aforementioned persons and others not named reasonably understood these publications to be defamatory.

151.    Defendant Mosby acted with knowledge of the falsity of the statements and with the intent to harm Plaintiff Nero when Defendant Mosby published these false and defamatory statements about Plaintiff Nero.

152.    As a direct and proximate result of the false and defamatory statements published by Defendant Mosby, the character and reputation of Plaintiff Nero were harmed, his standing and reputation in his profession and in the community were impaired, and he suffered mental anguish and personal humiliation.

153.    As a direct and proximate result of the false and defamatory statements published by Defendant Mosby, Plaintiff Nero was falsely charged, arrested and imprisoned, thereby causing him to suffer significant economic and non-economic losses.

COUNT X – DEFAMATION OF CHARACTER
(*Plaintiff Miller v. Defendant Marilyn Mosby*)

154.    Plaintiff Miller incorporates by reference the preceding paragraphs as if set forth fully herein, and states further:

155.    Defendant Mosby sought to falsely charge, arrest and imprison Plaintiff Miller.

26 of 30

J.A. 000234

156.    Beginning on or about May 1, 2015, Defendant Mosby, in an effort to falsely charge, arrest and imprison Plaintiff Miller, maliciously stated that Plaintiff Miller had arrested Mr. Gray without probable cause. These statements were defamatory because they exposed Plaintiff Miller to public scorn, hatred and contempt, thereby discouraging others in the community from having a good opinion of, or associating with, Plaintiff Miller.

157.    In making these statements, Defendant Mosby knowingly made the aforementioned false and defamatory statements with actual malice or did so with reckless and/or intentional disregard for the truth.

158.    Defendant Mosby published these false and defamatory statements to countless people as a result of the televised press conference held on May 1, 2015. The aforementioned persons and others not named reasonably understood these publications to be defamatory.

159.    Defendant Mosby acted with knowledge of the falsity of the statements and with the intent to harm Plaintiff Miller when Defendant Mosby published these false and defamatory statements about Plaintiff Miller.

160.    As a direct and proximate result of the false and defamatory statements published by Defendant Mosby, the character and reputation of Plaintiff Miller were harmed, his standing and reputation in his profession and in the community were impaired, and he suffered mental anguish and personal humiliation.

161.    As a direct and proximate result of the false and defamatory statements published by Defendant Mosby, Plaintiff Miller was falsely charged, arrested and imprisoned, thereby causing him to suffer significant economic and non-economic losses.

## REQUEST FOR RELIEF

WHEREFORE, Plaintiffs Edward Michael Nero and Garrett Edward Miller each individually demand judgment as follows:

(a) Against Defendant Marilyn Mosby in a sum in excess of SEVENTY-FIVE THOUSAND DOLLARS ($75,000.00) for each count in compensatory damages, plus interest, costs, and all other relief deemed just and necessary under the circumstances.

(b) Against Defendant Marilyn Mosby in a sum in excess of SEVENTY-FIVE THOUSAND DOLLARS ($75,000.00) for each count in punitive damages, plus interest, costs, and all other relief deemed just and necessary under the circumstances.

(c) Against Defendant Samuel Cogen in a sum in excess of SEVENTY-FIVE THOUSAND DOLLARS ($75,000.00) for each count in compensatory damages, plus interest, costs, and all other relief deemed just and necessary under the circumstances.

(d) Against Defendant Samuel Cogen in a sum in excess of SEVENTY-FIVE THOUSAND DOLLARS ($75,000.00) for each count in punitive damages, plus interest, costs, and all other relief deemed just and necessary under the circumstances.

(e) Against Defendants Marilyn Mosby and Samuel Cogen an award of costs and expenses of the present action, including reasonable attorneys' fees, to the full extent permitted by federal law and any other applicable statute, rule or law.

(f) Assessing interest, costs, and all other relief deemed just and necessary under the circumstances.

J.A. 000236

Respectfully Submitted,

**MALLON & MCCOOL, LLC**

By:_____
Joseph T. Mallon, Jr.
300 East Lombard Street, Suite 815
Baltimore, Maryland 21202
Phone:  (410) 727-7887
Fax:      (410) 727-4770
jmallon@mallonandmccool.com

*Counsel for Plaintiffs Edward Michael Nero and Garrett Edward Miller*

## DEMAND FOR JURY TRIAL

Plaintiffs Edward Michael Nero and Garrett Edward Miller request a trial by jury on all issues raised herein.


_____
Joseph T. Mallon, Jr.

## <u>CERTIFICATE OF SERVICE</u>

THIS IS TO CERTIFY that on this _____ day of _____ the Plaintiffs' Amended

Complaint & Jury Demand was served in accordance with CM/ECF system established by the

United States District Court for the District of Maryland on:

Jason R. Foltin, Assistant Solicitor
Sara E. Gross, Assistant Solicitor
Baltimore City Dept. of Law
100 N. Holliday St.
Baltimore, MD 21202
(410) 396-4431
jason.Foltin@baltimorecity.gov
sara.gross@baltimorecity.gov

*Attorneys for Defendant Major Cogen*

Karl A. Pothier, Assistant Attorney General
120 West Fayette St., 5th Floor
Baltimore, MD 21201
410-230-3135
karl.pothier@maryland.gov

*Attorneys for Defendant Marilyn Mosby*

Ankush Nayar, Assistant Attorney General
St. Paul Plaza – 19th Floor
200 St. Paul Place
Baltimore, MD 21202
410-576-6424
anayar@aog.state.md.us

*Attorneys for Defendant Marilyn Mosby*

_____/s/_____
Joseph T. Mallon, Jr

## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF MARYLAND

| | | |
|---|---|---|
| BRIAN SCOTT RICE | * | |
| Plaintiff | * | |
| v. | * | **CIVIL ACTION NO. MJG-16-1304** |
| MARILYN MOSBY | * | |
| and | * | |
| MAJOR SAMUEL COGEN | * | |
| Defendants | * | |
| | * | |
| | * | |
| | * | |
| | * | |
| | * | |
| | * | |
| | * | |
| | * | |
| | * | |

*   *   *   *   *   *   *   *   *   *   *   *   *   *   *

## AMENDED COMPLAINT AND JURY TRIAL DEMAND

Plaintiff Brian Scott Rice, by and through his attorneys, David Ellin and the Law Office of David Ellin, P.C.; and Brandy A. Peeples and the Law Office of Brandy A. Peeples, P.C., file

suit against Defendants Marilyn Mosby and Samuel Cogen and states the following in support thereof:

THE PARTIES

1.      Plaintiff Brian Scott Rice is and was, at all times relevant, a resident of Carroll County, Maryland, and a Lieutenant with the Baltimore City Police Department.

2.      Defendant Marilyn Mosby is and was, at all times relevant, the State's Attorney for Baltimore City, Maryland.

3.      Defendant Samuel Cogen is and was, at all times relevant, a Major with the Baltimore City Sheriff's Office.

JURISDICTION & VENUE

4.      Plaintiff placed Defendants on notice of his claims as required by the Maryland Tort Claims Act (Maryland Code, State Government, § 12-101 *et seq.*) by mailing the required notices (and supplemental notices) via certified, first-class U.S. mail, postage prepaid, return receipt requested (and hand-delivered), to Nancy Kopp, State Treasurer, Goldstein Treasury Building, 80 Calvert Street, Annapolis, Maryland 21401, within the requisite period of time. Alternatively, Plaintiff placed Defendants on notice of his claims in substantial compliance with the Maryland Tort Claims Act.  Alternatively, Defendants waived the notice requirement for Plaintiff under the Maryland Tort Claims Act.

5.      Plaintiff has complied with all legal and other preconditions (and/or conditions precedent) to properly file this suit including any and all notice requirements and/or exhaustion of remedies.

6.      Plaintiff has complied with all legal and other post-conditions (and/or conditions subsequent) to properly file this suit including any and all notice requirements and/or exhaustion of remedies.

7.      Alternatively, all parties waived all legal and other preconditions (and/or conditions precedent) to properly file this suit including any and all notice requirements and/or exhaustion of remedies.

8.      Alternatively, all parties waived all legal and other post-conditions (and/or conditions subsequent) to properly file this suit including any and all notice requirements and/or exhaustion of remedies.

9.      The jurisdiction of this Court is properly invoked pursuant to 28 U.S.C. § 1331; 28 U.S.C. § 1343; and/or 42 U.S.C. § 1983, this being, in part, an action authorized by law to redress the deprivation of rights secured to the Plaintiffs by the United States Constitution.

10.     Venue is proper in this Court pursuant to 28 U.S.C. § 1391 and 42 U.S.C. § 1983 since the actions Plaintiffs complain of occurred and arose in the City of Baltimore, State of Maryland.

*Facts*

11.     This case arises from the wrongful arrest and imprisonment of Plaintiff Brian Scott Rice on May 1, 2015. Plaintiff Rice was wrongfully arrested and imprisoned as a result of his involvement in the legal arrest of Freddie Carlos Gray, Jr. in Baltimore City, Maryland on April 12, 2015.

12.     On the morning of April 12, 2015, Plaintiff Rice was on bicycle patrol with Garrett Edward Miller ("Miller") and Edward Nero ("Nero") on North Avenue in Baltimore, Maryland.

13.     Between 8:45 a.m. and 9:15 a.m. Freddy Carlos Gray ("Mr. Gray"), along with another person, began running from Plaintiff Rice, after making eye contact with Plaintiff Rice.

14.    Plaintiff Rice announced pursuit of the two suspects on Calhoun Street over his police radio.

15.    In response to the radio call, Nero and/or Miller pursued Mr. Gray and ultimately detained and handcuffed him for officer safety reasons. Plaintiff Rice was not present during this apprehension.

16.    During the encounter with Mr. Gray, Miller recovered a knife from Mr. Gray's person and placed it on the ground.

17.    The knife was a spring-assisted knife. Such knives are illegal under Article 19, Section 59-22 of the Baltimore City Code, which states, "[i]t shall be unlawful for any person to sell, carry, or possess any knife with an automatic spring or other device for opening and/or closing the blade, commonly known as a switch-blade knife." As a result, Mr. Gray was placed under arrest. As soon as Mr. Gray realized he was being placed under arrest, he became physically and verbally combative. As a result of his combativeness, a crowd of citizens began to form around Mr. Gray, Miller and Nero.

18.    When the police wagon arrived to take custody of Mr. Gray, Mr. Gray was uncooperative and refused to walk on his own to the wagon.

19.    Nero and Officer Novak picked up Mr. Gray and took him to the wagon. At this time, Mr. Gray continued to be uncooperative.

20.    Based upon information and belief, before he was placed fully into the police wagon, Mr. Gray stood on the back step of the wagon while Nero conducted a second search to confirm that Mr. Gray did not possess any other weapons or contraband on his person. During this search, Mr. Gray was standing under his own power. Plaintiff Rice was not present during this interaction.

21.    Once Mr. Gray was fully inside the police wagon, he began banging and slamming himself against the inside of the wagon causing the wagon to visibly shake.

22.    Due to Mr. Gray's continuous screaming and yelling, a large crowd of citizens had formed around the police van ("wagon").  In the interest of officer safety, Plaintiff Rice directed Officer Miller to tell the police wagon driver to move the wagon approximately one block south in order to complete paperwork and otherwise effectuate Mr. Gray's arrest, and then to proceed directly to Baltimore City's Central Booking Intake Center ("Central Booking").

23.    Once the police wagon had been relocated approximately one block south, Mr. Gray was taken out of the wagon so that his handcuffs could be switched with flex cuffs and leg shackles could be placed on him.

24.    During this process, Mr. Gray continued to be uncooperative.  Mr. Gray was alert and responsive, and continued to yell and scream.  Another crowd of citizens began to crowd around the police wagon.  The citizens were yelling and shouting at the officers.

25.    At this time, Officer Miller and Plaintiff Rice took Mr. Gray out of the wagon, where his handcuffs were switched out with flex cuffs.  Shackles were placed on Mr. Gray's legs due to the fact that he was thrashing and banging against the inside of the police wagon. He continued to bang the inside of the wagon, causing the wagon to violently shake back and forth. Plaintiff Rice called for additional units, as a crowd of citizens had, once again, begun to gather around the police wagon.

26.    After completion of the above-outlined actions, Plaintiff Rice returned to his assigned duties and had no further contact with Mr. Gray.

27.    At no point during his interactions with Mr. Gray did Plaintiff Rice see any officers use excessive force, strike, or tase Mr. Gray.

J.A. 000243

28.     The Police Department investigation presented to the State's Attorney's Office included statements from two witnesses, Donta Allen and Mark Gladhill, who established that Mr. Gray was not injured and/or in any form of medical distress during stops that occurred after Plaintiff Rice had ceased any interaction with Mr. Gray.

29.     On April 19, 2015, Mr. Gray passed away after undergoing surgery at the University of Maryland Shock Trauma Unit.

30.     On May 1, 2015, charges were filed against Plaintiff Rice concerning his alleged actions during the legal arrest of Mr. Gray on April 12, 2015 pursuant to an Application for Statement of Charges submitted by Defendant Samuel Cogen ("Cogen").  Plaintiff Rice was charged with Manslaughter; Second Degree Assault; two counts of Misconduct in Office; and Reckless Endangerment.

31.     The Application for Statement of Charges submitted by Defendant Cogen stated that Mr. Gray's death was ruled a homicide by the Office of the Chief Medical Examiner.

32.     The same day, Plaintiff Rice was arrested and processed at Central Booking.  The process took approximately eight hours to complete, during which time Plaintiff Rice was deprived of his liberty and held against his will.  There existed no legal justification to arrest or detain Plaintiff Rice.

33.     Also on May 1, 2015, Defendant Marilyn Mosby ("Mosby"), State's Attorney for Baltimore City, gave a press conference concerning her office's decision to press charges against Plaintiff Rice, along with five other officers of the Baltimore City Police Department.

34.     During this press conference, Ms. Mosby read the Application for Statement of Charges filed against Plaintiff Rice, which contained false statements, and spoke in a divisive and inciting manner. At the time of the press conference, Ms. Mosby knew that this incident had

garnered national attention and that there would be wide-spread media coverage. She also knew or should have known that her press conference violated Maryland Rule of Professional Conduct 3.6(a), which states, "[a] lawyer who is participating or has participated in the investigation or litigation of a matter shall not make an extrajudicial statement that the lawyer knows or reasonably should know will be disseminated by means of public communication and will have a substantial likelihood of materially prejudicing an adjudicative proceeding in the matter."

35.    Ms. Mosby stated that the knife recovered from Mr. Gray was "not a switchblade and [was] lawful under Maryland law." The knife recovered from Mr. Gray was spring-assisted and was, therefore, illegal under Article 19, Section 59-22 of the Baltimore City Code. Ms. Mosby had served as an Assistant State's Attorney for Baltimore City from approximately 2005 through 2012 and knew that spring-assisted knives were illegal in Baltimore City.

36.    Ms. Mosby later stated that Miller, Nero, and Plaintiff Rice "failed to establish probable cause for Mr. Gray's arrest as no crime had been committed by Mr. Gray. Accordingly Lieutenant Rice, Officer Miller and Officer Nero illegally arrested Mr. Gray." This statement was false, as the knife, which was legally seized from Mr. Gray, was illegal under Article 19, Section 59-22 of the Baltimore City Code. Ms. Mosby knew that officers had probable cause to arrest Mr. Gray.

37.    The statement of charges filed against Mr. Gray on April 12, 2015 (Case No. 6B02294074) specifically referenced that Mr. Gray was alleged to have violated Article 19, Section 59-22 of the Baltimore City Code.

38.    At the time of the April 12, 2015 incident, the Baltimore City State's Attorney's Office had several cases pending against persons charged under Article 19, Section 59-22 of the Baltimore City Code for possession of spring-assisted knives.

39.     Upon information and belief, the Baltimore City Police Department informed Defendant Mosby and the State's Attorney's Office that the knife that was in Mr. Gray's possession was illegal under Article 19, Section 59-22 of the Baltimore City Code.

40.     Ms. Mosby also made several statements during her May 1, 2015 press conference regarding the independent investigation conducted by the Office of the State's Attorney for Baltimore City into Mr. Gray's arrest and subsequent death.  The press conference statements included, but were not limited to, the following:

  a.  "Once alerted about this incident on April 13, investigators from my police integrity unit were deployed to investigate the circumstances surrounding Mr. Gray's apprehension.  Over the course of our independent investigation, in the untimely death of Mr. Gray, my team worked around the clock; 12 and 14 hour days to canvass and interview dozens of witnesses; view numerous hours of video taped statements; surveyed the route; reviewed voluminous medical records; and we leveraged the information made available to us by the police department, the community, and the family of Mr. Gray."

  b.  "The findings of our comprehensive, thorough and independent investigation, coupled with the medical examiner's determination that Mr. Gray's death was a homicide, which we received today, has led us to believe that we have probable cause to file criminal charges."

  c.  "We have conducted a thorough and independent investigation of this case."

  d.  "We have been working with the police department from day one, and from day one I also sent my own investigators to the scene."

J.A. 000246

e.  "We independently verified those facts and everything we received from the police department, so it's a culmination of the independent investigation that we conducted as well as the information we received from the police department."

f.  "Well, what I can say is that from the beginning, we knew that this was a serious case, we've been working independently, and I can tell you that we put all of our resources to make sure that we are pursuing and leading where the facts took us in this case, which was to pursue justice."

g.  "I can tell you that from day one, we independently investigated, we're not just relying solely upon what we were given by the police department, period."

h.  "I thought it was very important to have an independent analysis as to what took place and transpired from the very beginning.  We are independent agencies from the police department."

i.  "Officer Miller, Office Nero, and Rice then loaded Mr. Gray back into the wagon, placing him on his stomach, head first onto the floor of the wagon."

j.  "I can tell you, as I stated, we had a number of investigators, you can see it's been an all hands on approach, from the very beginning, so I sent my investigators out to the scene, we have a number of them who are right here, we have a working collaboration and are working with the Baltimore Sheriff's Department, who has police powers and, again, independent from the Baltimore City Police Department.  So yes, we have leveraged the police

investigation, but at no point did we compromise our own independent investigation into this case."

41.    Mr. Gray was arrested because he was in possession of an illegal knife. Moreover, Plaintiff Rice was not present during the initial arrest of Mr. Gray.

42.    The allegations by Defendant Cogan in his Application for Statement of Charges against Plaintiff Rice, that "..Lt. Rice, Officer Miller and Officer Miller loaded Mr. Gray into the wagon, contrary to a BPD General Order", and "Officer Miller, Officer Nero, and Lt. Rice then loaded Mr. Gray back into the wagon, placing him on his stomach, head first onto the floor of the wagon. Once again, Mr. Gray was not secured by a seatbelt in the wagon, contrary to a BPD General Order" did not provide probable cause that a crime had been committed by Plaintiff Rice. Under law, a Baltimore City General Order does not impose a legal duty on police officers and the violation of any such General Order does not constitute a violation of criminal law.

43.    The General Order had been issued on April 3, 2015, only days before the incident, and was disseminated to officers via email.  No evidence existed that Plaintiff Rice had read the email containing the new General Order or that he was otherwise aware of the new General Order.

44.    Therefore, at the time that Defendant Cogen filed the Application for Statement of Charges, Defendant Cogen knew that no probable cause existed that Plaintiff Rice had committed any crime.

45.    Defendant Mosby instructed Defendant Cogen to file the Application for Statement of Charges, either directly and/or by instructing another member of the Baltimore City State's Attorney's office to instruct Defendant Cogen to file the Application for Statement of Charges.  Defendant's Mosby's direct involvement in the filing of the Application for Statement

of Charges is evidenced by her statements during the May 1, 2015 press conference that "we have probable cause to file criminal charges" and "we have brought the following charges", even though the Application for Statement of Charges was filed by Defendant Cogen and not by the Baltimore City State's Attorney's Office.

46.    Alternatively, Mosby provided legal advice to Defendant Cogen that violated Plaintiff Rice's constitutional rights, prior to his filing of the Application for Statement of Charges, that probable cause existed to charge and arrest Plaintiff Rice, even though Defendant Mosby knew, prior to the filing of the Application for Statement of Charges that no probable cause existed that Plaintiff Rice had committed any crime because the knife in Mr. Gray's possession was illegal and any alleged failure to seatbelt Mr. Gray would not constitute a criminal act.  Defendant Mosby provided this legal advice either directly to Defendant Cogen and/or by instructing another member of the Baltimore City State's Attorney's office to provide this legal advice to Defendant Cogen.   Notwithstanding this legal advice, Defendant Cogen knew, or should have known, that no probable cause existed to bring charges against and arrest Plaintiff Rice.

47.    As a result of the improper actions of Defendants Mosby and Cogen, Plaintiff Rice was illegally arrested on May 1, 2015.  His illegal arrest was made without probable cause and demonstrated ill will, improper motivation and/or evil purpose. He was falsely charged as a direct result of an improperly-motivated investigation, false charges and false statements made by Defendants Mosby and Cogen, and legal advice provided to Defendant Cogen in violation of Plaintiff Rice's constitutional rights by the Office of the State's Attorney for Baltimore City.

48.    As a result of this incident, Plaintiff Rice lost his freedom and dignity and suffered physical and psychological harm from being arrested and detained without cause.

49.    At all times, Defendants Mosby and Cogen were acting under the color of law and within the scope of their employment.

50.    At all times, Defendant Mosby and Cogen acted with gross negligence and/or with actual malice directed at Plaintiff Rice, with the intent to cause harm to the Plaintiff by trampling on the Plaintiff's rights in furtherance of the Defendants' own personal interests and political agendas.

51.    Indictments of Plaintiff Rice was subsequently obtained from a Grand Jury by the State's Attorney's Office, through its use of false and misleading statements, the omission of material facts and the presentation of purported evidence in a biased and materially suggestive manner.   This included the presentation by Deputy State's Attorney Bledsoe of a four-page statement that Detective Dawnyell Taylor was instructed to read.   The statement was misleading, biased, and false.   Ms. Bledsoe prevented Detective Taylor from responding to questions from the Grand Jury, and instead responded herself to those questions.   Defendant Mosby was present during the entire Grand Jury process.

52.    The criminal trial of Plaintiff Rice resulted in Plaintiff's Rice's acquittal on or about July 18, 2016.

## COUNT I -- FALSE ARREST
### (Plaintiff Rice v. All Defendants)

53.    Plaintiff Rice incorporates by reference the preceding paragraphs as if set forth fully herein, and states further:

54.    Defendants, their agents, and their employees unlawfully deprived Plaintiff Rice of his liberty.

55.    Plaintiff Rice did not consent to the deprivation of his liberty.

56.     Defendants, their agents, and their employees were without legal justification for depriving Plaintiff Rice of his liberty.

57.     The conduct of Defendants, their agents, and their employees was perpetrated with actual malice.

58.     As a direct and proximate result of the false arrest by Defendants, their agents, and their employees, Plaintiff Rice has sustained the following damages:

      a.  Emotional, mental, and physical pain and suffering;

      b.  Missed time from work and leisure activities;

      c.  Past and future medical expenses; and

      d.  Loss of earning capacity.

## COUNT II– FALSE IMPRISONMENT
### *(Plaintiff Rice v. All Defendants)*

59.     Plaintiff Rice incorporates by reference the preceding paragraphs as if set forth fully herein, and states further:

60.     Defendants, their agents, and their employees unlawfully deprived Plaintiff Rice of his liberty.

61.     Plaintiff Rice did not consent to the deprivation of his liberty and was held against his will for an extended period of time.

62.     Defendants, their agents, and their employees were without legal justification for depriving Plaintiff Rice of his liberty.

63.     The conduct of Defendants, their agents, and their employees was perpetrated with actual malice.

64.     As a direct and proximate result of the false imprisonment by Defendants, their agents, and their employees, Plaintiff Rice has sustained the following damages:

    a.   Emotional, mental, and physical pain and suffering;

    b.   Missed time from work and leisure activities;

    c.   Past and future medical expenses; and

    d.   Loss of earning capacity.

### COUNT III– MARYLAND DECLARATION OF RIGHTS
*(Plaintiff Rice v. All Defendants)*

65.    Plaintiff Rice incorporates by reference the preceding paragraphs as if set forth fully herein, and states further:

66.    Defendants, their agents, and their employees violated Plaintiff Rice's civil and constitutional rights, including his rights under Articles 24 and 26 of the Maryland Declaration of Rights.

67.    The Defendants' actions were without legal justification and resulted in the false arrest and false imprisonment of Plaintiff Rice and directly caused injury to Plaintiff Rice.

68.    As a direct result of Defendants' actions, Plaintiff Rice was taken, imprisoned, disseized of his freehold, liberties and privileges, outlawed, exiled, destroyed, deprived of his life, liberty and property without the judgment of his peers or by the law of the land and was subjected to an illegal search and seizure.

69.    All of Plaintiff Rice's injuries, damages, and losses were solely and proximately caused by the Defendants, their agents, and their employees, with no negligence on the part of Plaintiff Rice contributing thereto.

### COUNT IV– VIOLATION OF RIGHTS
### SECURED UNDER 42 U.S.C. § 1983
*(Plaintiff Rice v. All Defendants)*

70.    Plaintiff Rice incorporates by reference the preceding paragraphs as if set forth fully herein, and states further:

J.A. 000252

71.      Defendants Mosby and Cogen, in their individual capacity and within the scope of their employment, acted intentionally to violate Plaintiff Rice's rights secured under Chapter 42, Section 1983 of the United States Code. Defendants Mosby and Cogen engaged in activities that violated Plaintiff Rice's rights as protected under the Constitution of United States of America.

72.      The acts and omissions of Defendants Mosby and Cogen detailed within this Complaint, including, but not limited to, the filing of the Application for Statement of Charges without probable cause, the false arrest and false imprisonment of Plaintiff Rice, without probable cause or a valid arrest warrant, the providing of ~~erroneous~~ legal advice by Defendant Mosby to Defendant Cogen, and the false statements made by Defendant Mosby at her May 1, 2015 press conference regarding Plaintiff Rice, deprived Plaintiff Rice of his rights under 42 U.S.C. § 1983, including, but not limited to:

    a.   freedom from the deprivation of liberty without due process of the law, as guaranteed by the Fourteenth Amendment to the Constitution of the United States of America; and

    b.   freedom from arrest without probable cause, as guaranteed by the Fourth Amendment to the Constitution of the United States of America.

73.      Plaintiff Rice has a right to be free from arrest and detention without probable cause, legal excuse, or justification and without a valid warrant. This right was denied when Plaintiff Rice was arrested and detained without probable cause, legal excuse, or justification or a valid arrest warrant.

74.      Plaintiff Rice has a right to be free from wrongful imprisonment. This right was denied when Plaintiff Rice was wrongfully imprisoned without legal cause, excuse, or justification.

J.A. 000253

75.     Plaintiff Rice has a protected property interest in his freedom, his ability to exercise his free will and domain over his person, and his ability to be free from unlawful and unwelcome detention by Defendants Mosby and Cogen.

76.     Plaintiff Rice was afforded less process than was due under law by Defendant Mosby and Defendant Cogen, in depriving him of the rights in question.

77.     Defendant Mosby and Defendant Cogen, at all times relevant hereto, acted under color of law and in a manner that was not objectively reasonable.

78.     Additionally, Defendant Mosby, at all times relevant hereto, acted in an investigatory role and participated in investigative work to decide whether Plaintiff Rice should be arrested and in instructing Defendant Cogen to file the Application for Statement of Charges.

79.     Furthermore, in making the false statements regarding Plaintiff Rice during her May 1, 2015 press conference, Defendant Mosby was not acting in her role as an advocate for the State.

80.     By the actions detailed above, Defendant Mosby and Defendant Cogen's conduct violated clearly Plaintiff Rice's established statutory or constitutional rights of which a reasonable person would have known.   Defendant Mosby and Defendant Cogen deprived Plaintiff Nero of his constitutional rights under 42 U.S.C. § 1983, including, but not limited to, freedom from wrongful arrest and detention without probable cause or a valid arrest warrant, and freedom from wrongful imprisonment without probable cause or a valid arrest warrant.

81.     As a result of the deprivation of his rights, Plaintiff Rice was subjected to an unnecessary and unlawful arrest, detention, and imprisonment.

82.     Plaintiff Rice further alleges that all of his injuries, losses, and damages – past, present and prospective – were caused solely by the conduct, actions, and inactions of Defendant

Mosby and Defendant Cogen, as set forth herein, without any negligence, want of due care, or provocation on the part of Plaintiff Rice, either directly or indirectly.

83.    As a direct and proximate result of these acts, Plaintiff Rice suffered damages including, among others, the following: personal injuries; pain and suffering; severe mental anguish; emotional distress; loss of income; infliction of physical illness; inadequate medical care; humiliation; indignities and severe embarrassment; degradation; injury to reputation; permanent loss of natural psychological development; restrictions of all forms of personal freedom including, but not limited to, diet, sleep, personal contact, educational opportunity, vocational and professional opportunity, athletic opportunity, personal fulfillment, family relations, reading, television, movies, travel, enjoyment, and expression.

## COUNT V– DEFAMATION OF CHARACTER
### *(Plaintiff Rice v. Defendant Marilyn Mosby)*

84.    Plaintiff Rice incorporates by reference the preceding paragraphs as if set forth fully herein, and states further:

85.    Defendant Mosby sought to falsely charge, arrest and imprison Plaintiff Rice.

86.    Beginning on or about May 1, 2015, Defendant Mosby, in an effort to falsely charge, arrest and imprison Plaintiff Rice, maliciously stated that Mr. Gray was arrested without probable cause. These statements were defamatory because they exposed Plaintiff Rice to public scorn, hatred and contempt, thereby discouraging others in the community from having a good opinion of, or associating with, Plaintiff Rice.

87.    Defendant Mosby knowingly made the aforementioned false and defamatory statements with actual malice or did so with reckless and/or intentional disregard for the truth.

88.    Further, in addition to the defamatory statements outlined hereinabove, Plaintiff Rice avers that Defendant Mosby and/or other employees, servants, apparent agents, and or

representatives of her office influenced the Medical Examiner's finding that Mr. Gray's death was a "homicide", by withholding from the Medical Examiner certain truthful and relevant facts that likely would have changed that finding. This influence regarding the use of the word "homicide" was defamatory because it exposed Plaintiff Rice to public scorn, hatred and contempt, thereby discouraging others in the community from having a good opinion of, or associating with, Plaintiff Rice.

89.    In making these statements, Defendant Mosby knowingly made the aforementioned false and defamatory statements with actual malice or did so with reckless and/or intentional disregard for the truth.

90.    Defendant Mosby published these false and defamatory statements to countless people as a result of the televised press conference held on May 1, 2015. The aforementioned persons and others not named reasonably understood these publications to be defamatory.

91.    Defendant Mosby acted with knowledge of the falsity of the statements and with the intent to harm Plaintiff Rice when Defendant Mosby published these false and defamatory statements about Plaintiff Rice.

92.    As a direct and proximate result of the false and defamatory statements published by Defendant Mosby, the character and reputation of Plaintiff Rice was harmed, his standing and reputation in his profession and in the community were impaired, and he suffered mental anguish and personal humiliation.

93.    In failing to provide the Medical Examiner's office with necessary and relevant information, Defendant Mosby and/or apparent agents, employees, servants and/or representatives of her office influenced the finding of homicide by the Medical Examiner's office, leading to a false and defamatory labeling of Plaintiff Rice's actions as homicidal.

94.    As a direct and proximate result of the false and defamatory statements published by Defendant Mosby, Plaintiff Rice was falsely charged, arrested and imprisoned, thereby causing him to suffer significant economic and non-economic losses.

**REQUEST FOR RELIEF**

WHEREFORE, Plaintiff Brian Scott Rice demands judgment as follows:

(a) Against Defendant Marilyn Mosby in a sum in excess of SEVENTY-FIVE THOUSAND DOLLARS ($75,000.00) for each count in compensatory damages, plus interest, costs, and all other relief deemed just and necessary under the circumstances.

(b) Against Defendant Marilyn Mosby in a sum in excess of SEVENTY-FIVE THOUSAND DOLLARS ($75,000.00) for each count in punitive damages, plus interest, costs, and all other relief deemed just and necessary under the circumstances.

(c) Against Defendant Samuel Cogen in a sum in excess of SEVENTY-FIVE THOUSAND DOLLARS ($75,000.00) for each count in compensatory damages, plus interest, costs, and all other relief deemed just and necessary under the circumstances.

(d) Against Defendant Samuel Cogen in a sum in excess of SEVENTY-FIVE THOUSAND DOLLARS ($75,000.00) for each count in punitive damages, plus interest, costs, and all other relief deemed just and necessary under the circumstances.

(e) Against Defendants Marilyn Mosby and Samuel Cogen an award of costs and expenses of the present action, including reasonable attorneys' fees, to the full extent permitted by federal law and any other applicable statute, rule or law.

(f) Assessing interest, costs, and all other relief deemed just and necessary under the circumstances.

Respectfully Submitted,

By:_____/s/_____
David Ellin
Law Office of David Ellin, P.C.
154 Westminster Pike
Reisterstown, MD 21136
(410) 833-0044
(410) 833-0442  FAX
dellin@ellinlaw.com


_____/s/_____
Brandy A. Peeples, Esquire
Law Office of Brandy A. Peeples, P.C.
47 East All Saints St.
Frederick, MD 21701
(301) 327-9614
(866) 277-7137  FAX
brandy@peeples-law.com

*Counsel for Plaintiff Brian Scott Rice*


## DEMAND FOR JURY TRIAL

Plaintiff Brian Scott Rice requests a trial by jury on all issues raised herein.


_____
David Ellin

## UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF MARYLAND

**BRIAN S. RICE,**

     *Plaintiff,*

**v.**

                     **Civil No.: 1:16-cv-1304 MJG**

**MAJOR SAMUEL COGEN,** *et al.*

     *Defendants*

---

### CERTIFICATE OF SERVICE

     THIS IS TO CERTIFY that on this 16the day of September, 2016 the Plaintiff's Amended Complaint was served in accordance with CM/ECF system established by the United States District Court for the District of Maryland or by first-class mail, postage pre-paid, on:

Jason R. Foltin, Assistant Solicitor
Sara E. Gross, Assistant Solicitor
Baltimore City Dept. of Law
100 N. Holliday St.
Baltimore, MD 21202
(410) 396-4431
jason.Foltin@baltimorecity.gov
sara.gross@baltimorecity.gov

*Attorneys for Defendant Major Cogen*

Karl A. Pothier, Assistant Attorney General (by first class mail)
120 West Fayette St., 5th Floor
Baltimore, MD 21201
410-230-3135
karl.pothier@maryland.gov

*Attorneys for Defendant Marilyn Mosby*

Ankush Nayar, Assistant Attorney General
St. Paul Plaza – 19th Floor
200 St. Paul Place
Baltimore, MD 21202
410-576-6424
anayar@aog.state.md.us

*Attorneys for Defendant Marilyn Mosby*

_____/s/_____
David Ellin



**UNITED STATES DISTRICT COURT**
**DISTRICT OF MARYLAND**
**101 W. LOMBARD STREET**
**BALTIMORE, MARYLAND  21201**

Chambers of
**Hon. Marvin J. Garbis**
**United States District Judge**


October 11, 2016

ALL COUNSEL OF RECORD

        Re:  <u>Related Mosby/Cogen Cases, MJG-16-1288, 1304, 2663</u>

Dear Counsel:

    I write in regard to the October 13 hearing in these cases.

- I shall consider all claims made in all cases to determine which, if any, survive dismissal.

    o Possible Complaint amendments shall be considered as may be appropriate in light of the claims, if any, that survive dismissal.

- Absent persuasive authority to the contrary, I shall dismiss all conspiracy counts since conspiracy is not a free standing tort but, in Maryland, a basis on which to find liability for an underlying tort.  <u>E.g.</u>, <u>Alleco Inc. v. Harry & Jeanette Weinberg Foundation, Inc.</u>, 665 A.2d 1038, 1045 (Md. 1995).

- All claims under the Maryland Declaration of Rights shall be dismissed as duplicative of federal constitutional claims except to the extent a <u>specific</u> basis to keep both sets of claims is shown.

- Any statements by defendants on which claims are based shall be quoted and not paraphrased.

- Absent a specific showing of the contrary, I assume that there is no plausible claim of <u>actual</u> personal malice as distinct from <u>inferred</u> or deemed malice.

Page No. 2

- Prepare to address the significance of co-existence of defendants' motives to perform their legal functions and any political or "peace keeping" motives.

- Prepare to address whether the statement that knife was "legal under Maryland law" was inaccurate or literally true but misleading if the knife was illegal under a City ordinance.

- Absent a showing to the contrary, I shall dismiss the claims for false imprisonment and false arrest but consider claims for malicious prosecution. <u>See</u>, <u>Montgomery Ward v. Wilson</u>, 664 A2d 916 (Md. 1995).

- Address whether the defendants have any inconsistent positions regarding the issues presented.

- Specify the contents of the allegedly false testimony that Defendant Mosby allegedly caused to be presented to the Grand Jury.

- Identify any basis on which the State or City could be liable in the absence of liability on the part of the individual defendants.


    Although in letter form, this document constitutes an Order and shall be docketed as such by the Clerk.

                                        Yours truly,


                                        _____/s/_____
                                        Marvin J. Garbis
                                        United States District Judge


CC: Clerk

IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND

EDWARD MICHAEL NERO, et al.          *

        Plaintiffs          *

        vs.          * CIVIL ACTION NO. MJG-16-1288

MARILYN MOSBY, et al.          *

        Defendants          *

*      *      *      *      *      *      *      *      *

BRIAN SCOTT RICE          *

        Plaintiffs          *

        vs.          * CIVIL ACTION NO. MJG-16-1304

MARILYN MOSBY, et al.          *

        Defendants          *

*      *      *      *      *      *      *      *      *

ALICIA WHITE, et al.          *

        Plaintiffs          *

        vs.          * CIVIL ACTION NO. MJG-16-2663

MARILYN MOSBY, et al.          *

        Defendants          *

*      *      *      *      *      *      *      *      *

<u>CORRECTED[1] MEMORANDUM AND ORDER RE: DISMISSAL MOTIONS</u>

---

[1]    The original Memorandum and Order Re: Dismissal inadvertently referred to Officer Caesar Goodson, not a party of the case, as having had his prosecution resolved by <u>nolle prosequi</u>. In fact, he was found not guilty in a bench trial.

The Court has before it the following motions to dismiss[2] with the materials submitted relating thereto:

In MJG-16-1288:

- Defendant Samuel Cogen's Motion To Dismiss [ECF No. 12].

- Defendant Marilyn Mosby's Motion to Dismiss [ECF No. 25].

In MJG-16-1304:

- Defendant Samuel Cogen's Motion To Dismiss [ECF No. 8].

- Defendant Marilyn Mosby's Motion to Dismiss [ECF No. 24].

In MJG-16-2663:

- Defendant Samuel Cogen's Motion To Dismiss [ECF No. 11].

- Defendant Marilyn Mosby's Motion to Dismiss [ECF No. 22].

The Court has held a hearing and has had the benefit of the arguments of counsel.

I.   SUMMARY INTRODUCTION[3]

At about 9:15 in the morning of April 12, 2015 ("April

---

[2]   Each motion was filed seeking dismissal or, in the alternative, summary judgment.  By the Procedural Order issued August 26, 2016, in each case, the Court denied all summary judgment motions without prejudice as premature.

[3]   This summary presents, as a background introduction, what the Court presently understands to be undisputed or not reasonably disputable.  See Appendix A for a summary of the by no means undisputed "facts" as alleged by Plaintiffs.

J.A. 000264

12"), Baltimore City Police Officers detained Freddie Carlos

Gray, Jr. ("Gray"), a 25-year-old black man, and found on him a

knife that had a spring or other device for opening or closing

the blade (the "Knife").  Considering possession of the Knife to

be a crime,[4] the police arrested Gray, obtained a police vehicle

to transport him to the police station, and placed Gray in the

vehicle.

    After making four stops along the way, the police vehicle

arrived at the station and Gray was observed to be in need of

medical care.  A medical unit was called and took Gray to the

University of Maryland Shock Trauma Unit where he underwent

surgery.  A week later, on April 19,[5] Gray died from a spinal

cord injury sustained in the course of the events of the morning

of April 12.

    On April 21, six of the Baltimore City Police Officers who

had interacted with Gray on April 12 (collectively referred to

as "the Six Officers") were suspended with pay.  They were the

driver of the vehicle, Caesar Goodson ("Goodson), Edward Nero

("Nero"), Garrett Miller ("Miller"), Brian Rice ("Rice"), Alicia

White ("White"), and William Porter ("Porter").

---

[4]  Baltimore City Code § 59-22 states, "It shall be unlawful
for any person to sell, carry, or possess any knife with an
automatic spring or other device for opening and/or closing the
blade, commonly known as a switch-blade knife."
[5]  All date references herein are to 2015 unless indicated as in
2016.

On April 27, Gray's funeral was held.  After the funeral there was substantial unrest in Baltimore City including riots, declaration of a state of emergency, deployment of the National Guard, and a curfew.

On May 1, an Application for Statement of Charges ("the Application")[6] against the Six Officers was filed in the District Court of Maryland for Baltimore City.  Based thereon, a state court commissioner issued warrants, and the Six Officers were arrested.

On May 1, State's Attorney Marilyn Mosby ("Mosby") held a press conference, announced that she had filed charges against the Six Officers, and read from the Statement of Charges.  In addition, Mosby stated that her staff had conducted an investigation independently from the Police Department that resulted in the charges against the Six Officers,[7] that the

---

[6]    Signed by Major Samuel Cogen of the Baltimore City Sheriff's Office.

[7]        Once alerted about this incident on April 13, investigators from my police integrity unit were deployed to investigate the circumstances surrounding Mr. Gray's apprehension. Over the course of our independent investigation, in the untimely death of Mr. Gray, my team worked around the clock; 12 and 14 hour days to canvas and interview dozens of witnesses; view numerous hours of video footage; repeatedly reviewed and listened to hours of police video tape statements; surveyed the route; reviewed voluminous medical records; and we leveraged the information made available to us by the police

4

accusations against the Six Officers were not an indictment of
the entire police force,[8] and that the actions of the Six
Officers would not harm the working relationship between police
and prosecutors.[9]

---

    department, the community, and the family of Mr.
Gray.

                * * *

    Lastly, I'd like to thank my team for
working around the clock since the day that we
learned of this tragic incident. We have
conducted a thorough and independent
investigation of this case.

Time Staff, *Read the Transcript of Marilyn J. Mosby's
Statement on Freddie Gray*, TIME (May 1, 2015),
http://time.com/3843870/marilyn-mosby-transcript-
freddie-gray/ [hereinafter referred to as
"Transcript"] [ECF No. 23-1 in 16-1304].

    We independently verified those facts and
everything we received from the police
department, so it's a culmination of the
independent investigation that we conducted as
well as the information we received from the
police department.

             * * *

    I can tell you that from day one, we
independently investigated, we're not just
relying solely upon what we were given by the
police department, period.

¶ 81 [ECF No. 31 in 16-2663].
[8]   "To the rank and file officers of the Baltimore Police
Department, please know that these accusations of these six
officers are not an indictment on the entire force." Transcript
at 5 [ECF No. 23-1 in 16-1304].
[9]   "I can tell you that the actions of these officers will not
and should not, in any way, damage the important working

Mosby further called upon the public, including those who, themselves, "had experience[d] injustice at the hands of police officers" to be peaceful as the Six Officers were prosecuted.[10] Mosby also said:

> Last, but certainly not least, to the youth of the city. I will seek justice on your behalf. This is a moment. This is your moment. Let's insure we have peaceful and productive rallies that will develop structural and systemic changes for generations to come.

Transcript at 5 [ECF No. 23-1 in 16-1304].

On May 21, a Baltimore City grand jury indicted the Six Officers, charging:

- Goodson with second degree depraved heart murder, involuntary manslaughter, second-degree negligent assault, manslaughter by vehicle by means of gross negligence, manslaughter by vehicle by means of criminal negligence, misconduct in office by failure to secure prisoner, and failure to render aid.

- Rice with involuntary manslaughter, assault in the second degree, assault in the second degree [sic], misconduct in office, and false imprisonment.

---

relationships between police and prosecutors as we continue to fight together to reduce crime in Baltimore." Transcript at 5 [ECF No. 23-1 in 16-1304].

[10]    "To the people of Baltimore and the demonstrators across America: I heard your call for 'No justice, no peace.' Your peace is sincerely needed as I work to deliver justice on behalf of this young man. To those that are angry, hurt or have their own experiences of injustice at the hands of police officers I urge you to channel that energy peacefully as we prosecute this case." Transcript at 4 [ECF No. 23-1 in 16-1304].

6

- Miller with intentional assault in the second-degree, assault in the second-degree negligent, misconduct in office, and false imprisonment.

- Nero with assault in the second degree intentional, assault in the second degree negligent, misconduct in office, and false imprisonment.

- White with manslaughter, involuntary manslaughter, second-degree assault, and misconduct in office.

- Porter with involuntary manslaughter, assault in the second degree, and misconduct in office.

Transcript at 4 [ECF No. 23-1 in 16-1304].

None of the Six Officers was convicted of any crime. Three proceeded to trial. First, Porter was tried by a judge and jury that failed to agree upon a unanimous verdict. Second, Goodson, Nero, and Rice were tried separately by Judge Williams of the Circuit Court of Baltimore City without a jury, and all three Officers were acquitted. On July 27, 2016, Mosby dismissed all charges against Miller, Porter, and White.

Five of the Six Officers[11] (collectively referred to as "Plaintiffs") have filed the instant lawsuits against Mosby and Cogen:[12]

---

[11]    I.e., all but Goodson.

[12]    Cogen, while not admitting any wrongdoing on the part of Mosby, contends that the Application for Statement of Charges that he signed was based on the investigation conducted by the State's Attorney's Office and the Baltimore City Police. Hence, he alleges, he cannot be held liable on any of Plaintiffs' claims.

7

- Nero and Miller, (MJG-16-1288)[13]
- Rice, (MJG-16-1304)[14]
- White and Porter (MJG-16-2663).[15]

By the instant motions, Mosby and Cogen seek dismissal of all claims against them pursuant to Federal Rule of Civil Procedure 12(b)(6).


II.   DISMISSAL STANDARD

A motion to dismiss filed pursuant to Federal Rule of Civil Procedure 12(b)(6)[16] tests the legal sufficiency of a complaint. A complaint need only contain "a short and plain statement of the claim showing that the pleader is entitled to relief, in order to give the defendant fair notice of what the . . . claim is and the grounds upon which it rests." Bell Atl. Corp. v. Twombly, 550 U.S. 544, 555 (2007) (citations omitted).  When evaluating a 12(b)(6) motion to dismiss, a plaintiff's well-pleaded allegations are accepted as true and the complaint is viewed in the light most favorable to the plaintiff.  However, conclusory statements or a "formulaic recitation of the elements of a cause of action" will not suffice.  Id.  A complaint must allege sufficient facts to "cross 'the line between possibility

---

[13]   Filed on April 29, 2016, in this Court.
[14]   Filed on May 2, 2016, in this Court.
[15]   Filed on May 2, 2016, in the Circuit Court of Maryland for Baltimore City and, on July 26, 2016, removed to this Court.
[16]   All "Rule" references herein are to the Federal Rules of Civil Procedure.

8

J.A. 000270

and plausibility of entitlement to relief.'" Francis v. Giacomelli, 588 F.3d 186, 193 (4th Cir. 2009) (quoting Twombly, 550 U.S. at 557).

Inquiry into whether a complaint states a plausible claim is "a context-specific task that requires the reviewing court to draw on its judicial experience and common sense." Id. Thus, if the well-pleaded facts contained within a complaint "do not permit the court to infer more than the mere possibility of misconduct, the complaint has alleged – but it has not shown – that the pleader is entitled to relief." Id. (quoting Ashcroft v. Iqbal, 556 U.S. 662, 679 (2009)).

Generally, a motion to dismiss filed under Rule 12(b)(6) cannot reach the merits of an affirmative defense. Goodman v. Praxair, Inc., 494 F.3d 458, 464 (4th Cir. 2007). However, affirmative defenses are appropriate to consider at the Rule 12(b)(6) stage "when the face of the complaint clearly reveals[17] the existence of a meritorious affirmative defense." Occupy Columbia v. Haley, 738 F.3d 107, 116 (4th Cir. 2013)(emphasis added)(quoting Brockington v. Boykins, 637 F.3d 503, 506 (4th Cir. 2011)).

---

[17] In the limited circumstances where the allegations of the complaint give rise to an affirmative defense, the defense may be raised under Rule 12(b)(6), but only if it clearly appears on the face of the complaint. Richmond, Fredericksburg & Potomac R. Co. v. Forst, 4 F.3d 244, 250 (4th Cir. 1993).

J.A. 000271

III. DISCUSSION

While the three Complaints are not absolutely identical, there is essentially commonality of the factual allegations and claims.  Moreover, the Court will, if necessary, grant Plaintiffs leave to file amended complaints consistent with the instant decision.  Therefore, the claims and defenses presented in all three cases shall be discussed collectively.

Plaintiffs assert the following claims:

    1. Common Law Claims

        a. False Arrest & False Imprisonment[18]

        b. Malicious Prosecution[19]

        c. Abuse of Process[20]

        d. Defamation & Invasion of Privacy[21]

        e. Conspiracy[22]

    2. Constitutional Claims

        a. 42 U.S.C. § 1983 – Violation of the Fourth and Fourteenth Amendments[23]

---

[18]    Counts VI and VIII in 16-2663. Counts I-II in 16-1304. Counts I-IV in 16-1288.
[19]    Count XI in 16-2663.
[20]    Count XII in 16-2663.
[21]    Counts II and IV in 16-2663. Count V (defamation) in 16-1304. Counts IX and X (defamation) in 16-1288.
[22]    Count XIII in 16-2663.
[23]    Count X in 16-2663. Count IV in 16-1304.  Counts VII and VIII in 16-1288.

J.A. 000272

b. Violation of Maryland Declaration of Rights, Articles 24 and 26[24]

3. Claims Against the State of Maryland[25]

Defendants assert immunity from suit on certain of Plaintiffs' claims.  Mosby claims absolute prosecutorial immunity from suit.  Mosby and Cogen both claim public official immunity, statutory immunity, and qualified immunity.

The Court shall address Plaintiffs' claims and Defendants' immunity assertions in turn.

A. Common Law Claims

1. False Arrest & False Imprisonment

The Court stated in the October 11, 2016 Order issued in each case:

> Absent a showing to the contrary, I shall dismiss the claims for false imprisonment and false arrest but consider claims for malicious prosecution.

[ECF No. 44 in 16-1304].

There has been no showing to the contrary.

In Maryland, when an individual is arrested pursuant to an arrest warrant, no claim for false arrest or false imprisonment lies against "either the instigator or the arresting officer

_____

[24]   Count IX in 16-2663.  Count III in 16-1304.  Counts V and VI in 16-1288.
[25]   All claims asserted against individual Defendants except malicious prosecution, abuse of process, and conspiracy.

11

where the plaintiff is not detained by the instigator."

Montgomery Ward v. Wilson, 664 A.2d 916, 927 (Md. 1995).

"Rather, to the extent that the instigator acts maliciously to

secure the warrant for the plaintiff's arrest, the plaintiff's

cause of action against the instigator is malicious

prosecution." Id.

   All claims of false arrest and false imprisonment are

dismissed.


   2.   Malicious Prosecution

   To establish a malicious prosecution claim,[26] a plaintiff

must prove that:

       1. A criminal proceeding was brought against plaintiff,

       2. The case terminated in the plaintiff's favor,

       3. The absence of probable cause, and

       4. Malice, meaning "a primary purpose in instituting the
          proceeding other than that of bringing an offender to
          justice."

   Exxon Corp. v. Kelly, 381 A.2d 1146, 1149 (Md. 1978)

(quoting Safeway Stores, Inc. v. Barrack, 122 A.2d 457, 460 (Md.

1956)).

---

[26]   A disfavored, but potentially valid, claim.  See Exxon
Corp. v. Kelly, 381 A.2d 1146, 1149 (Md. 1978) (citing Siegman
v. Equitable Trust Co., 297 A.2d 758, 762 (Md. 1972))("While the
tort is not a favorite of the law, the cause of action remains a
viable one in this State.").

There is no doubt that each Plaintiff was the subject of criminal proceedings that terminated in his/her favor.

As discussed in Appendix B, accepting as true Plaintiffs' factual allegations, they have pleaded[27] plausible claims that there was no probable cause to arrest and prosecute them.

There is no plausible claim that either Defendant had actual personal malice toward any Plaintiff. However,

> [a]s a substantive element of the tort of malicious prosecution, malice means that the defendant "was actuated by an improper motive," a purpose "other than that of bringing [the plaintiff] to justice." That kind of malice, though a separate element of the tort, may be inferred from the lack of probable cause.

DiPino v. Davis, 729 A.2d 354, 374 (Md. 1999) (quoting Montgomery Ward, 664 A.2d at 925).

Accordingly, Plaintiffs' malicious prosecution claims are not dismissed.[28]

### 3.   Abuse of Process

To establish an abuse of process claim, a plaintiff must prove an ulterior motive, and "a willful act in the use of

---

[27]   Allegations are not evidence.  The Court is not deciding whether Plaintiffs can present evidence adequate to avoid summary judgment.

[28]   As discussed below, Mosby asserts absolute prosecutorial immunity for her actions as a prosecutor. Plaintiffs' malicious prosecution claims relate to her actions when functioning as an investigator and not as a prosecutor.

13

process not proper in the regular conduct of the proceeding." Palmer Ford, Inc. v. Wood, 471 A.2d 297, 310-11 (Md. 1984)(quoting W. Prosser, Handbook of the Law of Torts 857 (4th ed. 1971)).

As discussed in Appendix B, Plaintiffs have alleged facts adequate to establish a plausible claim of an ulterior motive on the part of the Defendants.

However, to establish an abuse of process there must be a willful act that takes place after the process has issued.  That is, "[s]ome definite act or threat not authorized by the process, or aimed at an objective not legitimate in the use of the process." Id. (emphasis added).

"[T]here is no liability where the defendant has done nothing more than carry out the process to its authorized conclusion, even though with bad intentions." Id.; see also Berman v. Karvounis, 518 A.2d 726, 729 (Md. 1987) ("Appellants have failed to allege in what manner process was used in some abnormal fashion 'to coerce/extort money and/or property from' them.").

Plaintiffs do not allege that the process was used for other than its regular purpose, i.e., to arrest persons charged with crimes.  Thus, Plaintiffs have not alleged facts adequate to present a plausible claim that the Defendants wrongfully misused the arrest warrant after it was issued by the

14

Commissioner.

Accordingly, all abuse of process claims shall be dismissed.

### 4.   Press Conference - Defamation and False Light

Plaintiffs assert claims against Mosby for statements she made[29] during her May 1, 2015, press conference.  Plaintiffs claim that Mosby committed the torts of defamation and invasion of privacy (false light).[30]

As discussed herein, Plaintiffs' press conference-based claims for defamation and invasion of privacy (false light) are not dismissed.

### a. Defamation

To establish a defamation claim, a plaintiff must prove (1) that the defendant made a defamatory statement to a third person, (2) falsity, (3) legal fault, and (4) harm.  Rosenberg v. Helinski, 616 A.2d 866, 876 (Md. 1992).  Moreover, when a plaintiff is, as are these Plaintiffs, a public official, a

---

[29]   There are no factual allegations supporting a plausible defamation or invasion of privacy (false light) against Cogen for any public statement made by him.
[30]   Because "[a]n allegation of false light must meet the same legal standards as an allegation of defamation," courts often analyze the torts concurrently. Piscatelli v. Van Smith, 35 A.3d 1140, 1146-47 (Md. 2012); see also Bagwell v. Peninsula Reg'l Med. Ctr., 665 A.2d 297, 315 n.8 (Md. App. 1995).

higher degree of legal fault (actual malice) must be proven.

Plaintiffs have adequately alleged that, in the press conference, Mosby made statements to third parties, i.e., the public.  Some of Mosby's statements at the press conference are at least plausibly, if not obviously, defamatory.[31]

For example, Mosby read from the Application, the statement that

> [t]he knife [found on Gray] was not a switchblade and is lawful under Maryland law. . . .  Lt. Rice, Officer Miller and Officer Nero failed to establish probable cause for Mr. Gray's arrest as no crime had been committed by Mr. Gray.

Transcript at 2 [ECF No. 23-1 in 16-1304].

Mosby also read from the Application, statements that:

- Gray exhibited an "obvious and recognized need for medical assistance." Id. at 3.

- White and Porter observed "Mr. Gray unresponsive on the floor of the wagon." Id.

- "When [Gray] did not respond, [Officer White] did nothing further despite the fact that she was advised that he needed a medic." Id.

- Officer White "made no effort to look, assess or determine [Gray's] condition." Id.

In addition to reading from the Application, Mosby made

---

[31]   A statement is defamatory if it "tends to expose a person to public scorn, hatred, contempt or ridicule, thereby discouraging others in the community from having a good opinion of, or associating with, that person." Rosenberg v. Helinski, 616 A.2d 866, 871 (Md. 1992); see also Ross v. Cecil Cty. Dep't of Soc. Servs., 878 F. Supp. 2d 606, 624 (D. Md. 2012).

statements that are plausibly, in context, defamatory.  For example:

> To those that are angry, hurt or have their own experiences of injustice at the hands of police officers I urge you to channel that energy peacefully as we prosecute this case. . . .

> To the rank and file officers of the Baltimore Police Department, please know that these accusations of these six officers are not an indictment on the entire force.

> . . . I can tell you that the actions of these officers will not and should not, in any way, damage the important working relationships between police and prosecutors as we continue to fight together to reduce crime in Baltimore.

Transcript at 4-5 [ECF No. 23-1 in 16-1304].

Plaintiffs, as police officers, are considered public officials who are subject to an augmented burden when asserting a defamation claim.  "[A] public official [cannot] recover[] damages for a defamatory falsehood relating to his official conduct unless he proves that the statement was made with 'actual malice' — that is, with knowledge that it was false or with reckless disregard of whether it was false or not." N.Y. Times Co. v. Sullivan, 376 U.S. 254, 279-80 (1964). "[P]olice officers, from patrol officers to chiefs, are regarded for New York Times purposes as public officials." Smith v. Danielczyk, 928 A.2d 795, 805 (Md. 2007).

J.A. 000279

To establish actual malice for defamation purposes, a plaintiff must prove by clear and convincing evidence that a defamatory statement was a "calculated falsehood or lie 'knowingly and deliberately published.'" Capital-Gazette Newspapers, Inc. v. Stack, 445 A.2d 1038, 1044 (Md. 1982) (quoting Garrison v. State of La., 379 U.S. 64, 75, (1964)).  It is not sufficient merely to prove that the statement was erroneous, derogatory or untrue, that the speaker acted out of ill will, hatred or a desire to injure the official, acted negligently, or acted without undertaking a reasonable investigation. Id.

However, malice can be proven by circumstantial evidence because a plaintiff will "rarely be successful in proving awareness of falsehood from the mouth of the defendant himself." Batson v. Shiflett, 602 A.2d 1191, 1214 (Md. 1992) (quoting Herbert v. Lando, 441 U.S. 153, 170 (1979)).

> Absent such an admission, a public figure's proof must rely solely upon circumstantial evidence, which, by it, can establish actual malice and override a defendant's claim of good faith and honest belief that his statements were true.

Id. (internal citations omitted).

Plaintiffs allege facts adequate to present a plausible claim that at least some of Mosby's defamatory press conference statements were made with knowledge that they were false or made

J.A. 000280

with reckless disregard of whether they were false or not, that
is with the requisite malice for defamation purposes. See
Appendix B.

### b.   Invasion of Privacy (False Light)

In regard to the tort of invasion of privacy (false light),
Maryland follows the Restatement (Second) of Torts' definition
of "false light," which states:

> One who gives publicity to a matter
> concerning another that places the other
> before the public in a false light is
> subject to liability to the other for
> invasion of privacy, if (a) the false light
> in which the other person was placed would
> be highly offensive to a reasonable person,
> and (b) the actor had knowledge of or acted
> in reckless disregard as to the falsity of
> the publicized matter and the false light in
> which the other would be placed.

Bagwell, 665 A.2d at 318 (citing Restatement (Second) of Torts §
652E (1977)).  The tort does not require "making public any
facts concerning the private life of the individual."
Restatement (Second) of Torts § 652E cmt. a; see also Klipa v.
Bd. of Educ. of Anne Arundel Cty., 460 A.2d 601, 607–08 (Md.
App. 1983).

There is no doubt that Mosby gave publicity to the
statements made in her press conference.

Plaintiffs present a plausible claim that Mosby, in her
press conference statements, placed them in a false light that

19

would be highly offensive to a reasonable person.  For example, she made the statements referenced in the foregoing discussion regarding the defamation claim.

Plaintiffs have presented factual allegations adequate to present a plausible claim that Mosby knew of the falsity of her statements, or acted with reckless disregard of the truth and the false light, in which Plaintiffs would be placed.  <u>See</u> discussion in Appendix B.

### c. <u>Mosby's Affirmative Defenses</u>

Mosby presently seeks dismissal of Plaintiffs' claims based upon her press conference statements by virtue of

    1. The alleged running of limitations, and

    2. Conditional privileges.

### (i) <u>Limitations</u>

Mosby held her press conference on May 1, 2015. Plaintiffs' defamation and invasion of privacy claims are subject to a one-year limitations period.[32]  The Complaint in MJG-16-1288 was filed on April 29, 2016, within a year of the press conference.  The Complaints in MJG-16-1304 and MJG-2663 were filed on May 2, 2016, a year and a day after the press conference.  However, May 1, 2016, was a Sunday.  Therefore, the

---

[32]    Md. Code Ann., Cts. & Jud. Proc. § 5-105 (2013 Repl. Vol.).

J.A. 000282

limitations period was extended to the next business day.  Md.
Rule 1-203(a)(2) (2016 Repl. Vol.).

Mosby does not present a valid limitations defense.


### (ii) Conditional Privileges

Mosby claims that her statements at the press conference
were protected by conditional privileges.

"Conditional privileges 'rest upon the notion that a
defendant may escape liability for an otherwise actionable
defamatory statement, if publication of the utterance advances
social policies of greater importance than the vindication of a
plaintiff's reputational interest.'" Woodruff v. Trepel, 725
A.2d 612, 622 (Md. 1999)(quoting Marchesi v. Franchino, 387 A.2d
1129, 1131 (Md. 1978)).  A conditional privilege, unlike an
absolute one, can be lost if it is abused or if the defendant
acted with malice.  See Piscatelli, 35 A.3d at 1148.  The same
conditional privileges apply to both defamation and invasion of
privacy (false light). See Restatement (Second) Torts § 652G
cmt. a ("Under any circumstances that would give rise to a
conditional privilege for the publication of defamation, there
is likewise a conditional privilege for the invasion of
privacy."); Steer v. Lexleon, Inc., 472 A.2d 1021, 1023-24 (Md.
App. 1984) (applying privilege to defamation and false light
claims).

21

There are two conditional privileges that could apply to Mosby's statements:

- The fair reporting privilege[33] and its self-reporting exception in regard to the statements Mosby read from the Application, and

- The fair comment privilege pertinent to Mosby's other statements.

(a)   Fair Reporting Privilege

The fair reporting privilege protects reports and re-statements of legal and official proceedings, which themselves are protected by absolute privilege. Woodruff, 725 A.2d at 617 ("It is well-settled in Maryland that statements uttered in the course of a trial or contained in pleadings, affidavits, or other documents related to a case fall within an absolute privilege . . ."). The fair reporting privilege applies "even if the story contains defamatory material, as long as the account is fair and substantially accurate," Chesapeake Pub. Corp. v. Williams, 661 A.2d 1169, 1174 (Md. 1995), meaning the report must be "substantially correct, impartial, coherent, and bona fide." Piscatelli, 35 A.3d at 1149.

---

[33]   Although Mosby did not raise the fair reporting privilege in her responses, Plaintiffs addressed the fair reporting privilege in their briefs, and the Court finds it appropriate to address it.

According to the Restatement (Second) of Torts, "[a]n
arrest by an officer is an official action, and a report of the
fact of the arrest or of the charge of crime made by the officer
in making or returning the arrest is therefore within the [fair
reporting] privilege covered by this Section."  § 611 cmt. h.
Analogously, Mosby's verbatim reading from the Application of
the Statement of Charges at the press conference could be within
the fair reporting privilege because the underlying document is
related to the charge of crime and a court proceeding.

In the absence of an exception, Mosby would have a fair
reporting privilege in regard to her reading verbatim the
Application submitted to the District Court Commissioner.
However, Plaintiffs present a plausible claim that Mosby's
statements fall within an exception to that privilege.

The Restatement (Second) of Torts commentary acknowledges
an exception to privilege, which the Maryland Court of Appeals
has labeled the "self-reported statement exception." See
Rosenberg, 616 A.2d at 876.  The Restatement explains, "[a]
person cannot confer this [fair reporting] privilege upon
himself by making the original defamatory publication himself
and then reporting to other people what he had stated.  This is
true whether the original publication was privileged or not."
Restatement (Second) of Torts § 611 cmt. c (1977). In its
interpretation of this exception, the Rosenberg Court held that

23

J.A. 000285

> . . . the privilege will be forfeited only
> if the defamer illegitimately fabricated or
> orchestrated events so as to appear in a
> privileged forum in the first place.
>
> * * *
>
> It is clear that the exception made for
> self-reported statements aims to deter those
> persons who, acting out of a corrupt
> defamatory motive, abuse the privilege
> accorded to fair and accurate reports of
> judicial proceedings.

616 A.2d at 876-77. An example of this would be provided by a case in which a person filed a court pleading containing defamatory statements so as to be able to claim a privilege when he/she publicized the defamatory statements and injured another's reputation.

Plaintiffs have alleged facts adequate to present a plausible claim that Mosby was instrumental in the investigation on which the Application was based and participated in writing the Application - even though Cogen signed it and submitted it to the Commissioner. They have plausibly alleged that Mosby, in her press conference, read false statements in the Application that she had created and knew were false for such purposes as "appeasing the public and quelling the riots," ¶ 135 [ECF No. 31 in 16-2663], getting the benefit of national attention and media coverage, id. at ¶ 74, and promoting her political agenda, id. at ¶¶ 236-37.

J.A. 000286

Plaintiffs' allegations are sufficient to present a plausible claim that the self-reporting exception could be applicable to Mosby's fair reporting privilege.

Mosby is not entitled to dismissal of Plaintiff's press conference-based claims by virtue of the fair reporting privilege.

### (b)   Fair Comment Privilege

The fair comment privilege covers expressions of "fair and reasonable opinion[s] or comment[s] on matters of legitimate public interest." _Piscatelli_, 35 A.3d at 1152.  Reports on prosecutions of crimes are matters of public interest. _See id._ (noting that it is an "obvious" principle that prosecutions of crimes, especially murder, are of public interest).  However, to be covered by the privilege, the comments must be "pure opinions," not "mixed opinions." _Id._ at 1153.  This means that privileged opinions must be based on non-defamatory, true, readily accessible, or privileged facts – not false, unprivileged, or undisclosed facts. _Id._

Plaintiffs have made factual allegations adequate to present a plausible claim that Mosby's statements were a "mixed opinion" not protected by the fair comment privilege.  These include the allegations that Mosby's opinion and comments were based on false statements Mosby read from the Application, that

25

Mosby caused the false statements to be in the Application to be able to publicize them, and that the comments were, at least in part, based on non-disclosed, non-public facts from her independent investigation.[34]

Mosby is not entitled to dismissal of Plaintiffs' press conference based claims by virtue of the fair comment privilege.

### 5. Conspiracy

Plaintiffs assert claims labelled "civil conspiracy" as if there could be a recovery from a Defendant as a conspirator in the absence of an underlying tort.  However, in Maryland, civil conspiracy is not recognized as an independent tort.  See Alleco Inc. v. Harry & Jeanette Weinberg Foundation, Inc., 665 A.2d 1038, 1045 (Md. 1995).  The Court of Appeals has "consistently held that 'conspiracy' is not a separate tort capable of independently sustaining an award of damages in the absence of other tortious injury to the plaintiff." Id. (quoting Alexander v. Evander, 650 A.2d 260, 265 n.8 (Md. 1994)).

As stated by the Maryland Court of Appeals more than a century ago:

There is no doubt of the right of a

---

[34]    Mosby stated at the press conference, "the evidence we have collected and continued to collect cannot ethically be released to the public and I strongly condemn anyone in law enforcement with access to trial evidence who has leaked information prior [to] resolution of this case." Transcript at 4.

26

> plaintiff to maintain an action on the case
> against several, for conspiring to do, <u>and
> actually doing</u>, some unlawful act to his
> damage.  But it is equally well-established,
> that no such action can be maintained unless
> the plaintiff can show that he has in fact
> been aggrieved, or has sustained actual
> legal damage by some overt act, done in
> pursuance and execution of the conspiracy.
> It is not, therefore, for simply conspiring
> to do the unlawful act that the action lays.
> It is for doing the act itself, and the
> resulting actual damage to the plaintiff,
> that afford the ground of the action.

<u>Kimball v. Harman & Burch</u>, 34 Md. 407, 409 (Md. 1871).

While there is no separate tort claim for conspiracy, Plaintiffs may utilize a civil conspiracy theory to hold a defendant liable for torts committed by his/her co-conspirators within the scope of the conspiracy.  Hence, Plaintiffs may assert a conspiracy theory to hold a Defendant liable on a substantive claim, but not as a free-standing claim.

Accordingly, all conspiracy claims are dismissed.[35]

B.   <u>Constitutional Claims</u>

Plaintiffs assert claims under the Fourth and Fourteenth Amendments to the United States Constitution and essentially duplicative claims under the Maryland Declaration of Rights

---

[35]   Plaintiffs are not precluded from asserting – should there be adequate evidence to support the assertion - that a Defendant should be held liable on a remaining claim as a co-conspirator.

J.A. 000289

Articles 24[36] and 26[37].

Procedurally, Plaintiffs procedurally filed their constitutional claims pursuant to 42 U.S.C. § 1983 that provides in pertinent part:

> Every person who, under color of [state law] subjects, or causes to be subjected, any citizen of the United States . . . to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws, shall be liable to the party injured . . .

42 U.S.C. § 1983 (2012).

To establish a § 1983 claim, a plaintiff must prove that a defendant:

1. Acted under color of state law,

2. Deprived him/her of a right secured by the Constitution, and

3. Is not entitled to qualified immunity.[38]

---

[36]    "[N]o man ought to be taken or imprisoned or disseized of his freehold, liberties or privileges. . . or deprived of his life, liberty or property, but by the judgment of his peers, or by the Law of the land." Md. Const. Decl. of Rts. art. XXIV.
[37]    "[A]ll warrants, without oath or affirmation, . . . to seize any person or property, are grievous and oppressive." Md. Const. Decl. of Rts. art. XXVI.
[38]    That is, the right must have been clearly established at the time of events at issue. See Graham v. Gagnon, 831 F.3d 176, 182 (4th Cir. 2016). See discussion of qualified immunity below.

1.   Color of State Law

There is no doubt that all pertinent actions of Defendants were performed under color of state law, i.e., as state officials.

2. Deprivation of Rights

The Fourth Amendment to the United States Constitution provides, in pertinent part:

> The right of the people to be secure in
> their persons, . . . against unreasonable .
> . . seizures, shall not be violated.

U.S. Const. amend. IV.

The Fourteenth Amendment to the United States Constitution provides, in pertinent part:

> No State shall . . . deprive any person of
> life, liberty, or property, without due
> process of law.

U.S. Const. amend. XIV, § 1.

The essence of Plaintiffs' § 1983 claims is that Defendants committed wrongful actions that caused them to be arrested and charged without probable cause, i.e., they effectively present a malicious prosecution claim or wrongful seizure claim under § 1983.  "To state such a claim, a plaintiff must allege that the defendant (1) caused (2) a seizure of the plaintiff pursuant to legal process unsupported by probable cause, and (3) criminal

29

proceedings terminated in plaintiff's favor." Evans v. Chalmers, 703 F.3d 636, 647 (4th Cir. 2012).

As discussed in Appendix B, Plaintiffs have alleged facts adequate to present plausible claims that Defendants caused their arrest without probable cause. And, all criminal proceedings ended in Plaintiffs' favor. Therefore, Plaintiffs' allegations suffice to state a plausible claim that their Fourth Amendment rights were violated by Defendants.

A "malicious prosecution claim under § 1983 is properly understood as a Fourth Amendment [not a Fourteenth Amendment][39] claim for unreasonable seizure which incorporates certain elements of the common law tort." Lambert v. Williams, 223 F.3d 257, 261 (4th Cir. 2000)(citing other circuits). Therefore, as was done in Evans v. Chalmers,[40] the Court shall dismiss Plaintiffs' Fourteenth Amendment claims.

In sum, Plaintiffs' Fourth Amendment claims are not dismissed but Plaintiffs' Fourteenth Amendment claims are

---

[39]    "Where a particular Amendment 'provides an explicit textual source of constitutional protection' against a particular sort of government behavior, 'that Amendment, not the more generalized notion of substantive due process, must be the guide for analyzing' these claims." Albright v. Oliver, 510 U.S. 266, 273 (1994)(quoting Collins v. Harker Heights, 503 U.S. 115, 125 (1992)).

[40]    703 F.3d at 646 n.2 ("Because the Fourth Amendment provides "an explicit textual source" for § 1983 malicious prosecution claims, the Fourteenth Amendment provides no alternative basis for those claims.").

30

dismissed as effectively subsumed within their Fourth Amendment claims.

### C. Claims Asserted Against the State

The State of Maryland has not waived its sovereign immunity for tortious acts or omissions by State personnel made with malice or gross negligence. Md. Code Ann., Cts. & Jud. Proc. Art. § 5-522(a)(4) (2013 Repl. Vol.).

Plaintiffs seek to recover from the State by virtue of the alleged tortious acts by Mosby and Cogen.  However, as discussed herein,  Plaintiffs' claims against Mosby and Cogen are viable only if they can establish malice or gross negligence.  Thus, even if Plaintiffs should establish their claims based on actions by Mosby and Cogen, the State would be entitled to sovereign immunity.

Accordingly, all claims against the State of Maryland shall be dismissed.[41]

### D.  Defendants' Immunity Defenses

#### 1.  Absolute Prosecutorial Immunity (Mosby)

The Supreme Court recognizes that, in § 1983 cases, a state prosecutor is entitled to absolute immunity in taking actions

---

[41]   The State's MTCA Notice Requirement defense to the defamation and false light claims is, accordingly, moot.

pursuant to his/her functional role as an advocate for the

state.  See Buckley v. Fitzsimmons, 509 U.S. 259, 282–83 (1993).

In Gill v. Ripley, the Maryland Court of Appeals held,

> as a matter of Maryland common law, [] prosecutors enjoy absolute immunity with respect to claims arising from their role in the judicial process - evaluating whether to commence a prosecution by criminal information, presenting evidence to a grand jury in the quest for an indictment, filing charges, and preparing and presenting the State's case in court.

724 A.2d 88, 96 (Md. 1999).

Mosby claims absolute immunity from suit for all actions

taken by her when functioning as a prosecutor.  However, Mosby,

as "the official seeking absolute immunity bears the burden of

showing that such immunity is justified for the function in

question." Burns v. Reed, 500 U.S. 478, 486 (1991).

To determine the extent of prosecutorial immunity in § 1983

cases, the Supreme Court has adopted a "functional approach,"

which applies absolute immunity only when a prosecutor is

performing an advocacy function, but not an administrative or

investigative function. See Burns, 500 U.S. at 486, 491.

Maryland courts have also adopted the functional approach

to absolute prosecutorial immunity.  Thus, in Maryland law,

when a prosecutor acts as an investigator, he/she is not

entitled to absolute immunity. See Simms v. Constantine, 688

A.2d 1, 5 (Md. App. 1997) (holding that a prosecutor who

investigated three policemen and "falsified evidence against [the three officers] so as to cause the initiation of criminal prosecutions against them" was not entitled to absolute immunity).

The validity of Mosby's claim that she was functioning as a prosecutor is not "clearly reveal[ed]" on the face of the complaint. See Occupy Columbia v. Haley, 738 F.3d 107, 116 (4th Cir. 2013).  In fact, Plaintiffs have presented factual allegations plausibly refuting Mosby's claim that she was functioning as a prosecutor when taking the actions upon which their claims are based.

Mosby's prosecutorial immunity defense is asserted regarding Plaintiffs' claims that she:

- Provided erroneous legal advice to Cogen,
- Caused false statements in the Application for Statement of Charges,
- Presented false grand jury evidence,
- Made tortious statements at her press conference.

These shall be addressed in turn.


a.  False Advice to Cogen

Plaintiffs allege that Mosby knowingly provided Cogen with false advice that probable cause existed to arrest Plaintiffs.

In Burns v. Reed, 500 U.S. 478 (1991), the Supreme Court rejected the proposition that prosecutors are entitled to absolute immunity for legal advice provided to police prior to

33

the prosecution of a case.  Prosecutors who give "legal advice

to police about an unarrested suspect" are not entitled to

absolute immunity.[42] Buckley, 509 U.S. at 275 (referencing

Burns).  As stated by the Burns Court:

> Although the absence of absolute immunity
> for the act of giving legal advice may cause
> prosecutors to consider their advice more
> carefully, "[w]here an official could be
> expected to know that his conduct would
> violate statutory or constitutional rights,
> he should be made to hesitate." Indeed, it
> is incongruous to allow prosecutors to be
> absolutely immune from liability for giving
> advice to the police, but to allow police
> officers only qualified immunity for
> following the advice. Ironically, it would
> mean that the police, who do not ordinarily
> hold law degrees, would be required to know
> the clearly established law, but prosecutors
> would not.

500 U.S. at 495 (internal citations omitted)(quoting Mitchell v.

Forsyth, 472 U.S. 511, 524 (1985)).

And, stated by the Maryland Court of Special Appeals:

> In no sense can any investigative
> activity undertaken by [a prosecutor] or any
> legal advice given by them to the police
> commissioner, to the Mayor, or to anyone
> else be deemed to be a part of the judicial
> function of the State's Attorney's Office.

Simms, 688 A.2d at 15.

In the instant dismissal context, Mosby is not entitled to

absolute immunity for her allegedly knowingly providing false

---

[42]   They may, however, be entitled to qualified immunity.

advice to Cogen as to the existence of probable cause to arrest Plaintiffs.

### b.   Application for Statement of Charges

Plaintiffs allege that Mosby knowingly participated with Cogen in creating a false and misleading Application for Statement of Charges that led to Plaintiffs' arrests.

In Buckley, the Supreme Court held that the defendant prosecutor could be entitled to qualified (but not absolute) immunity when he fabricated evidence during the preliminary investigation of a crime. 509 U.S. at 261.[43]  The Court stated that "[w]hen a prosecutor performs the investigative functions normally performed by a detective or police officer, 'it is neither appropriate nor justifiable that, for the same act, immunity should protect the one and not the other.'" Buckley, 509 U.S. at 273 (quoting Hampton v. Chicago, 484 F.2d 602, 608 (7th Cir. 1973), cert. denied, 415 U.S. 917 (1974)).

In Kalina v. Fletcher, 522 U.S. 118 (1997), the Supreme Court drew a sharp distinction between a prosecutor's absolutely immune acts of preparing and filing an unsworn information charging plaintiff with burglary and an unsworn motion for an arrest warrant and the prosecutor's non-immune act in signing an

---

[43]   Specifically, the prosecutor developed the false testimony of an expert witness to link the suspect to a boot print left at the crime scene. Id.

35

J.A. 000297

accompanying "Certification for Determination of Probable Cause." The Court concluded that in signing the Certification, the prosecutor could be entitled to qualified [but not absolute] immunity because he was acting as a "complaining witness," not an advocate. Id. at 130.

In Springemen v. Williams, 122 F.3d 211 (4th Cir. 1997), an Assistant State's Attorney reviewed an application for a Statement of Charges and Summons prepared by a police officer, and advised that the facts were sufficient to warrant filing the application. Charges were brought and then dropped. After the charges were dropped, the subject of the prosecution sued, alleging that the prosecutor had violated his Fourth Amendment right. He alleged that there had been no probable cause for filing the charge and that the prosecutor's advice was the proximate cause of the criminal summons, which unreasonably deprived him of his liberty. The Springemen court held that the prosecutor was entitled to absolute immunity, stating:

> Our decision today is not a close one. While the Supreme Court has not extended absolute immunity to all legal advice by prosecutors, it has never hesitated to grant such immunity to prosecutors acting as Williams did here – in their core role as advocates for the state.

122 F.3d at 214. The Springemen court clarified that Burns "held that advising police in the investigative phase of a criminal case" was not a judicial function, whereas

36

professionally evaluating evidence assembled by police was. Id.
at 213.

It may well be that the evidence, as distinct from
Plaintiffs' allegations, will establish that Mosby, like the
prosecutor in Springemen is entitled to absolute immunity for
her actions vis-à-vis the Application.  Certainly, she did not
sign it and did not act as a "complaining witness" like the
prosecutor in Kalina.  However, Plaintiffs allege that Mosby did
not merely evaluate evidence and select the particular facts to
include in the Application based on the fruits of an independent
police investigation as recognized as acts of advocacy in
Kalina. 522 U.S. at 130.  Rather, Plaintiffs allege, Mosby acted
as an investigator engaged in the gathering (and fabricating) of
evidence.  Indeed, even Cogen states in a Reply to the pending
motions that "the charges were not based on a consultation with
prosecutors so much as prosecutors themselves actually selected
the charges to be filed based on their own investigation." [ECF
No. 43 at 7 in 16-1304].  And, Mosby herself stated in her press
conference:  "I can tell you that from day one, we independently
investigated, we're not just relying solely upon what we were
given by the police department, period." ¶ 81 [ECF No. 31 at 16-
2663].

Mosby is not entitled to dismissal of claims related to the
Application by virtue of absolute immunity for her actions.

37

J.A. 000299

c.  Grand Jury Evidence

Plaintiffs allege that Mosby caused false and misleading evidence to be presented to the grand jury that indicted them. For example, she[44] required a grand jury witness to testify pursuant to a "script" that included false and misleading statements and not to answer pertinent questions. ¶ 92 [ECF No. 31 in 16-2663].

Prosecutors are entitled to absolute immunity for actions taken before a grand jury.  Presenting evidence to seek an indictment is the first step in bringing a case. See Imbler v. Pachtman, 424 U.S. 409, 426 (1976).  Hence, even if Mosby, in fact, engaged in the conduct alleged by Plaintiffs, she would be immune from a claim based thereon.

Thus, all claims against Mosby based upon the presentation of evidence to, or withholding evidence from, the grand jury are dismissed.[45]


d.  Press Conference Statements

On May 1, Mosby made statements at a press conference on which Plaintiffs base claims for defamation and invasion of

---

[44]   And/or a member of her Office.
[45]   This dismissal of claims does not constitute a ruling that Plaintiffs may not introduce evidence of Mosby's actions vis-à-vis the grand jury that would be relevant to claims as to which she does not have immunity.

privacy (false light).  She is not entitled to absolute immunity from these claims.

As stated in Buckley v. Fitzsimmons,

> Comments to the media have no functional tie to the judicial process just because they are made by a prosecutor. At the press conference, [the prosecutor] did not act in "his role as advocate for the State." The conduct of a press conference does not involve the initiation of a prosecution, the presentation of the state's case in court, or actions preparatory for these functions. Statements to the press may be an integral part of a prosecutor's job, see National District Attorneys Assn., National Prosecution Standards 107, 110 (2d ed. 1991), and they may serve a vital public function. But in these respects a prosecutor is in no different position than other executive officials who deal with the press, and . . . qualified immunity [not absolute immunity] is the norm for them.

509 U.S. at 277–78 (internal citations omitted)(quoting Burns, 500 U.S. at 491).

Mosby is not entitled to dismissal of claims based upon her statements at the press conference by virtue of absolute immunity.


2.  Statutory Immunity

Section 5-522 of Maryland Tort Claims Act provides that:

> State personnel, as defined in § 12-101 of the State Government Article, are immune from suit in courts of the State and from

> liability in tort for a tortious act or
> omission that is within the scope of the
> public duties of the State personnel and is
> made without malice or gross negligence.

Md. Code Ann., Cts. & Jud. Proc. § 5-522(b)(2013 Repl. Vol.)

(emphasis added).

Mosby, a State's Attorney, and Cogen, a Major in the
Sheriff's Office of Baltimore City, are "state personnel" under
§ 12-101, and thus are protected by statutory immunity.  Md.
Code Ann., State Gov't § 12-101(a)(6), (8) (2014 Repl. Vol.).
However, the scope of statutory immunity does not extend to
tortious actions committed with malice or gross negligence.
Plaintiffs' claims are based upon allegations that Defendants
acted with malice and/or gross negligence.

"Malice" for statutory immunity purposes "requires a
showing that 'the official intentionally performed an act
without legal justification or excuse, but with an evil or
rancorous motive influenced by hate, the purpose being to
deliberately injure the plaintiff'" and  "may be inferred from
the surrounding circumstances." Talley v. Farrell, 156 F. Supp.
2d 534, 545 (D. Md. 2001)(internal citations omitted)(quoting
Green v. Brooks, 725 A.2d 596, 610 (Md. App. 1999)).  The
plaintiff "'must allege with some clarity and precision those
facts which make the act malicious.'" Id.

40

J.A. 000302

Gross negligence, in the context of statutory immunity, has been defined as:

> something more than simple negligence, and likely more akin to reckless conduct; gross negligence is "an intentional failure to perform a manifest duty in reckless disregard of the consequences as affecting the life or property of another, and also implies a thoughtless disregard of the consequences without the exertion of any effort to avoid them."

Cooper v. Rodriguez, 118 A.3d 829, 845-46 (Md. 2015) (quoting Barbre v. Pope, 935 A.2d 699, 717 (Md. 2007)).

There is no allegation that Defendants' actions were motivated by hate, or an intent to injure Plaintiffs. However, taking Plaintiffs' factual allegations as true, they have presented a plausible claim that Defendants acted with utter indifference to Plaintiffs' rights to be free from unreasonable seizure and deprivations of liberty, i.e., with gross negligence. Hence, while the evidence may later refute Plaintiffs' contentions, Defendants are not entitled to dismissal of Plaintiffs' claims by virtue of statutory immunity.

### 3.  Qualified Immunity

Defendants assert entitlement to qualified immunity for Plaintiffs' constitutional claims.[46]

---

[46]    Defendants also contend that public official immunity,

> "The doctrine of qualified immunity protects government officials from liability for civil damages insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known." In practical effect, qualified immunity "gives government officials breathing room to make reasonable but mistaken judgments." This allowance for reasonable mistakes is the product of "balanc[ing] two important interests—the need to hold public officials accountable when they exercise power irresponsibly and the need to shield officials from harassment, distraction, and liability when they perform their duties reasonably."
>
> The shield of qualified immunity is lost when a government official (1) violates a constitutional right and (2) that right was clearly established.

Graham v. Gagnon, 831 F.3d 176, 182 (4th Cir. 2016)(internal

citations omitted).

As noted in Graham, the right that must be clearly

established in question "is not the general right to be free

from arrest without probable cause, but rather the right to be

free from arrest under the particular circumstances of the

case." Id.

---

which is a type of common law qualified immunity, applies to
Plaintiffs' state claims. However, public official immunity
only applies when the official is alleged to have acted
negligently, Smith v. Danielczyk, 928 A.2d 795, 813-14 (Md.
2007), whereas, here, the Officers must contend that Defendants
acted deliberately, with malice, and/or with gross negligence in
order to plead legally cognizable claims. Therefore, it is not
necessary for the Court to consider public official immunity.

J.A. 000304

In the instant case, the allegedly established right can be stated to be the right to be free from arrest without probable cause caused by Defendants' submitting the Application containing false statements and omitting material facts with at least reckless disregard for the truth.  As stated by the United States Court of Appeals for the Fourth Circuit in 2007:

> [T]the Supreme Court has long held that a police officer violates the Fourth Amendment if, in order to obtain a warrant, he deliberately or "with reckless disregard for the truth" makes material false statements or omits material facts. We and our sister circuits have frequently applied this mandate.

Miller v. Prince George's Cty., MD, 475 F.3d 621, 631 (4th Cir. 2007) (internal citations omitted).

Defendants contend that because a District Court Commissioner and the grand jury determined there was probable cause, that should conclusively establish the existence of probable cause to arrest Plaintiffs.[47]

As to the commissioner, the Fourth Circuit expressly has rejected such a contention. "A magistrate's issuance of the warrant [for arrest] will not shield an officer when . . . the underlying affidavit includes deliberate and reckless misstatements and omissions, as here." Id. at 632.  If, as

---

[47]    See Mosby's Motion to Dismiss [ECF No. 25-1 in 16-1304] at 27 and Cogen's Reply [ECF No. 43 in 16-1304] at 7.

43

alleged here, a judicial officer finds probable cause based upon false statements in an affidavit, qualified immunity shall not shield the affiant when the affidavit includes deliberate and reckless misstatements and omissions.  See id.

Even if there were merit to the contention that the grand jury indictment based upon evidence presented to the grand jury established probable cause for prosecution, Plaintiffs were arrested based upon the Application.

Of course, the Court is not definitively deciding that Defendants are not entitled to qualified immunity with regard to probable cause to arrest Plaintiffs.  Rather, the Court is determining that the existence of this affirmative defense is not clear on the face of the complaint and a firm conclusion on the reasonableness of the probable cause determination requires greater factual development.  Cf. Tobey v. Jones, 706 F.3d 379, 389 (4th Cir. 2013) (concluding "[w]hat is reasonable in this context, therefore, requires greater factual development and is better decided once discovery has been conducted"); Swagler v. Neighoff, 398 F. App'x 872, 878 (4th Cir. 2010)(holding that the district court acted within its discretion in denying qualified immunity in advance of discovery.)[48]

---

[48]   In its recent decision in Pegg v. Herrnberger, No. 15-1999 (4th Cir. Jan. 4, 2017), ___ F.3d ___ (4th Cir. 2017), the United States Court of Appeals for the Fourth Circuit recognized

Accordingly, Defendants are not entitled to dismissal of Plaintiffs' constitutional claims by virtue of qualified immunity.

V.    CONCLUSION:

For the foregoing reasons:

A.    In MJG-16-1288:

1. Defendant Samuel Cogen's Motion To Dismiss [ECF No. 12] is GRANTED IN PART and DENIED IN PART.

2. Defendant Marilyn Mosby's Motion to Dismiss [ECF No. 25] is GRANTED IN PART and DENIED IN PART.

B.    In MJG-16-1304:

1. Defendant Samuel Cogen's Motion To Dismiss [ECF No. 8] is GRANTED IN PART and DENIED IN PART.

2. Defendant Marilyn Mosby's Motion to Dismiss [ECF No. 25] is GRANTED IN PART and DENIED IN PART.

C.    In MJG-16-2663:

1. Defendant Samuel Cogen's Motion To Dismiss [ECF No. 11] is GRANTED IN PART and DENIED IN PART.

2. Defendant Marilyn Mosby's Motion to Dismiss [ECF No. 22] is GRANTED IN PART and DENIED IN PART.

D.    In all three cases:

1.  The following claims are dismissed:

---

that "probable cause or its absence will be at least an evidentiary issue in practically all [§ 1983 wrongful arrest] cases" but noted that there is a significant difference between the context of a motion to dismiss and a motion for summary judgment in which the sufficiency of the evidence (as distinct from allegations) can be tested. See also Tobey v. Jones, 706 F.3d 379, 392 (4th Cir. 2013).

a. False arrest,

b. False imprisonment,

c. Abuse of process,

d. Conspiracy,[49]

e. Section 1983 Fourteenth Amendment Violations,

f. Section 1983 Fourth Amendment claims based on presentation to the grand jury (Mosby),[50]

g. All claims against the State of Maryland.

2. The following claims remain pending:

a. Malicious prosecution,

b. Defamation,

c. Invasion of privacy (false light),

d. Section 1983 Fourth Amendment claims.[51]

E. The Court shall, promptly, conduct a conference regarding further proceedings in these cases.

SO ORDERED, this <u>Friday, January 27, 2017</u>.

<u>          /s/          </u>
Marvin J. Garbis
United States District Judge

---

[49]   Plaintiffs are not precluded from asserting – should there be adequate evidence to do so - that a Defendant should be held liable on a substantive claim as a co-conspirator.

[50]   However, this Order does not determine whether evidence regarding Mosby's presentations to the grand jury would be inadmissible in regard to other claims.

[51]   And the duplicative Maryland Declaration of Rights Article 26 claims.

46

J.A. 000308

APPENDIX A

Summary of "Facts" as Alleged by Plaintiffs

Plaintiffs allege a version of the facts that is by no means undisputed by Defendants.   However the Court must, in the instant dismissal context, assume the truth of Plaintiffs' pleading allegations.   Therefore, this statement of Plaintiffs' version of the facts, is not intended to, and does not, present any determination as to whether Plaintiffs can present evidence to establish the allegations asserted.

1.   Gray's Arrest (Nero, Miller, Rice)

On the morning of April 12, 2015, Baltimore City Police Officers Edward Nero ("Nero")and Garrett Miller ("Miller") and Lieutenant Brian Rice ("Rice") were on bicycle patrol on North Avenue.   Rice called for help in pursuing two suspects.   Nero and Miller responded. Officer Miller apprehended one of the suspects, Freddie Carlos Gray, Jr. ("Gray") near Mount Street.

After detaining and handcuffing Gray "for officer safety reasons," Miller found "a spring-assisted knife" on Gray's person.   Compl., ¶¶ 19, 22 [ECF No. 33-1 in 16-1288].   This knife was illegal under Article 19, Section 59-22 of the Baltimore City Code, which states "[i]t shall be unlawful for any person to sell, carry, or possess any knife with an

47

automatic spring or other device[52] for opening and/or closing the blade, commonly known as a switch-blade knife." Miller arrested Gray for possession of the knife.

During his arrest, Gray "became physically and verbally combative," causing a crowd to form around the Officers and Gray. ¶ 22 [ECF No. 33-1 in 16-1288]. A police wagon was summoned and arrived driven by Officer Caesar Goodson ("Goodson"). Gray refused to enter the police wagon for transport. Therefore, Nero and another Officer carried Gray to the wagon.

Gray stood on the back step of the wagon as Nero conducted a second search for weapons and then was placed inside the wagon. During this entire encounter, Nero, a former EMT, "did not observe Gray exhibiting symptoms of a medical emergency." Id. at ¶ 20.

2.   The Transport of Gray

Gray was transported from the scene of his arrest to the Western District police station, driven by Goodson. Goodson made four stops en route.

---

[52]   That is, the Code prohibits possession of a knife with any automatic device (not just a spring) for opening or closing the blade.

J.A. 000310

### a. First Stop (Nero, Miller, and Rice)

Once Gray was in the wagon, he "began banging and slamming himself" against the walls of the vehicle while screaming and yelling. Id. at ¶ 27.  In order to avoid the gathering crowds, Goodson moved the wagon one block away to complete paperwork and effectuate the arrest.  At this first stop, Miller and Rice removed Gray from the wagon, switched his handcuffs for flex cuffs, and placed leg shackles on Gray because he was "thrashing" around the wagon. ¶ 25 [ECF No. 39-2 in 16-1304].

Rice called for back-up because another crowd of onlookers was forming in response to Gray's yelling and banging.  Rice, Nero, and Miller had no further interactions with Gray.

### b. Second Stop

Goodson made a second stop near Baker and Mount Streets, but none of the Plaintiffs interacted with Gray at this stop.

### c. Third Stop (Porter)

Goodson stopped a third time at the intersection of Druid Hill Avenue and Dolphin Street.  Goodson requested an additional officer to respond to the area.  Officer William Porter ("Porter") responded and observed Gray lying prone on the floor of the vehicle.  Gray asked Porter for "help." ¶ 56 [ECF No. 31 in 16-2663].  Porter asked Gray, "what do you mean help?" and

49

Gray asked for help in getting off the floor. Id.  Porter raised
Gray by his arms to a sitting position on the bench.  Porter
could not fit in the wagon compartment while Gray was inside.
Gray did not appear to need medical assistance, but Porter asked
him if he wanted medical help.  Gray replied that he did, and
Ported advised Goodson to take Gray to the hospital.  Porter
"observed no exigent medical need, and observed Gray to be able
to sit upright, breathe and communicate." Id. at ¶ 57.  Porter
knew that "many detainees are trying to avoid being transported
to the detention facility" by requesting medical assistance. Id.

> ### d. Fourth Stop (Porter, White)

Goodson made a fourth stop at North Avenue to pick up a new
arrestee, Donta Allen, who was detained by Miller and Nero.
There was a call for back-up, to which Porter and Officer Alicia
White ("White") responded separately.

When Porter arrived, he observed Gray kneeling on the
vehicle floor and leaning against the bench.  Porter spoke to
Gray and confirmed that Gray still wanted to go to the hospital.
Porter told this to another officer at the scene.

When White arrived, she approached Gray in the wagon and
attempted to speak with him.  She saw him breathing and heard
him making noises, but Gray would not answer her, which White
concluded was a sign of his non-compliant behavior.  White

states that Gray did not appear to be in medical distress.   No
one told her that a medic was needed.   Both White and Porter
left to go to the Western District station.

### e. Arrival at Western District (White and Porter)

The police wagon arrived at the Western District Station
with Gray inside.

When Porter reached the station and approached the wagon,
he saw that Gray was unresponsive.   Porter tapped Gray, but Gray
did not respond.   Another officer began emergency aid while
Porter called a medic.

When White arrived at the station, she saw officers
removing Gray from the wagon and was told, for the first time,
to call a medic.   Another officer told White a medic had already
been called, but White called to confirm it was en route.

### 3. Gray's Death

A medical unit took Gray from the Western District Station
to the University of Maryland Shock Trauma Unit where he
underwent surgery.   On April 19, 2015, Gray died from a spinal
cord injury.

### 4.   The Investigation and Charges

Following Gray's death, State's Attorney Mosby ("Mosby")

51

led an independent investigation into the cause of Gray's death conducted by the State's Attorney's Office ("SAO") police integrity unit.  According to Mosby, the "findings of [the SAO's] comprehensive, thorough and independent investigation, coupled with the medical examiner's determination that Gray's death was a homicide, . . . led us to believe that we have probable cause to file criminal charges." Transcript at 1 [ECF No. 23-1 in 16-1304].

Plaintiffs allege that Mosby and Major Samuel Cogen of the Baltimore City Sheriff's Office ("Cogen") committed various improper actions that Mosby and Cogen deny.  According to Plaintiffs, Mosby and the SAO manipulated, fabricated, and falsified evidence so that Plaintiffs[53] would be arrested and indicted. ¶ 79 [ECF No. 31 in 16-2663].  Mosby, during her investigation, and "with Cogen's complicity and assistance," developed a false and misleading narrative to justify the Statement of Charges and arrest warrant Application ("Application").  Id. at ¶ 85.  This narrative made it seem that Gray had committed no crime, Plaintiffs illegally arrested Gray, purposely neglected to seatbelt him so that he would be injured, and then ignored his medical symptoms and cries for help.

Specifically, the Application stated that the knife Gray

---

[53]    And Goodson.

J.A. 000314

possessed was "lawful under Maryland law," and made no mention
that it was actually illegal under the Baltimore City Code.  The
narrative omitted exculpatory facts that would tend to show that
Gray was uncooperative, did not exhibit outward signs of medical
distress, and had tried to injure himself by banging his head on
the wagon wall, as well as other omissions.

Cogen signed and submitted the Statement of Charges and
Application for Statement of Charges to a District Court
Commissioner at Mosby's direct or indirect instruction.  Cogen
allegedly knew that the statements submitted to get the arrest
warrants were false and unsupported by any evidence because of
his participation in the investigation.

On May 1, 2015, Plaintiffs (and Goodson) were arrested and
on May 21, 2015, indicted for charges on which no one was
convicted.

### 5.  Mosby's Press Conference

On May 1, 2015, Attorney Mosby held a televised press
conference regarding her decision to pursue criminal charges
against the Officers.  Plaintiffs alleged that during her
presentation, Mosby spoke in a "divisive and inciting manner." ¶
65 [ECF No. 33-1 in 16-1288].  Mosby quoted from the
Application, including the false statement that the knife
recovered from Gray was legal, and therefore, Rice, Nero, and

53

Miller lacked probable cause to arrest Gray.

Mosby made statements emphasizing her role in the SAO's

independent investigation.  For example:

> Once alerted about this incident on
> April 13, investigators from my police
> integrity unit were deployed to investigate
> the circumstances surrounding Mr. Gray's
> apprehension.  Over the course of our
> independent investigation, in the untimely
> death of Mr. Gray, my team worked around the
> clock; 12 and 14 hour days to canvas and
> interview dozens of witnesses; view numerous
> hours of video footage; repeatedly reviewed
> and listened to hours of police video tape
> statements; surveyed the route; reviewed
> voluminous medical records; and we leveraged
> the information made available to us by the
> police department, the community, and the
> family of Mr. Gray.

Transcript at 1 [ECF No. 23-1 at 16-1304].

> We independently verified those facts and
> everything we received from the police
> department, so it's a culmination of the
> independent investigation that we conducted
> as well as the information we received from
> the police department.

> *    *    *

> I can tell you that from day one, we
> independently investigated, we're not just
> relying solely upon what we were given by
> the police department, period.

¶ 81 [ECF No. 31 in 16-2663].

Mosby also made other statements on which Plaintiffs base

claims, such as

> To the people of Baltimore and demonstrators
> across America: I heard your cries for 'No

54

J.A. 000316

> justice, no peace.' Your peace is sincerely
> needed as I work to deliver justice on
> behalf of this young man. To those that are
> angry, hurt or have their own experiences of
> injustice at the hands of police officers I
> urge you to channel that energy peacefully
> as we prosecute this case.

Transcript at 4 [ECF No. 23-1 in 16-1304].

> Last, but certainly not least, to the youth
> of the city. I will seek justice on your
> behalf. This is a moment. This is your
> moment. Let's insure we have peaceful and
> productive rallies that will develop
> structural and systemic changes for
> generations to come.

Id. at 5.

Plaintiffs allege that Mosby made her press conference statements out of improper motives, such as pursuing political ambitions, influencing legislation, and quelling the riots that were taking place in Baltimore at the time.

6. Grand Jury Presentation

On or about May 21, 2015, the SAO presented evidence before a grand jury to get indictments against Plaintiffs.[54] Assistant State's Attorney Janice Bledsoe gave Baltimore City Police Detective Dawnyell Taylor, the lead detective in the criminal investigation of Gray's death, a four-page "script" to read in front of the grand jury. ¶ 92 [ECF No. 31 in 16-2663]. This

---

[54]    And Goodson.

script was "incomplete, misleading, biased, and partially false"; for example, it falsely stated that the arresting Officers tased Gray. Id. at ¶ 107.  Detective Taylor expressed concerns about the document because of its misleading and false information, but she was instructed to read it anyway, and was prevented from responding to jury questions.  The grand jury returned criminal indictments against all of the Officers.

### 7. Prosecutions

The SAO obtained no convictions on any of the charges arising out of the Freddie Gray incident.  In December 2015, Porter's trial ended in a hung jury and mistrial.  Nero, Goodson, and Rice had bench trials and were acquitted on May 23, 2016, June 23, 2016, and July 18, 2016, respectively.  On July 27, 2016, Mosby entered a nolle prosequi in Officers Miller's, Porter's, and White's criminal cases.

APPENDIX B

The Franks Analysis

Plaintiffs present § 1983 malicious prosecution and/or unlawful seizure claims of violation of their Fourth Amendment rights. See Massey v. Ojaniit, 759 F.3d 343, 356 (4th Cir. 2014).

"A plaintiff's allegations that police seized him 'pursuant to legal process that was not supported by probable cause and that the criminal proceedings terminated in his favor are sufficient to state a . . . claim alleging a seizure that was violative of the Fourth Amendment.'" Miller v. Prince George's Cty., MD, 475 F.3d 621, 627 (4th Cir. 2007)(quoting Brooks v. City of Winston-Salem, 85 F.3d 178, 183-84 (4th Cir. 1996)). Specifically, the Officers allege that they were arrested pursuant to warrants that lacked sufficient probable cause because the Defendants deliberately included false statements and omitted exculpatory evidence from the Application.

To evaluate a "false affidavit" claim, as made by Plaintiffs, courts apply the two-prong test established in Franks v. Delaware, 438 U.S. 154 (1978).

> First, plaintiffs must allege that defendants "knowingly and intentionally or with a reckless disregard for the truth" either made false statements in their affidavits or omitted facts from those

> affidavits, thus rendering the affidavits
> misleading. Second, plaintiffs must
> demonstrate that those "false statements or
> omissions [are] material, that is, necessary
> to" a neutral and disinterested magistrate's
> authorization of the search.

Evans v. Chalmers, 703 F.3d 636, 649-50 (4th Cir. 2012)

(citations omitted)(quoting Franks, 48 U.S. at 155-56)).

Plaintiffs allege that the Application for Statement of

Charges ("the Application") contained material false and

misleading statements, including (1) the false statement that

Rice, Miller, and  Nero did not have probable cause to arrest

Gray because he had committed no crime; (2) the misleading

statement that the knife was "lawful under Maryland law"; (3)

the false statement that White was advised that Gray needed a

medic at the last stop; and (4) the false statement that Gray

was in a "seriously deteriorating medical condition" at or

before the last stop before the police station.

Plaintiffs also allege that Defendants caused material

omissions from the Application, including the facts that (1) the

knife found on Gray was assisted by a spring or other device for

opening and/or closing the blade and was illegal to possess in

Baltimore City; (2) a crowd was forming around the police wagon

at the first and second stops; (3) Gray was being physically

uncooperative and banging his head on the wall of the police

wagon; (4) the Baltimore Police Department General Order

regarding seatbelting arrestees had been issued on April 3,
2015, and did not impose a legal duty on the Officers; (5) two
witnesses at later stops stated that Gray was not in obvious
medical distress; (6) Gray's neck injury was not obvious to the
medics who responded at the station; (7) Porter told the driver
(Goodson) to take Gray to the hospital even though he "believed
that Gray asked for a medic for purposes of being taken to the
hospital to avoid being processed, rather than because that he
was in need of medical assistance," ¶ 98 [ECF No. 31 in 16-
2663]; and (8) White "instructed other officers to call for a
medic, and then followed up again when the medic did not
promptly arrive, as soon as she knew that Gray was in distress,
as she clearly stated in her Recorded Statement." Id. at ¶ 100.

     Viewed in the light most favorable to the Plaintiffs, they
present allegations that present a plausible claim that the
Defendants made false statements or omissions either knowingly
or with reckless disregard of their truth or falsity.

     An official acts with "reckless disregard" when he or she
acts "'with a high degree of awareness of [a statement's
probable falsity,' that is, 'when viewing all the evidence, the
affiant must have entertained serious doubts" or 'had obvious
reasons to doubt the accuracy of the information he reported.'"
Miller, 475 F.3d at 627 (quoting Wilson v. Russo, 212 F.3d 781,
788 (3d Cir. 2000)). "With respect to omissions, 'reckless

disregard' can be established by evidence that a police officer 'failed to inform the judicial officer of facts [he] knew would negate probable cause,'" but mere negligence or innocent mistake is not sufficient to show "reckless disregard." Id. (quoting Beauchamp v. City of Noblesville, Inc., 320 F.3d 733, 743 (7th Cir. 2003)).

Plaintiffs allege that Mosby and Cogen knew from their investigation that the alleged false statements in the Application were untrue, or stated them with no factual support, and intended to make the Application misleading in order to arrest the Officers and gain national attention, calm the riots in Baltimore City, and accomplish other personal objectives.

For example, Mosby knew that the knife Gray possessed was a spring or other device assisted knife because she saw the knife, she knew that the SAO was prosecuting other individuals for possession of similar knives, and she knew that a District Court Commissioner had found there had been probable cause to arrest Gray because of his possession of the knife.  Plaintiffs assert that Mosby intentionally misled the District Court Commissioner by misleadingly wording the Application to say that the knife was "lawful under Maryland law," without accurately describing or even mentioning the Baltimore City Code provision making its possession illegal.

Plaintiffs allege that Cogen participated directly or

60

J.A. 000322

indirectly in the investigation, presenting a plausible basis for a reasonable inference that Cogen knew what the knife was and that Gray had been charged with illegal possession of it.

Plaintiffs allege that there was no factual basis whatsoever to support the statements in the Application that Gray was obviously injured before arriving at the police station.  In fact, Plaintiffs refute the statement, alleging that witnesses said that Gray was conscious at the last stop, banging his head on the wall, and the medics did not see that he had a neck injury.

Furthermore, if the Mosby had – as she claimed - conducted a thorough independent investigation, which Major Cogen either participated in or reviewed the results of, the Defendants would have known the alleged exculpatory facts existed, such as the witness statements and Plaintiffs' attempts to check on Gray and get him medical attention once they knew it was needed. Plaintiffs allege that these facts were omitted intentionally by Mosby, and with at least reckless disregard by Cogen.

In sum, Plaintiffs plausibly allege that the Application was misleading because the omitted facts, when viewed in a light most favorable to the Plaintiffs, establish the absence of probable cause to arrest Plaintiffs.  These facts are: (1) Plaintiffs did have probable cause to arrest Gray, (2) Gray was trying to purposely injure himself to be avoid being taken to

jail, (3) Plaintiffs were not ignoring an obvious medical need on Gray's part, and (4) Plaintiffs did not seatbelt Gray out of a need to move the wagon away from the crowd and out of concern for officer safety because Gray was being physically combative. Plaintiffs further allege that they did get medical attention for Gray as soon as they were aware he actually needed medical help.

Plaintiffs have made adequate allegations to satisfy the first <u>Franks</u> prong.  That is, that Defendants knowingly and intentionally, or with a reckless disregard for the truth, either made false statements in their affidavits or omitted facts from those affidavits, thus rendering the affidavits misleading.

Under the second <u>Franks</u> prong, Plaintiffs must allege facts to present a plausible claim that the false statements and omissions were material.  "To determine materiality, a court must 'excise the offending inaccuracies and insert the facts recklessly omitted, and then determine whether or not the 'corrected' warrant affidavit would establish probable cause.' If the 'corrected' warrant affidavit establishes probable cause, no civil liability lies against the officer." <u>Miller</u>, 475 F.3d at 628 (quoting <u>Wilson</u>, 212 F.3d at 789). "Probable cause exists when the facts and circumstances within an officer's knowledge — or of which he possesses reasonably trustworthy information —

62

are sufficient in themselves to convince a person of reasonable caution that an offense has been or is being committed." <u>Wadkins v. Arnold</u>, 214 F.3d 535, 539 (4th Cir. 2000)(citing <u>Brinegar v. United States</u>, 338 U.S. 160, 175–76 (1949)).

As a result of the Application, the Officers were arrested and charged with manslaughter (White), involuntary manslaughter (Rice, White, Porter), intentional second degree assault (all Plaintiffs), negligent second degree assault (Rice, Nero, Miller), misconduct in office (all Plaintiffs), and false imprisonment (Nero, Miller, Rice).

The Court has read the Application for the Statement of Charges adding the alleged omissions and subtracting the alleged false statements to evaluate whether the corrected Application could "convince a person of reasonable caution" that Plaintiffs could have committed at least one of the offenses charged. <u>Wadkins</u>, 214 F.3d at 539.

The assault and false imprisonment charges rested on the alleged erroneous assumption that Gray was arrested without probable cause.  When the false and misleading statements about the knife are corrected according to Plaintiffs' contentions, it is obvious that there was probable cause to arrest Gray.

The corrected Application presents no probable cause for the voluntary manslaughter charge against Officer White. Voluntary manslaughter is "an intentional homicide, done in a

63

sudden heat of passion, caused by adequate provocation, before there has been a reasonable opportunity for the passion to cool." Cox v. State, 534 A.2d 1333, 1335 (Md. 988).  Viewed in the light most favorable to White, the Application presents no basis to conclude that White, not knowing that Gray was injured or needed a medic until he was at the station, intended to kill him.

The crime of involuntary manslaughter, for which Rice, White, and Porter were charged, "is predicated on negligently doing some act lawful in itself, or by negligently failing to perform a legal duty" and "the negligence necessary to support a conviction must be gross or criminal, viz., such as manifests a wanton or reckless disregard of human life." State v. Gibson, 242 A.2d 575, 579 (Md. App. 1968), aff'd, 254 A.2d 691 (Md. 1969)(citing State of Maryland v. Chapman, 101 F.Supp. 335 (D. Md. 1951)).  The Application assertion central to the involuntary manslaughter charges, as well as the misconduct in office charges, is that Plaintiffs failed to seat belt Gray as required by the Baltimore Police Department General Order with a wanton or reckless disregard for human life.  Based on the "corrected" Application, viewed in a light most favorable to the Plaintiffs, no reasonable person could conclude that Plaintiffs failed to seat belt Gray due to gross or criminal negligence under the circumstances.  Rather, as Plaintiffs allege, the

Order was new, they needed to quickly move the wagon to avoid growing crowds, Gray was physically uncooperative making it hard to position him in the wagon, and they did not know Gray was hurt.

In the instant dismissal context, Plaintiffs have alleged facts adequate to present a plausible Fourth Amendment claim.

J.A. 000327

# IN THE UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF MARYLAND

| | | |
|---|---|---|
| EDWARD MICHAEL NERO, *et al.*, | * | |
| Plaintiffs, | * | |
| v. | * | Civil No. 1:16-cv-01288-MJG |
| MARILYN MOSBY, *et al.*, | * | |
| Defendants. | * | |

\*   \*   \*   \*   \*   \*   \*   \*   \*   \*   \*   \*   \*

## NOTICE OF APPEAL

Pursuant to Federal Rule of Appellate Procedure 3(a)(1), notice is hereby given that Defendant Marilyn J. Mosby hereby appeals to the United States Court of Appeals for the Fourth Circuit from the "Memorandum and Order re: Dismissal Motions" (ECF No. 43) that was entered in this action on the 6th day of January, 2017, and later "corrected" on the 27th day of January, 2017 (ECF No. 54), and which denied in part Defendant Mosby's motion to dismiss (ECF No. 25).

Respectfully submitted,

BRIAN E. FROSH
Attorney General of Maryland

_____/s/_____
KARL A. POTHIER
Assistant Attorney General
Bar No. 23568
120 West Fayette Street, 5th Floor
Baltimore, Maryland  21201
410-230-3135 (telephone)
410-230-3143 (facsimile)
karl.pothier@maryland.gov

Attorneys for Defendant Mosby

# CERTIFICATE OF SERVICE

I HEREBY CERTIFY that on this 3rd day of February, 2017, copies of the foregoing

Notice of Appeal were served electronically via the Court's CM/ECF on:

Joseph T. Mallon, Jr., Esquire
Mallon & McCool, LLC
300 East Lombard Street, Suite 815
Baltimore, Maryland, 21202

(Counsel for Plaintiffs)

- and -

Jason R. Foltin, Assistant Solicitor
Sara E. Gross, Assistant Solicitor
Baltimore City Department of Law
100 N. Holliday Street
Baltimore, MD 21202

(Counsel for Defendant Cogen)


_____/s/_____
KARL A. POTHIER
Assistant Attorney General

# IN THE UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF MARYLAND

| | | |
|---|---|---|
| BRIAN SCOTT RICE, | * | |
| Plaintiff, | * | |
| v. | * | Civil No. 1:16-cv-01304-MJG |
| MARILYN MOSBY, *et al.*, | * | |
| Defendants. | * | |

\* \* \* \* \* \* \* \* \* \* \* \* \* \*

## NOTICE OF APPEAL

Pursuant to Federal Rule of Appellate Procedure 3(a)(1), notice is hereby given that Defendant Marilyn J. Mosby hereby appeals to the United States Court of Appeals for the Fourth Circuit from the "Memorandum and Order re: Dismissal Motions" (ECF No. 46) that was entered in this action on the 6th day of January, 2017, and later "corrected" on the 27th day of January, 2017 (ECF No. 56), and which denied in part Defendant Mosby's motion to dismiss (ECF No. 25).

Respectfully submitted,

BRIAN E. FROSH
Attorney General of Maryland

_____/s/_____
KARL A. POTHIER
Assistant Attorney General
Bar No. 23568
120 West Fayette Street, 5th Floor
Baltimore, Maryland  21201
410-230-3135 (telephone)
410-230-3143 (facsimile)
karl.pothier@maryland.gov

Attorneys for Defendant Mosby

## CERTIFICATE OF SERVICE

I HEREBY CERTIFY that on this 3rd day of February, 2017, copies of the foregoing

Notice of Appeal were served electronically via the Court's CM/ECF on:

David Ellin, Esquire
Law Office of David Ellin, P.C.
154 Westminster Pike
Reisterstown, Maryland, 21136

(Counsel for Plaintiff)

- and -

Brandy A. Peeples, Esquire
Law Office of Brandy A. Peeples, P.C.
47 East All Saints Street
Frederick, Maryland, 21701

(Counsel for Plaintiff)

- and -

Jason R. Foltin, Assistant Solicitor
Sara E. Gross, Assistant Solicitor
Baltimore City Department of Law
100 N. Holliday Street
Baltimore, MD 21202

(Counsel for Defendant Cogen)

_____/s/_____
KARL A. POTHIER
Assistant Attorney General

## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF MARYLAND

ALICIA WHITE, *et al.*,                    *

        Plaintiffs,                    *

    v.                                        *          Civil No. 1:16-cv-02663-JFM

MARILYN MOSBY, *et al.*,                    *

        Defendants.                    *

\*     \*     \*     \*     \*     \*     \*     \*     \*     \*     \*     \*     \*

## NOTICE OF APPEAL

Pursuant to Federal Rule of Appellate Procedure 3(a)(1), notice is hereby given that Defendant Marilyn J. Mosby hereby appeals to the United States Court of Appeals for the Fourth Circuit from the "Memorandum and Order re: Dismissal Motions" (ECF No. 49) that was entered in this action on the 6th day of January, 2017, and later "corrected" on the 27th day of January, 2017 (ECF No. 58), and which denied in part Defendant Mosby's motion to dismiss (ECF No. 22).

Respectfully submitted,

BRIAN E. FROSH
Attorney General of Maryland

_____/s/_____
KARL A. POTHIER
Assistant Attorney General
Bar No. 23568
120 West Fayette Street, 5th Floor
Baltimore, Maryland  21201
410-230-3135 (telephone)
410-230-3143 (facsimile)
karl.pothier@maryland.gov

Attorneys for Defendant Mosby

## CERTIFICATE OF SERVICE

I HEREBY CERTIFY that on this 3rd day of February, 2017, a copies of the

foregoing Notice of Appeal were served electronically via the Court's CM/ECF on:

Tony N. Garcia, Esquire
Bates & Garcia, LLC
201 N. Charles Street, Suite 1900
Baltimore, Maryland, 21201

(Counsel for Plaintiffs)

- and –

Michael E. Glass, Esquire
The Michael Glass Law Firm
201 N. Charles Street, Suite 1900
Baltimore, Maryland, 21201

(Counsel for Plaintiffs)

- and -

Jason R. Foltin, Assistant Solicitor
Sara E. Gross, Assistant Solicitor
Baltimore City Department of Law
100 N. Holliday Street
Baltimore, MD 21202

(Counsel for Defendant Cogen)

_____/s/_____
KARL A. POTHIER
Assistant Attorney General

J.A. 000333